UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------X

DOUGLAS J. HORN and CINDY HARP-HORN,               Civ. Action No.:

          Plaintiffs,

               -against-                            **COMPLAINT and**
                                                  **<u>JURY DEMAND</u>**

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

               Defendants.

--------------------------------------------------------------------------X

       Plaintiffs, DOUGLAS J. HORN and CINDY HORN (collectively "Plaintiff") by their attorneys, JEFFREY BENJAMIN, P.C. as and for their complaint against the Defendants MEDICAL MARIJUANA, INC., DIXIE ELIXIRS AND EDIBLES, RED DICE HOLDINGS, LLC, and DIXIE BOTANICALS, (collectively the "Defendants"), alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This is an action for damages for *inter alia*, deceptive business practices and violations of the New York General Business Law Art 22-A, §349 ("Deceptive Practices Act" or GBL §349"), GBL §350 for false advertising, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1962(a)-(d), violations of New York State Uniform Commercial Code (UCC) § 2-313 for negligence in products manufacture and sales, UCC § 2-318, strict products liability, as well as numerous common law causes of action. The Complaint also seeks statutory attorneys' fees and costs pursuant to the statutory violations and the New York General Obligations Law ("GOL") §5-327, and punitive damages.

## JURISDICTION AND PARTIES

2.  This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states. This Court also has subject matter jurisdiction over certain claims herein pursuant to RICO, 18 U.S.C. §1964, and 28 U.S.C. §1331, because they arise under the laws of the United States, and over other claims herein pursuant to supplemental jurisdiction, 28 U.S.C. §1367.

3.  The venue of this action is proper in this judicial district pursuant to 18 U.S.C. §1965, because the plaintiffs live within this District, and a substantial part of the events or omissions giving rise to the claim occurred within the Western District of New York, 28 U.S.C. §1391.

4.  Plaintiffs are natural persons over eighteen years of age and maintain their residence in Lockwood, New York.

5.  Upon information and belief, the defendant MEDICAL MARIJUANA, INC. is a California business corporation which maintains its principal place of business at 4901 Morena Blvd., Suite 701, San Diego, California 92117.

6.  Upon information and belief, the defendant, MEDICAL MARIJUANA, INC. is engaged in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based and cannabis products throughout the United States.

7.  Upon information and belief, the defendant DIXIE ELIXIRS AND EDIBLES is a Colorado corporation who maintains its principal place of business at 4990 Oakland Street Denver, Colorado 80239.

8.  On information and belief, the Defendants, DIXIE ELIXIRS AND EDIBLES is engaged

in the business of, *inter alia,* the promotion, manufacture and distribution of hemp-based
and cannabis products throughout the United States.

9.      Upon information and belief, the defendant RED DICE HOLDINGS LLC d/b/a DIXIE
BOTANICALS is a Colorado limited liability company who maintains its principal place
of business at 1610 Wynkoop Street, Suite 400, Denver, Colorado 80202.

10.     On information and belief, the defendant, RED DICE HOLDINGS LLC d/b/a DIXIE
BOTANICALS is engaged in the business of, *inter alia,* the promotion, manufacture and
distribution of hemp-based and cannabis products throughout the United States

11.     All of the above named Defendants aggressively market and sell their products and
services nationwide generally, and within the State of New York specifically, and the
causes of action alleged have a direct and harmful impact on the people of the State of
New York.

### SPECIFIC FACTS as to PLAINTIFFS

12.     On or around February 24, 2012, plaintiff, Douglas J. Horn, suffered bodily injuries from
a vehicle accident.  He sustained said injuries to his hip and right shoulder as a result of
the accident.  Subsequent to the accident, under treatment by his doctor, he took anti-
inflammatory and other medication.  Some months after the accident, he investigated
natural medicines as an alternative to his other prescriptions.

13.     In or around September, 2012, plaintiff answered a magazine advertisement from
defendant DIXIE BOTANICALS for an industrial hemp product called "Dixie X" which
stated it had "0.00 THC" (delta-9 tetrahydrocannabinol) in it.  Annexed hereto as Exhibit
"A" is a copy of such advertisement.  The product had a compound known as
Cannabidiol ("CBD").  The advertisement claimed that the product treated inflammation

3

and pain.

