UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                  Civil Action No:

                  Plaintiffs,           15-cv-701 FPG/MJR

              -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

                  Defendants,
-----------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

        The Plaintiffs, Douglas J. Horn and Cindy Harp-Horn ("Plaintiffs"), submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment.  This motion is "partial" as it seeks judgment of liability only as to Plaintiffs' first two (2) causes of action: the combined New York General Business Law ("GBL") Art 22-A, §349 ("Deceptive Practices Act" or GBL §349) and GBL §350 for false advertising, and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1962(a)-(d) claims. Judgment on the issue of damages is specifically not sought in this motion. For the reasons that follow, the Plaintiffs' Motion should be granted in its entirety.

### Statement of Facts

        For the sake of brevity as to the facts, the Plaintiffs respectfully refer the Court to the annexed Affidavit of the Plaintiffs, as well as the Local Rule 56(a)(1) Statement accompanying the Notice of Motion as required.

## Predicate Acts and False Advertising

Plaintiffs fully incorporate by reference herein, Plaintiff's Expert's (Dr. Kenneth D. Graham, Forensic Toxicologist and Pharmacologist) annexed Affidavit along with his two (2) supporting Reports disclosed in discovery in this case. Because Dr. Graham is a "Forensic" Toxicologist, he is uniquely qualified to show the Court the marriage between law and science in this matter to prove Defendants' strict liability under these statutes for the manufacturing, distributing, selling and the *sending* of their Dixie Dew Drops Tincture product that may very well have been legal to distribute and sell in Colorado in 2012, but was clearly illegal in New York then.

Briefly stated, in his review of the materials in this case, Dr. Graham identified multiple *per se* violations of the federal Controlled Substances Act ("CSA") with respect to Defendants' conduct, testimony and the documents they produced. Dr. Graham has shown the Defendants liable for the below predicate statutory offenses, the existence of which prove Plaintiffs' cases under §349 and GBL §350 for false advertising, and *inter alia,* mail and wire fraud under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1962(a)-(d).

More specifically, Dr. Graham showed that the Defendants' final product formulations of the Dixie X Dew Drops Tincture product with the presence of "*any"* amount of THC rendered it a Schedule 1 controlled substance as described under 21 U.S.C. §1308.11, and not eligible for an exemption to a Schedule I classification under 21 U.S.C. §1308.35 since it was formulated, marketed and distributed for human consumption.

Further, Dr. Graham showed that Defendants' manufacturing process test results in its Certificates of Analysis produced in discovery showing the presence of THC in the product signifies that the advertising and public statements asserting the product contained "no THC" were false and unlawful under 15 U.S.C §52.

Dr. Graham stated that since the Defendants were not registered with the US Drug Enforcement Administration, their distribution of a Schedule I substance, such as Dixie Dew Drops Tincture product across state lines was unlawful under 21 U.S.C §801-971 and, if the product was shipped through the domestic mail system, the distribution was also unlawful under 18 U.S.C. §1716. In addition, the defendants manufactured and distributed a controlled substance in violation of 21 U.S.C. §841.

As a Schedule I controlled drug substance under 21 U.S.C. §1308.11, Dixie X Elixir was subject to specific packaging and labelling requirements under 21 U.S.C. §1302.03. Since the product was a Schedule I controlled substance, the absence of language on its packaging and labels therefore violated packaging and labeling requirements under 21 U.S.C. §1302.03.

Finally the multiple representations that Defendants disseminated across multiple media that the products "do not conflict with any state or Federal law" and that the parent company, Medical Marijuana, Inc. "does not grow, sell or distribute any substances that violate United States Law or the controlled substances act" are clearly false and violate 15 U.S.C §52 covering the dissemination of false advertisements.

These multiple violations of the Controlled Substances Act summarized above constitute strict liability under the two causes of action under which Plaintiffs' move herein.

## STANDARD FOR SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . ." *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Here, summary judgment for Plaintiffs is particularly appropriate based *inter alia* upon 1) the admissions made by Defendants in the Certificates of Analysis they produced; 2) the admissions made by Defendants' expert as to those documents and her testimony concerning Defendants utter failure to even test the product that it sent to Plaintiffs; 3) the overwhelming and irrefutable evidence and testimony of Forensic

Toxicologist and Pharmacologist Dr. Kenneth Graham citing the multiple violations of

the Controlled Substances Act.

