UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                            Plaintiffs,

          - vs -

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                          Defendants.

_____

**ECF CASE**

**STATEMENT OF MATERIAL FACTS**

Case No. 15-cv-701-FPG/MJR

Defendants MEDICAL MARIJUANA, INC. ("MMI") and RED DICE HOLDINGS, LLC ("RDH"), (collectively "MMI/RDH") in support of their motion for summary judgment and pursuant to Fed. R. Civ. P. 56(a) and W.D.N.Y. L. R. 56(a)(1) provide the following statement of the material facts as to which MMI/RDH contend there are no genuine issues to be tried:

        1.      This is an action for damages brought by plaintiffs sounding in nine "counts" or causes of action. Plaintiffs' complaint seeks to recover for the collective defendants' alleged: (1) violation of New York's General Business Law §§349 and 350; (2) violation of the federal RICO statute; (3) fraudulent inducement; (4) violation of Uniform Commercial Code § 2-318; (5) breach of contract; (6) breach of express warranty in violation of UCC § 2-313; (7) unjust enrichment; (8) negligence; and (9) negligent infliction of emotional harm. (ECF Doc. No. 1).

        2.      All causes of action relate to plaintiff Cindy Harp-Horn's alleged purchase in September 2012 and plaintiff Douglas Horn's alleged use in October 2012 of

- 1 -

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

a product known as Dixie X CBD Dew Drops 500 mg Tincture ("the product at issue"). (ECF Doc. No. 1, ¶14).  CDB is an acronym for cannabidiol, a chemical in the Cannabis sativa plant.

3.      During September and October 2012, MMI was engaged in the business of providing management, investment, consulting services, and capital for legal hemp and cannabis based products and business. (Titus Declaration ¶4).

4.      Dixie Holdings, LLC, a/k/a Dixie Elixirs, incorrectly sued herein as Dixie Elixirs and Edibles, LLC ("Dixie"), manufactured the product at issue. (Titus Declaration ¶7).

5.      RDH was responsible for the sale of the product at issue to consumers (Sides Declaration ¶¶ 4 and 5).

6.      Testing done on the product at issue during its development and manufacturing showed levels of THC well within legal limits. (Sides Declaration ¶¶ 6-8).

7.      In or around September, 2012, plaintiffs claim to have viewed an un-bylined "article" printed in the Fall 2012 issue of High Times' Medical Marijuana magazine ("the High Times article"), which contained written content about the product at issue (ECF Doc. No. 1, ¶13).

8.      MMI/RDH did not commission, write or pay for that article. (Titus Declaration ¶¶10-11; Sides Declaration ¶¶10-12).

9.      Plaintiff Cindy Harp-Horn ("Cindy Harp-Horn"), on or about September 17, 2012, purchased the product at issue. (ECF Doc. No. 1, ¶14, Mura Declaration Exhibit C, page 227; Mura Declaration Exhibit D, pages 80-81).

- 2 -

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

10.     At the time of this purchase, both plaintiffs were professional over-the-road hazmat commercial truck drivers for the same company, Enterprise Trucking. (ECF Doc. No. 1, ¶15; Mura Declaration Exhibit C, pages 43 and 49; Mura Declaration Exhibit D, page 101).

11.     Plaintiffs' employer required them submit to random urinalysis screenings (Mura Declaration Exhibit C, page 62).

12.     One such urinalysis screening occurred on or about October 9, 2012. (Mura Declaration Exhibit C, pages 198-199; ECF Doc. No. 1 ¶16).

13.     On October 11, 2012, plaintiff Douglas J. Horn ("Douglas Horn") was informed by his employer that his urine had tested positive for a high level of tetrahydrocannabinol ("THC"). (Mura Declaration Exhibit C, page 200-201; ECF Doc. No. 1 ¶17).

14.     Douglas Horn claims that Enterprise Trucking terminated him due to this failed urinalysis exam. (Mura Declaration Exhibit C, page 127; ECF Doc. No. 1 ¶17).

15.     Cindy Harp-Horn had another offer from Enterprise Trucking open to her which she decided not to pursue despite the termination of her husband (Mura Declaration, Exhibit D, page 107).

16.     Shortly thereafter, Cindy Harp-Horn unilaterally resigned her position at Enterprise Trucking (Mura Declaration Exhibit D, pages 101, 107, and 126).

17.     During and prior to October of 2012, RDH in the regular course of business tested its products prior to placing them in the market for sale. (Sides Declaration ¶8).

18.     Such testing was designed to measure levels of THC, and showed that the product at issue was within the then-applicable federal and state guidelines for THC. (Sides Declaration ¶8; Mura Declaration Exhibit F).

19.     Any public statement made by or on behalf of MMI or RDH during and before the fall of 2012 regarding the THC content of the product at issue was made pursuant to the testing of the product performed by CannLabs.  (Sides Declaration ¶13).

20.     The article printed in the Fall 2012 issue of High Times' Medical Marijuana magazine contained several quotes alleged to have been taken from a person identified as "Dixie's Managing Director" Tripp Keber. (ECF Doc. No. 1-1).

21.     The only words specifically attributed to Tripp Keber in that "article" are as follows:

> "It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado – and ultimately all individuals who are interested in utilizing CBD for medicinal benefit – will be able to have access to it."
>
> "We are importing industrial hemp from outside the US using an FDA import license – it's below federal guidelines for THC, which is 0.3%, and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal laws as it's related to the Dixie X [hemp-derived] products."

(ECF Doc. No. 1-1).

22.     Tripp Keber was not an employee or agent of MMI and was not authorized to speak on behalf of MMI in relation to the product at issue at any time. (Titus Declaration ¶12).

23.     The High Times un-bylined article quoted Tripp Keber as "Dixie's Managing Director." (ECF Doc. No. 1-1).

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

24.     During their depositions, plaintiffs testified that the only documents or statements they relied on prior to allegedly making their initial purchase of the product at issue were from the High Times article, an interview purportedly of Tripp Keber which they found (but never produced or identified) and allegedly viewed on YouTube, descriptions of various products from the Dixie and MMI websites, and a telephone call they allegedly made to an unnamed customer service representative of the "Dixie X Company". (Mura Declaration Exhibit C, pages 236-240, 248, 288-289; Mura Declaration Exhibit D, pages 87-89, 91-92, 141).

25.     Plaintiffs testified that prior to allegedly purchasing the product, they did no other or further research into the product or its ingredients. (Mura Declaration Exhibit C, pages 288-289).

26.     The actual bottle of the product Douglas Horn used was never tested. (Mura Declaration, Exhibit C, pages 242-244).

27.     Other than deposing defendant's science expert, Dr. Cindy Orser, plaintiffs conducted no discovery this action.

DATED:     Buffalo, New York
           August 30, 2017

/s/ Roy A. Mura

_____
Roy A. Mura, Esq.

MURA & STORM, PLLC
*Attorneys for Defendants Medical Marijuana,*
*Inc. and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816