**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DOUGLAS J. HORN and CINDY HARP-HORN,

                *Plaintiffs,*

   -against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                *Defendants.*

Civil Action No. 15-cv-701-FPG

Memorandum of Law in Support of Defendants, Dixie Elixirs and Edibles
Motion for Summary Judgment

Jean-Claude Mazzola
Hanoch Sheps
Mazzola Lindstrom LLP
733 Third Avenue, 15th Floor
New York, NY 10017
(646) 216 - 8300
jeanclaude@mazzolalindstrom.com

*Attorneys for Dixie Elixirs LLC,*
*sued incorrectly herein as*
*Defendant Dixie Elixirs and Edibles*

TABLE OF CONTENTS

PRELIMINARY STATEMENT AND STATEMENT OF UNDISPUTED FACTS .................... 1

STANDARD FOR SUMMARY JUDGMENT ........................................................................ 2

ARGUMENT ........................................................................................................................... 3

I.   PLAINTIFFS' DECEPTIVE BUSINESS PRACTICES AND FALSE ADVERTISING
CLAIM FAILS AS A MATTER OF LAW BECAUSE THE HIGH TIMES ARTICLE IS NOT
AN ADVERTISEMENT, DEFENDANTS HAD NO PART IN ITS CREATION AND NO
STATEMENTS WERE PROVEN FALSE. ................................................................................ 3

    A.   Defendants took no affirmative action, "consumer-oriented" or otherwise. ...................... 4

    B.   Plaintiffs' offered no proof that the "Ad" was materially misleading. ............................... 5

    C.   The Plaintiffs did not cause an actionable injury protected by GBL §§349, 350. .............. 6

    D.   GBL §349 proscribes activity in New York, but Plaintiffs admit that they were not in New
York when they read the "Ad." .............................................................................................. 7

    E.   Plaintiffs materially misquoted the language of the "Ad" in the Complaint. ..................... 8

II.   PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE IS NO
EVIDENCE THAT DEFENDANTS ENGAGED IN A PATTERN OF RACKETEERING
ACTIVITY ................................................................................................................................. 9

    A.   Plaintiffs cannot establish a "pattern" of racketeering activity ......................................... 10

    B.   There is no evidence of "racketeering activity." ............................................................... 12

      C.   The 18 U.S.C. §1962(d) RICO Conspiracy Claim Must Also Be Dismissed ............... 13

III.   PLAINTIFFS FAILED TO PROVE FRAUDULENT INDUCEMENT BECAUSE THERE
IS NO ACTIONABLE REPRESENTATION OR PROOF DEFENDANTS INTENDED TO
INDUCE PLAINTIFFS. ........................................................................................................... 13

    A.   Plaintiffs failed to produce evidence of a material misrepresentation by Defendants....... 14

    B.   Questionable evidence of "justifiable reliance" ................................................................ 15

IV.   PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIM FAILS AS A MATTER OF
LAW BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS' PRODUCT WAS
DEFECTIVE OR THAT PLAINTIFFS SUFFERED AN INJURY. ......................................... 16

    A.   Plaintiff failed to establish the likelihood of harm posed by Dixie X or that there were
feasible alternative designs ................................................................................................... 18

    B.   Plaintiffs did not designate any expert to discuss the safety or efficacy of Dixie X,
alternative designs.................................................................................................................. 18

    C.   Plaintiffs failed to prove that Dixie X was a substantial factor in causing their injury or
that they even suffered any injury at all................................................................................. 19

V.   PLAINTIFFS FAILED TO PROVE A BREACH OF CONTRACT BECAUSE THERE IS
NO ENFORCEABLE CONTRACT OR, ALTERNATIVELY, PLAINTIFFS RECEIVED
WHAT THEY PURCHASED, THERE IS NO BREACH.......................................................... 20

VI.  PLAINTIFFS FAILED TO PROVE A BREACH OF EXPRESS WARRANTY BECAUSE DEFENDANTS MADE NO WARRANTY OR FALSE AFFIRMATIONS ............................... 20

VII. PLAINTIFFS FAILED TO PROVE UNJUST ENRICHMENT AS THEY RECEIVED EXACTLY WHAT THEY PURCHASED ................................................................................. 22

VIII..............PLAINTIFFS FAILED TO PROVE NEGLIGENCE WITHOUT ANY EVIDENCE ABOUT DIXIE X'S DESIGN OR ACTIONABLE MISREPRESENTATIONS ....................... 23

IX.  PLAINTIFFS FAILED TO PROVE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS INSOFAR AS DEFENDANTS DID NOT ENGAGE IN EXTREME OR OUTRAGEOUS CONDUCT. .................................................................................................. 23

CONCLUSION............................................................................................................................... 25

4845-6042-0209, v. 5

# TABLE OF AUTHORITIES

**Cases**

*Bausch & Lomb Inc. v. Mimetogen Pharm., Inc.*, 2017 U.S. Dist. LEXIS 102101 (WDNY 2017)

.................................................................................................................................. 2

*4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525 (SDNY 2014) ........................... 10

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .......................................................................... 2

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d. 256, 271 (2d Cir. 2002) ........................... 17

*Banker v. Cnty. of Livingston*, 782 F. Supp. 2d 39 (WDNY 2011) ............................................... 24

*Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir. 1987), *cert. denied*, 484 U.S.

1005 (1988) ............................................................................................................................... 11

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir.

2006) ........................................................................................................................................ 22

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357 (WDNY 2013) ......................... 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 2

*City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 (2009) .................................................... 3

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777 (2012) ......................................................... 22

*Crigger v. Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006) ......................................................... 13

*D'Amico v. City of N.Y.*, 132 F.3d 145 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998) ...... 2, 20

*DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601 (SDNY 2012) .................................................... 16

*Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108 (2d Cir. 1988) ............................................................... 2

*Dreamco Dev. Corp. v. Empire State Dev. Corp.*, 2017 U.S. Dist. LEXIS 156379 (WDNY 2017)

......................................................................................................................................... 10, 12

iv

*Ebusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC,* 2009 U.S. Dist. LEXIS 122193 (SDNY 2009) ........................................................................................................... 11

*Eisert v. Town of Hempstead*, 918 F. Supp. 601 (EDNY 1996) ............................................... 11

*Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d, 297 at 312-13 (SDNY 2010) ........................... 13

*Fane v. Zimmer, Inc.*, 927 F.2d 124 (2d Cir. 1991) ................................................................. 23

*FD Property Holding v. US Traffic Corp.*, 206 F. Supp. 2d 362 (EDNY 2002) ........................... 9

*Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735 (WDNY 2017) ................................... 5

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ........................................................ 8

*First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998) ................................... 20

*Giordano v. General Motors Corp.*, 1996 U.S. Dist. LEXIS 491 (SDNY 1996) .......................... 18

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ............................ 2

*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392  (SDNY 2000) ...................................................... 9

*Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314 (2002) .......................................... 7

*Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38 (EDNY 2017) ......................................... 22

