**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

DOUGLAS J. HORN and CINDY HARP-HORN,

                *Plaintiffs*,

-against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS AND EDIBLES, RED DICE HOLDINGS, LLC, and DIXIE BOTANICALS,

                *Defendants.*

Civil Action No. 15-cv-701-FPG

---

### DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 56(a)(1)

Defendants Dixie Elixirs and Edibles ("Dixie"), (collectively, "Defendants") in support of its motion for summary judgment and pursuant to FRCP Rule 56 and Local Rules 56(a)(1) provides the following statement of the material facts as to which defendants contend there are no genuine issues to be tried:

    1.    This is an action for damages brought by Plaintiffs sounding in "counts" and purporting to allege nine causes of action. Plaintiffs charge Defendants with violating New York's General Business Law §§ 349 and 350, violating the Federal RICO statute, committing fraudulent inducement, violating Uniform Commercial Code § 2-318, breach of contract, breach of express warranty in violation of UCC § 2-313, unjust enrichment, negligence, and negligent infliction of emotional harm stemming from the Plaintiffs' (ECF Doc. No. 1 and Civil Rico Statement as No. 2).

    2.    These causes of action are brought in relation to the Plaintiffs' alleged purchase and use of the product at issue in this action, the Dixie X CBD Dew Drops 500 mg Tincture ("Dixie X").

3. During and prior to October 2012, Dixie was engaged in the research, development, manufacture and distribution of certain legal hemp-based cannabidiol products. (Smith Affidavit ¶4).

4. Dixie manufactured the product at issue. (Titus Declaration ¶7).

5. Red Dice Holdings, LLC ("RDH") was responsible for the sale of Dixie X. (Titus Declaration ¶8).

6. In this action Plaintiffs claim to have viewed an "article" in the Fall 2012 issue of High Times' Medical Marijuana magazine ("the Ad"). The single "article" plaintiffs allegedly viewed is attached as Exhibit A to their complaint. (Exhibit A thereto). Attached as **Exhibit E** is what Douglas Horn identified during his deposition as being a full copy of the Fall 2012 issue of High Times' Medical Marijuana magazine. This article was not a paid advertisement by Defendants. (Smith Aff. ¶¶ 9-12).

7. On or about October 1, 2012, Plaintiff Cindy Harp-Horn purchased the Dixie X. (Complaint, ¶14).

8. Both Plaintiffs were professional over-the-road hazmat commercial truck drivers at the time of this purchase. (Complaint ¶15).

9. Pursuant to their employment with Enterprise Trucking Company, Plaintiffs were required to submit to random urinalysis screenings (Plaintiff depos, exhibits).

10. One such urinalysis screening occurred on or about October 9, 2012. (Complaint ¶16).

11. On October 11, 2012, Plaintiff Douglas Horn was informed by his employer that he had tested positive for a high level of Tetrahydrocannabinol ("THC"). (Complaint ¶17).

12. Due to the failure of this urinalysis exam, Plaintiff Douglas Horn Enterprise terminated his employment. (Complaint ¶17).

13. Plaintiff Cindy Harp-Horn had an open offer from Enterprise even after they terminated her husband; she unilaterally opted not to act on that offer (Cindy Horn Deposition, pp. 107, 126).

14. Shortly thereafter, Plaintiff Cindy Harp Horn unilaterally resigned her position at Enterprise Trucking (Cindy Horn Deposition, p. 107).

15. Testing of Dixie X was done at various stages of production to ensure compliance with state and federal laws, including monitoring and measuring levels of tetrahydrocannabinol ("THC") and Cannabidiol ("CBD"). Examples of copies of the certificates of testing performed by a laboratory commissioned to perform such testing, CannLabs, are annexed hereto collectively as **Exhibit H**. CannLabs certificates merely confirmed the THC and CBD levels we believed the products already contained (Smith declaration ¶8).

16. During and before the autumn of 2012, Defendants believed Dixie X to be in compliance with New York State and Federal laws and regulations regarding THC content. (Smith declaration ¶13).

17. The article printed in the High Times Magazine contained several quotes alleged to have been taken from a person identified as "Dixie's Managing Director," Tripp Keber. (Complaint, Exhibit A).

18. The only words specifically attributed to Tripp Keber from that article are as follows:

- It has taken a tremendous amount of time, money and effort, but finally patients here in Colorado – and ultimately all individuals who are interested in utilizing CBD for medicinal benefit – will be able to have access to it.

- We are importing industrial hemp from outside the US using an FDA import license – it's below federal guidelines for THC, which is 0.3% - and we are taking that hemp and extracting the CBD. We have meticulously reviewed state and federal statutes, and we do not believe that we're operating in conflict with any federal laws as it's related to the Dixie X (hemp-derived) products.

(Complaint, Exhibit A).

19. Plaintiffs, during their depositions, testified that the documents or statements they relied on prior to allegedly making their initial purchase of Dixie X were the "A" as well as an interview with Tripp Keber which was recorded and allegedly viewed by Plaintiffs via YouTube. (Deposition of Douglas Horn, pp. 211 -212, 215-219, 248).

Dated: New York, New York
       August 30, 2018

                                                          Respectfully submitted,

                                                          Mazzola Lindstrom LLP

*/s/ Jean-Claude Mazzola*

Jean-Claude Mazzola
Hanoch Sheps
Mazzola Lindstrom LLP
733 Third Avenue, 15th Floor
New York, NY 10017
(646) 216 - 8126
jeanclaude@mazzolalindstrom.com

*Attorneys for Dixie Elixirs LLC, sued incorrectly herein as Defendant Dixie Elixirs and Edibles*

**DEFENDANTS' APPENDIX TO LOCAL RULE 56
STATEMENT OF MATERIAL FACTS**

4821-8624-8817, v. 2