# DIXIE

# MOTION TO STRIKE

# EXHIBIT 1

```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                    Plaintiffs,
                                           Civil Action No.
        -against-                          15-cv-701 FPG/MJR

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC and
DIXIE BOTANICALS,

                    Defendants.
------------------------------------------X
```

                805 Third Avenue
                New York, New York

                December 12, 2017
                10:06 A.M.

        EXAMINATION BEFORE TRIAL OF DR. CINDY ORSER, an Expert Witness appearing on behalf of the Defendants herein, taken pursuant to Notice, and held at the above time and place before Terri Fudens, a Stenotype Reporter and Notary Public of the State of New York.

165

```
 1                      CINDY ORSER
 2         Q     Okay.  Do we know how many milligrams
 3   the other one is?
 4         A     No.
 5         Q     In each case, in one cannabinoid
 6   assay, the one with the 500 milligram notation
 7   there says that the max THC is .04; right?
 8         A     Mm-hmm.
 9         Q     The other one says the max THC is
10   .05?
11         A     Yes.
12         Q     Do those correspond to the first two
13   pages of that exhibit, which looks more like a
14   summary; are you able to tell me that?
15         A     So we have total CBD of 516.  I
16   think -- I think page 1 corresponds with page 4,
17   and -- yes, page 1, these -- these are -- the only
18   thing different between these two is this .05.
19               MR. BORON:  Can you clarify for
20               the record when you say between these
21               two?  Nobody will know what you're
22               talking about when they look at the
23               records later.  Thank you.
24         A     The first two pages --
25               MR. SHEPS:  To clarify, if I'm
```

```
                                                            166
 1                         CINDY ORSER
 2              not mistaken, you're saying that
 3              there's no discernible difference
 4              between page 1 and page 2 of this
 5              exhibit in your opinion?
 6                    THE WITNESS:  Correct.
 7                    MR. SHEPS:  Other than this, the
 8              indication of the amount per product?
 9                    THE WITNESS:  Right.  Right.
10         Q    That's a pretty discernible
11   difference actually.
12              You stated that the .05 max THC, that
13   would correspond to the summary page, if you will,
14   or page 2 of this exhibit that shows the .05;
15   correct?
16         A    Page 4.
17         Q    Okay.  So the one that says
18   undetectable, in other words, the very first page
19   that days undetectable, does that correspond to
20   the 500 milligram product that I think is page 3
21   in the exhibit?
22                    MR. BORON:  Objection as to
23              form.
24         A    I can't make that judgment.
25         Q    So would you agree with me then that
```

1                        CINDY ORSER
2    .05 and .04 are less than .3; correct?
3         A    Correct.
4         Q    However, those numbers indicate some
5    quantity of THC; right?
6         A    Detectable, even though right here
7    they say if it's below .1, it's not detectable,
8    even though they're reporting it later.
9         Q    When you say reporting it later, are
10   you talking about the .05 percent?
11        A    On the first page it says
12   undetectable.  It defines undetectable as below
13   0.1, but yet on the last two pages, they're
14   reporting a value of less than .1.  The .04 and
15   .05 percent.
16        Q    So there is, at least with respect to
17   the .05, a detectable amount of THC; correct?
18             MR. BORON:  Objection as to
19             form.
20        A    It's being reported.
21        Q    And it doesn't say undetectable
22   there; right?
23        A    Right.
24        Q    So that is some quantity of THC in at
25   least these Certificates of Analysis?

1                    CINDY ORSER

2    middle of the page where you indented the listing

3    for each of the THC contents that were identified

4    as to the 500-milligram product, you see here that

5    you -- you lay out a .05 percent, and a .04

6    percent and another .04 percent.

7              Do you see those three listings?

8         A    Yes.

9         Q    Is it your testimony that the product

10   that Mr. Horn took would have an identical

11   analytical profile to those listing there?

