UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                Plaintiffs,

      - vs -

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                Defendants.
_____

**ECF CASE**

**RESPONSE TO PLAINTIFFS'
STATEMENT OF MATERIAL
FACTS**

Case No. 15-cv-701-FPG/MJR

        Defendants MEDICAL MARIJUANA, INC. ("MMI") and RED DICE HOLDINGS, LLC ("RDH"), (collectively "MMI/RDH") in support of their motion for summary judgment and pursuant to Fed. R. Civ. P. 56(a) and W.D.N.Y. L. R. 56(a)(2) provide the following response to plaintiffs' statement of the material facts as to which MMI/RDH contend there are no genuine issues to be tried:

        1.    Plaintiffs have been a husband and wife team of over-the-road truckers since 1998. They drive across the United States hauling various loads such as expedited food, pharmaceuticals and liquid chemicals. (Horn Affidavit Paragraph 4).

        **Response: Admitted.**

2. On February 24, 2012, Plaintiff Douglas Horn was involved in a serious work-related semi-truck accident in which he suffered severe shoulder and back injuries. Over the months following the accident, he submitted to physical therapy and took various pain medications in an attempt to mitigate the trauma of the accident. However, those methods did not work. (Horn Affid. Para 5).

**Response: MMI/RDH admits that such accident occurred, but otherwise MMI/RDH lacks knowledge and information sufficient to form a belief as to the balance of this statement.**

3. In September, 2012, Plaintiffs observed a magazine at a book store in Texas where they had stopped. (Horn Affid. Para 6).

**Response: MMI/RDH neither admits nor denies this statement.**

4. Annexed hereto as Exhibit "1" is a copy of the first page of the "High Times" magazine and the advertisement page (Page 42) for the Dixie Elixir Dew Drops Tincture product in question.

**Response: MMI/RDH admits that the document contained in Exhibit "1" is a copy of the first page of the "High Times" magazine and also a copy of page 42 of the same magazine. MMI/RDH denies that page 42 contains an advertisement. See the declarations of Stuart Titus, at ¶¶6, 9, and 10, and Michelle Sides, at ¶¶9-12.**

5. In this magazine advertisement on Page 42, Defendants' [sic] represent:

    a. "…new product line called Dixie X, which contains 0% THC…"

    b. "the non-psychoactive products…"

**Response: MMI/RDH denies that the magazine excerpt is an "advertisement." MMI/RDH further denies that any statements excerpted therefrom are attributable to MMI/RDH. See the declarations of Stuart Titus, at ¶¶6, 9, and 10, and Michelle Sides, at ¶¶9-12, submitted in support of MMI/RDH's motion for summary judgment.**

    **a. MMI/RDH denies that this statement is attributable to MMI/RDH as it is written by the author of the magazine article and not a quote taken from a representative of MMI/RDH.**

    **b. MMI/RDH denies that this statement is attributable to MMI/RDH as it is written by the author of the magazine article and not a quote taken from a representative of MMI/RDH.**

6. After review of that magazine, Plaintiffs continued to research the product and found You Tube videos by the CEO of the Company, "Tripp Keber." (Horn Affid. Para 9).

**Response: MMI/RDH lack sufficient knowledge and information sufficient to form a belief as to the truth of this statement. MMI and RDH each deny that "Tripp Keber" is the CEO of either MMI or RDH.**

7. The YouTube videos dated August 8 and August 23, 2012 they viewed can be found at:

    a. https://youtu.be/Urlwtw+xQ48

    b. https://youtu.be/yDjGXS58ds

    c. https://youtu.be/k42+Kpp13mk

**Response: MMI/RDH admits that the videos, referred to were available as of the date of submission of the plaintiffs' motion were available to be viewed at the URL's provided in plaintiffs' statement, however, MMI/RDH lack sufficient knowledge and information to form a belief as to the truth of the balance of the statements made in this paragraph.**

    **a. MMI/RDH admits that the video was published to YouTube on August 8, 2012, however MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this assertion and further lack sufficient knowledge as to form a basis of the truth of any assertion made by any party speaking during the video.**

    **b. MMI/RDH admits that the video is dated August 23, 2012, however MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this assertion and further lack sufficient knowledge as to form a basis of the truth of any assertion made by any party speaking during the video.**

    **c. MMI/RDH denies that the video is dated either August 8, 2012 or August 23, 2012. Further MMI/RDH lacks sufficient**

**knowledge as to form a basis of the truth of any assertion made by any party speaking during the video.**

8.   In these videos, Defendants' CEO states continuously that the products are "THC-free", there was "no THC" and it had "0% THC."

