UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HORN,         Civil Action No. 15-cv-701
                                                                    (FPG)(MJR)
                                  Plaintiffs,

              -against-

MEDICAL MARIJUANA, INC.;
DIXIE ELIXIRS AND EDIBLES;
RED DICE HOLDINGS, LLC; and
DIXIE BOTANICALS
                                  Defendants.
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MEDICAL MARIJUANA, INC'S and RED DICE HOLDINGS, LLC.
<u>MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE</u>**


KUPILLAS, UNGER & BENJAMIN, LLP.

Jeffrey Benjamin
*Attorney for Plaintiffs*
DOUGLAS J. HORN and CINDY HORN
1 Linden Place, Suite 410
Great Neck, NY 11021
(516) 213-4493

# **TABLE OF CONTENTS**

Argument …………………………………………………………………………………………1

Standard of Review……………………………………………………………………………….1

    I.      The Graham Affidavit Need Not Be Based "On Personal Knowledge" to Be Considered……………..……………………………………………………….......2

    II.     The Press Release (Exhibit 10) is Admissible…………………………………..……………………………………...6

    III.    The Facebook Post is Admissible……………………….…………………….…………………...8

    IV.    The YouTube Videos Are Admissible……………………………………………………………………….8

Conclusion………………………………………………………………………………….10

# **TABLE OF AUTHORITIES**

**Statutes & Rules**

FRCP 56(c)(2)……………………………………………………………………………………..1

15 U.S.C. 52……………………………………………………………………………......……….. 4,5

GBL 349 and GBL 350 ……………………………………………………………………..…..5

Fed. R. Evid. 804(3)(A)…………………………………………………………………………...7

**Cases**

*Sauerhaft v. Bd. of Educ.,* 2009 U.S. Dist. LEXIS 46196, at *30 (S.D.N.Y. June, 2009....…..……1

*Mergers & Acquisition Servs. v. Eli Glob., LLC,* 2017 U.S. Dist. LEXIS 45028, at *53 (S.D.N.Y. Mar. 27, 2017)……………………………………………………………………………………1

*Ferraresso v. Town of Granby,* 646 F. Supp. 2d 296, 301 (D. Conn. 2009)………………..….1

*Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008)………………………...2

*Olin Corp. v. Lamorak Ins. Co.,* 2018 WL 3442955, 9 (S.D.N.Y.) ……………………………...5

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.,* 97 F.Supp.3d 485, 504-07 (S.D.N.Y. 2015)……………………………………………………………………………………………5

*In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)……………………….....6

*Simcoe v. Gray*, 577 Fed.Appx. 38, 40-41 (2d Cir. 2014)……………………………….…..6

*Hayes v. New York City Dept. of Corrections*, 84 F.3d 614 (2d Cir.)……………………….…6

*Roniger v. McCall*, 119 Supp.2d 407, 410 (S.D.N.Y. 2000)…………………………………..…7

*United States v. Buck*, 2017 WL 5201447, 2 (S.D.N.Y.)……………………………………....7

*Krause v. Buffalo Erie County Workforce Dev. Consortium, Inc.,* 426 F.Supp.2d 68, 93 (W.D.N.Y. 2005)……………………………………………………………………….…7

*Brock v. Jackie Fine Arts, Inc.,* 1986 LEXIS 16265, 1-2 (D.Kan.)……………………...…..7

The Plaintiffs, Douglas J. Horn and Cindy Harp-Horn ("Plaintiffs"), submit this Memorandum of Law in Opposition to the Motion of the Defendants,' Medical Marijuana, Inc's and Red Dice Holdings, LLC, Strike Summary Judgment Evidence. For the reasons that follow, the Defendants' Motion should be denied.

**Argument**

**Standard of Review**

There is no Standard of Review for the Defendant's purported "Motion to Strike" Plaintiffs' summary judgment evidence. This motion was completely unnecessary and improper, and the Court should respectfully deny it outright without further consideration. A number of District Courts have held as such.

Although FRCP 56(c)(2) provides that a party moving for summary judgment may object to evidence, the 2010 Committee Notes to that subsection make clear that "[t]here is no need to make a separate motion to strike" allegedly inadmissible evidence. FRCP 56(c)(2), Advisory Comm. Notes (2010). Because evidence inadmissible at trial is insufficient to create a genuine dispute of material fact, the Court need not engage in separate analysis of the motion to strike. *Sauerhaft v. Bd. of Educ.,* 2009 U.S. Dist. LEXIS 46196, at *30 (S.D.N.Y. June 1, 2009) ("A court may decline to conduct a line-by-line analysis and instead simply disregard the allegations that are not properly supported."); *Mergers & Acquisition Servs. v. Eli Glob., LLC,* 2017 U.S. Dist. LEXIS 45028, at *53 (S.D.N.Y. Mar. 27, 2017).

