UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HORN,                   Civil Action No. 15-cv-701
                                                                        (FPG)(MJR)
                         Plaintiffs,

        -against-

MEDICAL MARIJUANA, INC.;
DIXIE ELIXIRS AND EDIBLES;
RED DICE HOLDINGS, LLC; and
DIXIE BOTANICALS
                         Defendants.
------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

                      KUPILLAS, UNGER & BENJAMIN, LLP.

                      Jeffrey Benjamin
                      *Attorney for Plaintiffs*
                      DOUGLAS J. HORN and CINDY HORN
                      1 Linden Place, Suite 410
                      Great Neck, NY 11021
                      (516) 213-4493

**TABLE OF CONTENTS**

Argument …………………………………………………………………………………………1

Plaintiffs have Proven Liability under RICO, and GBL §§349/350..…………………………….1

Conclusion…………………………………………………………………………………….….5

# **TABLE OF AUTHORITIES**

**Statutes & Rules**

21 USC §1308.11(d)(31)……..………..…………………………………………………………..1

Restatement (Second) of Torts § 402A………………………………………………………………3

UCC §2-318…………………………………………………………………………………………3

GBL 349 and GBL 350 ……………………………………………………………………......4

**Cases**

*Olin Corp. v. Lamorak Ins. Co.,* 2018 WL 3442955, 9 (S.D.N.Y.). …………….....………………..4

*Louis Vuitton Malletier v. Sunny Merch. Corp.,* 97 F.Supp.3d 485, 504-07 (S.D.N.Y. 2015)…..4

The Plaintiffs, Douglas J. Horn and Cindy Harp-Horn ("Plaintiffs"), submit this combined Memorandum of Law in Reply to the Oppositions of Defendants, Dixie Elixirs, LLC's and separately Medical Marijuana, Inc. and Red Dice Holdings, LLC.'s (collectively "Defendants"), to Plaintiffs' Summary Judgment Motion. In addition to the original motion papers filed by Plaintiffs, the below shows the Plaintiffs' Motion should be granted in its entirety.

### Argument

### Plaintiffs have Proven Liability under RICO, and GBL §§349/350

*"Remember the 5 D's of Dodgeball: Dodge, duck, dip, dive and dodge."* - Quote from Patches O'Houlihan, fictional character from the 2004 Comedy Movie: *Dodgeball: A True Underdog Story*.

In their opposition papers, as well as in the supporting papers for their motions for summary judgment, Defendants have taken a page from the Dodgeball Movie in their effort to dodge liability with the two (2) particular statutes under which they are clearly liable.

It is now commonly known that the medical marijuana industry is a burgeoning industry. If, in 2012 as widely published, the industry was a $5,000,000,000 one, it is safe to assume that now, six years later, it is worth many multiples of that figure. One need only read daily news to find the inroads that the industry continues to make in numerous states across the United States.

That said, consumable products like the Dixie X Elixir Defendants promoted, marketed, manufactured, distributed and sold to plaintiff [a New York consumer] and that he took, that contain *any* amount of THC, are still criminally illegal to this day. The federal Controlled Substances Act 21 USC §1308.11(d)(31), states that THC "in any

1

amount" is a hallucinogenic and thus a "Schedule 1" drug. The Defendants cannot wiggle out from under that criminal law.

Defendants now come to Court arguing that their product contained a legal amount of THC, and that in any event Plaintiffs cannot prove such content. They make this argument despite overwhelming evidence to the contrary:

1) Plaintiffs' Exhibit "4": Plaintiff bought the product;

2) Plaintiffs' Exhibit "5": He tested positive for THC;

3) Plaintiffs' Exhibit "8": THC was confirmed in Defendants' testing of a sample of the product supplied to their expert;

4) Plaintiffs' Exhibit "6": THC was confirmed by the EMSL lab in a sample Plaintiff received from Defendants and provided to test the product;

5) Plaintiffs' Exhibit "7": The EMSL lab refused to return the sample to Plaintiff because of its THC content and threat to its DEA license;

