UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                Plaintiffs,

   - vs -

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                Defendants.
_____

**ECF CASE**

**DECLARATION**

Case No. 15-cv-701-FPG/MJR

       Roy A. Mura, Esq. declares the following, pursuant to 28 USC §1746, under penalty of perjury:

       1.    I am an attorney at law, duly admitted to practice in the United States District Court for the Western District of New York and am the managing partner of Mura & Storm, PLLC, attorneys for the defendants, Medical Marijuana, Inc., ("MMI"), and Red Dice Holdings, LLC ("RDH") (or collectively "MMI/RDH") in the above-captioned matter. As such, I am fully familiar with the facts and circumstances set forth in this declaration.

       2.    I make and submit this declaration in support of MMI/RDH's motion pursuant to Fed. R. Civ. P. 54(b) for reconsideration and revision of the Court's order denying MMI/RDH's motion for summary judgment, as relates to the Plaintiffs' RICO claim, on the basis that it was a genuine error for the Court to find that Dixie X contained "resin extract derived from the *Cannabis sativa* plant" and thus fell within the definition of "marijuana" under the Controlled Substance Act in 2012.

3. On August 30, 2018, MMI/RDH moved for summary judgment and/or judgment on the pleadings dismissing all of the plaintiffs' causes of actions and the plaintiffs' complaint as against MMI/RDH, in its entirety. (Dkt. No. 61).

4. On April 17, 2019, the Court issued its Decision and Order with respect to various motions between the parties, which granted in part and denied in part MMI/RDH's motion for summary judgment, leaving Douglas Horn's claims for fraudulent inducement and civil RICO, and dismissing all other claims against the defendants. (Dkt. No. 88).

5. In its decision, the Court discussed a "legal issue that is foundational to this litigation: whether, in 2012, Dixie X constituted a controlled substance under the federal Controlled Substances Act ('CSA')." (Dkt. No. 88, p. 7). The Court found that, "in 2012, Dixie X constituted a controlled substance under the CSA." *Id*.

6. The Court stated that it arrived at this position on the purported factual bases that "Dixie X is a mixture that contains extract from the *Cannabis sativa* plant," and that the "CBD byproduct from the extraction process [is a] 'resin extracted from' the *Cannabis sativa* plant." (Dkt. No. 88, p. 10, underlining added).

7. There is no citation in the Court's decision for these purported factual bases or findings. The Court only states that "Defendants do not contend" otherwise. *Id*.

8. MMI/RDH respectfully submits that they do contend, and always have contended, otherwise, and that the 2012 Dixie X product did not, in fact, contain a "resin extracted from the *Cannabis sativa* plant."

9. In opposing MMI/RDH's motion for summary judgment and supporting their own motion for partial summary judgment, plaintiffs neither argued nor

submitted any evidence supporting the conclusion that the Dixie X product at issue contained any resin extracted from the *Cannabis sativa* plant.

10. Indeed, nowhere in the record before this Court on the parties' six motions is there any evidence directly or indirectly supporting this Court's conclusion that the Dixie X product at issue contained a resin extraction.

11. The September 29, 2017 report of Dr. Cindy Orser was attached as Exhibit G to the Mura Declaration submitted in support of MMI/RDH's motion for summary judgment. (Dkt. No. 61-9). The report stated as follows on page 2:

> Dixie Elixirs & Edibles in 2012 imported industrial hemp from outside the US using an FDA import license and extracted the CBD from the plant stalks and made their formulation in Colorado.

12. Notably, Dr. Orser does not use the word "resin" anywhere in her report when discussing the Dixie X product.

13. During Dr. Orser's deposition, attached as Exhibit F to the Mura Declaration submitted in support of MMI/RDH's motion for summary judgment (Dkt. No. 61-8), the word "resin" does not appear anywhere in Dr. Orser's testimony.

14. It is not clear to MMI/RDH how the Court determined from the record that Dixie X contained "'resin extracted from' the *Cannabis sativa* plant" because that purported fact does not appear to exist in the record.

15. In response to the Court's statement that "Defendants do not contend" otherwise, MMI/RDH would not have possibly thought to contend otherwise prior to the Court's decision because nobody had ever claimed that Dixie X contained "resin extracted from' the *Cannabis sativa* plant", prior to the Court stating so in its decision.

16.     Indeed, the Court presumably recognized that no party had contended or even discussed whether the product contained a resin extraction in stating:

> Taking the facts in the light most favorable to Plaintiffs, the Court agrees that, in 2012, Dixie X constituted a controlled substance under the CSA. But it reaches this conclusion for reasons different than those articulated by Plaintiffs. (Dkt. No. 88, p. 7).

17.     As stated in the accompanying affirmation of Stuart W. Titus, it is not even possible to extract "resin" from the stalks of hemp *Cannabis sativa* plants, which is, undisputedly, the manner in which the CBD was extracted from the plants in order to formulate the Dixie X product.

18.     In denying MMI/RDH's motion for summary judgment with respect to the plaintiffs' RICO claim, the Court stated that it did so on the basis that there were "sufficient facts from which it can be inferred that Defendants knew the identity of the substance they possessed – a mixture containing a resin extract derived from the *Cannabis sativa* plant. In 2012, that substance fell within the definition of marijuana under the CSA." (Dkt. No. 88, p. 24).

19.     The Court did not cite in its decision to any facts in the record from which such an inference could be drawn.

20.     Based on the Court's decision, it appears that the plaintiffs' could not have sustained their RICO claim, and the same would have been dismissed, if not for the Court having found that the Dixie X product at issue contained "a resin extract derived from the *Cannabis sativa* plant."

21. As stated by the Court itself, whether Dixie X contained "a resin extract derived from the *Cannabis sativa* plant," and thus fell within the definition of marijuana under the 2012 CSA, is a "legal issue that is foundational to this litigation."

22. As such, the genuine error of finding that Dixie X contained "a resin extract derived from the *Cannabis sativa* plant," is one that is material to this litigation and would substantially change the outcome of the Court's decision were the Court to consider the correct information.

23. For the foregoing reasons, and for those stated in the accompanying memorandum of law, defendants MMI/RDH respectfully request that the Court grant this motion to reconsider the Court's prior decision and order and revise the same to clarify that Dixie X did not contain "resin extract derived from the *Cannabis sativa* plant", thereby granting MMI/RDH's motion for summary judgment dismissing plaintiffs' RICO claim.

DATED:   Buffalo, New York
         July 17, 2019

/s/Roy A. Mura_____
Roy A. Mura, Esq.

MURA & STORM, PLLC
*Attorneys for Defendant*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com

- 5 -

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816