UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
DOUGLAS J. HORN and CINDY HARP-HORN,

                  Plaintiff,

-vs-

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC a/k/a DIXIE ELIXERS
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,
                  Defendants,
-------------------------------------------------------------------

**AFFIDAVIT OF**

**KENNETH D. GRAHAM, Ph.D.**

Case No. 15-cv-701 FPG/MJR

      Kenneth D. Graham, Ph.D. declares the following, pursuant to 28 USC §1746, under penalty of perjury:

      1.     I am a Forensic Toxicologist with over 25 years of experience in the field. I was retained on behalf of the Plaintiffs to evaluate the evidence and testimony involving the tetrahydrocannabinol (THC) content of the Dixie X Elixir Tincture product taken by Plaintiff, and whether the product complies with federal statutes for controlled substances. As such, I am fully familiar with the facts and circumstances set forth in this affidavit.

      2.     I make and submit this affidavit in rebuttal to MMI/RDH's motion pursuant to Fed. R. Civ. P. 54(b) for reconsideration and revision of the Court's order denying MMI/RDH's motion for summary judgment, as it relates to the Plaintiffs' RICO claim, on the basis that the alleged descriptive error for the Court to find that Dixie X contained a "resin extract derived from the Cannabis sativa plant" is inconsequential and does not alter the foundational premise that Dixie X constituted a controlled substance under the Controlled Substance Act in 2012.

3. On August 30, 2018, MMI/RDH moved for summary judgment and/or judgment on the pleadings dismissing all of the plaintiffs' causes of actions and the plaintiffs' complaint against MMI/RDH, in its entirety. (Dkt. No. 61).

4. On April 17, 2019, the Court issued a Decision and Order with respect to various motions between the parties, which granted in part and denied in part MMI/RDH's motion for summary judgment, leaving plaintiff's claims for fraudulent inducement and civil RICO, and dismissing all other claims against the defendants. (Dkt. No. 88).

5. In the decision, the Court discussed a "legal issue that is foundational to this litigation: whether, in 2012, Dixie X constituted a controlled substance under the federal Controlled Substances Act ('CSA')." (Dkt. No. 88, p. 7). The Court found that, "in 2012, Dixie X constituted a controlled substance under the CSA." Id.

6. The Court stated that it arrived at this position on the purported factual bases that "Dixie X is a mixture that contains extract from the Cannabis sativa plant," and that the "CBD byproduct from the extraction process [is a] 'resin extracted from' the Cannabis sativa plant." (Dkt. No. 88, p. 10).

7. Defendant's freely acknowledge that in 2012 Dixie Elixirs & Edibles imported industrial hemp (*Cannabis sativa*) from outside the US using an FDA import license and extracted cannabidiol (CBD) from the plant stalks for product formulation.

8. For assessment of CSA compliance, it is immaterial whether the plant material used to describe the formulation basis of the Dixie product was a resin extract or a non-resin extract. (Dkt. No. 88, p.10). Whether from the resin or other plant material, the extracted CBD and other substances used to formulate and

manufacture the product constitutes a "compound, manufacture, salt, derivative, mixture or preparation from such a plant" as defined in the statute. *See* 21 U.S.C. § 802(16).

9. Based on the statute, the definition of marijuana contained several potential exceptions. Excluded from the definition of marijuana were certain parts of the plant that are incapable of germination: (1) the mature stalks of the *Cannabis sativa* plant, (2) fiber produced from the stalks of the *Cannabis sativa* plant, (3) oil or cake made from the seeds of the *Cannabis sativa* plant, (4) any compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, fiber, oil, or cake (excluding resin extracts), and (5) the sterilized seed of the Cannabis sativa plant. 21 U.S.C. § 802(16) B(ii).

10. In 2012, the formulated Dixie Elixir product contained measurable quantities of tetrahydrocannabinol (THC), the primary psychoactive constituent in marijuana plant material. The presence of THC in the Dixie product was confirmed in certificates of analysis provided by defendant's as well as independent analysis results contracted by Plaintiff.

11. The presence of a measurable amount of THC in the Dixie product renders it a Schedule 1 controlled substance as described under 21 U.S.C. §1308.11.

12. The Dixie product is not eligible for an exemption of certain cannabis plant material, and products made therefrom, that contain tetrahydrocannabinols under 21 U.S.C. §1308.35 (a) because:

> (i) The Dixie products were based on processed plant material of the genus *Cannabis sativa* that contains an amount of tetrahydrocannabinol.
>
> (ii) The Dixie products were formulated using CBD extracted from a portion of a plant (stalks) of the genus Cannabis that would be excluded from the definition of marijuana under the CSA.

(iii) The Dixie products were formulated, marketed and distributed for human consumption.

13. Upon information and belief, the Dixie X product that plaintiff purchased and allegedly consumed in 2012 met the criteria of a controlled substance under the CSA since it contained an extract, whether mischaracterized as a resin or not, of the *Cannabis sativa* plant, the extract was subsequently formulated, marketed and distributed for human consumption and the formulated product contained a measurable amount of the Schedule I controlled substance, THC.

Dated: September  11 , 2019

_____
KENNETH D. GRAHAM, Ph.D., R.Ph.

Subscribed and Sworn to before me this
  11   day of September, 2019.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
Linda Connor, Notary Public
Montgomery County
My Commission Expires October 27, 2021
Commission number 1219910