UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                        Plaintiff,

    -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,
                        Defendants,
----------------------------------------------------------------X

Civ Action No: 15-cv-701 FPG/MJR

***PLAINTIFF'S OMNIBUS
DECLARATION IN REPLY
to DEFENDANTS' OPPOSITION
to PLAINTIFF'S 54(b) MOTION***

## OMNIBUS REPLY DECLARATION OF JEFFREY BENJAMIN TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S FRCP 54(b) MOTION TO CERTIFY APPEAL OF THE ORDER DISMISSING CLAIMS AND A PARTY

     I, Jeffrey Benjamin, Esq., declare under penalty of perjury, as provided for by the laws of the United States, that the following statements are true:

     1.    This Reply is made in opposition to the overlapping memoranda in opposition filed by Dixie Elixirs and Edibles, Dixie Botanicals, Medical Marijuana, Inc. and Red Dice Holdings, LLC.

     2.    As argued, the reason for the motion is not simply that there is a risk of two trials but also that both Douglas and Cindy Horn will be prejudiced unless the two Plaintiffs' interests are before the Court simultaneously.

     3.    The discussion herein of severability, finality, judicial efficiency, and manifest injustice show that the immediate appeal of Plaintiffs' claims meet the criteria required for certification under Rule 54)b).

### Distinct and Separate Claims

     4.    Severability is a chief criteria for a FRCP 54(b) certification.  A District court must consider "[W]hether the claims under review were separable from the others remaining to

1

be adjudicated…[.]" [Emphasis added.] *Curtiss-Wright Corp. v. General Elec. Co.,* 446 U.S. 1, at 8 (1980). Cindy Horn will appeal the Court's finding on proximate causation, i.e. that her lost wages are "too remote" and "indirect" from the Defendants' racketeering activity to survive under RICO or fraud claims.  No such question of law exists for Doug Horn.

5.    Indeed, it was never alleged that Cindy Horn was terminated from her job, failed a drug test, or consumed the Defendants' tainted elixir.  Aside from the damages, many of the facts that apply to Doug Horn do not apply to Cindy Horn's claims.

6.    At the same time, the Horn's claims are certainly intertwined. Judge Elfvin, in this Court, entered a final judgment under rule 54(b), which the District Court upheld, in *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, at 1091 (2nd Cir., 1992). "[W]e need to keep in mind, of course, that there is a continuum between "interrelated" and "inextricably intertwined." There is always an underlying interrelatedness of the claims between the parties in a multiparty civil action…. However, this interrelatedness cannot, in itself, "inextricably intertwine" the claims so as to preclude appellate review; otherwise, every multiparty case (and virtually every multiclaim case) would elude the entry of a rule 54(b) judgment, and rule 54(b) would be meaningless." *Ginett*, at 1095-1096.

7.    Cindy Horn would testify at trial, either subsequently or simultaneously with her husband's trial, as to her lost earnings as a "team over the road" truck driver. See ECF 60-20, Economic Loss Valuation Report. Should Mrs. Horn testify under oath in her husband's trial, where facts related to her own job loss were not be properly before the court, her trial counsel would not be permitted to operate with her interests in mind, e.g. to present evidence or object to admission of evidence averse to her own interest. Testifying to her husband's job loss, while having no standing to assert her own rights, would clearly put Mrs. Horn in legal jeopardy.

8.    Judgee John D. Elfvin likewise held that 54(b) certification was appropriate, "[B]ecause the issues which this Court faces with the remaining defendants are completely distinct from those decided with respect to the movants[.]" *State v. Panex Industries, Inc.*, 94-

cv-0400 E(F) (W.D.N.Y. 2001).  The Court found that no other party in the litigation had any interest or role in the issue to be appealed: "[T]he issues which remain to be litigated against the undismissed defendants involve [CERCLA liability], but the movants wish to appeal this Court's interpretation of a contractual indemnification provision, an entirely different issue." Id. at 2.

9.      Judge David Larimer, likewise, in *Gates v. Gates Chili Central School District*, 17-cv-6161L (W.D.N.Y. 2019), concluded that the factors supporting Rule 54(b) certification were met where a party's claims were dismissed for reasons irrelevant to the claims against the surviving defendants. "Plaintiff's claims against EHS and DiMaria were dismissed primarily for reasons of immunity that are distinct and separable from his claims against the other defendants. Id. at 2.

10.     Judge John Curtin, in *M.O.C.H.A. Society, Inc. et al. v. City of Buffalo*, et al., 98-cv-99C (W.D.N.Y. 2011), granted a Rule 54(b) motion where the disparate impact on African American firefighters in Buffalo was evinced in the city's drug testing policies, on the one hand, and promotional exams, on the other.  Allowing an interlocutory appeal because these two "cognizable claims…involve completely different legal and factual issues." Id. at 1.

11.     Defendant Dixie Holdings cites to a Mississippi Fifth Circuit case, *Ringwald v. Harris*, 675 F.2d 768 (5th Cir., 1982), where a husband and wife were defendants in two separate suits arising out of the same set of facts.  The two suits were consolidated by the district court in Mississippi. The Ringwald court opined (in dicta) that Rule 54(b) certification is required in originally separate but later consolidated suits, however, none of the parties in Ringwald had moved under Rule 54(b), nor was it clear to the court whether the parties needed 54(b) certification in order to appeal:  "[T] he question arises whether a post-consolidation single judgment or order that disposes of all parties and claims in one of the originally separate suits, but not in the other, is governed by the quoted provisions of Rule 54(b)."  Id. at 771.

