UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS J. HORN and CINDY HARP-HORN,

                Plaintiffs,

  - vs -

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                Defendants.
_____

**ECF CASE**

**DECLARATION**

Case No. 15-cv-701-FPG/MJR

      Roy A. Mura, Esq. declares the following, pursuant to 28 USC §1746, under penalty of perjury:

      1.    I am an attorney at law, duly admitted to practice in the United States District Court for the Western District of New York and am the managing member of Mura & Storm, PLLC, attorneys for the defendants, Medical Marijuana, Inc., ("MMI"), and Red Dice Holdings, LLC ("RDH") (or collectively "MMI/RDH") in the above-captioned matter. As such, I am fully familiar with the facts and circumstances set forth in this declaration.

      2.    I make and submit this declaration: (1) in opposition to the plaintiff's cross motion pursuant to Fed. R. Civ. P. 54(b) "granting Plaintiff a revision of the Court's Decision and Order of April 17, 2019 as to the finding that the subject product that the 'CBD byproduct from the extraction process [is a] "resin extracted from" the Cannabis sativa plant'" (Dkt. No. 112); and (2) in reply to the plaintiff's opposition to of MMI/RDH's motion pursuant to Fed. R. Civ. P. 54(b) for reconsideration and revision of the Court's order denying MMI/RDH's motion for summary judgment as it related to the plaintiffs' RICO claim on the basis that it was a genuine error for the Court to find that Dixie X contained

"resin extract derived from the *Cannabis sativa* plant" and thus fell within the definition of "marijuana" under the Controlled Substance Act in 2012.

3. The Court's April 17, 2019 Decision and Order is at the center of the current motions for reconsideration. (Dkt. No. 88).

4. In its decision, the Court noted that Dixie X "contains a detectible, albeit small, amount of THC. *See, e.g.*, ECF No. 60-14." (Dkt. No. 88, p. 3).

5. The Court then stated that it must discuss a "legal issue that is foundational to this litigation: whether, in 2012, Dixie X constituted a controlled substance under the federal Controlled Substances Act ('CSA')", acknowledging that plaintiffs' position was that Dixie X constituted "a controlled substance because it contains THC." (*Id.*, p. 7).

6. The Court then found that, "in 2012, Dixie X constituted a controlled substance under the CSA. But [the Court] reaches this conclusion for reasons different than those articulated by Plaintiffs." (*Id.*)

7. In other words, the Court considered the plaintiffs' argument that Dixie X was a controlled substance because it contained THC, rejected that argument, but then found that the product was a controlled substance for a different reason.

8. The Court was explicit in its rejection of the plaintiffs' argument regarding THC content, stating:

> "At the time, the CSA made no distinction on the basis of THC concentration. See *Monson*, 589 F.3d at 961 ('[M]arijuana is defined to include *all* Cannabis sativa L. plants, regardless of THC concentration.'); *N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 7-8 (1st Cir. 2000)."

(Dkt. No. 88, p. 9).

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

9. The Court further rejected plaintiffs' position by stating, "counterintuitively, certain derivatives of the industrial hemp plant were not included in the definition of marijuana—and therefore were not unlawful under the CSA—even if they contained trace amounts of THC." (*Id.* p. 9).

10. Instead, in analyzing the question of whether Dixie X constituted a controlled substance under the CSA in 2012, the Court noted that "the [CSA's] exemption for certain hemp-based products containing naturally-occurring THC did not extend to resin extracted from the plant." (Id.) The Court stated that, thus, "the legality of a hemp-based product turned on the manner in which it is produced: an oil made from hemp seeds was exempt and lawful, while a resin extracted from hemp stalks was not exempt and was unlawful. *See* 21 U.S.C. § 802(16) (2012)." (*Id.*)

11. Based on the foregoing, the Court then answered the question of whether "Dixie X constituted a controlled substance in 2012" "in the affirmative" based on what appears to the Court's conclusion from the record that "Dixie X is a mixture that contains extract from the *Cannabis sativa* plant" and that "Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a 'resin extracted from' the *Cannabis sativa* plant." (Dkt. No. 88, p. 10).

12. In other words, the Court found that Dixie X constituted a controlled substance in 2012 based solely on the Court's finding that it contained "'resin extracted from' the *Cannabis sativa* plant."

13. By all appearances, the issue of whether Dixie X fell within the definition of "marijuana" under the Controlled Substance Act in 2012 by virtue of it containing "a resin extracted from the *Cannabis sativa* plant" is one that was first raised by this Court

in its decision. The parties did not present any argument regarding whether Dixie X contained "resin" in their underlying motions. This is possibly why the Court stated that "Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a 'resin extracted from' the *Cannabis sativa* plant."

14.  It is respectfully submitted that the reason the Defendants did not "contend" otherwise on the underlying motion is not because the Dixie X did in fact contain a "'resin extracted from' the *Cannabis sativa* plant", but because the relevance of whether Dixie X contained "resin" had not yet been alleged, argued or otherwise put before the Court as a relevant fact or issue.

