UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN and CINDY HARP-HORN,

Plaintiffs,

vs.

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

Defendants.

_____

Civil Action No. 15-cv-701-FPG/MJR

_____

**SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
DEFENDANTS MEDICAL MARIJUANA, INC. AND RED DICE HOLDINGS, LLC
FOR RECONSIDERATION**

Respectfully Submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

MURA & STORM, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ii

Preliminary Statement .................................................................................................. 1

Legal Argument............................................................................................................. 1

Point I –

THE COURT CORRECTLY ANALYZED WHETHER DIXIE X IS A CONTROLLED
SUBSTANCE BY DETERMINING WHETHER IT MET THE DEFINITION OF
MARIHUANA UNDER 21 USC § 802 (16), OR WAS EXCEPTED THEREUNDER ........ 2

Point II –

THE COURT HAS YET TO CONSIDER THE ARGUMENT THAT PLAINTIFFS' RICO
ACTION MUST FAIL BECAUSE SALE OF DIXIE X UNDER NEW YORK STATE LAW
IS NOT PUNISHABLE BY IMPRISONMENT OF MORE THAN ONE YEAR ................ 10

Conclusion ................................................................................................................... 11

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

# TABLE OF AUTHORITIES

<u>**Federal Statutes**</u>

18 USC §1961 ........................................................................................................ 2

21 CFR § 1308.11 (2012) ..................................................................................... 3

21 CFR § 1308.35 (2012) ..................................................................................... 7

21 USC § 802 (2012) ............................................................................................ 2

21 USC § 812 (2012) ............................................................................................ 2

Fed. R. Civ. P. 54(b) ............................................................................................. 1

<u>**States Statutes**</u>

New York Penal Law §70.15 .............................................................................. 11

New York Penal Law §221.35 ........................................................................... 10

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

## PRELIMINARY STATEMENT

This memorandum of law is made and submitted by defendants Medical Marijuana, Inc. ("MMI") and Red Dice Holdings, LLC ("RDH") (collectively "MMI/RDH") as a sur-reply to the plaintiffs' most recent affidavit of Kenneth D. Graham, Ph.D., (Dkt. No. 120), which ostensibly was meant to be a reply in further support of the plaintiffs' cross-motion, but stated on its face that it was also filed in response to MMI/RDH's motion.

Both parties have moved for reconsideration under Fed. R. Civ. P. 54 (b) with respect to the Court's April 17, 2019 Decision and Order regarding certain portions of their respective motions for summary judgment (Dkt. No. 88).

MMI/RDH has moved for reconsideration of the Court's denial of their motion for summary judgment as relates to the Plaintiffs' RICO claim, on the basis that it was a genuine error for the Court to find that Dixie X contained "resin extract derived from the *Cannabis sativa* plant" and thus fell within the definition of marijuana under the Controlled Substances Act in 2012 (Dkt. No. 97).

The plaintiffs' have cross-moved for reconsideration arguing for "a revision of the Court's Decision and Order of April 17, 2019 as to the finding that the subject product that the 'CBD byproduct from the extraction process [is a] 'resin extract from' the Cannabis sativa plant'" (Dkt No. 112, p. 1).

The motion and cross-motion obviously both touch upon the same issue and MMI/RDH now submits this memorandum of law for the purpose of clarifying that issue and addressing the arguments set forth in the most recent Graham Affidavit.

1

## LEGAL ARGUMENT

## POINT I

## THE COURT CORRECTLY ANALYZED WHETHER DIXIE X IS A CONTROLLED SUBSTANCE BY DETERMINING WHETHER IT MET THE DEFINTION OF MARIHUANA UNDER 21 USC § 802 (16), OR WAS EXCEPTED THEREUNDER

The primary issue with respect to both MMI/RDH's motion and the plaintiffs' cross-motion for reconsideration is whether the Dixie X constituted a "controlled substance" under the 2012 version of the Controlled Substances Act ("CSA").

This issue is relevant to this matter because in order to sustain a RICO cause of action the plaintiffs must establish a pattern of "racketeering activity" as defined by 18 USC §1961 (1).

