UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS J. HORN, et al.,

                             Plaintiffs,

                                                                    Case # 15-CV-701-FPG

v.

                                                                       DECISION AND ORDER

MEDICAL MARIJUANA, INC., et al.,

                             Defendants.
_____

On September 15, 2020, Plaintiffs Douglas J. Horn and Cindy Harp-Horn filed a motion under Federal Rule of Civil Procedure 60(b), asking that the Court reconsider its ruling on one of their theories of liability under civil RICO. ECF No. 129. Specifically, the Court has held that "the mere presence of naturally occurring THC in a product does not render [the product] a controlled substance so long as it is derived from an excepted part of the *Cannabis sativa* plant." ECF No. 124 at 5-6. The Court concluded that, because Plaintiffs did not proffer any evidence "to show that Dixie X . . . is derived from a non-excepted part of the *Cannabis sativa* plant," they cannot "prove their RICO claim to the extent it is premised on the allegation that Dixie X is a controlled substance." *Id.* at 6. Plaintiffs now seek to relitigate that issue.

Normally, the Court would issue a briefing schedule to allow Defendants to weigh in on the matter. But given that the final pretrial conference is approximately two weeks away, further briefing would only serve to delay the proceedings and is unnecessary, as Plaintiffs' motion does not merit relief. Accordingly, Plaintiffs' motion is DENIED.

Plaintiffs cite Rule 60(b)(1) as the basis for their motion, arguing that the Court's rulings are premised on a "mistake" that entitle them to relief. ECF No. 129-9 at 5; *see* Fed. R. Civ. P.

1

60(b)(1) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" due to "mistake, inadvertence, surprise, or excusable neglect").  Even if Rule 60(b)(1) were an appropriate vehicle for Plaintiffs' arguments,[1] in substance they seek to relitigate old issues, press new legal and factual theories, and, put simply, take a "second bite at the apple." *Acao v. Holder*, No. 13-CV-6351, 2014 WL 6460120, at *1 (W.D.N.Y. Nov. 17, 2014).  That is not the purpose of Rule 60(b).  *See Wallace Wood Props. v. Wood*, No. 14-CV-8597, 2015 WL 7779282, at *2 (S.D.N.Y. Dec. 2, 2015) ("A motion for reconsideration . . . is not intended to be a vehicle for parties to relitigate cases or advance new theories that they failed to raise in their underlying motion practice.").

This is consistent with this Circuit's position on waiver/abandonment in the context of summary judgment: where a party could have raised a legal theory or relied on certain facts during summary-judgment motion practice, it is not entitled to advance such theories or rely on such facts via a motion for reconsideration.  *See, e.g.*, *Phoenix SF Limited v. U.S. Bank N.A.*, No. 14-CV-10116, 2020 WL 4699043, at *4 (S.D.N.Y. Aug. 12, 2020) ("[A] party that fails to raise an argument in its opposition papers on a motion for summary judgment has waived that argument."); *Rhee-Karn v. Lask*, No. 19-CV-9946, 2020 WL 1435646, at *1 (S.D.N.Y. Mar. 24, 2020) (declining to reconsider summary judgment order on basis that evidence in the record was allegedly "overlooked," where party "did not cite any of the evidence on which she now relies to argue that reconsideration of the [Court's] Opinion is warranted"); *see also CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (at summary judgment, district

---

[1] *But see Buck v. Libous*, No. 02-CV-1142, 2005 WL 2033491, at *1 n.2 (N.D.N.Y. Aug. 17, 2005) ("[S]ince an order denying summary judgment or granting partial summary judgment . . . is nonfinal, a party may not seek relief from such an order pursuant to Rule 60(b)." (internal quotation marks and citations omitted)).

court is not required "to scour the record on its own in a search for evidence when the plaintiffs fail to present it" (internal quotation marks omitted)).

Plaintiffs' motion runs afoul of this authority. Plaintiffs primarily argue that, as a factual matter, there is evidence in the record sufficient to support the inference that Dixie X is derived from a non-excepted part of the *Cannabis* plant. Specifically, Plaintiffs allege that "[i]t has been shown scientifically that cannabinoids . . . in the concentration necessary to make a product like Dixie X[] are not found in the parts of cannabis that are exempted from the CSA definition of marijuana." ECF No. 129-9 at 19. Plaintiffs also argue that one can reasonably infer that "Dixie X is derived from *non-exempt* parts of the cannabis plant" from (1) Dixie X's label, which states the product contains "hemp whole plant extract"; (2) Dr. Cindy Orser's testimony about the manufacturing process; and (3) the fact that Dixie X contains THC far in excess of the amounts found in legal hemp products. ECF No. 129-9 at 15-16, 20.

These may be plausible arguments, but Plaintiffs articulate no reason why they did not raise them earlier.[2] In its decision on summary judgment, the Court explicitly stated that Dixie X's legality turned on the manner in which, and the part of the plant from which, it was produced. *See Horn v. Medical Marijuana, Inc.*, 383 F. Supp. 3d 114, 123-24 (W.D.N.Y. 2019). The Court initially concluded that Dixie X could be found unlawful, as "Defendants do not contend that the CBD byproduct from the extraction process can be described as anything other than a 'resin extracted from' the *Cannabis sativa* plant." *Id.* at 124; *see also* 21 U.S.C. § 802(16) (2012) (defining marijuana to include "the resin extracted from any part" of the *Cannabis sativa* plant, as well as "every compound" or "mixture" of the resin). As the Court highlighted in the order, this

