UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                              Plaintiff,

      -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,
                            Defendants,
------------------------------------------------------------------X

Civ Action No: 15-cv-701 FPG/MJR

***PLAINTIFF'S***
***PRE-TRIAL STATEMENT***

       Pursuant to the Pre-Trial Order of Court of December 13, 2019, the Plaintiff makes the following Statements:

      **I.**     **Undisputed Facts**

a. Plaintiffs have been a husband and wife team of over-the-road truckers since 1998. They drive across the United States hauling various loads such as expedited food, pharmaceuticals and liquid chemicals.

b. On February 24, 2012, Plaintiff Douglas Horn was involved in a serious work-related semi-truck accident in which he suffered severe shoulder and back injuries. Over the months following the accident, he submitted to physical therapy and took various pain medications in an attempt to mitigate the trauma of the accident. However, those methods did not work.

c. In September, 2012, Plaintiff observed a magazine at a book store in Texas where they had stopped.

d. The article on Page 42 of the magazine states:

    i. ". . . .new product line called Dixie X, which contains 0% THC . . .";

    ii. " the non-psychoactive products . . ."

e. After review of that magazine, Plaintiff continued to research the product and found You Tube videos by the CEO of the Company, "Tripp Keber."

f. The YouTube videos dated August 8 and August 23, 2012 they viewed can be found at:

   i. https://youtu.be/Urlwtw_xQ48

   ii. https://youtu.be/yDjIGXS58ds

   iii. https://youtu.be/k42_Kpp13mk

g. In these videos, Defendants' CEO states continuously that the products are "THC-free", there was "no THC" and it had "0% THC."

h. Plaintiffs further investigated the product by reviewing the Frequently Asked Questions ("FAQs") on the Company website in September, 2012. **"What is the difference between CBD from hemp and CBD from medical cannabis?"** (bold in the original).

"While the two plants are botanically related, _our hemp contains no THC_ and numerous medical studies have shown CBD to have significant potential health benefits from a variety of ailments ranging from epilepsy to pain management. Medical cannabis contains THC and may provide relief from various ailments, however, with a psychotropic effect." Emphasis added.

i. Defendants' Dixie's answers to their FAQs changed dramatically over the years to its April 8, 2015 FAQ stating the following:

**"Does Cannibidiol (CBD) and other natural hemp based constituents show up on a drug test?"** (bold in the original).

"Most workplace drug screens and tests target delta9-tetrahydrocannabinol (THC) and do not detect the presence of Cannabidiol (CBD) _or other legal natural hemp based constituents_. However, studies have shown that eating hemp foods and oils _can cause confirmed positive results_ when screening urine and blood specimens. Accordingly, if you are subject to any form of drug testing, _we recommend (as does the United States Military) that you DO-NOT ingest our products_, and consult with your healthcare, drug screening/testing company or employer." Emphasis added.

j.  As regularly required by his employer, Plaintiff Douglas Horn was subject to random drug testing (urine) over the years. Plaintiff passed these tests without incident over the 14 years he was a trucker.

k.  Douglas Horn did not, and has no employment or criminal history of smoking marijuana.

l.  On September 17, 2012, Plaintiff ordered the Defendants' "Dixie X CBD Dew Drops 500mg Tincture. He then ingested it as directed.

m.  On October 9, 2012, as he had regularly done over the 14 years prior, Plaintiff Douglas Horn submitted to a required, random, urine drug test screening. Plaintiff was confirmed for a positive test result for "marijuana metabolite" with a result of 29 ng/ml well over the cutoff concentration limit.

n.  Almost immediately thereafter, Plaintiff was terminated from his career as a trucker, and referred to required drug education courses through a Substance Abuse Professional Evaluation program ("SAP").

o.  Upon the positive test, on October 18, 2012, Plaintiff ordered another (unopened) batch of the Dew Drops tincture for the purpose of having it tested at a lab.

p.  On or around October 29, 2012, Plaintiff found the lab known as "EMSL Analytical, INC" for the purpose of confirming that the defendants' product he took contained THC, specifically 170 ug/g of THC in it.

q.  The EMSL lab confirmed the Defendants' product contained THC contrary to all of Defendants' advertising and promotional materials.

r.  Plaintiff received from the National Director at EMSL lab, Scott Van Etten. This email of November 8, 2012 states:

"Douglas,

"Your report is attached. Since the *sample contained THC,* I may not be able to return it to you as per our DEA registration. I am checking on that. I'll send you an email either way . . .. " (Emphasis Added)."

and later that day at 3:27 p.m.

"Douglas

We can't return your sample."

s.  Defendants' Certificates of Analysis that were produced to Defendants' expert witness Dr. Cindy Orser as a representative sampling of the testing Defendants allegedly conducted as to the product in question. Defendants' Certificates actually show the presence of an amount of .05% and .04% respectively of THC.

t.  The label on Defendants' tincture product that Plaintiff took and that which was tested, shows no reference to THC or Controlled Substances.

u.  On May 2, 2012 Dixie Elixirs and Edibles' (the "THC-infused products company") issued a press release announcing their launch of the Dew Drops tincture product at issue, and their breaking new ground in the category of non-THC-infused products.

## II. Claims to be Pursued at Trial

a.  RICO – 18 U.S.C. 1962(c) in Count II of Plaintiff's Complaint;

b.  Fraudulent Inducement in Count III of Plaintiff's Complaint.

## III. Damages

Plaintiff's damages are lost wages and benefits fully described in Plaintiff's Exhibit #14 in his Exhibit List. In addition, Plaintiff will seek punitive damages based upon two causes of action in an amount to be determined at trial.

## IV. Expert Testimony

Plaintiff has two expert witnesses:

4

1)      Dr. Kenneth Graham is a Forensic Toxicologist and Pharmacologist educated at Temple University. In summary, Dr. Graham has had multiple work positions in these areas, and has been Court qualified in multiple jurisdictions in the United States to give testimony in these areas. Dr. Graham is expected to testify as to inter alia the illegality of Defendants' tincture product taken by plaintiff, as well as the Defendants' advertising and labelling of same relevant to Plaintiff's causes of action. Dr. Graham will testify consistent with his reports disclosed in discovery in this matter.

2)      Dr. Mark Zaporowski is Plaintiff's Economist and is Professor of Economics and Finance at Canisius College since 1995. He is Chairman of the Department of Economics since 2010. Dr. Zaporowski has written multiple publications in Economics, received multiple Honors and has served in multiple cases as an expert witness in this field. Dr. Zaporowski is expected to testify consistent with his report in this case as to Plaintiff's economic damages since taking the product and his termination from employment.

Dated: New York, New York  
September 17, 2020

BENJAMIN ♦ HART, P.C.

*Jeffrey Benjamin*  
Jeffrey Benjamin, Esq.,  
Attorney for Plaintiff HORN  
5 Penn Plaza, 23rd Floor  
New York, New York 10001  
(212) 835-1532