UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DOUGLAS J. HORN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MEDICAL MARIJUANA, INC., DIXIE ELIXIRS AND EDIBLES, RED DICE HOLDINGS, LLC, and DIXIE BOTANICALS,<br><br>　　　　　　Defendants. | **AMENDED PRETRIAL STATEMENT OF DEFENDANTS DIXIE ELIXIRS AND EDIBLES**<br><br>Case No. 1:15-cv-00701-FPG |

_____

Pursuant to the Court's Pretrial Order issued December 13, 2019, Text Order of August 18, 2020, FRCP 26(a)(3) and WDNY Local Rule 16(e)(2), defendants DIXIE ELIXIRS AND EDIBLES ("DIXIE") submit the following amended pretrial statement:

**A.   Undisputed Facts**

1. This is an action for damages originally brought by two plaintiffs, Douglas J. Horn and Cindy Harp-Horn, asserting nine "counts" or claims for relief.

2. By order dated April 17, 2019, this Court granted summary judgment to the defendants, dismissing all but Count II (RICO) and Count III (Fraudulent Inducement) of the complaint and dismissing all counts or claims of co-plaintiff Cindy Harp-Horn.  Cindy Harp-Horn is no longer a plaintiff in this action.

3. The complaint relates to Cindy Harp-Horn's alleged purchase in September 2012 and plaintiff, Douglas Horn's, alleged use in October 2012 of a product known as Dixie X CBD Dew Drops 500 mg Tincture ("the product at issue").

4. The plaintiff has alleged that he became aware of the product from an "article" in the Fall 2012 issue of High Times Magazine.

5. None of the defendants commissioned, wrote or paid for that article.

6. At the time of this product's purchase, plaintiff was a professional over-the-road hazmat commercial truck driver for Enterprise Trucking.

7. Plaintiff's employer required him to submit to random urinalysis screenings.

8. One such urinalysis screening occurred on or about October 9, 2012.

9. On October 11, 2012, plaintiff was informed by his employer that his urine had tested positive for tetrahydrocannabinol ("THC").

10. Douglas Horn claims that Enterprise Trucking terminated him due to this failed urinalysis exam.

11. Plaintiff conducted no fact discovery in this action.

12. Plaintiff made no independent investigation of the product's THC content prior to using the product.

13. The contents of the actual bottle of the product plaintiff allegedly used was never tested.

14. The second bottle of product plaintiff allegedly sent for testing was destroyed before plaintiff commenced this action.

15. Other than deposing defendants' science expert, Dr. Cindy Orser, and economic expert, Charles Amodio, plaintiff conducted no discovery this action.

**B.   Issues of Law Involved and Any Unusual Questions**

1. Due on September 25, 2020.

**C.   Proposed Jury Instructions**

1. Due 30 days prior to trial.

**D.     List of Witnesses**

      1.     Due 30 days prior to trial.

**E.     Expert Testimony**

      1.     DIXIE expect to call as an expert witness Charles S. Amodio, CPA, CFF, MAFF, MBA, of Ferraro, Amodio & Zarecki, CPAs.  He is a licensed certified public accountant experienced in calculating past and future lost earnings and economic damages.  He has been qualified as an expert in those areas in numerous actions.  He is expected to testify that any economic loss to plaintiff, Douglas Horn, is no greater than $121,263.00.  The material upon which Mr. Amodio is expected to base his expert testimony is plaintiff's wage, compensation and benefits history, his personal and partnership income tax returns, his 401(k) statements, the deposition testimony of plaintiff and his wife, Cindy Harp-Horn, and any other materials or evidence either referenced in Mr. Amodio's expert report dated September 29, 2017 (attached hereto as **Exhibit A**) or introduced by the plaintiff during the trial of this action.

      2.     DIXIE may also call as an expert witness Cindy S. Orser, Ph.D., Chief Science Officer and Lab Director of CLIP Labs in San Diego, California.  Dr. Orser is experience in setting up and securing ISO-17025:2017 accreditation and state validation certification for cannabis testing laboratories.  Dr. Orser is expected to testify in a manner consistent with the findings and opinions expressed in her expert report dated September 29, 2017 (attached hereto as **Exhibit B**).  She is expected to testify that without any analytical laboratory test results showing what was contained in the actual Dixie Elixir product used by Mr. Horn, no one can opine with any degree of scientific certainty or confidence that it was the Dixie product that caused Mr. Horn to fail his random DOT urine test of October 9, 2012. Dr. Orser is expected further to testify as to the analysis and investigation completed by her, and any other matters reflected within her report.

The material upon which Dr. Orser is expected to base her expert testimony is set forth in her expert report and any other materials or evidence introduced by the plaintiff during the trial of this action.

**F.     List of Exhibits**

      1.    See Defendants' Trial Exhibits List attached hereto as **Exhibit C**.

**G.     List of Deposition Testimony**

      1.    DIXIE do not intend to offer any deposition testimony into evidence, except as may be necessary and appropriate on cross-examination of plaintiff's fac and expert witnesses.

**H.     Itemized Statement of Special Damages**

      1.    Not applicable to DIXIE.

DATED:     New York, New York
             September 21, 2020

                           Jean-Claude Mazzola
                           MAZZOLA LINDSTROM LLP
                           *Attorneys for Defendants*
                           *Dixie Elixirs and Edibles*
                           1350 Avenue of the Americas
                           Second Floor
                           New York, New York 10019
                           (646) 250-6666