14.     The advertising by defendant also stated that they imported the hemp product with .3% THC, but that they process it down to 0% THC.  On or around October 1, 2012, plaintiff purchased the "elixir" product, the *Dixie X CBD Dew Drops 500 mg Tincture*, with 500 mg of CBD.

15.     In October, 2012, plaintiff was a professional over-the-road hazmat commercial truck driver who, prior to 2012, worked for the same company for ten (10) years and drove professionally for twenty-nine (29) years.   Plaintiff's employment as a professional commercial driver required that he be and remain free of all illegal and impairing substances.

16.     On October 9, 2012, plaintiff submitted to a random urinalysis screening required by his employer Enterprise Transportation Company, and as required by the U.S. Department of Transportation ("DOT").

17.     On October 11, 2012, Plaintiff was informed by his employer that he had tested positive for a high level of THC.  Thereafter, Plaintiff was required to submit to additional toxicology screenings which also were positive to an unacceptable high level of THC. Plaintiff was then terminated from his employment with Enterprise of approximately 10 years.

18.     Subsequent to his termination, plaintiff ordered additional quantities of the *Dixie X CBD tincture* to have a laboratory independently test the product to determine if it did indeed contain THC.  He sent an unopened bottle of the *Dixie X CBD tincture* to EMSL Analytical, Inc. ("EMSL") for independent testing.  That laboratory informed plaintiff that it could not return the sample of the Dixie X product that was taking to plaintiff as

4

the substance was illegal and contained levels well over the federal limit as per the U.S. DEA regulations.  Plaintiff understood that the mere return of the very sample he sent to EMSL was itself a violation of law, as defendants' product was an illegal substance, and would have subjected that company to criminal and/or civil liability.

19.    In reliance on the numerous claims, assertions, allegations, false advertising and misleading press releases of the defendants, claiming the product contains "0% THC" and which does "not conflict with any federal law", plaintiff purchased and consumed from said defendants the product DIXIE X, an elixir marketed to be a natural, safe way to relieve pain, nausea, anxiety and convulsions.  Plaintiff purchased and consumed said product DIXIE X, relying upon the Defendants' numerous claims that the products were legal, safe and did not contain any narcotic or controlled substances, or derivatives.

20.    As a direct and proximate result of consuming this product, plaintiff was summarily dismissed from his employment.  In addition, he was caused to lose his accumulated benefits and suffer substantial current and future economic losses and non-economic losses inclusive of emotional pain and anguish, humiliation, and degradation.  He was fired from his long-term employment and, consequently, lost his livelihood, benefits, insurance, pension and job security.

21.    Plaintiff's damages are ongoing.  He is unable to secure employment at his former level of expertise and cannot continue in commercial trucking for at least seven years. Reputable trucking companies will not hire him based upon his positive toxicology test.

**GENERAL FACTS and ALLEGATIONS as to ALL CAUSES of ACTION**

22.    Defendants promote through advertising, distribute and sell "hemp"-based products to be used for medicinal purposes.    According to hemp.com, Hemp is a variety of the

5

"Cannabis" plant that is grown for the fiber and seeds it produces.   According to drugs.com, Cannabis contains the chemical compound "THC" (delta-9 tetrahydrocannabinol), which is believed to be responsible for most of the characteristic psychoactive effects of cannabis. The dried leaves and flowers of the Cannabis plant are known as marijuana.

23.   Under §812 of the federal Controlled Substances Act ("CSA", 21 U.S.C. 812), marijuana is considered a "Schedule 1 drug" because of its THC content.  It is defined as such because THC has high potential for abuse, it has no currently accepted medical treatment use in the U.S.; and there is a lack of accepted safety for use of the drug under medical supervision. The cultivation and distribution of marijuana are felonies; and possession for personal use is a misdemeanor.  In fact, there are examples of consumers of THC oil in the U.S. being subjected to serious criminal felonies for the mere possession of such oil: http://www.washingtonpost.com/news/local/wp/2015/06/08/mom-who-uses-medical-marijuana-faces-up-to-30-years-in-prison/.

24.   Throughout their advertising media, defendants unequivocally and continually represent on their websites, press releases and advertising media that their products contain no illegal tetrahydrocannabinol ("THC"), and that they conduct testing multiple times and that the products will not produce a positive toxicology test for illegal substances. The defendants claim that their products can treat a plethora of medical conditions. Defendants further represent that they do not grow, sell or distribute and products which violate United States Laws and/or the federal "Controlled Substance Act."