**Argument**

**I.      Plaintiffs Have Proven Every Element Under Their RICO Claims.**

To establish a civil RICO claim, Plaintiff must establish (A) a separate and

distinct RICO enterprise that (B) engaged in a pattern of racketeering activity (C) causing

harm to the Plaintiff. 18 U.S.C. § 1962(c); *Riverwoods Chappaqua Corp. v. Marine

Midland Bank*, 30 F.3d 339, 343-44 (2d Cir. 1994).

**A) Separate and Distinct RICO Enterprise**

A civil RICO claim arises under 18 U.S.C. § 1962(c) when a RICO "person"

participates in the conduct of a RICO "enterprise" through a pattern of racketeering

activity:

> "It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct
> of such enterprise's affairs through a pattern of racketeering activity or
> collection of unlawful debt." ***18 U.S.C. § 1962(c)***.

The "person" and "enterprise" in a civil RICO action must be distinct. *See

Riverwoods*, 30 F.3d at 344. In other words, a RICO claim requires at least two separate

and distinct entities. *See Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161, 121

S. Ct. 2087, 150 L. Ed. 2d 198 (2001) (requiring "[t]he existence of two distinct entities:

(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a

different name").

When analyzing a civil RICO claim, the Court "begin[s] from an understanding of

5

what enterprise is alleged." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 74 (E.D.N.Y. 2011) (Hurley, J.) (quoting *Spira v. Nick*, 876 F. Supp. 553, 561 (S.D.N.Y. 1995) (Kaplan, J.)). There are two types of RICO enterprises: "'legal entities' such as corporations and partnerships, and 'any union or group of individuals associated in fact although not a legal entity.'" *Gross v. Waywell*, 628 F. Supp. 2d 475, 497 (S.D.N.Y. 2009) (Marrero, J.) (quoting 18 U.S.C. §1961(4)).

The latter enterprise, known as an "association-in-fact" enterprise, applies here, where the RICO enterprise is comprised of the three "persons" i.e. the legal entity Defendants Medical Marijuana, Inc, Dixie Elixirs, LLC. and Red Dice Holdings, LLC. Each of these legal entities had a hand in the promotion and marketing, manufacturing and distributing, packaging and labeling, and selling and sending out the Dixie Dew Drops Tincture product containing the controlled substance THC to consumers in New York, which Plaintiff Douglas Horn took. There is no better example of a RICO enterprise than the coordinated effort of these three Defendants to market, distribute, sell and of course profit from, the Tincture product sold to Plaintiff here. In 2012, Defendants stated in their press release those many years ago their medical marijuana industry had a value of $5,000,000,000. See Exhibit "10."

### B. Pattern of Racketeering Activity

The second element for a civil RICO action is a pattern of racketeering activity. A pattern of racketeering activity requires "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity. 18 U.S.C. §1961(5). An act of racketeering "must be among the various criminal offenses list[ed] in §1961(1), and they must be 'related, and [either]

amount to or pose a threat of continuing criminal activity.'" *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). In short, a "pattern of racketeering activity" must consist of (1) multiple racketeering activities (2) that threaten continuing criminal activity.

### i) At Least Two Acts of Racketeering

Plaintiffs' Complaint (Exhibit "A") alleges the following under 18 U.S.C. §1961(1) and §1962:

a) Selling and/or distributing a product through the U.S. mail that was known or should have been known to be a controlled substance or otherwise illegal or otherwise in violation of federal or state law;

b) Inducing the sale of an illegal product through promises of curing medical conditions of consumer purchasers of said product;

c) Misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

d) Misrepresenting that the products complied New York State and the federal laws and regulations;

e) Purposefully failing to disclose material facts regarding the product to induce the purchase of an illegal product;

f) Concealing the true chemical content from consumers in its advertising and labelling in order to avoid inquiry into the legality of same.