*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp. 2d 439 (EDNY 2007) ....................... 3

*Guarascio v Drake Assoc.*, 582 F. Supp. 2d 459 (SDNY 2008).............................................. 17

*Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264 (EDNY 2010) ............................................ 7

*Haag v Hyundai Motor Am.*, 969 F. Supp. 2d 313 (WDNY 2013) ..................................... 15, 22

*Hagie v. GMC*, 1999 US Dist LEXIS 5227  (WDNY 1999).................................................... 24

*Hanlon v. Macfadden Publ'ns*, 302 N.Y. 502 (1951) ............................................................ 13

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996) ................................................. 3

*Heard v. City of New York*, 623 N.E.2d 541 (Ct. App. NY. 1993)............................................ 23

*Hotaling v. A.B. Leach & Co.*, 247 N.Y. 84 (1928)................................................................ 13

4845-6042-0209, v. 5

*In re Target Corp.*, 66 F. Supp. 3d 1154 (WDNY 2014) ................................................. 6

*Jones by Jones v. Lederle Labs.,* 695 F. Supp. 700 (EDNY 1988).................................. 20

*Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir. 2012) .................................. 7

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2d Cir. 1986).................................................. 2

*Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55 (App. Div. 4th Dep't

    1980) ......................................................................................................................... 23

*Leider v. Ralfe,* 387 F. Supp. 2d 283 (SDNY, 2005) ...................................................... 5

*Lewis v. Abbott Labs.*, 2009 U.S. Dist. LEXIS 64831 (SDNY 2009) ............................ 16

*Luce v. Edelstein,* 802 F.2d 49 (2d Cir. 1986) ............................................................... 11

*Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106 (2d Cir. 2013) ........ 11

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (WDNY 2014) .................................... 9, 10, 12

*Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) ..................................................... 3

*McCarthy v Olin Corp.*, 119 F3d 148 (2d Cir. 1997) .................................................... 16

*McGuire v. Russell Miller, Inc. of N.Y.*, 1 F.3d 1306 (2d Cir., 1993).......................... 13

*MLSMK Invs. Co. v. JP Morgan Chase & Co.,* 737 F. Supp. 2d 137 (SDNY 2010), *aff'd in part,*

    431 Fed.App'x. 17 (2d Cir. 2011)............................................................................ 10

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir. 1983)................................................ 9

*O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2d Cir. l990) ................ 11

*Oswego* 85 N.Y.2d at 26 (................................................................................................ 5, 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995)

    .................................................................................................................................. 4, 5

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496 (SDNY 2007)............. 22

*Purchase Real Estate Grp., Inc. v. Jones*, 2010 U.S. LEXIS 87571 (SDNY 2010)...................... 9

vi

*Rizzo v Edison Inc.*, 419 F. Supp. 2d 338 (WDNY 2005) .............................................................. 24

*Rogath v. Siebenmann*, 129 F.3d 261 (2d Cir. 1997)................................................................... 21

*S.F. v. Archer-Daniels-Midland Co.*, 2014 US Dist LEXIS 55195 (WDNY 2014)............... 16, 17

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (2d Cir. 1997) ...................................... 10

*Sheila* 11 A.D.3d 120 (App. Div. 1ˢᵗ Dep't 2004) .......................................................................... 24

*Shelden v. Hample Equip. Works, Inc.*, 89 A.D.2d 766 (App. Div. 3d Dep't 1981) .................... 18

*Shop Vac Corp. v. BCL Magnetics Ltd.*, 2005 WL 2739161 (NDNY 2005)................................. 21

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009)...................................................................... 5

*Spencer v. Ariz. Premium Fin. Co.*, 2011 U.S. Dist. LEXIS 109352 (WDNY 2011) .................... 5

*Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379 (EDNY 2013)..................................................... 9

*Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178 (2d Cir. 2008)............................. 10

*Stewart v. Ocean State Jobbers, Inc.*, 2018 U.S. Dist. LEXIS 5716 (D. Conn. 2018) .................. 5

*Structural Maint. & Contr. Co., Inc. v. Jayce Enters., Inc.*, 2010 U.S. Dist. LEXIS 108928

   (SDNY 2010) .............................................................................................................................. 13

*Valente v. Textron, Inc.*, 559 F. App'x 11 (2d Cir. 2014)............................................................. 17

*Viehdeffer v. Tryon*, 2012 US Dist LEXIS 122926 (WDNY 2012) ............................................. 23

*Virgil v. Darlak*, 2013 U.S. Dist. LEXIS 110411 (WDNY 2013).................................................. 24

*Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (1983)............................................................. 16

*WeCare Holdings, LLC v. Bedminster Int'l Ltd.*, 2009 U.S. Dist. LEXIS 20080 (WDNY 2009) 13

*Weiner v. Snapple Beverage Corp.* 2011 WL 196930 (SDNY 2011) ........................................... 20

*Wick v Wabash Holding Corp.*, 801 F. Supp. 2d 93 (WDNY 2010)............................................. 16

*Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93 (WDNY 2010).............................................. 3

vii

**Statutes**

18 U.S.C. §1343 ................................................................................................................ 10

18 U.S.C. §1962(c). ........................................................................................................... 9

18 U.S.C. §1962(a)-(c) ................................................................................................. 9, 13

18 U.S.C. §1341 ............................................................................................................... 10

18 U.S.C. §1343 ............................................................................................................... 11

18 U.S.C. §1962(d) ..................................................................................................... 9, 13

18 U.S.C §1961(1) ........................................................................................................... 12

Controlled Substances Act §102 ...................................................................................... 12

N.Y. Gen. Bus. Law §349 ........................................................................................... 3, 6, 7

N.Y. Gen. Bus. Law §350 ............................................................................................... 3, 6

N.Y. Penal Law §221.35 (McKinney) .............................................................................. 12

New York Penal Law §70.15(2) ....................................................................................... 12

Restat 3d of Torts: Products Liability, §2 (3rd 1998) ...................................................... 17

Uniform Commercial Code §2-313 .................................................................................. 20

**Rules**

FRCP 9(b) ......................................................................................................................... 11

FRCP 56 .............................................................................................................................. 1

Defendant, Dixie Elixirs LLC, sued incorrectly herein as Dixie Elixirs and Edibles, by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion pursuant to Federal Rule of Civil Procedure 56 for summary judgment dismissing Plaintiffs' Complaint in its entirety with prejudice together with costs and such other relief as the Court deems just, reasonable and proper.

## PRELIMINARY STATEMENT AND STATEMENT OF UNDISPUTED FACTS

This case concerns allegations made by Plaintiffs arising from their September 2012 purchase and alleged use of a portion of a single bottle of Dixie X CBD Dew Drops 500 mg Tincture. Plaintiffs' assert nine causes of action, including civil RICO violations. Defendants' motion for summary judgment should be granted, as there are no genuine issues of material fact regarding any cause of action. The Court is referred to the body of this memorandum, the Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment, the Affirmation of Jean-Claude Mazzola, Esq., in Support of Defendant's Motion for Summary Judgment ("Mazz. Aff.") and all exhibits attached thereto and the Affidavit of Chuck Smith, for facts relied upon by Defendants.