12        A    No.

13        Q    But it's true though that the product

14   that Mr. Horn took would likely have been

15   manufactured around the same time as that which

16   was manufactured that corresponds to these

17   Certificates of Analysis; is that correct?

18             MR. SHEPS:  Objection.

19        A    I can't say.

20        Q    Again on these Certificates of

21   Analysis that are in front of you as Graham 13,

22   there's nothing in these Certificates of Analysis

23   that would indicate to you whether what was tested

24   was industrial hemp, or actually is there anything

25   that would indicate to you that this was not

                                                              176
1                     CINDY ORSER
2    industrial hemp, that this was the final
3    formulated product?
4              MR. BORON:  Objection to form.
5              MR. SHEPS:  Objection.
6       A      It says 500 milligrams.  It gives a
7    sample size.  I'm assuming it was the formulated
8    product.
9       Q      Were you ever supplied the product
10   from Dixie or Medical Marijuana or anybody?
11      A      No.
12      Q      Okay.  Moving on to page 4 of your
13   report.
14             MR. SHEPS:  Can we take a brief
15             break?
16             MR. BENJAMIN:  Okay.
17             (At this time, a brief recess
18             was taken.)
19             MR. SHEPS:  I just want to
20             clarify something for the record.
21             Jeff, we had spoken just a moment ago
22             about the exhibit marked as Orser D
23             which was an internal chain of
24             custody with an order ID 281201415
25             dated October 29, 2012.

                                                              177

1                      CINDY ORSER
2                    It's my understanding that this
3              was intended to be the same exhibit
4              as was annexed to Dr. Graham's
5              August 29, 2017 report number 6,
6              which was identified there as
7              laboratory data and report for
8              product testing order number
9              281201415 issued by EMSL Analytical
10             Inc. on November 5, 2012.
11   CONTINUED EXAMINATION
12   BY MR. BENJAMIN:
13        Q    On page 3 of your report, Dr. Orser,
14   you see where you stated, and I'm quoting, All
15   three of the Dixie Elixir -- do you see that?
16        A    Mm-hmm.
17        Q    After they listed Certificates of
18   Analysis, you state, "All three of the Dixie
19   Elixirs and edibles products had an order of
20   magnitude Less than the state and federal limit of
21   .3 percent THC.  In fact, the same Dixie X hemp
22   500 milligram due drop contains just .05 percent
23   THC.
24                    So in that paragraph you are stating
25   that the .3 percent is a state and federal limit

```
 1                          CINDY ORSER
 2              form.  What numbers?
 3                      MR. BENJAMIN:  I just stated
 4              them.  170 as opposed to 500 in the
 5              Certificates of Analysis.
 6                      MR. BORON:  500 what?
 7                      MR. BENJAMIN:  500 parts per
 8              million.
 9                      THE WITNESS:  .05.
10                      MR. BENJAMIN:  That's the .05
11              number.
12          Q     Given that, given what evidence of
13    chain of custody are there or adulteration issues
14    is there with that kind of ratio?
15                      MR. SHEPS:  Objection.
16                      MR. BORON:  Objection as to
17              form.
18          A     It's just the comparability.  These
19    aren't C of As for the product Mr. Horn took.
20    We've never seen the product Mr. Horn took.  The
21    product he took was never tested.  This is another
22    version of the product at a later date.  We don't
23    know if they changed, how they did anything.
24    There's a degree of uncertainty here.
25          Q     You mentioned -- do you feel that the
```

```
 1                      CINDY ORSER
 2     .05 percent?
 3         A     I know.  But on the C of A, it's .05,
 4     yes.
 5         Q     So that's any quantity of THC; is
 6     that right?
 7               MR. BORON:  Objection as to
 8               form.
 9         A     We don't know their LOD or their LOQ.
10         Q     What does that mean?
11         A     We don't know what can lacks --
12     because they say that anything below .1 percent is
13     undetectable, that would mean that it's below
14     their level of quantitation in their
15     instrumentation, but yet they go on to report a
16     level below that after they've already told us
17     they can't detect it.
18         Q     That's in one example.  But in
19     another example they detected .05 percent, which
20     is below point .1 percent; correct?
21         A     I'm just saying it's inconsistent.
22         Q     All right.  Are you aware of a legal
23     exemption for THC --
24               MR. SHEPS:  Objection.
25         Q     -- to avoid a controlled substance
```

1                      CINDY ORSER
2    not so strict.
3         Q      If something says 0 percent THC, does
4    that mean it doesn't have any THC in it?
5                MR. SHEPS:  Objection.
6                MR. BORON:  Objection as to
7           form.
8         A     No detectable THC.
9         Q     What about the other assay that says
10   there is detectable THC of .05?  Tell me if I'm
11   reading this wrong, but does it say in one of the
12   CannLabs Certificates of Analysis where it says
13   amount per product, .05 percent, that was not
14   undetectable?
15               MR. BORON:  Objection.
16        A     On the front page, they say if it is
17   less than .1, it is undetectable, and this was the
18   fall of 2012.
19        Q     Right.  So you're saying that it's
20   not necessarily -- are you saying that it's not
21   necessarily inaccurate to say in an ad 0 percent
22   THC when a sample is undetectable as it states?
23        A     Yeah.  I think it would have been
24   more accurate.
25        Q     I'm sorry?