**Response: MMI and RDH each denies that their CEO was present in any of these videos. MMI/RDH further denies that any of the statements referenced in this paragraph was made by either MMI or RDH.**

9.   Plaintiffs further investigated the product by reviewing the Frequently Asked Questions ("FAQs") on the Company website. Annexed hereto as Exhibit "2" on page 2, were the FAQs the Company published back in September, 2012. In those, Defendants' specifically state:

**"What is the difference between CBD from hemp and CBD from medical cannabis?"** (bold in the original).

"While the two plants are botanically related, *our hemp contains no THC* and numerous medical studies have shown CBD to have significant potential health benefits from a variety of ailments ranging from epilepsy to pain management.

Medical cannabis contains THC and may provide relief from various ailments, however, with a psychotropic effect." Emphasis added.

**Response: MMI/RDH denies that the document referenced as "Exhibit 2" from a website of either MMI or RDH. MMI/RDH denies that any claims or representations made therein can be attributable to either MMI or RDH.**

10. Defendants' Dixie's answers to their FAQs changed dramatically over the years. Annexed hereto as Exhibit "3" is the April 8, 2015 FAQ by Defendants stating the following:

**"Does Cannibidiol (CBD) and other natural hemp based constituents show up on a drug test?"** (bold in the original).

"Most workplace drug screens and tests target delta9-tetrahydrocannabinol (THC) and do not detect the presence of Cannabidiol (CBD) *or other legal natural hemp based constituents*. However, studies have shown that eating hemp foods and oils *can cause confirmed positive results* when screening urine and blood specimens. Accordingly, if you are subject to any form of drug testing, *we recommend (as does the United States Military) that you DO-NOT ingest our products*, and consult with your healthcare, drug screening/testing company or employer." Emphasis added.

**Response: MMI/RDH denies that the document referenced as "Exhibit 3" is attributable to either MMI or RDH.**

11. As regularly required by his employer, Plaintiff Douglas Horn was subject to random drug testing (urine) over the years. Plaintiff passed these tests without incident over the 14 years he was a trucker. (Horn Affid. Para 15).

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

12.     Douglas Horn did not, and has no employment or criminal history of smoking marijuana. (Horn Affid. Para 18).

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

13.     On September 17, 2012, Plaintiff ordered the Defendants' "Dixie X CBD Dew Drops 500mg Tincture. Annexed hereto as Exhibit "4" is a copy of the paid invoice for this product. He then ingested it as directed. (Horn Affid. Para 20).

**Response: MMI/RDH admits that one of the named plaintiffs ordered the product, and that the attached exhibit is a copy of the paid invoice for the product. MMI/RDH lacks sufficient knowledge as to form a basis of the truth of the remaining allegations in this statement.**

14.     On October 9, 2012, as he had regularly done over the 14 years prior, Plaintiff Douglas Horn submitted to a required, random, urine drug test screening. Annexed hereto as Exhibit "5" is the confirmatory Report dated October 11, 2012. Plaintiff was confirmed for a positive test result for "marijuana metabolite" with a result of 29 ng/ml well over the cutoff concentration limit.

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

15. Almost immediately thereafter, Plaintiff was terminated from his career as a trucker, and referred to required drug education courses through a Substance Abuse Professional Evaluation program ("SAP"). (Horn Affid. Para 22).

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

16. Upon the positive test, on October 18, 2012, Plaintiff ordered another (unopened) batch of the Dew Drops tincture for the purpose of having it tested at a lab. (Horn Affid. Para 23).