As the Court "may consider only admissible evidence in ruling on summary judgment, it sees no need to 'strike' any portions of [Plaintiff's] evidence." *Ferraresso v. Town of Granby,* 646 F. Supp. 2d 296, 301 (D. Conn. 2009) ("[I]n the context of

1

summary judgment, motions to strike are unnecessary and produce only redundant statements by the court that it has not relied on such inadmissible evidence in deciding the summary judgment motion.") (citing *Martin v. Town of Westport*, 558 F. Supp. 2d 228, 231 (D. Conn. 2008)). It is not necessary for the Court to evaluate every paragraph of each challenged affidavit. *Sauerhaft*, supra at *53.

As an additional threshold matter, the Court should respectfully further note that Defendants have attacked only certain of Plaintiffs' exhibits offered on summary judgment i.e. a press release, a Facebook post, and YouTube videos reviewed by Plaintiffs before their purchase of the product. And yet, these exhibits have identical and/or duplicative language to those of Plaintiffs' exhibits Defendants have ostensibly *not* attacked with respect to the absence of THC in their product. As such, Defendants' motion to strike appears facially contradictory, and perhaps disingenuous.

Notwithstanding that both sets of Defendants have burdened the Court and the Plaintiffs with an improper and premature Motion in Limine, none of Plaintiffs' submissions are inadmissible.

## I.     The Graham Affidavit Need Not Be Based "On Personal Knowledge" to Be Considered.

The Defendants' argument is remarkably brief and quite simple. In his Affidavit, Dr. Graham's *analysis* in Paragraphs 6(e), (g), (i), (j), (k), (l), and (m) applies his review of the Plaintiffs' proofs to merely the language of the Controlled Substances Act and the federal labeling Act.

Remarkably, and in a sweeping and overbroad brush stroke, the Defendants do not even review the attacked paragraphs in the Graham Affidavit to explain why they are allegedly inadmissible. Under a plain reading, and under no conceivable construction of

it, the expert Affidavit of Dr. Kenneth Graham does not in fact, or attempt to, invade the province of the Court by giving a legal opinion. As Dr. Graham testified in his deposition testimony argued in the identical and simultaneous motion by the Dixie Defendants page 4: "I can relate a scientific principle to the way the statute is stated."

That is what a forensic toxicologist and pharmacologist does. While the Defendants fail to discuss specific statements that would constitute legal opinions in Dr. Graham's comprehensive Affidavit and Reports, with a broad brush stroke claim the entire Affidavit should be stricken.

It is no surprise all Defendants wish to strike the Plaintiffs' science expert's Affidavit. Dr. Graham's simple *acknowledgement of the language* of the Controlled Substances Act and its prohibition against *any* content of THC, shows clear liability on Defendants for putting a product in the stream of commerce that contains an amount of THC. The record offered by Plaintiffs in these motions is replete with evidence of the presence of THC in the product, primary of which was the admissions in Defendants' own Certificates of Analysis (Plaintiffs' Exhibit 8) which it gave to its expert, Dr. Cindy Orser, before she testified at deposition. Dr. Graham's review of this overwhelming evidence, and his acknowledgement of statutory law governing it, is clearly admissible as a forensic toxicologist and pharmacologist. Defendants will have to right to contest this evidence at trial as they did at deposition.

Though the Defendants have not done so, a review of the relevant portions of the Graham Affidavit betrays the weakness in the Defendants' argument. Paragraph 6(e) states that, based on the independent laboratory analysis requested by the Plaintiff and certificate of analysis records provided by the Defendants (Plaintiffs' Exhibit 8), Dixie X

Elixir and similar products contained a measurable amount of THC.  This was in sharp contrast to Dixie's claims that the product contained "no THC."  While the paragraph references unlawfully false advertising under 15 U.S.C. 52, the import of the statement is Dr. Graham's consideration of the *evidence*, not a legal opinion, and that the false statements led the Plaintiffs to purchase the product without worry that, when used, it would produce a positive THC test result.

Paragraph 6(g) discusses the history of Dixie X Elixir and the claim that it contained "0%" THC.  It describes the difference between CBD and THC; and the United States laws permitting *industrial hemp material*, <u>not the consumable product that Horn took</u>, if that industrial hemp had a THC content of less than 0.3% by weight.  The import of the Paragraph is that neither the Defendants nor their experts provided any support for their contention that the product complied with federal and state laws.  The Affidavit explains why the claim that the product was free of THC was false.