6) Plaintiffs' Exhibit "1": Magazine article states no THC;

7) Plaintiffs' Exhibit "9": Label on the bottle says neither THC nor Controlled Substance;

8) Plaintiffs' Exhibit "2": FAQs on Defendants' website say no THC;

9) Plaintiffs' Exhibit "3": later FAQs say do not buy the product if a consumer is subject to drug testing;

10) Plaintiffs' Exhibit "10": Press release says no THC;

11) Plaintiffs' Exhibit "11": Former head of Dixie Science describes products as unfit for human consumption;

2

12) Plaintiffs' Exhibit "12": Defendants' expert learned that the testing

   Certificates for the product Plaintiff took "do not exist."

After all this, Defendants still deny the presence of THC in their product or that there is no admissible proof? The uncomfortable reality for Defendants is that they are strictly liable under RICO and the New York GBL.

The Restatement (Second) of Torts § 402A states:

"§402A. Special Liability Of Seller Of Product For Physical Harm To User Or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

   (a) the seller is engaged in the business of selling such a product, and

   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

   (a) the seller has exercised all possible care in the preparation and sale of his product, and

   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

While one of Plaintiff's causes of action is certainly UCC 2-318, the analysis under their RICO and GBL claims is also that of strict liability. Put differently, while many of Plaintiffs' causes of action allege intentional and/or negligent conduct, for purposes of Plaintiffs' motion for Summary Judgment, Defendants are liable without regard to their intent or carelessness by selling a product containing THC to a New York

3

consumer. The Controlled Substances Act as the underlying criminal statute, along with RICO and GBL 349 and 350 makes this so.

Throughout its opposition, Defendants call for authentication of evidence. As such, they clearly want the Court to try this case on papers. As more fully discussed in Plaintiffs' opposition to the Defendants' motions to Strike Summary Judgment evidence, authentication of evidence, by definition, comes at the time of trial. Those motions were perhaps improper and premature Motions in Limine.

Somehow, Defendants argue that because Plaintiffs' expert did not personally test the sample or does not have personal knowledge of the product to testify. Such an argument is inconsistent with time-honored legal principles as to the competence and credibility of expert testimony. An expert's lack of contemporaneous personal knowledge does not render his or her opinions inadmissible. *Olin Corp. v. Lamorak Ins. Co.,* 2018 WL 3442955, 9 (S.D.N.Y.). A party can use an expert report to synthesize and digest reams of otherwise admissible evidence. *See, Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.,* 97 F.Supp.3d 485, 504-07 (S.D.N.Y. 2015). Furthermore, Graham's reference to violations of federal Controlled Substances Act or labeling law do not encompass an ultimate legal issue because the Complaint in this matter does not seek relief (or even state a cause of action) thereunder. They are referenced because a violation of that federal Act forms a predicate act for purposes of the Plaintiffs' RICO and GBL 349 and GBL 350 claims.

Lastly, as Dr. Graham testified and quoted by the Defendant, he "can relate a scientific principle to the way the statute is stated." It is his expertise in science and consumer warnings and labeling that makes him competent and credible to testify here.

4

**Conclusion**

Defendants' have each opposed summary judgment against a mountain of admissible evidence offered by Plaintiffs in fourteen (14) separate exhibits, some amounting to outright admissions by Defendants as to THC content, and multiple sworn Affidavits both lay and expert. Those exhibits and the testimony of the witnesses respectfully show a clear pathway for the Court to grant summary judgment for Plaintiffs as to liability under the RICO and GBL causes of action, and allow the case to proceed to trial on damages. For the reasons set forth above, the Plaintiffs' Motion for Summary Judgment should be granted in its entirety.

Dated: December 6, 2018
      New York, New York      KUPILLAS, UNGER & BENJAMIN, LLP.

*Jeffrey Benjamin*

Attorneys for Plaintiffs
5 Penn Plaza, 23rd Floor
New York, NY 10001
(212) 655-9536