*Ringwald* is perhaps useful to the extent that that court suggested that cases like the Horns, which can proceed individually, are not subject to Rule 54(b).

## Proximate Cause

12.    Proximate causation is an issue of fact and law that weighs on Cindy Horn's claims alone, not Douglas Horn's.   Cindy Horn was a "*team* over the road" truck driver. [Emphasis added]   See ECF 60-20, Economic Loss Valuation Report.   See also ECF 66, Affidavit of Ellen Voie CEO and President of the Women in Trucking Association.   Cindy's employment was contingent on being a team trucker.   Team drivers drive around the clock. Team drivers make deliveries faster and are paid more per mile than solo drivers. A jury could conclude that Cindy Horn's employment was contingent on being a team trucker, and that her lost wages are the direct, immediate, and proximate result of the other half of her team being terminated due to the Defendants' fraud.

## Judicial Efficiency

13.    Since discovery is over, appellate review of Cindy Horn's proximate causation would not be mooted by any future development in the case. Cindy Horn will appeal the Court's finding on proximate causation, but the appellate court will not have to decide this issue more than once, even if there are subsequent appeals of other parties or claims. Judge Larimer, in *Gates v. Gates Chili Central School District*, 17-cv-6161L (W.D.N.Y. 2019), held: "In addition, while courts should avoid piecemeal litigation, appellate review of this Court's decision as to EHS and DiMaria could actually promote judicial efficiency, since, in the event of a reversal on appeal, all of plaintiff's claims could be tried together. The Court therefore grants plaintiff's motion, as set forth below." *Id*. at 2.

### Finality

14.     The dismissal of all of Cindy Horn's claims is a final decision. If a decision "ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment" entered on that claim, then the decision is final.   *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2nd Cir., 1992). (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, (1978) (quoting *Catlin v. United States*, 324 U.S. 229 (1945)).

### Prejudice

15.     It is vital that Mrs. Horn's individual interests are protected while she testifies on her Husband's behalf.  Because Cindy Horn would certainly testify as to her own lost earnings, should Mrs. Horn testify under oath in her husband's trial, where facts related to her own job loss were not be properly before the court, her trial counsel would not be permitted to operate with her interests in mind, e.g. to present evidence or object to admission of evidence averse to her own interest. Testifying to her husband's job loss, while having no standing to assert her own rights would, by definition, put Mrs. Horn in jeopardy of prejudicing her own claims.

### Unjust Disparity in Financial Resources

16.     For this Plaintiff, the severe hardship of a second, subsequent, trial, doubling the cost of expert witness appearance fees, and counsel fees, without "just reason", without any real reason, is unfair.  See *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, at 1091 (2nd Cir., 1992).  Cindy Horn temporarily lost her livelihood.  The record shows that she has raided her retirement savings to survive.  Like plaintiff Frank *Ginett*, "This is exactly the sort of "hardship and denial of justice through delay" that rule 54(b) was designed to eliminate." *Ginett* at 1097. Judge Elfin entered a final judgment as to Frank Ginett's severance pay claim under rule 54(b) and the District Court upheld: "[T]here is no just reason for delay …. In short, the issues which make up the severance pay claim are separable from the issues which make up claim (A) for

wrongful discharge. "They certainly can be decided independently of each other." *Ginett*, at 1095, (quoting *Sears, Roebuck*, 351 U.S. at 436, 76 S.Ct. at 900.

17.    Indeed, in *Curtiss-Wright*, the U.S. Supreme Court and the Court of Appeals considered the prospect of the parties' insolvency. Though not dispositive, it was suggested "such factors as economic duress and insolvency would be necessary to qualify the judgment for Rule 54(b) certification." *Curtiss* at 64. As this case stands, Cindy Horn would have to wait until a final verdict and Judgment to appeal the dismissal of her claims, and then essentially re-try those claims: a facial and incomprehensible hardship.

18.    Judge Charles Siragusa, in *Xerox Corp. v. Arizona Digital Prods. Inc.* 08-cv-6480 (CJS) (W.D. N.Y., 2011), in deciding whether to grant a motion to transfer venue brought under FRCP 54(b), cited the "vast disparity in the financial resources of the parties" and the need to "prevent manifest injustice" as "one of the major grounds justifying reconsideration under FRCP 54(b)." Id at 3. Although the opinion talks mostly about the factors the court must use to decide whether to transfer an actions under 28 U.S.C.. § 1404(a), the sole basis for reconsideration was Rule 54(a) and the "manifest justice" factor.

## Conclusion

19.    Taking the multiple District Court decisions certifying appealability in their totality, Cindy Horn's claims, whose damage claims are intertwined with the claims of her husband Douglas Horn, are distinct to a degree that she should respectfully be entitled to immediate appellate review. Her claims having been entirely dismissed, that finality is beyond question. The judicial efficiency of consolidating the trials of both parties is also undeniable. The vast disparity in resources between these adversaries, the unsustainable expense of duplicate trials, alongside the potential for conflict inherent in Cindy Horn's testifying twice, weighs heavily in favor of certification under FRCP 54(b) and an order of Entry of final

judgment against Cindy, and an express determination that there is no just reason for delay of Cindy's appeal, along with any other relief this Court deems appropriate.

Dated: New York, New York

     September 16, 2019

KUPILLAS, UNGER & BENJAMIN, LLP

*Jeffrey Benjamin*

Jeffrey Benjamin, Esq.,
Attorney for Plaintiffs
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 655-9536