15.  This is the reason that MMI/RHD has filed its motion for reconsideration. As the Court made clear in its decision that it found Dixie X was a controlled substance only on the basis that it contained resin, and the parties had not previously presented any facts on this issue, MMI/RDH wanted the opportunity to inform the Court that Dixie X did not actually contain "resin"—believing in good faith that this information should change the Court's decision.

16.  Based on the above, it is apparent that the Court rejected the plaintiffs' argument regarding THC content, and that the Court is the one that first raised the issue of whether Dixie X contained "resin", explicitly stating that "the legality of a hemp-based product turned on the manner in which it is produced" and that it found Dixie X was a controlled substance because it contained "'resin extracted from' the *Cannabis sativa* plant."

- 4 -

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

17. However, the plaintiffs, in their opposition and cross motion papers, exhibit confusion about who it is that actually raised the issue of whether the Dixie X product contained resin and whether or not the same is important to this litigation.

18. The plaintiffs state that MMI/RDH filed this motion "claiming that the type of plant material used to describe the formulation basis of the Dixie product ['resin or non-resin'] mattered when assessing liability under the Controlled Substances Act for its product's proven THC content. It did not." (Declaration of Jeffrey Benjamin, Esq., Dkt. No. 112-2, par. 3).

19. Plaintiffs' claim that it does not "matter" whether Dixie X contained "resin" is contradicted and undermined by the lengths to which this Court went in its decision—two to three pages in fact—to make clear to the parties that this Court believes this issue of whether Dixie X contain resin or a resin extract is "foundational to this litigation."

20. Plaintiff's counsel labels the issue of whether Dixie X contained resin or resin extract as a "red-herring argument", apparently neglecting to notice that it was the Court itself that raised, discussed and based its decision in large part, at least with respect to plaintiffs' RICO claim, on this issue.

21. The plaintiffs continue to exhibit confusion about the core basis for the Court's decision by stating that MMI/RDH on their motion have identified only a "descriptive error" in the Court's decision (Benjamin Declaration, Dkt. No. 112-2, p. 2).

22. It is difficult to understand how one could read the Court's decision and believe that the language of the Court quoted by plaintiffs counsel is a "descriptive error" rather than the entire basis for the Court's holding.

23. In further opposition to defendants' motion for reconsideration, plaintiffs offer the affidavit of Dr. Kenneth Graham, which present no factual information for this Court's consideration, but asserts only legal opinion that, despite the Court's thorough, three-and-a-half page opinion to the contrary, it is actually "inconsequential" whether Dixie X contained resin. (Graham Affidavit, Dkt. No. 112-1, par. 2).

24. Dr. Graham does not provide any further explanation for this opinion beyond stating that it is "immaterial" whether Dixie X contained resin (Dkt. No. 112-1, par. 8) because Dixie X "contained measurable quantities of…THC" (Dkt. No. 112-1, par. 10) and that this "renders it a Schedule 1 controlled substance as described under 21 U.S.C. § 1308.11." (Dkt. No. 112-1, par. 11).

25. This is, of course, the exact argument that the Court already considered but rejected in its decision and the entire reason why the Court switched its analysis to one focusing on whether Dixie X contained resin from the *Cannabis sativa* plant.

26. Dr. Graham's affidavit amounts to nothing more than stating his belief that the Court's legal conclusions are wrong; that it was wrong for the Court to have rejected the plaintiffs' argument regarding THC content; and that it was wrong for the Court to have hinged its analysis on whether Dixie X contained resin.

27. Evidently, the plaintiffs believe that Dr. Graham's experience as a "forensic toxicologist" gives his opinion on this pivotal legal issue more weight than this Court's analysis. However, the Court has already made clear its legal conclusion that it is not the THC content, but the resin content, of Dixie X that is relevant to whether it constituted a controlled substance under the 2012 CSA.

28. In sum, the plaintiffs argue nothing in opposition to MMI/RDH's motion or in support of their cross motion other than their original argument, namely, that Dixie X constituted a controlled substance under the CSA in 2012 because it contained a trace amount of THC.

29. MMI/RDH, taking the Court's legal conclusions at face value, move for reconsideration only to give the Court additional information regarding what the Court, itself, stated was a key component in making its decision—that it was a genuine error to find that Dixie X contained "a resin extract derived from the *Cannabis sativa* plant."

30. For the foregoing reasons, and for those stated in the accompanying memorandum of law, defendants MMI/RDH respectfully request that the Court grant this motion to reconsider the Court's prior decision and order and revise the same to clarify that Dixie X did not contain "resin extract derived from the *Cannabis sativa* plant", thereby granting MMI/RDH's motion for summary judgment dismissing plaintiffs' RICO claim.

31. Further, for the same reasons, MMI/RDH respectfully requests that the Court deny the plaintiffs' cross motion for reconsideration.

DATED:   Buffalo, New York
         October 7, 2019

/s/Roy A. Mura
Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

MURA & STORM, PLLC
*Attorneys for Defendants*
*MEDICAL MARIJUANA, INC., and*
*RED DICE HOLDINGS, LLC,*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203

(716) 855-2800
roy.mura@muralaw.com