18 USC §1961 (1) specifically defines racketeering activity, with respect to controlled substances, as "any act or threat involving … dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), which is chargeable under State law and punishable by imprisonment for more than one year[.]"

21 USC § 802 (2012) states:

**(6)** The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [21 USCS § 812].

As such, if Dixie X did not meet the definition of a "controlled substance or listed chemical" under 21 USC § 802 (2012), as a "drug or other substance" found in 21 USC § 812 (2012), then the plaintiffs cannot sustain a RICO cause of action and the same should have been dismissed, as a matter of law.

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

The plaintiffs' position on this issue – on the underlying motion for summary judgment, in their response to MMI/RDH's motion for reconsideration, in support of their cross-motion for reconsideration, and in their most recent affidavit from Dr. Graham – has never changed. The plaintiffs have consistently argued that Dixie X "contains a measurable quantity of THC" (Dkt. No. 120, par. 11) and the "presence of a measurable amount of THC in the Dixie product renders it a Schedule 1 [*sic*] controlled substance as described under 21 U.S.C. § 1308.11" (Dkt. No. 120, par. 16).

Presumably, the plaintiffs meant to cite to 21 CFR § 1308.11 (2012), which is the regulation setting forth the amended schedule found in 21 USC § 812 (2012).

21 USC § 812 (2012) lists both "Marihuana" and "Tetrahydrocannabinols" under "Schedule I":

> **(c)** Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:
>
> **(10)** Marihuana.
>
> **(17)** Tetrahydrocannabinols.

The amended schedule found in 21 CFR § 1308.11 (2012), which the plaintiff often erroneously cites as 21 USC § 1308.11, also lists both "Marihuana" and "Tetrahydrocannabinols" and states:

> **(d)** Hallucinogenic substances. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of its salts, isomers, and salts of isomers whenever the existence

of such salts, isomers, and salts of isomers is possible within the specific chemical designation (for purposes of this paragraph only, the term "isomer" includes the optical, position and geometric isomers):

(23) Marihuana

(31) Tetrahydrocannabinols

Meaning tetrahydrocannabinols naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following:
1 cis or trans tetrahydrocannabinol, and their optical isomers
6 cis or trans tetrahydrocannabinol, and their optical isomers
3, 4 cis or trans tetrahydrocannabinol, and its optical isomers

(Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.)

It has always been the plaintiffs' position that Dixie X qualifies as a controlled substance under 21 USC § 802, and thus qualifies as a controlled substance for RICO purposes under 18 USC §1961 (1), because the Dixie X contains trace amounts of THC, and "Tetrahydrocannabinols" is listed on Schedule I in both 21 USC § 812 (2012) and 21 CFR § 1308.11 (2012).

Though the plaintiffs have never cogently made this argument, they evidently believe that it is not relevant whether Dixie X falls under the definition of "marihuana" found in 21 USC § 802 (16) (2012) because they believe Dixie X qualifies as

4

a Schedule I controlled substance as "Tetrahydrocannabinols", regardless of whether it meets the definition of "marihuana." This is the same argument that the plaintiffs continue to press on these motions for reconsideration and in the latest affidavit of Dr. Graham (Dkt. No. 120).

It is MMI/RDH's belief that the Court already considered the plaintiffs' arguments in this respect and dismissed the same when it found that "in 2012, Dixie X constituted a controlled substance under the CSA. But [the Court] reaches this conclusion for reasons different than those articulated by Plaintiffs" (Dkt. No. 88, p. 3).

This Court then made clear that it believed that whether Dixie X was a controlled substance would hinge on whether it met the definition of "marihuana" found in 21 USC § 802 (16) (Dkt. No. 88, p. 9-10).

The Court also made clear that its finding that "Dixie X constituted a controlled substance in 2012" was based on its conclusion that "Dixie X is a mixture that contains extract from the *Cannabis sativa* plant" and that "Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a 'resin extracted from' the *Cannabis sativa* plant" (Dkt. No. 88, p. 10).