---

[2] Plaintiffs seem to suggest that there is new (non-binding) legal authority and helpful regulatory guidance that excuses the untimeliness of the present motion. The Court disagrees. The materials Plaintiff identify do not articulate a new or radical legal principle that Plaintiffs could not have previously anticipated; at best, they support a position that Plaintiffs could have taken from the outset.

framework for assessing the legality of Dixie X was different than Plaintiffs' theory—they maintained that "the presence of any amount of THC" rendered Dixie X "a Schedule 1 controlled substance." ECF No. 69-26 at 12; *see also id.* at 12-14, 20-21; ECF No. 69-24 at 6 ("Any material, compound, mixture or preparation that contains any quantity of THC or marijuana extract containing one or more cannabinoids derived from any plant of the genus Cannabis is categorized as a DEA Schedule I controlled substance."); ECF No. 70-23 at 7 ("Dr. Graham showed that the Defendants' final product formulations of the Dixie X Dew Drops Tincture product with the presence of '*any*' amount of THC rendered it a Schedule 1 controlled substance as described under 21 U.S.C. §1308.11, and not eligible for an exemption to a Schedule I classification under 21 U.S.C. §1308.35 since it was formulated, marketed and distributed for human consumption.").

In their motion for reconsideration, Defendants "argue[d] that the Court erred insofar as it assumed that Dixie X contained resin extract derived from the *Cannabis sativa* plant and thus constituted marijuana." ECF No. 124 at 5 (internal quotation marks omitted). In ordering briefing on that motion, the Court expressly stated that if Plaintiffs intended "to challenge the moving defendants' factual assertions, they must do so in the manner contemplated by Federal Rule of Civil Procedure 56(c)(1)." ECF No. 98. Despite having notice of the Court's framework and of the need to produce supporting evidence, Plaintiffs did not make the factual argument they now make,[3] and instead argued that the Court's framework was incorrect. *See, e.g.*, ECF No. 112-1 at 2-3 (affidavit of Plaintiffs' expert); ECF No. 112-3 at 2 ("[I]t is immaterial whether the plant

---

[3] Plaintiffs did cite Dr. Orser's testimony and the Dixie X label in their brief on the motions for reconsideration, but they did so in the context of distinguishing Defendants' product from those at issue in two related Ninth Circuit cases. *See* ECF No. 112-3 at 4-5. Plaintiffs did not develop an argument that those facts proved that Dixie X was derived from a non-excepted part of the *Cannabis* plant. To the contrary, they believed that the issue was "immaterial." *Id.* at 2. It was not incumbent on the Court to further develop these facts on Plaintiffs' behalf. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

compound used to describe the formulation basis of the Dixie product was obtained from a resin extract or a non-resin extract."); ECF No. 112-3 at 3 ("[A]ny product that contains any amount of THC was a Schedule I controlled substance in 2012.").

Plaintiffs could have asked the Court to draw the factual inferences they now advance, but they took a different tack and wholly disagreed with the Court's framework for analyzing the issue. Plaintiffs have every right to craft their theory of the case, but, by the same token, the Court has no obligation to "perform an independent review of the record to find proof of a factual dispute," *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002), or to develop a theory on Plaintiffs' behalf that they quite explicitly did not want to pursue. *Cf. Garcia v. Jackson Hurst Partners LLC*, No. 18-CV-3680, 2018 WL 4922913, at *2 (E.D.N.Y. Oct. 10, 2018) ("The purpose of the abandonment doctrine is to give effect to a plaintiff's right to control his or her theory of the case, and to winnow out legal theories that the plaintiff has chosen not to prosecute."). Undoubtedly, this was a complex issue, and the Court in no way faults Plaintiffs for advancing a legal theory at odds with the Court's view. But Plaintiffs cannot re-cast their own litigation strategy into a mistake or error on the Court's part.

For similar reasons, Plaintiffs err when they argue that Defendants did not provide sufficient evidence that Dixie X is manufactured from lawful *Cannabis* derivatives. *See* ECF No. 129-9 at 13. The quality of Defendants' evidence is beside the point: it is the plaintiff who bears the burden of proving a civil RICO claim. *See Arons v. Lalime*, 3 F. Supp. 2d 314, 320 (W.D.N.Y. 1998). Where the moving party will not bear the burden of proof at trial, it may "obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994); *see also Ockimey v. Town of Hempstead*, 425 F. App'x 45, 45 (2d Cir. 2011) (summary order)

("[A] moving defendant is not required to file affidavits (or other materials) disproving the plaintiff's claims."). At summary judgment (and on the motions for reconsideration), Plaintiffs were required to affirmatively produce evidence sufficient to create a genuine issue as to whether Dixie X was derived from a non-excepted part of the *Cannabis* plant. Instead, Plaintiffs deemed the issue irrelevant and failed to affirmatively identify or articulate the relevance of the evidence they now cite. Plaintiffs were of course free to advance their theory in lieu of addressing the Court's position, but they are not entitled to a "do-over" once that failed.

Finally, to the extent Plaintiffs dispute the Court's interpretation of § 802(16) and the CSA, their motion cannot be used to relitigate that matter, *see Acao v. Holder*, 2014 WL 6460120, at *1, and, regardless, the Court finds their arguments unpersuasive. The purported legal distinctions Plaintiffs draw between "non-psychoactive THC" versus "psychoactive THC" and permissible versus impermissible levels of THC find no support in the plain language of the statute. *See* ECF No. 129-9 at 8-9, 17-18.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Rule 60(b) motion (ECF No. 129) is DENIED. The pretrial conference will go forward as scheduled, and all associated deadlines remain in place.

IT IS SO ORDERED.

Dated: September 16, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court