25.   The hemp-based industry is a bourgeoning market, wherein, companies such as defendants are manufacturing, selling and distributing products that are hemp-based and

6

claim that, although marijuana and hemp are similar substances, the content and ratio of the chemical components commonly known as cannabidiol ("CBD") and THC, found in varying degrees, determine whether a substance is illegal to consume or distribute in the United States.   Defendants assert among other things that THC, the clearly illegal chemical compound found in marijuana, is absent in the industrial hemp products that they sell to their respective consumers and end-users.

26.    The defendants, in concert and/or on their own account, undertook affirmative efforts to capitalize on the manufacture, production, processing, importation and distribution of illegal substances without regard to the consequences, mental or physical harm levied on the public such as plaintiff.

27.    The defendants' CBD health and wellness industry is estimated to be an over five billion dollar ($5,000,000,000) market currently.

28.    Defendants market their products as "THC free" and "non-THC," thereby misleading the public at large through their misrepresentation of the true chemical compound make-up of products like DIXIE X.

29.    As is widely known, the cultivation and distribution of marijuana is illegal in the United States. Defendants circumvent the federal prohibition by extracting CBD from industrial hemp grown outside the United States in "secret" locations which MEDICAL MARIJUANA, INC. refuses to disclose.

30.    Defendants collective advertising and marketing materials represent that their respective products can be used to treat a variety of conditions such as pain, anxiety, nausea and seizures.   In support of its false advertising and marketing, defendants specifically represent and assert unequivocally that THC is undetectable in its products.

7

31.    As further inducement for consumers to buy its products, support for its large scale sales expansion agenda, and in an effort to attract investors, defendants have collectively and on their own account, published numerous press releases and other materials all claiming that the collective and/or respective products complained of are non-THC, legal, safe and can treat a variety of ailments and diseases.  Certain public statements have gone so far as to claim CBD can fight metastatic cancers.

32.    Defendants claim that their products are tested multiple times during the manufacturing process, that they are legal to consume in the United States, and that they do not grow, sell or distribute any substances that violate the law.

### COUNT I
### *Deceptive Business Practices/False Advertising*

33.    Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

34.    This Cause of Action is asserted against the Defendants that Plaintiffs suffered damages as a result of the defendant's deceptive business practices and false advertising in violation of GBL §349 and §350.

35.    In the course of the within transaction, Defendants committed and/or engaged in one or more of the following acts or conduct and/or made the following misrepresentations:

   a.    misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

   b.    misrepresenting in advertising that Defendants had adequately tested their products;

   c.    misrepresenting that the products complied New York State and the federal laws and regulations;

   d.    misrepresenting that their products contained no THC;

e.     misrepresenting that the ingestion of its products would not cause a positive toxicology result;

f.     misrepresenting that their products had beneficial health, wellness and medical uses.

36.   All of the above misrepresentations, acts and/or conduct by express statement on Defendants involved material elements of the transaction between the parties and were unfair, illegal, false, deceptive and/or misleading.

37.   Additionally, such representations were likely to, and in fact did, harm, deceive or mislead the Plaintiffs who were acting reasonably and in reliance thereon.

38.   The conduct and actions described herein are directed at the general public and have a broad impact on consumers at large and are not isolated or unique to this transaction between the parties.

39.   The aforementioned conduct constitutes deceptive business practices and false advertising, in violation of General Business Law Art. 22-A, §349 and §350.

40.   As a result of the defendants' conduct, Plaintiffs have sustained damages for which they are entitled to recover from Defendants.

41.   The Plaintiffs are entitled to recover costs and attorney's fees from the defendant pursuant to GBL §349(h) and §350-e(3).

## COUNT II - RICO VIOLATION

42.   Plaintiffs repeat and re-allege each and every allegation made in the paragraphs above and incorporate same herein as if fully set forth.