Through evidence and testimony elicited in this case, Plaintiffs have proven all of the above, though they are only required to prove two (2). Notwithstanding this limited list in a)-f) above, the evidence and testimony Plaintiffs have elicited in this case prove

far more bad conduct. (See the Affidavit and accompanying reports of Dr. Kenneth Graham annexed to this Motion).

Civil RICO deputizes civil litigants as "private attorney general[s]" to further the "preventive and remedial" purposes of the statute. *Id. at 481* (quoting *United States v. Turkette*, 452 U.S. 576, 593, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981), and *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987)). The Court acts as a gatekeeper in civil RICO cases to ensure that the alleged offenses are "of a degree sufficiently serious not only to inflict injury upon its immediate private victims, but also to cause harm to significant public processes or institutions, or otherwise pose threats to larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute. *Id.* The alleged offenses here are serious. Plaintiffs have proven multiple violations of the Controlled Substances Act, which evidences a significant risk of repetition across the entire U.S. consumer landscape and exemplifies civil RICO's "preventive" purpose:

There is nothing more illustrative of Defendants' liability then their own later-published statement in an FAQ, admitting to the very liability Plaintiffs have proven here. Dixie's answer in the attached Exhibit "3", in the April 8, 2015 FAQ stated the following:

**"Does Cannibidiol (CBD) and other natural hemp based constituents show up on a drug test?"** (bold in the original).

"Most workplace drug screens and tests target delta9-tetrahydrocannabinol (THC) and do not detect the presence of Cannabidiol (CBD) *or other legal natural hemp based constituents*. However, studies have shown that eating hemp foods and oils *can cause confirmed positive results* when screening urine and blood specimens. Accordingly, if you are subject to any form of drug testing, *we recommend (as does the United States Military) that you DO-NOT ingest our*

*products*, and consult with your healthcare, drug screening/testing company or employer." Emphasis added.

It cannot not be often that a Plaintiff can find an admission, or even an acknowledgement, of racketeering activity such as that in the above, albeit years after Defendants put a controlled substance out in the stream of commerce. In publishing such a damning statement, Defendants appear to have taken a dose of honesty after their false advertising of the product throughout 2012 and forward.

### ii) Continuity

Plaintiffs have clearly proven continuity when it comes to Defendants' enterprise. Throughout all Exhibits offered to Court in support of this motion, it is clear that Defendants are a mainstay in the promotion, marketing, manufacture, distribution, sale and shipment of their controlled substance products (Dixie Dew Drops Tincture here) since their inception in 2012. The fact that Defendants' FAQs, having changed over the years to actually recommend *not* to take their product if a consumer is subject to workplace drug testing, is dispositive proof of this continuity recognized by the RICO statute and case law.

### C. Harm and Causation

While Plaintiffs specifically do not seek summary judgment on the issue of damages here, they clearly have suffered now six (6) years of career-ending financial harm. Annexed hereto as Exhibit "14" is a copy of Plaintiff's expert Economist's (Dr. Mark Zaporowski) report finding damages in the amount of $836,544 as of one year ago.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. §1962; (2) an injury to business or property; and (3) that the injury was

caused by the violation of Section 1962." *Spool*, 520 F.3d at 183.

As for Causation, the Second Circuit uses a two-part test for proximate cause in civil RICO. *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003). "First, the plaintiff's injury must have been 'proximately caused by a pattern of racketeering activity violating 18 U.S.C. §1962 or by individual RICO predicate acts.'" (quoting *Lerner v. Fleet Bank*, 318 F.3d 113 (2d Cir 2003). "Second, the plaintiff must have suffered a direct injury that was foreseeable." Here, Plaintiffs have clearly shown in their attached Affidavit that but for taking Defendants product, the distribution of which was the racketeering activity and the RICO predicate acts, Plaintiff Douglas Horn would not have been terminated from his employment. He took the product proximate in time to the positive test for THC in the drug screening, and had no employment or criminal history of marijuana use.

## II.     Plaintiffs Have Proven Every Element of Their Claims Under GBL 349 and 350 for Deceptive Practices and False Advertising.