Simply stated, Plaintiffs have not met their burden insofar as there are no actionable statements by Defendants and Plaintiffs have no evidence of Dixie X's design, base materials, product testing and/or its ultimate chemical composition. Plaintiff offered no test results of Plaintiffs' sample of Dixie X or established Defendants' knowledge or intent of any of the foregoing. Plaintiffs have none because they made no discovery demands and deposed no fact or corporate witnesses.

1

## STANDARD FOR SUMMARY JUDGMENT

Summary Judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(a). On the other hand, the nonmoving party may defeat a summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When reviewing a motion for summary judgment, the court must resolve genuinely disputed facts in favor of the nonmoving party and must view inferences drawn from the facts in the light most favorable to the nonmoving party. *Bausch & Lomb Inc. v. Mimetogen Pharm., Inc.*, No. 14-CV-6640-FPG, 2017 U.S. Dist. LEXIS 102101, at *12 (WDNY 2017) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). However, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact. *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), *cert. denied*, 524 U.S. 911 (1998). The nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)

4845-6042-0209, v. 5

(citing cases). Factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 100 (WDNY 2010).

## ARGUMENT

I.  **PLAINTIFFS' DECEPTIVE BUSINESS PRACTICES AND FALSE ADVERTISING CLAIM FAILS AS A MATTER OF LAW BECAUSE THE HIGH TIMES ARTICLE IS NOT AN ADVERTISEMENT, DEFENDANTS HAD NO PART IN ITS CREATION AND NO STATEMENTS WERE PROVEN FALSE.**

To state a *prima facie* claim under General Business Law §§349 and 350 ("GBL"), Plaintiffs' must offer evidence (1) that Defendants engaged in consumer-oriented conduct; (2) the conduct was materially misleading; and (3) Plaintiffs suffered an injury as a result. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (noting that under GBL §350 "a plaintiff is only required to demonstrate that the advertisement was misleading in a material respect … while an injured person has been defined as one who was misled or deceived by such an advertisement."); *City of N.Y. v. Smokes-Spirits.Com, Inc.,* 12 N.Y.3d 616, 621 (2009); *see also Gristede's Foods, Inc. v. Unkechauge Nation,* 532 F.Supp. 2d 439, 450-51 (EDNY 2007) (stating that the standards under §§349 and 350 are "substantively identical"). Moreover, Plaintiffs must be in New York when viewing the "Ad" and not materially misquote it in pursuing a claim. *See infra.*

GBL §349 declares unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §349. GBL §350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law §350.

3

### A.   Defendants took no affirmative action, "consumer-oriented" or otherwise.

Plaintiffs' allege that they were deceived by Defendants advertisement for Dixie X which appeared in the September 2012 edition of High Times magazine (the "Ad"). However, there is no genuine issue of material fact that Defendants did not create, write, sponsor, approve, support or contribute any money or commentary for the "Ad" – it is not an advertisement or an affirmative action taken by Defendants.   (Smith Decl. ¶¶9-12).   Plaintiffs concede this argument. (Mazz. Aff., Exh. C, pp. 211 -212, 215-219, 248). "Advertising" is "the action of calling something to the attention of the public especially by paid announcements.[1] High Times produced an 8-page editorial, periodical or product review containing the author's own opinions, food recipes, reviews of other products and generic pictures - but it was not a paid announcement. (Mazz Aff., Exh. E, actual magazine pp. 38-46). Nothing in that article is exclusive to Defendants, they highlight multiple companies and products. Plaintiffs have no proof that Defendants represented anything; they have offered no proof that "Tripp Keber, Dixie's managing director" uttered the statements or to whom they were uttered, from what context the author may have extracted those statements, or that Keber is connected to any named party.

Defendants did not participate in drafting or publishing the "Ad," and as such Defendants did not and could not have engaged in consumer-oriented conduct.[2] Plaintiffs' claims of false advertising inherently fail on this analysis alone.

---

[1] Neither GBL §§349 or 350 define the parameters of an "advertisement," and New York case law is silent on that point. "Advertisement" Merriam-Webster Online Dictionary. 2018. http://www.merriam-webster.com (July 2018).

[2] Plaintiffs are arguably not even "consumers at large" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (consumer-oriented conduct has a broader impact on "consumers at large," and "potentially affect[s] similarly situated consumers."). Plaintiffs are dissimilar from consumers at large because they are subject to randomized drug and alcohol testing pursuant to Department of Transportation guidelines. [DEPO TRANS]. Due to the unique hazards of their profession, they are held to higher regulatory standards, their alcohol and drug consumption is more closely monitored and proscribed. [DEPO TRANS]. Plaintiffs fall outside the scope of the "consumers at large" protected by GBL §§349 and 350. No matter how one may characterize Plaintiffs, there is simply no evidence in the record about Dixie X's broader impact on any consumer, truckers or otherwise. As Plaintiffs offered

**B.  Plaintiffs' offered no proof that the "Ad" was materially misleading.**

Deceptive practices are "acts which are dishonest or misleading in a material respect." *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009); *Spencer v. Ariz. Premium Fin. Co.*, 2011 U.S. Dist. LEXIS 109352, at *21 (WDNY 2011). According to the New York Court of Appeals, deceptive acts are, "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d. at 26. In other words, a violation of this section requires that Defendants' conduct deceived a reasonable consumer in a material respect, work a harm to the public at large, and directly cause Plaintiffs' injury. *Leider v. Ralfe*, 387 F. Supp. 2d 283 (SDNY, 2005). It follows then that there must be an affirmative act, but Plaintiffs failed to connect Defendants to the "Ad," as discussed above, or that any statement was false.

Whether a claim or omission is deceptive, *i.e.*, materially misleading, may be determined as a matter of law or fact. *Stewart v. Ocean State Jobbers, Inc.*, 2018 U.S. Dist. LEXIS 5716, at *3 (D. Conn. 2018); *Oswego* 85 N.Y.2d at 26 (holding it may be determined as a matter of law or fact as individual cases require); *Spencer*, 2011 U.S. Dist. LEXIS 109352, at *21 (deceptive acts are defined objectively); *but contrast with Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 774 (WDNY 2017) (deceptiveness is usually matter of fact).[3] It follows then that if there is no genuine issue of fact regarding the deceptiveness of the "Ad," Plaintiffs' claims may be dismissed as a matter of law on summary judgment. To that end, Defendants could not have engaged in deceptive conduct if it did not make any statements in the "Ad."

---

no evidence of the impact on similarly situated consumers, admissible or otherwise, we refrain from addressing that analysis herein.

[3] Even assuming such matters are questions of fact, Plaintiffs have failed to provide evidence that a trier of fact may consider in determining whether the "Ad" was deceptive, *i.e.*, if Dixie X was not as "advertised" in the "Ad."