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

17. On or around October 29, 2012, Plaintiff found the lab known as "EMSL Analytical, INC" for the purpose of confirming that the defendants' product he took contained THC. Annexed collectively hereto as Exhibit "6" are copies of the 1) the EMSL invoice to Plaintiff for this testing; 2) the Analysis confirming the Defendants' product had 170 ug/g of THC in it; and 3) EMSL's Chain of Custody document.

**Response: MMI/RDH denies the characterization of this claim as applying to all defendants. MMI/RDH lacks sufficient knowledge as to form a basis of the truth of the rest of this statement.**

18. The EMSL lab confirmed the Defendants' product contained THC contrary to all of Defendants' advertising and promotional materials. Exhibit "6."

**Response: MMI/RDH denies the characterization of this claim as applying to all defendants. MMI/RDH lacks sufficient knowledge as to form a basis of the truth of the rest of this statement.**

19. Annexed hereto as Exhibit "7" is the email Plaintiff received from the National Director at EMSL lab, Scott Van Etten. This email of November 8, 2012 states:

"Douglas,

Your report is attached. Since the *sample contained THC,* I may not be able to return it to you as per our DEA registration. I am checking on that. I'll send you an email either way . . .. " (Emphasis Added).

and later that day at 3:27 p.m.

"Douglas

We can't return your sample."

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

20. Annexed collectively hereto as Exhibit "8" are the Defendants' Certificates of Analysis that were produced to Defendants' expert witness Dr. Cindy Orser as a representative sampling of the testing Defendants allegedly conducted as to the product in question. Defendants' Certificates actually show the presence of an amount of .05% and .04% respectively of THC.

**Response: MMI/RDH admits that the document attached as Exhibit 8 referenced above is a copy of the Certificates of Analysis that were produced to Defendants' expert witness Dr. Cindy Orser. MMI/RDH denies the characterization of the document as "showing" the presence of anything and respectfully refers to the referenced documents for their complete and exact contents, meaning, and legal effect.**

21.     Annexed hereto as Exhibit "9" are copies of the label on Defendants' tincture product that Plaintiff took and that which was tested, showing the absence of any reference to THC or Controlled Substances.

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

22.     Annexed hereto as Exhibit "10" is a copy of Dixie Elixirs and Edibles' (the "THC-infused products company") May 2, 2012 press release announcing their launch of the Dew Drops tincture product at issue, and their breaking new ground in the category of non-THC-infused products.

**Response: Inasmuch as this paragraph attempts to characterize the statements made in "Exhibit 10" as statements made by MMI/RDH, that characterization is denied. The paragraph itself refers to it as "Dixie Elixirs and Edibles' May 2, 2012 press release."**

23. Annexed hereto as Exhibit "11" is a copy of the Facebook post of Tamar Wise, former Chief Scientist at Defendant Medical Marijuana and Dixie Elixirs denouncing Defendants' products, stating "unfit for human consumption" and accusing Defendants a acting "criminal and dangerous."

**Response: MMI/RDH lacks sufficient knowledge as to form a basis of the truth of this statement.**

24. Defendants' Botanist expert Dr. Cindy Orser testified at her deposition on December 12, 2017. Relevant portions of her deposition transcript are annexed hereto as Exhibit "12." Dr. Orser stated the following:

**Response: MMI/RDH admits that the referenced attachment is a copy of Dr. Cindy Orser's deposition transcript which was given on December 12, 2017.**

   a. THC is "pretty amazing." (Orser Dep page 61: line 19);

   **Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

   b. Dr. Orser is an advocate of keeping THC in formulated cannabis products. (Orser 61:25);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

c. THC is a key contributor to the effectiveness of cannabis. So removing THC from cannabis per se wouldn't make sense. (Orser 62:3-6);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

d. Dr. Orser did not know the allowable amount of THC in industrial hemp or raw plant prior to the 2014 Farm Bill; (Orser 97:6, 99:2);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

e. The Certificates of Analysis provided to Dr. Orser for her review do not correspond to the tincture product taken by Plaintiff. (Orser 153:14-18); those would have been useful. (Orser 153:19-22).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

f. Dr. Orser asked for the particular Certificates of Analysis but learned "they do not exist," and Defendants did not have them. (Orser 153:23-25; 154:2-10).