Paragraph 6(i) reflects the expert's analysis of the THC content of the product tested and why it would be classified as a Schedule 1 controlled substance.  The import of the statement is not legal but, rather, scientific.

Paragraph 6(j) provides that, if the Product was tested for cannabinoid content during manufacture as claimed, then the results would have shown that it contained a measurable quantity of THC such as to classify it as a Schedule 1 substance.  Such testing also would have impeached the credibility of the public statements that the Product contained no THC were false and may be unlawful.  The import of the statement is not that the THC content rendered the Product unlawful, but that it indicates that the Defendants' advertising was false.

Paragraph 6(k) indicates that, since neither the Defendants nor the Plaintiff were registered with the DEA, distribution of a Schedule I substance across state lines would be apparently unlawful.

Paragraph 6(l) references the illegality of the packaging information on the Product, the significance of which is that the Plaintiffs would not have been able to make an informed decision about whether to use the Product.

Finally, Paragraph 6(m) concludes that the statements made appear to be unlawful under 15 U.S.C. 52 a statute with unequivocal language with no reference to case law or other interpretation.

The Defendants' argument that the Graham statements above are inadmissible because he lacks "personal knowledge" (Defendant's Memo, p. 3) is erroneous. An expert's lack of contemporaneous personal knowledge does not render his or her opinions inadmissible. *Olin Corp. v. Lamorak Ins. Co.,* 2018 WL 3442955, 9 (S.D.N.Y.). A party can use an expert report to synthesize and digest reams of otherwise admissible evidence. *See, Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.,* 97 F.Supp.3d 485, 504-07 (S.D.N.Y. 2015). Furthermore, Graham's reference to violations of federal Controlled Substances Act or labeling law do not encompass an ultimate legal issue because the Complaint in this matter does not seek relief (or even state a cause of action) thereunder. They are referenced because a violation of that federal Act forms a predicate act for purposes of the Plaintiffs' RICO, GBL 349 and GBL 350 claims.

As Graham testified and quoted by the Defendant, he "can relate a scientific principle to the way the statute is stated" (Defendant Dixie's Memo, p. 4). Graham "can interpret" a statute for himself" (*Id.*). That analysis and application is one that can be

5

undertaken even by the undersigned or fact-finder at the appropriate time. It is a matter of taking the results that the expert found in the Product and analyzing those under the Controlled Substances Act; an Act that is inextricably linked to science.

It is therefore not a matter of Graham's "subjective beliefs regarding the law" (Defendant's Memo, p. 3), but, rather, an objective analysis of the data that he is qualified to analyze and a plain read of the Statutes.

For this reason, the Defendants' Motion as to Plaintiffs' expert Affidavit should be denied.

## II.     The Press Release (Exhibit 10) is Admissible.

As to its attack on Plaintiffs' Exhibit "10", Defendant puts forward a premature Motion in Limine arguing hearsay. Conspicuously absent from Defendants' argument is that the very press release it claims is hearsay contain statements identical to those it made elsewhere and acknowledged were not hearsay, made in multiple other media, and which corroborate Plaintiffs' claim that Defendants' promoted and sold this product under the false impression it contained "no THC."

As other, undisputed and corroborative evidence to this press release runs abundantly through this record with identical "no THC" language in multiple other media, even these Defendants admit here that Plaintiff has the opportunity to corroborate this evidence with a reliable source. Yet, they seek to deny Plaintiffs that opportunity here at the summary judgment motion stage. The Court should respectfully uphold Plaintiffs' rightful opportunity to corroborate the language of this press release at trial.

The press release attached as "Exhibit 10" to the Plaintiffs' counsel's Declaration is not hearsay because it is not offered for the truth of the matter asserted. Instead, it

6

reflects that the Defendants advertised the Product as in fact having "zero" THC. *C.f., Roniger v. McCall*, 119 Supp.2d 407, 410 (S.D.N.Y. 2000)(newspaper articles would be inadmissible hearsay if offered for the truth of the matters reported therein). Articles offered not for the truth of the statements made therein, but rather to show that a party had notice about a specific set of facts, are admissible as non-hearsay evidence. *United States v. Buck*, 2017 WL 5201447, 2 (S.D.N.Y.). *See, also, Krause v. Buffalo Erie County Workforce Dev. Consortium, Inc.,* 426 F.Supp.2d 68, 93 (W.D.N.Y. 2005)(court may consider statements in newspaper articles so long as they are not submitted for the truth of the matter asserted there)(*citing, Brock v. Jackie Fine Arts, Inc.,* 1986 LEXIS 16265, 1-2 (D.Kan.)(holding that the newspaper article was offered to show plaintiff's becoming aware of facts which led him to discover the fraud upon which his causes of action were based, hence not offered for the truth of the matter and defendants' objection on the basis was meritless).