This is the reason that MMI/RDH made its motion for reconsideration. The Court stated in its decision that it found Dixie X was a controlled substance only on the basis that it contained resin. The parties had not previously presented any facts or arguments on this issue, and MMI/RDH wanted the opportunity to inform the Court that Dixie X did not actually contain "resin"—believing in good faith that this information would change the Court's decision.

5

MMI/RDH continues to urge the Court to reconsider its prior finding in this respect and revise its prior decision to hold that, because Dixie X did not contain resin extracted from' the *Cannabis sativa* plant, it fell within the exception to the definition of "marihuana" under 21 USC § 802 (16) (2012) and, therefore, did not meet the definition of a controlled substance for the purposes of 18 USC §1961 (1).

To the contrary, on their cross-motion for reconsideration, the plaintiffs are merely asserting the same point, again and again, while failing to appreciate the reason that the Court initially determined that whether Dixie X was a controlled substance hinged on whether it fell under the definition of "marihuana."

21 USC § 802 (16) (2012) states:

> **(16)** The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

The definition of "marihuana" specifically excludes "the mature stalks of [the plant Cannabis sativa L.] fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks… fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

However, the definition includes a parenthetical, which acts as an exception to the exclusion: "except the resin extracted" from the mature stalks of the Cannabis sativa L. plant, which then causes a product to fall back into the definition of "marihuana."

The Court found in its Decision and Order that Dixie X fell into the exception to the exclusion and, thus, met the definition of "marihuana."   MMI/RDH urges on its motion for reconsideration that Dixie X actually falls into the exclusion in the definition as the Dixie X is derived from the mature stalks of the Cannabis sativa L. and does not contain resin, thus, it is specifically excepted from the definition of "marihuana."

The plaintiffs, on the other hand, through Dr. Graham's affidavit, insist that regardless of whether Dixie X meets the definition of "marihuana," it is still a controlled substance because of "21 U.S.C. § 1308.35" (Dkt. No. 120, par. 10) and "21 U.S.C. § 1308.11" (Dkt. No. 120, par. 11). Moreover, the plaintiffs assert that the Court did not "comment, reject or rule on the validity" of these arguments (Dkt. No. 120, pars. 10-11).

The plaintiffs state that, even if the Court accepts that the Dixie X was "not derived from resin," thus, being excepted from the definition of "marihuana," they believe the product would "still remain a controlled substance by definition under other elements of the CSA" because it because it was "formulated, marketed and distributed for human consumption (21 U.S.C. § 1308.35)" and "the formulated product contained a measurable amount of the Schedule I controlled substance, THC (21 U.S.C. § 1308.11)" (Dkt. No. 120, par. 18).  Again, throughout their papers, plaintiffs presumably meant to cite to 21 CFR § 1308.35 (2012) and 21 CFR § 1308.11 (2012).

The relevant sections of 21 CFR § 1308.11 (2012) were already cited in full, *supra*. Notably, subsection (d), under which THC is listed at (31), states: "[u]nless

7

specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances[.]"

The plaintiffs evidently believe that because THC is listed in this subsection, the fact that Dixie X contained any amount of THC qualifies it under Schedule I. However, the plaintiffs ignore that this subsection of Schedule I explicitly begins with "unless specifically excepted or unless listed in another schedule."

This is the reason why it is necessary to engage in the analysis set forth by the Court in its decision and, presumably, why the Court stated that it reached its "conclusion for reasons different than those articulated by Plaintiffs" (Dkt. No. 88, p. 3).

The definition of "marihuana" found in 21 USC § 802 (16) (2012) does specifically except "the mature stalks of [the plant Cannabis sativa L.] fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom),  fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

The Court even specifically explained that this is how, "counterintuitively, certain derivatives of the industrial hemp plant were not included in the definition of marijuana—and therefore were not unlawful under the CSA—even if they contained trace amounts of THC." (Dkt. No. 88, p. 9).

The plaintiffs' reliance on 21 CFR § 1308.11 (2012) is misguided because it does not take into account the lead-in language of the subparagraph, which explicitly says that it does not apply to products that are "specifically excepted" in the CSA. This is,

8

presumably, the entire reason that the Court engaged in analysis of whether the Dixie X met the definition of "marihuana" under 21 USC § 802 (16), namely, to determine whether the Dixie X was "specifically excepted."