43.   At all times relevant to this complaint, all of the defendant entities were and are enterprises as defined by 18 U.S.C. §1961(4) that are engaged in, and whose activities

affect, interstate and foreign commerce. Their primary purpose and function was and is to profit from the marketing, distribution, promotion, advertising and/or sale of the Dixie X Elixir product sold to Plaintiff. Upon information and belief, in addition to defendants' legitimate activities, however, they were used in a pattern of racketeering activity in violation of 18 U.S.C. §1962(a), (b), (c), (d).

44.   The defendants herein are "persons" pursuant to 18 U.S.C. §1961(3).

45.   The patterns of racketeering activity engaged in by the defendants involved separate but related schemes, carried out from the original sale to plaintiff of the product to the present, and directed at the plaintiffs and other individuals in violation of 18 U.S.C. §1961(1) and §1962:

   a)   Selling and/or distributing a product through the U.S. mail that was known or should have been known to be a controlled substance or otherwise illegal or otherwise in violation of federal or state law;

   b)   Inducing the sale of an illegal product through promises of curing medical conditions of consumer purchasers of said product;

   c)   Misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

   d)   Misrepresenting that the products complied New York State and the federal laws and regulations;

   e)   Purposefully failing to disclose material facts regarding the product to induce the purchase of an illegal product;

f) Concealing the true chemical content from consumers in its advertising and labelling in order to avoid inquiry into the legality of same.

46.  The pattern of racketeering activity engaged in by the defendants named herein involved fraudulent acts in support of the above schemes constituted mail and wire fraud (18 U.S.C. §1341 and §1343), engaged in monetary transactions in property derived from specific unlawful activity (18 U.S.C. §1957), all of which is "racketeering activity," as defined in 18 U.S.C. §1961(1) and §102 of the Controlled Substances Act.

47.  The above described are numerous predicate acts of wire fraud, interstate transportation of controlled substance(s) and unlawful activity involving monetary transactions relating to the plaintiffs and other consumers. The predicate acts include advertisements in multiple media, telephone calls containing misrepresentations or omissions made in furtherance of the schemes, containing misrepresentations or omissions in furtherance of the schemes, derived from specified unlawful activity. The plaintiffs herein relied upon the misrepresentations and omissions directed at the plaintiffs herein by the defendants as part of their pattern of racketeering activity, and as a result suffered monetary and property damages.

### COUNT III
### Fraudulent Inducement

48.  Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

49.  This Cause of Action is asserted against Defendants for actual, compensatory and punitive damages based upon common law fraud and/or fraud in the inducement.

50.  The conduct referred to above constitute numerous intentional misrepresentations,

concealments and/or omissions of fact by Defendants through media, advertising and websites.

51.     The material misstatements, concealments and/or omissions as to the ingredients, toxicology, and effects of Defendants' products, are all material inducements to Plaintiff's acquisition and use of same, were made with full knowledge of their falsity and/or with reckless disregard of the truth.

52.     On information and belief, Defendants intended that the Plaintiffs rely upon the aforementioned misrepresentations, concealments and/or omissions to induce them to acquire and consume said products.

53.     Plaintiffs reasonably relied on Defendants' intentional misrepresentations, concealments or omissions inducing them purchase and consume their products.

54.     As a result of the aforementioned conduct of Defendants, Plaintiffs were injured for which they are entitled to recover actual, compensatory and punitive damages.

55.     On information and belief, the above-mentioned acts were committed by Defendants willfully, wantonly and with reckless disregard of the rights of the Plaintiffs.

### COUNT IV
### Violations of UCC § 2-318  Products Liability

56.     Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

57.     Defendants knowingly did sell, market and distribute the product known to be defective, illegal and/or unreasonably dangerous.

58.     There was no substantial change in the condition of the *Dixie X Botanical* product and it remained in original manufactured condition prior to Plaintiffs' acquisition and

12

consumption.

59.   Said product(s) contained illegal and harmful substances which caused harm to Plaintiff to which he is entitled to recover.

### COUNT V
### Breach of Contract

60.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

61.   The parties entered into a written agreement for the Plaintiffs to purchase the product and the Defendants agreed to provide the product (the "Contract").

62.   Consideration was paid by Plaintiffs to Defendants as set forth in the Contract.

63.   By reason of all of the foregoing, Defendants breached the Contract between the parties by refusing or failing to perform thereon.