Only two weeks ago, this very Court by the Hon. Frank P. Geraci, Jr. considered the standard under GBL 349 and GBL 350 in a labeling case such as the one here, in part. In *Holve v. McCormick & Co.*, 2018 U.S. Dist. LEXIS 137428 (W.D.N.Y. August 14, 2018), this Court stated Plaintiffs' burden of proof at page 36:

> "New York's GBL §§349 and 350 prohibit "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state' and materially misleading advertising, respectively." *Petrosino v. Stearn's Prods.*, No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818, 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) ) (alterations in original) (citing GBL §§ 349(a), 350. A plaintiff must allege the following to state a prima facie claim under GBL § 349: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Whether an act or practice is deemed "misleading in a material respect" turns on whether

it would be misleading or deceptive "to a reasonable consumer acting reasonably under the circumstances." *Goldemberg v. Johnson & Johnson Consumer Cos.*, Inc., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). The elements of a claim under § 350 are the same as those under § 349, except that a plaintiff must also demonstrate that the claim relates specifically to false advertising. See *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("GBL §350 prohibits false advertising and has the same elements as § 349 . . . .").

### a)  Consumer-Oriented

There is simply no question that the offering of the Dixie X Tincture product to the general public through magazine advertisements, You Tube videos, FAQs, press releases and the utter absence of warning labels as to THC or controlled substance content was consumer oriented conduct by the Defendants. The basis of this case is that Plaintiff Douglas *consumed* this product and immediately afterward tested positive for THC, and was then immediately terminated from his employment.

### b)  Misleading Act or Practice

Plaintiffs' set out to prove that list of deceptive practices and false advertising acts in their Complaint (Exhibit "A") under GBL §349 and §350:

a. misrepresenting in advertising that the Dixie Products were safe and legal for consumers;

b. misrepresenting in advertising that Defendants had adequately tested their products;

c. misrepresenting that the products complied New York State and the federal laws and regulations;

d. misrepresenting that their products contained no THC;

e. misrepresenting that the ingestion of its products would not cause a positive toxicology result;

f. misrepresenting that their products had beneficial health, wellness and medical uses.

As in the RICO claims argued above, through evidence and testimony elicited in

this case, Plaintiffs have proven all of the above categories of deceptive practices and false advertisements. Notwithstanding this limited list in a.-f. above, the evidence and testimony Plaintiffs have elicited in this case prove far more bad conduct. (See the Affidavit and accompanying reports of Dr. Kenneth Graham annexed to this Motion). Dr. Graham is not only a Forensic Toxicologist, he is a Pharmacologist and is competent to and has testified to false advertising and labeling as well, and Defendants' violations of federal law.

The multiple media advertisements and affirmative statements that the Tincture product had "no THC", was "THC free" and had "0% THC" was painfully misleading. This was conclusively shown in Defendants' own Certificates of Analysis produced in this case, as well as the EMSL lab report Plaintiff obtained regarding the Defendants' product he took, confirming an amount of THC in Defendants unopened bottle of the Dew Drops Tincture it later sent to Plaintiff.

Plaintiff Douglas was a reasonable consumer acting reasonably. (See the Affidavit of Plaintiffs). Mr. Horn researched the product on multiple media; he relied on the multiple express representations that there was no THC in the product he bought and took; he was aware of products with the innocuous "CBD" in them, as opposed to the illegal THC; and he was well aware of the employment repercussions if he did ingest THC as a truck driver subject to DOT random drug testing over his then 14-year career.

### c)  Injury

Again, while Plaintiffs do not seek judgment as to damages herein, they were severely financially damaged. As stated above according to Plaintiffs' expert economist, Plaintiffs suffered lost income damages from termination to the date of the expert report

August 23, 2017 in the present value of 836,544.

### d) False Advertising

As established, by Plaintiff's expert Dr. Kenneth Graham in both his annexed Affidavit and accompanying reports, Defendants clearly violated 15 U.S.C §52 in the dissemination of false advertising with respect to the Dixie X Elixir Tincture product.

## Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Partial Summary Judgment should be granted and the Court should respectfully find Defendants liable under Plaintiffs' first two Causes of Action.

Dated: August 29, 2018
New York, New York

KUPILLAS, UNGER & BENJAMIN, LLP.

*Jeffrey Benjamin*
Attorneys for Plaintiffs
5 Penn Plaza, 23rd Floor
New York, NY 10001
(212) 655-9536