5

The "Ad" does not contain any statement by Defendants that Dixie X had "0% THC." The only mention of 0% THC was by the author of the "Ad." Rather, the "Ad" quotes Keber (with an unknown context and unconfirmed accuracy) in saying:

> It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado – and ultimately all individuals who are interested in utilizing CBD for medicinal benefit – will be able to have access to it. We are importing industrial hemp from outside the US using an FDA import license – it's below federal guidelines for THC, which is 0.3% - and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal law as it's related to the Dixie X (hemp-derived) product.

The crux of the alleged deception then must stem from statements in the "Ad" regarding the chemical content and legality of Dixie X. As a matter of law, there is no genuine issue of material fact that these statements are truthful. Plaintiffs failed to produce any evidence of the actual chemical composition of Plaintiff Doug Horn's sample of Dixie X, Defendants' manufacturing and production methods, or evidence that Defendants did not believe that Dixie X was legal. Plaintiffs failed to meet their burden of proof that Defendants deceived any consumer because they have no evidence to refute any statements regarding Dixie X's chemical composition.

### C. The Plaintiffs did not cause an actionable injury protected by GBL §§349, 350.

To establish liability under GBL §§349 and 350, Plaintiffs must offer proof of an injury resulting from Defendants' deceptive actions. A plaintiff must plausibly allege that they suffered injuries that are "fairly traceable" to defendant's conduct. Should discovery fail to bear out plaintiff's allegations, defendant may move for summary judgment on the issue. *In re Target Corp.*, 66 F. Supp. 3d 1154, 1159 (WDNY 2014). Plaintiffs testified that Mrs. Harp-Horn ordered Dixie X (Mazz. Aff. Exh. C pg. 227, Exh. D pg. 80), but only Plaintiff Douglas Horn ingested it (Mazz. Aff. Exh. C, 226-227). Mrs. Harp Horn also unilaterally resigned her position after Mr. Horn was fired (Mazz. Aff. Exh. D, pp. 101, 107, 126); she cannot as a matter of law show that she was injured by Defendants' alleged actions and her claim must fail as a matter of law.

6

**D. GBL §349 proscribes activity in New York, but Plaintiffs admit that they were not in New York when they read the "Ad."**

GBL §349 prohibits "[d]eceptive acts or practices in the conduct of any business … *in this state*." *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (emphasis in original). The New York Court of Appeals ruled that, "the deception of a consumer must occur in New York." *Id.* (citing *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002)). The statute's reference to deceptive practices "in this state" "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York." *Goshen* 98 N.Y.2d at 324-25. The *Goshen* court's further examination of GBL §349 lead them to conclude that "in this state" can only modify "the conduct of any business, trade or commerce [or] the furnishing of any service," and that the phrase "deceptive acts or practices" under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer. *Id.*; *see also Oswego*, 85 NY2d at 20. Thus, to qualify as a prohibited act, the deception of a consumer must occur in New York.[4] *Id.*

Plaintiffs admit reading High Times magazine in Texas, and only viewing the "Ad" in Texas. Plaintiffs further admit that although the they ordered Dixie X to their New York home, they did not take physical possession of it nor did Mr. Horn first ingest it in New York. (Mazz. Aff. Exh. C, pp. 211-212, 227-229, Exh. D, pp. 58-59,). There is no proof they were even in New York when they ordered Dixie X. They produced no evidence that consumers in New York were the intended audience of the "Ad," or whether High Times was even available to New York

---

[4] Though not officially sanctioned in New York case law, one court recently suggested in dicta that a "plaintiff may assert a claim under Section 349 for out-of-state deception, as long as it led him to take a related action in New York," such as withdrawing money from an ATM in New York. *Gunther v. Capital One, N.A.*, 703 F. Supp. 2d 264, 276 (EDNY 2010).

consumers in 2012. Plaintiffs have not raised a genuine issue of material fact that they were deceived in New York.

### E.  Plaintiffs materially misquoted the language of the "Ad" in the Complaint.

The Second Circuit has held that that "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).

Without addressing every misquote or misleading excerpt in the Complaint, we highlight two critical instances. In paragraph 13, they plead that Defendants advertised Dixie X contained "0.00% THC," whereas the author of the "Ad" states that it contains "0% THC," Keber's alleged quote was that "…it's below federal guidelines for THC, which is 0.3%..." The difference matters because legality here turns on minute percentages. To the extent this Court finds the "Ad" is an advertisement, by Defendants or otherwise, Plaintiffs misleadingly misquote insofar as their case turns on the legal limit or percentage of THC in Dixie X. Further in that vein, Plaintiffs plead that "[t]he advertising by defendant also stated that they imported the hemp product with .3% THC, but that they process it down to 0% THC…." (Compl. ¶14). Again, insofar as their case turns on Dixie X's legality, they have misquoted and misleadingly excerpted the "Ad" which serves as the crux of their Complaint. Their claim for deceptive business practices fails in that regard.

In the absence of any misrepresentation or damage to Plaintiffs therefrom, these claims must be dismissed as a matter of law.

8

## II.   PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY.

Plaintiffs have a high burden in pleading and proving a Racketeering Influenced and Corrupt Organizations Act ("RICO") allegation as "[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputation of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379, at *173 (EDNY 2013); *see also Purchase Real Estate Grp., Inc. v. Jones*, 2010 U.S. LEXIS 87571, at *17-18 (SDNY 2010) ("courts should look 'with particular scrutiny' at civil RICO claims to ensure that the RICO statute is used for the purposes intended by Congress.") (*citing Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (SDNY 2000)).

To prevail on a RICO claim, Plaintiffs must prove (1) that Defendants (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invested in, or maintained an interest in, or participated in (6) an "enterprise" (7) the activities of which affected interstate or foreign commerce. *Mackin v. Auberger*, 59 F. Supp. 3d 528, 541–42 (WDNY 2014); *see also Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983) (*citing* 18 U.S.C. §§1962(a)-(c)). 18 U.S.C. §1962(d) makes it unlawful for any person to conspire to violate the substantive provisions of RICO, including §1962(c).[5]

Although, Defendants do not dispute that they engage in interstate commerce, there is no genuine issue of material fact that Defendants did not engage in a pattern of racketeering activity

---

[5] The failure to allege the elements under 18 U.S.C §1962(c) means a civil RICO claim fails and as such there can be no claim under 18 U.S.C §1962(d). Thus, a conspiracy claim under sub-section (d) is predicated upon establishing the elements of sub-section (c). *FD Property Holding v. US Traffic Corp.,* 206 F. Supp. 2d 362 (EDNY 2002).

4845-6042-0209, v. 5

because Dixie X is not a controlled substance and Plaintiffs received the product they intended to purchase. Defendants had no scheme or intent to defraud Plaintiffs and they were not defrauded.