**Response: MMI/RDH denies that the summarized testimony reflects the testimony cited. Dr. Orser's testimony was taken out of context, and the cited quotes are copied in full herein:**

    **23 Q Did you ask for those particular**

    **24 Certificates of Analysis?**

    **25 A Apparently they don't exist.**

    **2 Q The ones that were applicable to the**

    **3 product as far back as October 1 do not exist?**

    **4 MR. SHEPS: Objection.**

    **5 A I haven't seen them.**

    **6 Q Did you ask for them?**

      7 A I did.

      8 Q What was the response to when you

      9 asked for them?

      10 A That they didn't have them.

      11 Q Did you have an understanding of

      12 whether they were destroyed?

      13 A I mean I asked the attorney if they

      14 existed. So I have no opinion

g. Dr. Orser did not even know if what was represented on her Certificates of Analysis were a representative sample of the product Plaintiff took. (Orser 157:9-12).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

h. In 2012, the .3% threshold she used did not apply. (Orser 158:2-10).

**MMI/RDH denies that the summarized testimony reflects the testimony cited. Dr. Orser's testimony was taken out of context, and the cited quotes are copied in full herein:**

      2 A It's Colorado, but it's also the Farm

      3 Bill; right? But it is Colorado.

      4 Q Back in 2012, the Farm Bill didn't

      5 apply; right?

      6 A Right.

      7 Q So back in 2012, was .3 percent a

      8 state legal limit for THC in Colorado?

      9 MR. SHEPS: Objection.

      10 A That was my assumption.

i. Dr. Orser could not say that her testimony was a relevant as to the measure of THC content in the product Plaintiff took. (Orser 159:15-22);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

j. Dr. Orser did not review or even ask for batch records for the product. (Orser 160:6-19);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH**

**respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

k. Dr. Orser found it unusual that she was given Certificates for a different product. (Orser 161:11-14);

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

l. Dr. Orser acknowledged *a detectable amount of THC as noted in Defendants' Certificate of Analysis*. (Orser 167:16-25; 168:2). See also Exhibit "8" annexed hereto and noted above.

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

m. Dr. Orser was never provided the product by the Defendants. (Orser 176:9-11).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

n. When Dr. Orser referenced a legal limit for THC of .3%, she was talking about for Colorado. (Orser 178:4-6); but she did not know of a federal maximum threshold for THC content in 2012. (Orser 178:14-17).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

o. Dr. Orser opined that the product Mr. Horn took was never tested at all by Defendants. (Orser 189:18-25, 190:2-13).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

      p. Dr. Orser interpreted Defendants' FAQs to mean they knew there could be some THC, but they were now making efforts to have THC free products. (Orser 248:12-22).

**Response: MMI/RDH admits that the quoted testimony is accurate to how Dr. Orser testified, however MMI/RDH respectfully refers to the full text of the deposition for the statement's complete and exact content, meaning, and legal effect.**

25. Plaintiff's [sic] expert economist calculated the present value as of August 23, 2017 of Plaintiffs' damages from the loss of income to be $836,544. Annexed hereto as Exhibit "14" is a copy of that report.

**Response: MMI/RDH respectfully refers to the referenced document for its complete and exact contents, meaning, and legal effect.**

DATED:    Buffalo, New York
               November 16, 2018

                                        /s/ Daniel S. Gvertz

                                        Daniel S. Gvertz, Esq.
                                        MURA & STORM, PLLC
                                        *Attorneys for Defendants Medical Marijuana, Inc. and Red Dice Holdings, LLC*
                                        930 Rand Building
                                        14 Lafayette Square
                                        Buffalo, New York 14203
                                        (716) 855-2800
                                        daniel.gvertz@muralaw.com