      The press release is also admissible – if considered hearsay – because it constitutes a statement against interest and hence constitutes an exception to the doctrine. A statement against interest is one that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability. Fed. R. Evid. 804(3)(A). Here, the statement is against the Defendant's interest because it exposed itself to civil and, potentially, criminal liability.

Furthermore, Cindy Horn stated in her Affidavit offered in support of the Plaintiffs' Motion that the exhibits attached and that the Defendants seek to strike were materials that she uncovered, and relied upon, in researching the Product.

### III.   The Facebook Post is Admissible.

The Defendant argues that the Facebook post is hearsay (Defendant's Memo, p. 5).

However, the posts are not offered solely for the "truth of the matter asserted," rendering hearsay a superfluous objection.  Like the press release, the posts are offered to emphasize that the Plaintiffs saw and relied upon the representations that the Product "were unfit for human consumption."  In fact, Cindy Horn performed independent research to determine its content; the Facebook post and its review are those that she discovered in and amongst such research.

More significantly, however, the post is undeniably a statement against interest. It is a statement made by a former representative of the Defendant, its "head of science"; as such, it is made by a representative of the Defendant and most certainly speaks against its interest. Again, it is Plaintiffs' intention to give the Defendants the opportunity to confront the statements of Dr. Tamar Wise at the time of trial.

### IV.   The YouTube Videos Are Admissible.

The Defendant seeks to strike the three YouTube videos because Plaintiffs "never referenced or provided any YouTube videos before filing for summary judgment" (Defendant's Memo, p. 7).  This statement is patently false.

Long before the Affidavit of Plaintiffs in support and opposition to these various motions where they cited to the links for the specific YouTube videos watched before the purchase of the product, was the disclosure of them at Cindy Horn's deposition.

Plaintiff Cindy Horn gave her Deposition on May 9, 2017. Defendants conveniently ignore that on pages 44-47 of her transcript, (Defendants' Exhibit annexed to its motion), they *cross-examined* Ms. Horn regarding a YouTube video offering their *own exhibit*. Even more egregiously, on pages 133-139 of her transcript, defense counsel learned that she watched these same three YouTube videos of Defendants' CEO Tripp Keber before deciding to purchase the product. She relied on the CEO's claims therein that the product was "THC-free."

For Defendants to now claim Plaintiffs did not disclose the YouTube videos is shown in the transcript to be inaccurate to the point of disingenuous. Defense counsel aptly cross-examined Plaintiff Cindy Horn on all measures she took before purchasing the product to rule out the presence of THC. At no time subsequent to her deposition in May, 2017 did counsel request any more information as to these videos. Defendants simply cannot claim surprise or prejudice with respect to perhaps the most damning evidence against them: their CEOs clear and multiple statements the product contained no THC. Otherwise, the defense took every, and had every, opportunity to further investigate the publicly available YouTube videos Plaintiff specifically indicated as one of the bases for Plaintiffs' decision to purchase the product.

Indeed, Defendants have pointed the Court to nowhere where the undersigned did not fully and timely respond to every post-Discovery-deadline request that they made to the undersigned. The undersigned responded to each and every one of defense counsel's

9

requests even after the Discovery End Date of June 1, 2017, and despite the Court's Order precluding the Plaintiffs from further discovery.[1]

### Conclusion

As a threshold matter, Defendants' motion to strike summary judgment evidence was unnecessary and improper, first by the Advisory Committee on FRCP 56(c)(2), and then by the various District Courts finding the same. Notwithstanding that utter lack of a Standard of review for this motion, none of the specific exhibits Defendants attack are inadmissible. While these proffers of evidence by Plaintiffs are uncomfortable for the Defendants, they respectfully must be considered by the Court at this, the summary judgment stage of the case. For the reasons set forth above, the Defendants' Motion to Strike should be denied in its entirety.

Dated: December 6, 2018
      New York, New York      KUPILLAS, UNGER & BENJAMIN, LLP.

*Jeffrey Benjamin*
Attorneys for Plaintiffs
5 Penn Plaza, 23rd Floor
New York, NY 10001
(212) 655-9536

---

[1] Plaintiff's counsel's letters in November, 2017 and January, 2018 were two such responses with no regard by Defendants of any further information as to the YouTube videos indicated by Plaintiff. Defendants sought only phone records and bank statements which were freely given.