The plaintiffs' reliance on 21 CFR § 1308.35 (2012) is similarly misguided. This section is titled "Exemption of certain cannabis plant material, and products made therefrom, that contain tetrahydrocannabinols." This section only provides for further exemption status from the CSA and does not state that it brings any product, exempted elsewhere in the CSA, back under the authority of the act.

The plaintiffs' argument would essentially be that even though Dixie X is specifically excepted from the definition of marihuana under 21 USC § 802 (16), it is still a "controlled substance" because it does not meet a different definition for exempt status under 21 CFR § 1308.35 (2012). 21 CFR § 1308.35, by its very title, only broadens the category of products that qualify for exemption.

MMI/RDH is of the belief that the Court correctly analyzed this issue in its Decision by evaluating only whether Dixie X fell within the definition, or exception the definition, of marihuana under 21 USC § 802 (16).

It for this reason that MMI/RDH continues to urge the Court to reconsider its prior decision, but only in light of the evidence that Dixie X did not contain resin. In keeping with the Court's prior analysis, this would mean that Dixie X fell within the specific exception to the definition of "marihuana," did not qualify as a "controlled substance" and, therefore, cannot be a predicate racketeering act under RICO.

9

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

# POINT II

## THE COURT HAS YET TO CONSIDER THE ARGUMENT THAT PLAINTIFFS' RICO ACTION MUST FAIL BECAUSE SALE OF THE DIXIE X UNDER NEW YORK STATE LAW IS NOT PUNISHABLE BY IMPRISONMENT OF MORE THAN ONE YEAR

Regardless of whether the Court ends up finding that Dixie X is a "controlled substance" for the purpose of 18 USC §1961 (1), the Court has still not opined on the related question of whether the sale of Dixie X would have been "chargeable under State law and punishable by imprisonment for more than one year," as also required by 18 UCS §1961(1) to maintain a RICO cause of action.

MMI/RDH raised this point on the underlying motion for summary judgment (Dkt. No. 61-14, p. 13) but the Court did not address it in its decision (Dkt. No. 88).

Even assuming, arguendo, that Dixie X qualifies as a "controlled substance" under the CSA, the amount of product that the plaintiffs can prove MMI/RDH sold to them are not punishable by New York State Law by imprisonment for more than one year.

New York Penal Law §221.35 states as follows:

> A person is guilty of criminal sale of marihuana in the fifth degree when he knowingly and unlawfully sells, without consideration, one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of two grams or less; or one cigarette containing marihuana. Criminal sale of marihuana in the fifth degree is a class B misdemeanor.

Pursuant to New York Penal Law §70.15(2) a Class B misdemeanor is punishable by a fixed term of imprisonment that shall not exceed three months. According to plaintiffs' own deposition testimony, they purchased, at most, 600 milligrams of Dixie X (Dkt. 61-5, RAM Declaration, par. 12, Exhibit C). As stated above, even assuming Dixie

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

X qualified as a controlled substance, its sale would not satisfy the statute to show that MMI/RDH engaged in a racketeering activity as defined by 18 USC §1961 (1).

MMI/RDH believes it is possible that the Court overlooked that 18 USC §1961(1), in addition to requiring that Dixie X qualify as a "controlled substance," also requires that its sale must be "chargeable under State law and punishable by imprisonment for more than one year."

Where the sale of Dixie X to the plaintiffs is not chargeable under New York State law and punishable by imprisonment for more than one year, the plaintiffs cannot maintain their RICO cause of action and MMI/RDH urges the court to dismiss the same for this additional reason.

## <u>CONCLUSION</u>

WHEREFORE, based upon all of the above, MMI/RDH respectfully request that the Court grant its motion to reconsider its prior order and revise the same, granting summary judgment to defendants dismissing plaintiffs' RICO claim, and deny the plaintiffs' cross-motion for reconsideration.

DATED:      Buffalo, New York
            November 7, 2019

Respectfully submitted,

/s/ Roy A. Mura
Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

11

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816