64.   Plaintiffs have suffered actual and compensatory damages as a result of Defendants' breach.

### COUNT VI
### Breach of Express Warranty
### Violations of UCC § 2-313

65.   Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

66.   Defendants made certain specific representations and express warranties in connection with the sale of the Dixie X product, as described above, regarding the nature of the product including the condition or chemical composition of its product.

67.   Such representations were expressed as statements of fact.

68.   Such representations were false by Defendants.

13

69.   Defendants breached such express warranties in that they failed to perform the terms of
      such warranty to the detriment of Plaintiff.

70.   As a result of the defendant's breach, Plaintiffs have sustained damages for which they
      are entitled to recover from Defendants.

## COUNT VII
### Unjust Enrichment

71.   Plaintiffs repeat and reallege each and every allegation above and incorporate same
      herein.

72.   This Cause of Action is asserted for restitution of Plaintiff based upon common law
      unjust enrichment.

73.   Plaintiffs conferred their full payment price on Defendants.

74.   By unjustly retaining all of Plaintiff's funds, defendants were unjustly enriched.

75.   Defendant continues to retain the benefit conferred by Plaintiff.

## COUNT VIII
### Negligence

76.   Plaintiffs repeat and reallege each and every allegation above and incorporate same
      herein.

77.   Defendants did not exercise due care in the processing of its product at issue and/or
      distribution of the same in order to ensure its safety for human consumption, and to
      ensure its legality in and throughout the United States.

78.   Defendants did not exercise due care in the product testing, reporting of the results of the
      toxicity levels of the products, and the sale, marketing and/or distribution complained of
      herein.

79.   Defendants did not exercise due care to ensure that its products complied with all relevant

14

state and federal laws and regulations.

80. Plaintiffs' harm was the natural and foreseeable consequence of the Defendants' breach of its duty to act in a reasonable manner.

81. By reason of the foregoing breach, Plaintiffs consequently suffered significant monetary damages and are entitled to recovery.

## COUNT IX
### Negligent Infliction of Emotional Harm

82. Plaintiffs repeat and reallege each and every allegation above and incorporate same herein.

83. Defendants' respective acts of will and wonton disregard for the safety of consumers is extreme, outrageous and shocking.

84. Defendants' respective reckless and/or negligent behavior has caused Plaintiffs physical harm in the ingestion of caustic, toxic, and/or an illegal substance.

85. Defendants' respective reckless and/or negligent behavior has caused Plaintiff mental anguish, harm and injury, loss of sleep, loss of appetite, anxiety, anger and depression.

86. By reason of the foregoing, Plaintiffs have suffered humiliation, economic harm, loss of employment, loss of social and professional stature, actual present and future financial insecurity and loss of reputation.

87. Plaintiffs are entitled to damages in an amount to be determined at trial which is greater than the jurisdictional amount required.

**WHEREFORE**, Plaintiffs demand judgment against the defendants, for actual, consequential, incidental, statutory and punitive damages as follows:

i.      On all causes of action, actual and compensatory damages in a sum of money having a present value which exceeds the jurisdictional limits of this Court;

ii.     Punitive damages based on defendants' knowing and willful misrepresentations pursuant to Plaintiffs RICO and Fraud claims;

iii.    Statutory damages pursuant to those causes of action;

iv.     Interest, costs, disbursements and attorneys' fees pursuant to statutory causes of action;

v.      Such other relief as the court may deem just proper.

Dated: Forest Hills, New York
        August 5, 2015


                                JEFFREY BENJAMIN, P.C.


                                *Jeffrey Benjamin*
                                By:    Jeffrey Benjamin, Esq.
                                Attorney for Plaintiffs
                                DOUGLAS J. HORN and CINDY HORN
                                118-21 Queens Boulevard, Suite 501
                                Forest Hills, New York 11375
                                (718) 263-1111

## <u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.


Dated: Forest Hills, New York
       August 5, 2015


*Jeffrey Benjamin*
Jeffrey Benjamin, Esq.

17

*DISTRIBUTION LIST*

MEDICAL MARIJUANA, INC
4901 Morena Blvd., Suite 701
San Diego, California  92117

DIXIE ELIXIRS AND EDIBLES
4990 Oakland Street
Denver, Colorado 80239

RED DICE HOLDINGS LLC
d/b/a DIXIE BOTANICALS
1610 Wynkoop Street, Suite 400
Denver, Colorado 80202