### A.   Plaintiffs cannot establish a "pattern" of racketeering activity

Establishing a "pattern" requires proof of "at least two predicate acts, [a showing] that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Dreamco Dev. Corp. v. Empire State Dev. Corp.*, 2017 U.S. Dist. LEXIS 156379, at *6 (WDNY 2017); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).

A "predicate act" is "any act indictable for crimes enumerated under 18 U.S.C. §1961(1)," which include acts of wire fraud (18 U.S.C. §1343) and mail fraud (18 U.S.C. §1341). *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525 (SDNY 2014). A plaintiff demonstrates "continuing criminal activity" by establishing either "closed-ended continuity" or "open-ended continuity." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Plaintiffs cannot establish a "pattern" because there is no proof that mailing a single product was part of a larger scheme, related to any other act, that Defendants intended to defraud Plaintiffs or defrauded Plaintiffs. Moreover, Plaintiffs failed to prove that Defendants committed any "predicate act" because Defendants did not commit an actionable criminal violation. *Mackin*, 59 F. Supp. 3d at 546; *citing MLSMK Invs. Co. v. JP Morgan Chase & Co.,* 737 F. Supp. 2d 137, 142 (SDNY 2010), *aff'd in part,* 431 Fed.App'x. 17 (2d Cir. 2011).

Plaintiffs claim that Defendants committed mail fraud and wire fraud which requires (1) the existence of a scheme to defraud, (2) Defendants' knowing participation, and (3) the use of wire or mail communications in interstate commerce in furtherance of that scheme." *Id. (citing*

4845-6042-0209, v. 5

*Ebusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC,* 2009 U.S. Dist. LEXIS 122193, at *44 (SDNY 2009).[6]

Mail fraud occurs when a person "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." 18 U.S.C. §1341. New York precedent requires proof that Defendants used the mail to obtain "money or property by means of false or fraudulent pretenses, representations, or promises or for purposes of executing a scheme to defraud." *Eisert v. Town of Hempstead*, 918 F. Supp. 601, 612 (EDNY 1996). A showing of intentional fraud or "reckless indifference to the truth" is necessary to satisfy "the requisite knowledge and criminal intent". *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988). Acts done inadvertently, mistakenly, or in good faith without an intent to defraud do not satisfy the requirements. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 707 (2d Cir. 1990).

Wire fraud occurs when a person "having devised or intending to devise any scheme or artifice to defraud," "transmit[s] by means of wire, radio, or television communication ... any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. §1343. Plaintiffs have no evidence of mail or wire fraud.

Here, Plaintiffs have no evidence of a scheme because they have no evidence of Defendants' operations, communications, records, connection to any named party or deposition testimony. There is no evidence of Defendants' intent or knowledge because Plaintiffs made no

---

[6] Where the alleged predicate acts sound in fraud they must be pled with particularity under FRCP 9(b), a plaintiff must allege and prove facts giving rise to a strong inference of fraudulent intent. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (A RICO claim alleging fraud "must state with particularity the circumstances constituting fraud or mistake.") (citation omitted). Allegations failing to specify "the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). As Plaintiffs failed to plead or prove fraud to this standard, their Complaint should be dismissed in that regard as well.

11

demands for records and deposed no fact or corporate witnesses. Without those records they cannot prove intent or knowledge. Plaintiffs failed to prove Defendants defrauded Plaintiffs of money or property because Plaintiffs purchased and received the Dixie X they wanted.[7] Therefore, there can be no mail or wire fraud without any proof of intent, a scheme, or a defrauded party.

**B.   There is no evidence of "racketeering activity."**

Plaintiffs cannot prove as a matter of law that Defendants' engaged in racketeering activity. 18 USC §1961(1) defines racketeering activity as "…any act or threat involving … dealing in a controlled substance or listed chemical (as defined in §102 of the Controlled Substances Act), which is chargeable **under State law** and punishable by imprisonment for more than one year." (emphasis added). Even assuming, *arguendo*, that Dixie X contains "marijuana" as defined under New York law or the Controlled Substances Act §102, the amounts sold fails to meet the threshold punishable by New York law by imprisonment for more than one year. N.Y. Penal Law §221.35 (McKinney) states, in relevant part:

> A person is guilty of criminal sale of marihuana in the fifth degree when he knowingly and unlawfully sells, without consideration, one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of two grams or less; or one cigarette containing marihuana.

> Criminal sale of marihuana in the fifth degree is a class B misdemeanor.

A Class B Misdemeanor is punishable under New York Penal Law §70.15(2) by a fixed term of imprisonment that shall not exceed three months. Plaintiffs purchased 500 mg worth of product. (Complaint ¶14, Mazz. Aff. Exh. K). Therefore, assuming those products contained

---

[7]Plaintiffs allege that Defendants mailed a single product, this is not a pattern of activity. Plaintiffs' must prove "at least two predicate acts" with a "showing that the predicate acts are related." *Dreamco*, 2017 WL 4230501, at *2. There is no evidence of a scheme or participation in such a scheme, and no evidence of a fraud because the Plaintiffs received the product they purchased. Furthermore, not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud. *Mackin v. Auberger*, 59 F. Supp. 3d at 552.

4845-6042-0209, v. 5

"marijuana," that falls short of racketeering activity under 18 U.S.C §1961(1). Plaintiffs cannot prove as a matter of law that Defendants engaged in racketeering activity.

### C.   The 18 U.S.C. §1962(d) RICO Conspiracy Claim Must Also Be Dismissed

Plaintiffs' failure to allege a substantive RICO claim under §1962(c) requires dismissal of Plaintiffs' conspiracy claim under §1962(d). *Structural Maint. & Contr. Co., Inc. v. Jayce Enters., Inc.*, 2010 U.S. Dist. LEXIS 108928, at *26 (SDNY 2010); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d, 297 at 312-13 (SDNY 2010). Even without dismissing the §1962(c) for the above reasons, the §1962(d) claim against Defendants must still be dismissed. Again, Plaintiffs cannot establish a conspiracy or agreement to conduct an illicit enterprise designed to cause Plaintiffs damage without any records or communications between the named parties, or testimony.

## III.   PLAINTIFFS FAILED TO PROVE FRAUDULENT INDUCEMENT BECAUSE THERE IS NO ACTIONABLE REPRESENTATION OR PROOF DEFENDANTS INTENDED TO INDUCE PLAINTIFFS.

Plaintiffs must show by clear and convincing evidence that Defendants knowingly or recklessly misrepresented a material fact, intended to induce Plaintiffs' reliance, that Plaintiffs relied on the misrepresentation and suffered damages to prove their claim for fraud. *See, e.g., Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *see also WeCare Holdings, LLC v. Bedminster Int'l Ltd.,* 2009 U.S. Dist. LEXIS 20080, at *30 (WDNY 2009) (identifying the elements of a claim for fraudulent inducement).[8]

---

[8] New York law follows the well-established common law rule that fraud damages represent the difference between the purchase price of the asset and its true value, plus interest, generally measured as of the date of sale. *McGuire v. Russell Miller, Inc. of N.Y.*, 1 F.3d 1306, 1310 (2d Cir., 1993); *Hanlon v. Macfadden Publ'ns*, 302 N.Y. 502, 511 (1951); *cf. Hotaling v. A.B. Leach & Co.*, 247 N.Y. 84, 87–88 (1928) (explaining that this rule reflects the notion that seller's fraud is complete upon sale and subsequent events do not increase or diminish liability).

4845-6042-0209, v. 5

### A. Plaintiffs failed to produce evidence of a material misrepresentation by Defendants.

As noted above, Plaintiffs failed to produce evidence that Defendants omitted any material fact, knowingly or recklessly, that could have influenced their purchase of Dixie X. They relied on an "Ad" which was not paid for by Defendants and so Defendants could not have intended to induce Plaintiffs to do anything. Plaintiffs failed to disprove any statement or representation allegedly used to induce their purchase or upon which Plaintiffs could have relied. (Complaint ¶¶13, 14, 19, 24, 28, 30, 3, 32, or 35).

The same in-depth analysis in Point I and throughout the Memorandum can be applied to any alleged statement, misrepresentation or omission Plaintiffs attribute to Defendants, *i.e.*, whether the "Ad" is an advertisement and/or what constitutes an advertisement, that Defendants did not pay for it, the lack of proof as to Dixie X's chemical composition or illegality, or any proof of the chemical composition of the Dixie X consumed. Furthermore, any materials Plaintiffs obtained either after purchasing Dixie X or after Plaintiff Douglas Horn's termination are wholly irrelevant insofar as they did not induce Plaintiffs to purchase Dixie X. To the extent that they claim reliance on other materials prior to purchase, they cannot prove those materials were actually viewed prior to purchase or that any statements made by Defendants were false.

For instance, Plaintiffs claim Defendants' "Ad" stated that Dixie X contains "0.00% THC." Adopting the reasoning in Point I, it is clear that only an independent author of an article makes that claim. Defendants argue there is a legal distinction between 0.00% THC, 0%, and 0.3%; the "Ad" contains no statement by Defendants that Dixie X had "0.00% THC." The same logic and analysis apply where Plaintiffs allege that "[t]hroughout their advertising media, defendants unequivocally and continually represent on their websites, press releases and advertising media

14

that their products contain no illegal tetrahydrocannabinol ("THC") …," "THC free," "non-THC," or "undetectable in its products" (Complaint, ¶¶24, 28, 30).[9]

As to the claims that Defendants advertised Dixie X as natural, safe, and had beneficial health, wellness and medical uses, (Complaint ¶¶19, 24, 31), Plaintiffs' expert admits that hemp and CBD products have the potential to aid consumers with various medical ailments. (Mazz. Aff., Exh. J, pg. 5). Plaintiffs offered no evidence of any physical harm or detrimental effect from using Dixie X and thus have no basis to support claims that Dixie X was unsafe or unnatural.

Plaintiffs have thus failed to prove that Defendants misrepresented in advertising or the contents, legality or efficacy of Dixie X.

### B. Plaintiffs lack evidence of "justifiable reliance."

As noted above, whereas Plaintiffs claimed reliance on the "Ad," they now admit that they knew that it was not Defendants' advertisement; it must follow that any reliance on that "Ad" as a basis for their claim is not justifiable. Moreover, Plaintiffs are hazardous material truckers whose alcohol and drug consumption are heavily regulated by the Department of Transportation. They admit that they have consented to and been subjected to random urinalysis and made affirmations regarding their consumption and understanding company policy (Mazz. Aff. Exh. C, pp. 82-88). They allege they have been truckers for twenty-nine years. (Complaint ¶15). Plaintiffs reliance on a statement in a magazine called "High Times" regarding chemical composition is not justifiable given the prevalence of drug testing for truckers.

---

[9] "[W]hen the 'most significant contentions' are made on 'information and belief' plaintiffs will fail to set forth a cause of action under [Section] 349." *Haag v Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316 (WDNY 2013) (citations omitted). As such, "general references to advertisements and statements will not be sufficient to allege a deceptive act or practice." *Id.* Plaintiffs allegations mirror this format to a great extent and their claim should be independently dismissed on this basis as well.

4845-6042-0209, v. 5

**IV.    PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE IS NO EVIDENCE THAT DEFENDANTS' PRODUCT WAS DEFECTIVE OR THAT PLAINTIFFS SUFFERED AN INJURY.**

To establish strict products liability for a design defect, Plaintiffs must prove that Dixie X was unreasonably dangerous for its intended use. *McCarthy v Olin Corp.*, 119 F3d 148, 154-155 (2d Cir. 1997) (discussing three distinct theories for strict products liability; manufacturing defects, warning defects, design defects); *S.F. v. Archer-Daniels-Midland Co.,* 2014 US Dist LEXIS 55195, at *22 (WDNY 2014).[10] For design defects, Plaintiffs must prove that (1) the product is defective, and (2) the defect caused their injury. *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 611 (SDNY 2012). Plaintiffs have failed to meet their burden in this regard because they failed to (1) produce any evidence that Dixie X was defective; and (2) prove that Plaintiffs suffered an injury therefrom.

Plaintiffs' had to prove that Dixie X was defective by showing that (1) as designed it posed a substantial likelihood of harm; (2) it was feasible to design it in a safer manner; and (3) the defective design was a substantial factor in causing their injury. *S.F.,* 2014 US Dist LEXIS 55195, at *23 (WDNY 2014); *Wick v Wabash Holding Corp.,* 801 F. Supp. 2d 93, 102 (WDNY 2010); *DiBartolo,* 914 F. Supp. 2d at 621.

The first two prongs function as a "risk-utility balancing test" to determine whether Dixie X was unreasonably dangerous. *DiBartolo,* 914 F. Supp. 2d at 621; *Lewis v. Abbott Labs.*, 2009 U.S. Dist. LEXIS 64831, at *1 (SDNY 2009). The New York Court of Appeals held in *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 108 (1983) that the relevant inquiry is "whether the product as designed was 'not reasonably safe' – that is, whether it is a product which, if the design

---

[10] Plaintiffs seemingly claim a design defect, we therefore do not discuss failures to warn or manufacturing defects. According to *McCarthy*, manufacturing defects result when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm, and warning defects result from the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm.

defect were known at the time of manufacture, a reasonable person would conclude that the utility

of the product did not outweigh the risk inherent in marketing a product designed in that manner."

*See also Valente v. Textron, Inc.,* 559 F. App'x 11, 14 (2d Cir. 2014) (citing *Voss'* holding that a

plaintiff establishes a prima facie case by showing that (1) the manufacturer marketed a product

designed that was "not reasonably safe" and (2) the defective design was a substantial factor in

causing plaintiff's injury.).

Where the risk outweighs a product's utility, a plaintiff must offer proof of a

technologically feasible and commercially practicable alternative design. *Guarascio v Drake*

*Assoc.,* 582 F. Supp. 2d 459, 463 (SDNY 2008); *see also S.F.,* 2014 US Dist. LEXIS 55195, at

*23 – 24 (holding that to state a claim for defective design a plaintiff must allege it was feasible to

design the product in a safer manner).

Ordinarily, a plaintiff needs expert testimony to meet that burden, *i.e.*, that a

technologically feasible and practical alternative design would have reduced or prevented

Plaintiffs' risk of injury. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d. 256 (271) (2d

Cir. 2002) (affirming district court's grant of summary judgment because, without expert evidence,

plaintiffs did not have "any admissible evidence in support of their theory of causation."").

Although Subsection (b) of the Restatement does not require expert testimony in every case, the

absence of expert testimony is fatal to a case unless a reasonable alternative design is both obvious

to, and understandable by, a layperson. *Id.*[11] Plaintiffs cannot prevail with only circumstantial

---

[11] According to the Restatement 3d of Torts, Products Liability, §2: A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product: … (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe. Restat 3d of Torts: Products Liability, §2 (3rd 1998).

evidence that a defect existed. *Giordano v. General Motors Corp.*, 1996 U.S. Dist. LEXIS 4911,

*6 (SDNY 1996); *Shelden v. Hample Equip. Works, Inc.*, 89 A.D.2d 766 (App. Div. 3d Dep't

1981) (Judgment and order reversed for defendant manufacturers, finding no defect where Plaintiff

relied solely on circumstantial evidence).

### A. Plaintiff failed to establish the likelihood of harm posed by Dixie X or that there were feasible alternative designs

There is no genuine issue of material fact that Dixie X was safe because there is no evidence

that Dixie X posed any danger. Plaintiffs failed to offer any evidence of how Defendants designed,

manufactured or produced Dixie X; they failed to demand any records from Defendants and did

not depose any person employed by Defendants. There is no lay evidence reflecting how Dixie

X's design posed any risk to them, the likelihood of that harm, or that feasible alternatives existed.

### B. Plaintiffs did not designate any expert to discuss the safety or efficacy of Dixie X, alternative designs.

Although Plaintiffs designated Dr. Graham as a forensic toxicologist, they did not

designate him to opine on the efficacy, utility, safety or design of Dixie X, feasibly alternative

designs, the likelihood of harm from consuming Dixie X. (Mazz. Aff. Exh. I, Pg. 1). Plaintiffs

designated no other expert or witness to testify to those issues. Dr. Graham only opined on the

direct cause of Plaintiff, Douglas Horn's positive drug test and loss of employment.

Dr. Graham does note that, "[t]he use of CBD-containing products has gained popularity

due to potential anti-epileptic, anti-inflammatory anti-psychotic and analgesic benefits ascribed to

the compound," and "[t]he presence of THC residues in hemp products and the increasing

availability of these products to consumers has raised concerns related to both the known

pharmacologic effects of THC when ingested..." *Id.* at pp. 4-5. Dr. Graham thus opines that CBD-

18

containing products can have beneficial uses, and that the presence of THC has raised concern about pharmacologic effects; not that THC or Dixie X was unsafe.[12]

### C. Plaintiffs failed to prove that Dixie X was a substantial factor in causing their injury or that they even suffered any injury at all.

Plaintiffs have failed to produce any evidence or testimony that they suffered any bodily injury from ingesting Dixie X. The only loss they attempted to establish through discovery is economic – that consuming Dixie X caused them to lose their jobs and their source of income. On this basis alone their claim must fail, but even if they failed to plead a cognizable physical injury they have failed to establish that Dixie X was a factor in causing their injury.

Plaintiffs claim for products liability under a design defect theory must fail as a matter of law because they put forth no proof of Dixie X's design, the likelihood of harm to consumers, feasible alternative designs, or that consuming it was the substantial cause of their injury. According to the Defense Expert Report by Dr. Cindy Orser:

> 1) Without any analytical laboratory test results to review as to what was contained in the actual Dixie Elixir product that was used by Mr. Horn, no one can opine with any degree of scientific confidence that it was the Dixie product used by Mr. Horn that caused him to fail his random DOT urine test of October 9, 2012.

(Mazz. Aff. Exh. G, pg. 5). Plaintiffs cannot prove causation to any degree of scientific confidence.

---

[12] Defense Expert Witness, Dr. Orser testified that THC is not a contaminant. It logically follows that its presence in any product is not in and of itself indicative of its safety. (Mazz. Aff. Exh. F, pp. 231-232.).

19

## V. PLAINTIFFS FAILED TO PROVE A BREACH OF CONTRACT BECAUSE THERE IS NO ENFORCEABLE CONTRACT OR, ALTERNATIVELY, PLAINTIFFS RECEIVED WHAT THEY PURCHASED, THERE IS NO BREACH.

An action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

Plaintiffs failed to establish the existence of an enforceable contract between them and Defendants. Viewing the facts in the light most favorable to Plaintiffs, the purchase order for Dixie X is the only document that could possibly be construed as a contract (Mazz. Aff., Exh. K). If deemed an enforceable contract, Plaintiffs concede there is no breach insofar as they admit receiving what was ordered. Any contract which existed was properly fulfilled. There are no allegations in the Complaint that contain any term or conditions either. Plaintiffs' breach of contract claim must fail as a matter of law.

## VI. PLAINTIFFS FAILED TO PROVE A BREACH OF EXPRESS WARRANTY BECAUSE DEFENDANTS MADE NO WARRANTY OR FALSE AFFIRMATIONS

Breach of express warranty claims under Uniform Commercial Code §2-313 ("U.C.C.") require proof that "there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Weiner v. Snapple Beverage Corp.* 2011 WL 196930, at *5 (SDNY 2011); *Jones by Jones v. Lederle Labs.,* 695 F. Supp. 700, 709 (EDNY 1988). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *DiBartolo*, 914 F. Supp. 2d at 624; U.C.C. §2–313(1)(a) (McKinney 2012). The affirmation of fact or promise must have been "false or misleading when made." *Shop Vac Corp. v. BCL Magnetics*

*Ltd.*, 2005 WL 2739161, at *6 (NDNY 2005) (*citing Rogath v. Siebenmann,* 129 F.3d 261, 264 (2d Cir. 1997)).

Defendants did not breach any express warranty because (1) Plaintiffs have not cited to any affirmation of fact by Defendants; (2) the "Ad" is not an advertisement such that it could have induced Plaintiffs to purchase Dixie X (3) there is no evidence any affirmations were false; and (4) Plaintiff Douglas Horn cannot establish that consuming Dixie X caused his termination, Plaintiff Cindy Harp-Horn cannot establish economic damages from her voluntary resignation. As the first, second and third points are addressed at length in Point I, *supra*, below is a summary of the salient points.

Simply stated, Plaintiffs claim they relied on the "Ad" and a YouTube video (which was never disclosed). (Mazz. Aff. Exh. C, pp. 211 -212, 215-219, 248). Statements in the "Ad" seemingly relate to product testing, chemical composition, health benefits, and legality. If any of those constituted an affirmation, Plaintiffs failed to provide any evidence regarding the chemical composition, production, efficacy or safety of Dixie X disproving those affirmations.[13] Plaintiffs have also offered no evidence that Plaintiff Cindy Harp-Horn suffered any economic damages from her voluntary resignation or that Plaintiff Douglas Horn's termination was causally linked to consuming Dixie X. There is no genuine issue of material fact that Defendants made any affirmations proven upon which Plaintiffs relied to their detriment.

---

[13] Plaintiffs disclosed throughout discovery numerous unauthenticated document and articles seemingly accessed and/or printed after purchasing Dixie X or Plaintiff Douglas Horn's termination. None of those records are relevant to the issues presented here insofar as Plaintiffs admit they only relied on the "Ad" and an undisclosed YouTube video.

21

## VII.  PLAINTIFFS FAILED TO PROVE UNJUST ENRICHMENT AS THEY RECEIVED EXACTLY WHAT THEY PURCHASED

Plaintiffs' claim for unjust enrichment must be dismissed as duplicative of their contract and tort claims, but also because they received the product they ordered – they received the benefit of their bargain and Defendants' were thus not unjustly enriched.

Plaintiffs must prove that Defendants were enriched at Plaintiffs' expense, and it would be against equity and good conscience to permit Defendants "to retain what is ought to be recovered." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 366 (WDNY 2013). Recovery under this quasi-contractual theory is precluded by a valid and enforceable written contract governing the particular subject matter. *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504 (SDNY 2007). In *Bristol* this Court opined that an unjust enrichment claim is not a catchall cause of action to be used when others fail and is unavailable where it simply duplicates, or replaces, a conventional contract or tort claim.[14] *Bristol* 916 F. Supp. at 367; *see also Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).[15]

Plaintiffs' barebones unjust enrichment allegations state that they "conferred their full payment price on Defendants," and that "[b]y unjustly retaining all of Plaintiff's (*sic*) funds, defendants were unjustly enriched." (Complaint ¶¶72 – 73). Plaintiffs' have failed to produce any evidence refuting the fact that they received exactly what they purchased because they did.

---

[14] It is well settled that where a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in quasi-contract, and it is appropriate to dismiss an unjust enrichment claim. *Haag* 969 F. Supp. 2d at 316.

[15] Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 38, 77 (EDNY 2017) (quoting *Corsello*, 18 N.Y. 3d 777 at 790).

Plaintiffs' unjust enrichment claim is also duplicative of their contract and tort claims. Should the Court find Plaintiffs raise a triable question of fact on either their contract or tort claims, their cause of action for unjust enrichment should be dismissed as duplicative.

## VIII.   PLAINTIFFS FAILED TO PROVE NEGLIGENCE WITHOUT ANY EVIDENCE ABOUT DIXIE X'S DESIGN OR ACTIONABLE MISREPRESENTATIONS

To establish a prima facie products liability claim for negligence, "a plaintiff must establish that a manufacturer failed to exercise reasonable care in making his product." *Fane v. Zimmer, Inc.*, 927 F.2d 124, 130 (2d Cir. 1991) (*citing Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55 (App. Div. 4th Dep't 1980)). There is absolutely no evidence that Defendants failed to exercise reasonable care in designing or developing Dixie X, choosing base materials or testing it and/or its ultimate chemical composition. Plaintiff offered no test results of Plaintiffs' sample or established Defendants' knowledge of any of the foregoing. Plaintiffs cannot meet their burden insofar as they did not demand any documents or depose any corporate representative and thus cannot establish what level of care Defendants exercised.

Moreover, although "words as well as acts may serve as the premise for a negligence action," Plaintiffs have no proof of any actionable statement by Defendants (as discussed hereinabove). *Heard v. City of New York*, 623 N.E.2d 541 (Ct. App. NY. 1993).

## IX.   PLAINTIFFS FAILED TO PROVE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS INSOFAR AS DEFENDANTS DID NOT ENGAGE IN EXTREME OR OUTRAGEOUS CONDUCT.

A cause of action for negligent infliction of emotional distress generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety. *Viehdeffer v. Tryon*, 2012 US Dist LEXIS 122926, at *36 (WDNY 2012). The defendant must have engaged in conduct **so outrageous in character**, and **so extreme in degree**, as to go **beyond all possible bounds of**

23

**decency**, and to be regarded as **atrocious**, and **utterly intolerable in a civilized community**. *Sheila* 11 A.D.3d 120, 130 (App. Div. 1st Dep't 2004); *see also Banker v. Cnty. of Livingston*, 782 F. Supp. 2d 39, 50 (WDNY 2011) (emphasis added). Therefore, the circumstances in which an individual may recover for negligent infliction of emotional distress are "extremely limited." *Hagie v. GMC*, 1999 US Dist LEXIS 5227, at \*16 (WDNY 1999). Whether the challenged conduct is sufficiently outrageous will ordinarily be determined as a matter of law. *Rizzo v Edison Inc.*, 419 F. Supp. 2d 338, 349 (WDNY 2005) (citations omitted).

The fact is that Plaintiffs offered no proof of any physical or emotional injury. Plaintiff Douglas Horn alleges that Dixie X was a "caustic, toxic and/or an illegal substance" (Complaint ¶84) and that he suffered a variety of emotional, economic or reputational injuries. And yet, nothing about the "Ad," the sale of Dixie X or Dixie X can be characterized as a matter of law as outrageous, extreme, or utterly intolerable. Defendants believed Dixie X was legal and safe and had potential health benefits.

Moreover, a claim for negligent infliction of emotional distress cannot be asserted if it is "essentially duplicative of tort or contract causes of action." *Virgil v. Darlak*, 2013 U.S. Dist. LEXIS 110411, at \*27 (WDNY 2013). The rationale for this rule is grounded in the purpose of the common law tort of negligent infliction of emotional distress which "has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not." *Id.* at 28. If this Court finds Plaintiffs have an cognizable contract or torts claim, it should dismiss this claim as duplicative.

24

## CONCLUSION

WHEREFORE, based upon the foregoing, Defendants respectfully request that this

Court grant Defendants' motion for summary judgment, dismissing the Plaintiffs' complaint in its

entirety and grant Defendants such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 30, 2018

                                        Respectfully submitted,

                                        Mazzola Lindstrom LLP

                                        _____
                                        Jean-Claude Mazzola
                                        Hanoch Sheps
                                        Mazzola Lindstrom LLP
                                        733 Third Avenue, 15th Floor
                                        New York, NY 10017
                                        (646) 216 - 8126
                                        jeanclaude@mazzolalindstrom.com

                                        *Attorneys for Dixie Elixirs LLC, sued
                                        incorrectly herein as Defendant Dixie
                                        Elixirs and Edibles*

25