# Dixie
# Motion in Limine
# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DOUGLAS J. HORN and CINDY HARP-HORN,

*Plaintiffs,*

-against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

*Defendants.*

Civil Action No. 15-cv-00701-G

**DEFENDANT'S FIRST SET OF**
**INTERROGATORIES TO**
**PLAINTIFFS**

Defendant, Dixie Elixirs, LLC (sued incorrectly herein as Dixie Elixirs and Edibles), by and through its counsel, Messner Reeves LLP, by and through its counsel, Messner Reeves LLP, hereby provides its First Set of Interrogatories pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court:

## DEFINITIONS

1.      "Defendant" or "Responding Party" refers to Defendant Dixie Elixirs, LLC (sued incorrectly herein as Dixie Elixirs and Edibles), including its agents, representatives, employees, and any other persons or entities acting or purporting to act on Dixie Elixirs, LLC.

2.      "Plaintiffs" refers to DOUGLAS J. HORN and CINDY HARP-HORN.

3.      The phrase "the elixir product" refers to the actual Dixie X CBD Dew Drops 500mg Tincture, with 500 mg of CBD product that plaintiffs allegedly purchased on or about October 1, 2012, as alleged in paragraph "14" of the complaint, or may refer more generally to the Dixie X CBD Dew Drops 500mg Tincture, with 500mg of CBD product that was allegedly advertised and marketed to the general public between February 24, 2012 and October 1, 2012.

4.      The term "person(s)" shall mean a natural person or any business, partnership, joint venture, corporation, unincorporated association, government, government agency, quasi-public agency, and any other form of entity.

5.      The term "document(s)" shall include physical documents as well as electronically stored information and includes every form of record, any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combination thereof, such as records of correspondence, reports, memoranda, notes, logs, financial statements, journal entries, books of account, and any other writings, whether recorded by handwriting, printing, or by photographic means, tape, email, website, computer disk, and any other form of data storage compilation, or mechanical or electronic recording. Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

6.      The term "communication(s)" shall mean, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, facsimile, and/or any other process, electronic or otherwise.

7.      The terms "and" and "or" shall, where the context permits, shall be construed to mean "and/or."

8.      The terms "regarding" or "related to" or any variation thereof shall mean referring to, mentioning, reflecting, containing, pertaining to, evidencing, involving, describing, discussing, responding to, supporting, opposing, constituting, or being a draft, copy or summary of, in whole or in part.

9.      Words used in the singular shall, where the context permits, include the plural, and words used in the plural shall, where the context permits, include the singular.

10.     Where the words "include or "including" appear, the meaning intended is "including, but not limited to." The words "each", "all", and "any" mean "any and all" or "each and every."

## INSTRUCTIONS

1.      Responses to these Interrogatories are to be based on all information, in whatever form or from whatever source within Responding Party's possession, custody, or control. Responding Party must make a diligent inquiry of any and all persons, documents, and other sources that may have any information relating to these document requests.

2.      If Responding Party objects to any Interrogatory on the ground of a claim of privilege, and it does not provide any response based on that assertion, identify at the time of Responding Party's response the specific grounds upon which it bases its objection and identify in its objection for each withheld document or portion thereof the following:

a.      Its date;

b.      The identity of its author, the addressees of the document, and any other recipients;

c.      The relationship of the author, addressees, and recipients to each other;

d.      The type of document (e.g. letter, chart, memorandum, email, etc.)

e.      A summary of its contents or the general subject matter of the document; and

f.      The nature of the privilege or other rule of law relied upon and, if the privilege is governed by state law, indicate the state's privilege rule being invoked.

3.      If information once in Responding Party's possession and/or control is requested, and such information is no longer in its possession and/or control, identify any person or entity

now in possession of or exercising control over such information. If documents or information were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

4.      If Responding Party is unable to fully respond to any Interrogatory, it is required to supply the information that is available and explain why its response is incomplete, the efforts made by it to obtain responsive information, and the source from which all information may be obtained to the best of its knowledge or belief.

5.      All of the following Interrogatories shall be continuing in nature, and Responding Party must supplement its responses as information requested becomes known or available to it in compliance with applicable rules of procedure if it obtains further responsive information.

## INTERROGATORIES

**INTERROGATORY NO. 1**
How often do Plaintiffs use, smoke, inject, consume THC-based products? In answering this Interrogatory, please identify the type, quantity and frequency of product used.

**RESPONSE:**


**INTERROGATORY NO. 2**
If Plaintiffs drink alcoholic beverages or use any illicit drug or narcotic, please state; the type of alcoholic beverages or illicit drug that they drink or use; when and where they drink or use such substances; and the amount of each beverage or substance that they use per week.

**RESPONSE:**

**INTERROGATORY NO. 3**
Have Plaintiffs ever been diagnosed as alcoholics or drug dependent persons and state what person, institution or agency so diagnosed them.

**RESPONSE:**

**INTERROGATORY NO. 4**
Was a police report compiled at the scene of the alleged vehicle accident on or around February 23, 2012, as alleged in paragraph "12" of the Complaint? If so, please provide any results from said drug and alcohol tests performed.

**RESPONSE:**


**INTERROGATORY NO. 5**
Were the Plaintiffs ever subjected to a drug or alcohol test with any employer, including Enterprise Transportation Company? If so, please describe the results of those tests.

**RESPONSE:**

**INTERROGATORY NO. 6**
Were the Plaintiffs ever convicted of a crime, including crimes relates to driving under the influence of drug or alcohol? If so, please describe the crimes of which they were convicted, and when those convictions were filed.

**RESPONSE:**

Dated: New York, New York
       August 24, 2016

By: _____
    Wendy J. Lindstrom, Esq.
    Messner Reeves LLP
    *Attorneys for Defendants*
    Dixie Elixirs, LLC
    805 Third Avenue, 18th Floor
    New York, NY 10022
    (646) 663-1853
    wlindstrom@messner.com

To:    Frank T. Housh, Esq,
       Housh Law Offices, PLLC
       70 Niagara Street
       Buffalo, NY 14202
       *Attorneys for Plaintiffs*
       Douglas J. Horn, Cindy Harp-Horn


       Roy Mura, Esq.
       Eric T. Boron, Esq
       Mura & Storm
       930 Rand Building
       14 Lafayette Square
       Buffalo, New York 14203
       *Attorneys for Defendants*
       Medical Marijuana, Inc., Red Dice Holdings

{02022178 / 1}

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DOUGLAS J. HORN and CINDY HARP-HORN,

*Plaintiffs,*

-against-

MEDICAL MARIJUANA, INC., DIXIE ELIXIRS
AND EDIBLES, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

*Defendants.*

Civil Action No. 15-cv-00701-G

**REQUEST FOR PRODUCTION**
**OF DOCUMENTS FROM**
**PLAINTIFFS**

Defendant,  Dixie Elixirs, LLC (sued incorrectly herein as Dixie Elixirs and Edibles), by

and through its counsel, Messner Reeves LLP, hereby demands, pursuant to Rule 34 of the Federal

Rules of Civil Procedure that Plaintiffs produce at the office of the undersign within 30 days, all

documents set for as follows:

### DEFINITIONS

11.     "Defendant" or refers to Defendant Dixie Elixirs, LLC (sued incorrectly herein as

Dixie Elixirs and Edibles), including its agents, representatives, employees, and any other persons

or entities acting or purporting to act on Dixie Elixirs, LLC.

12.     "Plaintiffs" refers to DOUGLAS J. HORN and CINDY HARP-HORN.

13.     The phrase "the elixir product" refers to the actual Dixie X CBD Dew Drops 500mg

Tincture, with 500 mg of CBD product that plaintiffs allegedly purchased on or about October 1,

2012, as alleged in paragraph "14" of the complaint, or may refer more generally to the Dixie X

CBD Dew Drops 500mg Tincture, with 500mg of CBD product that was allegedly advertised and

marketed to the general public between February 24, 2012 and October 1, 2012.

14.     The term "person(s)" shall mean a natural person or any business, partnership, joint venture, corporation, unincorporated association, government, government agency, quasi-public agency, and any other form of entity.

15.     The term "document(s)" shall include physical documents as well as electronically stored information and includes every form of record, any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combination thereof, such as records of correspondence, reports, memoranda, notes, logs, financial statements, journal entries, books of account, and any other writings, whether recorded by handwriting, printing, or by photographic means, tape, email, website, computer disk, and any other form of data storage compilation, or mechanical or electronic recording. Every draft or non-identical copy of a "document" is a separate "document" as that term is used herein.

16.     The term "communication(s)" shall mean, without limitation, any act, action, oral speech, written correspondence, contact, expression of words, thoughts, and/or ideas, or transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, facsimile, and/or any other process, electronic or otherwise.

17.     The terms "and" and "or" shall, where the context permits, shall be construed to mean "and/or."

18.     The terms "regarding" or "related to" or any variation thereof shall mean referring to, mentioning, reflecting, containing, pertaining to, evidencing, involving, describing, discussing, responding to, supporting, opposing, constituting, or being a draft, copy or summary of, in whole or in part.

19.     Words used in the singular shall, where the context permits, include the plural, and words used in the plural shall, where the context permits, include the singular.

20.     Where the words "include or "including" appear, the meaning intended is "including, but not limited to." The words "each", "all", and "any" mean "any and all" or "each and every."

## INSTRUCTIONS

1.     Responses to these Requests are to be based on all information, in whatever form or from whatever source within your possession, custody, or control. You must make a diligent inquiry of any and all persons, documents, and other sources that may have any information relating to these document requests.

2.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, you are instructed to produce documents as they are kept in the usual course of business or to organize and label the documents to correspond with the Requests. To the extent that responsive documents are located in file folders, binders, or other containers, labels and covers of such file folders, binders, or other containers are requested to be produced with the documents.

3.     If you object to any document request on the ground of a claim of privilege, and you do not provide any document based on that assertion, in accordance with Federal Rule of Procedure 26(b)(5) and identify at the time of your response the specific grounds upon which you base your objection, and identify at the time of your response the specific  grounds upon which you base your objection, and identify in your objection for each withheld document or portion thereof the following:

        a.     Its date;

       b.      The identity of its author, the addressees of the document, and any other recipients;

       c.      The relationship of the author, addressees, and recipients to each other;

       d.      The type of document (e.g. letter, chart, memorandum, email, etc.)

       e.      A summary of its contents or the general subject matter of the document; and

       f.      The nature of the privilege or other rule of law relied upon and, if the privilege is governed by state law, indicate the state's privilege rule being invoked.

4.     If documents once in your possession and/or control are requested, and such documents are no longer in your possession and/or control, state when such documents were recently in your possession and what disposition was made of it, including identification of the person or entity now in possession of or exercising control over such documents. If documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

5.     Documents and things should be produced in full, without redaction, abbreviation or expurgation, regardless of whether you consider the entire document to be relevant or responsive.

6.     Documents and things not otherwise responsive to any of the discovery requests herein should be produced if such documents and things mention, discuss, refer to, or explain one or more documents and things called for by these Requests.

7.     If you are unable to fully respond to any request, you are required to supply the information that is available and explain why your response is incomplete, the efforts made by you to obtain responsive documents and things and/or information, and the source from which all

responsive documents and things and/or information may be obtained to the best of your knowledge or belief.

8.    All of the following requests for the production of documents shall be continuing in nature, and you must supplement its responses as information requested becomes known or available to you in compliance with applicable rules of procedure if you obtain further responsive information.

## DOCUMENTS OR THINGS TO BE PRODUCED

1.    Documents evidencing, reflecting or referring to communications between plaintiffs and DIXIE ELIXIRS, LLC between February 24, 2012 and August 5, 2015 concerning any of the following topics or issues: (a) plaintiffs' alleged purchases in 2012 of an "elixir" product called Dixie X CBD Dew Drops 500mg Tincture; (b) "natural medicines"; (c) natural treatments for relief of pain, nausea, anxiety and/or convulsions; (d) industrial hemp products; (e) imported hemp products; (f) Cannabidiol ("CBD"); (g) delta-9 tetrahydrocannabinol ("THC"); (h) anti-inflammatory treatment; (i) prescription medication; (j) magazine advertisements for a product line called Dixie X; (k) random urinalysis screening; (l) toxicology screening; (m) EMSL Analytical, Inc. laboratory testing; (n) state or U.S. DEA regulations; and/or, (o) claims of Dixie X products being legal, safe, and/or non-narcotic.

2.    Documents evidencing, reflecting or referring to communications between plaintiffs and co-defendants MEDICAL MARIJUANA, INC., DIXIE BOTANICALS and/or RED DICE HOLDINGS, LLC between February 24, 2012 and August 5, 2015 concerning any of the following topics or issues: (a) plaintiffs' alleged purchases in 2012 of an "elixir" product called Dixie X CBD Dew Drops 500 mg Tincture; (b) natural medicines; (c) natural treatments for relief of pain, nausea, anxiety and/or convulsions; (d) industrial hemp products; (e) imported hemp

products; (f) CBD; (g) THC; (h) anti-inflammatory treatment; (i) prescription medication; (j) magazine advertisements for a product line called Dixie X; (k) random urinalysis screening; (l) toxicology screening; (m) EMSL Analytical, Inc. laboratory testing; (n) state or U.S. DEA regulations; and/or, (o) claims of Dixie X products being legal, safe, and/or non-narcotic.

3.      Documents evidencing, reflecting or referring to communications between "'jameshorn65@hotmail.com" and MEDICAL MARIJUANA INC., RED DICE HOLDINGS, DIXIE ELIXIRS, LLC and/or DIXIE BOTANICALS between February 24, 2012 and August 5, 2015 concerning any of the following topics or issues: (a) plaintiffs' alleged purchases in 2012 of an "elixir" product called Dixie X CBD Dew Drops 500mg Tincture; (b) "natural medicines"; (c) natural treatments for relief of pain, nausea, anxiety and/or convulsions; (d) industrial hemp products; (e) imported hemp products; (f) Cannabidiol ("CBD"); (g) delta-9 tetrahydrocannabinol ("THC"); (h) anti-inflammatory treatment; (i) prescription medication; (j) magazine advertisements for a product line called Dixie X; (k) random urinalysis screening; (l) toxicology screening; (m) EMSL Analytical, Inc. laboratory testing; (n) state or U.S. DEA regulations; and/or, (o) claims of Dixie X products being legal, safe, and/or non-narcotic.

4.      Documents evidencing, reflecting or referring to communications between "ladydeathz@hotmail.com" and MEDICAL MARIJUANA INC., RED DICE HOLDINGS, DIXIE ELIXIRS, LLC and/or DIXIE BOTANICALS between February 24, 2012 and August 5, 2015 concerning any of the following topics or issues: (a) plaintiffs' alleged purchases in 2012 of an "elixir" product called Dixie X CBD Dew Drops 500mg Tincture; (b) "natural medicines"; (c) natural treatments for relief of pain, nausea, anxiety and/or convulsions; (d) industrial hemp products; (e) imported hemp products; (f) Cannabidiol ("CBD"); (g) delta-9 tetrahydrocannabinol ("THC"); (h) anti-inflammatory treatment; (i) prescription medication; (j) magazine

advertisements for a product line called Dixie X; (k) random urinalysis screening; (l) toxicology screening; (m) EMSL Analytical, Inc. laboratory testing; (n) state or U.S. DEA regulations; and/or, (o) claims of Dixie X products being legal, safe, and/or non-narcotic.

5.     Documents evidencing, concerning, or referring to anti-inflammatory and/or pain relief medication prescribed for plaintiff Douglas J. Horn between February 24, 2012 and October 9, 2012.

6.     Documents evidencing, concerning or referring to non-prescription anti-inflammatory and/or pain relief medication taken by plaintiff Douglas J. Horn between February 24, 2012 and October 9, 2012.

7.     Documents evidencing, reflecting or referring to recreational drug purchases and/or use by plaintiff Douglas J. Horn between February 24, 2012 and October 9, 2012.

8.     Documents evidencing, reflecting or referring to recreational drug purchases and/or use by plaintiff Cindy Harp-Horn between February 24, 2012 and October 9, 2012.

9.     Documents evidencing, reflecting or referring to production, extraction and/or formulation regarding the Dixie X CBD Dew Drops 500 mg Tincture, with 500 mg of CBD (the "elixir" product referenced at paragraph "14" of the complaint).

10.     Documents evidencing, reflecting or referring to research and development of the formulation(s) used by any defendant between February 24, 2012 and October 1, 2012 to produce the elixir product.

11.     Documents evidencing, reflecting or referring to plaintiff's purported purchase, use and/or consumption on or about October 1, 2012, as alleged at paragraph "14" of the complaint, of the elixir product.

12.     Documents evidencing, reflecting or referring to independent laboratory testing of the elixir product after October 1, 2012 performed by EMSL Analytical, Inc. at plaintiffs' request, including, but not limited to, reports and/or analysis.

13.     Documents evidencing, reflecting or referring to invoices issued to plaintiffs in 2012 by DIXIE ELIXIRS, LLC.

14.     Documents evidencing, reflecting or referring to invoices issued to plaintiffs in 2012 by co-defendants, DIXIE BOTANICALS, MEDICAL MARIJUANA, INC. and/or RED DICE HOLDINGS, LLC.

15.     Documents evidencing, reflecting or referring to packing slips reflecting merchandise shipped to plaintiffs in 2012 by co-defendants MEDICAL MARIJUANA, INC. and/or RED DICE HOLDINGS, LLC, DIXIE BOTANICALS.

16.     Documents evidencing, reflecting or referring to packing slips reflecting merchandise shipped to plaintiffs in 2012 by DIXIE ELIXIRS, LLC, and/or by Dixie Holdings, LLC.

17.     Documents evidencing, reflecting or referring to results of plaintiff's drug tests performed at the request of Enterprise Transportation Company between January 1, 2012 and December 31, 2012, including but not limited to random urinalysis screening and/or other toxicology screenings.

18.     Documents evidencing, reflecting or referring to plaintiff's medical treatment records and/or medical testing records from the period January 1, 2010 to October 9, 2012. Please provide HIPAA-compliant authorizations signed by plaintiff allowing DIXIE ELIXIRS, LLC to obtain each plaintiffs' respective medical treatment records and medical testing records for that period.

{02022178 / 1}

19.     Documents evidencing, reflecting or referring to laboratory analysis of plaintiffs' 2012 drug testing, including but not limited to random urinalysis screening of plaintiffs and/or other toxicology screenings of plaintiffs that occurred in October 2012.

20.     Documents evidencing, reflecting or referring to clinical analysis of the elixir product purportedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint.

21.     Documents evidencing, reflecting or referring to the composition of the elixir product purportedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint.

22.     Documents evidencing, reflecting or referring to the chemical and physical effects on plaintiff's bodies of the elixir product purportedly purchased by plaintiffs on or around October 1, 2012.

23.     Documents evidencing, reflecting or referring to plaintiffs' purported lost wages allegedly caused by acts and/or omissions of DIXIE ELIXIRS, LLC, DIXIE BOTANICALS MEDICAL MARIJUANA, INC. and/or RED DICE Holdings LLC.

24.     Documents evidencing, reflecting or referring to plaintiffs' purported medical related expenses allegedly caused by acts and/or omissions of DIXIE ELIXIRS, LLC, DIXIE BOTANICALS MEDICAL MARIJUANA, INC. and/or RED DICE Holdings LLC.

25.     Documents evidencing, reflecting or referring to plaintiffs' purported loans taken allegedly caused to occur because of acts and/or omissions of DIXIE ELIXIRS, LLC, DIXIE BOTANICALS MEDICAL MARIJUANA, INC. and/or RED DICE Holdings LLC.

26.     Documents evidencing, reflecting or referring to plaintiffs' purported consequential damages allegedly caused by acts and/or omissions of DIXIE ELIXIRS, LLC, DIXIE BOTANICALS MEDICAL MARIJUANA, INC. and/or RED DICE Holdings LLC.

27.     Documents evidencing, reflecting or referring to plaintiffs' purported statutory damages allegedly caused to occur because of acts and/or omissions of DIXIE ELIXIRS, LLC, DIXIE BOTANICALS MEDICAL MARIJUANA, INC. and/or RED DICE Holdings LLC.

28.     Documents evidencing, reflecting or referring to plaintiffs' alleged loss of livelihood, loss of benefits, loss of insurance, loss of pension and/o loss of job security as alleged in paragraph "20" of the complaint.

29.     Documents evidencing, reflecting or· referring to plaintiffs' alleged inability as alleged in paragraph "21" of the complaint to continue in commercial trucking for at least seven years from October 11, 2012.

30.     Documents evidencing, reflecting or referring to alleged advertising materials, statements, and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint will not produce a positive toxicology test for illegal substances.

31.     Documents evidencing, reflecting or referring alleged advertising materials, statements, and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint was safe and legal for consumers.

32.     Documents evidencing, reflecting or referring to alleged advertising materials, statements, and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint had been adequately tested.

33.     Documents evidencing, reflecting or referring to alleged advertising materials, statements and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint complied with New York State and/or U.S. federal laws and regulations.

34.     Documents evidencing, reflecting or referring to alleged advertising materials, statements, and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint contained no THC.

35.     Documents evidencing, reflecting or referring to conduct of DIXIE ELIXIRS, LLC from the period February 24, 2012 through October 1, 2012 that was allegedly materially misleading to plaintiffs.

36.     Documents evidencing, reflecting or referring to plaintiffs' allegations that DIXIE ELIXIRS, LLC knew or should have known that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint was allegedly a controlled substance, illegal and/or otherwise in violation of federal or state law.

{02022178 / 1}

37.    Documents evidencing, reflecting or referring to plaintiffs' allegations that DIXIE ELIXIRS, LLC concealed the true chemical content of the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 from consumers in advertising and/or labeling.

38.    Documents evidencing, reflecting or referring to applicable insurance agreements providing insurance coverage for the acts and/or omissions complained of in the complaint of any defendant.

39.    Documents evidencing, reflecting or referring to communications between plaintiffs and EMSL Analytical, Inc. concerning the elixir product between October 1, 2012 and the present.

40.    Documents evidencing, reflecting or referring to refusals by EMSL Analytical, Inc. to test and/or analyze the elixir product between October 1, 2012 and the present.

41.    Documents evidencing, reflecting or referring to refusals by EMSL Analytical, Inc. to place the elixir product into the U.S. Mail between October 1, 2012 and the present.

42.    Documents evidencing, reflecting or referring to testing aborted by EMSL Analytical, Inc. of the elixir product between October 1, 2012 and the present.

43.    Documents evidencing, reflecting or referring to marketing of the elixir product to any consumer between February 24, 2012 and October 1, 2012 by DIXIE ELIXIRS, LLC.

44.    Documents evidencing, reflecting or referring to distribution of the elixir product to any consumer or business between February 24, 2012 and October 1, 2012 by DIXIE ELIXIRS, LLC.

45.    Documents evidencing, reflecting or referring to promotion, advertising and/or sale of the elixir product to any consumer between February 24, 2012 and October 1, 2012 by DIXIE ELIXIRS, LLC.

46.     Documents evidencing, reflecting or referring to alleged misrepresentations made to any consumer or business other than plaintiffs between February 24, 2012 and October 1, 2012 by DIXIE ELIXIRS, LLC concerning the marketing, distribution, promotion, advertising and/or sale of the elixir product.

47.     Documents evidencing, reflecting or referring to alleged representations made to any consumer or business other than plaintiffs between February 24, 2012 and October 1, 2012 by DIXIE ELIXIRS, LLC that the Dixie products were safe and legal for all consumers to consume.

48.     Documents evidencing, reflecting or referring to the identity of employees or agents of DIXIE ELIXIRS, LLC alleged to be responsible for marketing, manufacturing and/or distributing the elixir product between February 24, 2012 and October 1, 2012, whether to plaintiffs specifically or to other consumers and/or businesses.

49.     Documents evidencing, reflecting or referring to plaintiffs' salaries, wages, benefits and/or any other compensation received from their employers between January 1, 2012 and December 31, 2012.

50.     Documents evidencing, reflecting or referring to New York State Commercial Driver Licenses held by plaintiffs between February 24, 2012 and the present.

51.     Documents evidencing, reflecting or referring to communications between plaintiffs and the New York State Department of Motor Vehicles between February 24, 2012 and the present concerning New York State Commercial Driver Licenses held or once held by plaintiffs.

52.     Documents evidencing, reflecting or referring to communications between plaintiffs and the U. S. Department of Transportation between February 24, 2012 and the present

concerning Commercial Driver Licenses, toxicology test results and/or random urinalysis screenings.

53.     Documents evidencing, reflecting or referring to plaintiffs' purported loss of accumulated employment benefits and/or other financial benefits or assets as a result of the events alleged by paragraphs "12" through "21" of the complaint. Please provide authorizations signed by plaintiffs allowing DIXIE ELIXIRS, LLC to obtain from Enterprise Transportation Company as well as any other employer of plaintiffs, between January 1, 2012 and the present, plaintiffs' employment records, including, but not limited to, records evidencing, reflecting or referring to plaintiffs' time sheets and/or other records of hours worked, expense reports, salary records, wage records, expense reimbursement records, paid time off/vacation records, and fringe benefit records.

54.     Documents evidencing, reflecting or referring to plaintiffs' pay stubs from the year 2012.

55.     Documents evidencing, reflecting or referring to plaintiffs' Form 1099-Misc.'s from the year 2012.

56.     Documents evidencing, reflecting or referring to plaintiffs' Form W-2's from the year 2012.

57.     Documents evidencing, reflecting or referring to plaintiffs' pay stubs, Form 1099-Misc.'s, and/or Form W-2's from the years 2011, 2013, 2014, 2015, and 2016.

58.     Documents evidencing, reflecting or referring to plaintiffs' federal and/or state income tax returns as filed for tax years 2011, 2012, 2013, 2014, 2015, and 2016. Please provide IRS Form 4506 authorizations signed by plaintiffs allowing DIXIE ELIXIRS, LLC to obtain copies of each of the respective plaintiff's federal tax returns as filed for tax years 2011, 2012, 2013, 2014, 2015, and 2016.

59.     Documents evidencing, reflecting or referring to Plaintiff Douglas J. Horn being informed on October 1, 2012, as alleged at paragraph "17" of the complaint, that he had tested positive for a high level of THC.

60.     Documents evidencing, reflecting or referring to Plaintiff Douglas J. Horn being informed by any person or entity during any day of calendar year 2012 besides October 1, 2012 that he had tested positive for any drug or chemical compound, including but not limited to THC.

61.     Documents evidencing, reflecting or referring to plaintiff Cindy Harp-Horn being informed by any person or entity during calendar year 2012 that she had tested positive for any drug or chemical compound, including but not limited to THC.

62.     Documents evidencing, reflecting or referring to employment policies of Enterprise Transportation Company in effect during 2012 concerning random urinalysis screening of employees or independent contractors, and/or toxicology screening of employees or independent contractors, and/or drug testing of employees or independent contractors, and/or chemical testing of the blood or urine of employees or independent contractors.

63.     Documents evidencing, reflecting or referring to Plaintiff Douglas J. Horn being terminated from any employment during the period January 1, 2000 to the present for having failed any random urinalysis screening, any toxicology screening, and/or any drug or chemical testing required by an employer and/or the U.S. Department of Transportation.

64.     Documents evidencing, reflecting or referring to plaintiff Cindy Harp-Horn being terminated from any employment during the period January 1, 2000 to the present for having failed any random urinalysis screening, any toxicology screening, and/or any drug or chemical testing required by an employer and/or the U.S. Department of Transportation.

65.     Documents evidencing, reflecting or referring to offers or opportunities from plaintiff's employer and/or the U.S. Department of Transportation for Plaintiff Douglas J. Horn to enter into a voluntary rehabilitation program after allegedly testing positive for THC in October 2012.

66.     Documents evidencing, reflecting or referring to efforts of the plaintiffs to obtain new employment after being terminated from employment with Enterprise Transportation Company, as alleged at paragraph "17" of the complaint.

67.     Documents evidencing, reflecting or referring to purchase orders plaintiffs placed to obtain additional quantities of the Dixie X CBD tincture, as alleged in paragraph "18" of the complaint, after allegedly testing positive for THC in October 2012.

68.     Documents evidencing, reflecting or referring to communications plaintiffs had with each laboratory that plaintiffs sent additional quantities of the Dixie X CBD Tincture to subsequent to allegedly testing positive for THC in October 2012.

69.     Documents evidencing, reflecting or referring to each prescription drug, non-prescription drug, or other product plaintiffs obtained between January 1, 2012 and October 9, 2012 whose purpose was or was said to be in whole or in part to treat or relieve pain, nausea, anxiety and/or convulsions.

70.     Documents evidencing, reflecting or referring to the advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which DIXIE ELIXIRS, LLC allegedly represented the elixir product contains no illegal tetrahydrocannabinol.

71.     Documents evidencing, reflecting or referring to the advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which

DIXIE ELIXIRS, LLC allegedly represented the elixir product was "THC free" and/or "non-THC", as alleged in paragraph "28" of the complaint.

72.     Documents evidencing, reflecting or referring to information set forth in advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which DIXIE ELIXIRS, LLC allegedly falsely advertised and/or allegedly falsely marketed the elixir product.

73.     Documents evidencing, reflecting or referring to information set forth in advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which DIXIE ELIXIRS, LLC allegedly misrepresented the elixir product.

74.     Documents evidencing, reflecting or referring to wire fraud allegedly committed at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

75.     Documents evidencing, reflecting or referring to mail fraud allegedly committed at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

76.     Documents evidencing, reflecting or referring to unlawful activity allegedly carried out at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

77.     Documents evidencing, reflecting or referring to monetary transactions in property derived from specific unlawful activity allegedly called out at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

78.     Documents evidencing, reflecting or referring to interstate transportation of controlled substances allegedly committed at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

79.     Documents evidencing, reflecting or referring to interstate transportation of controlled substances allegedly committed at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC.

80.     Documents evidencing, reflecting or referring to telephone calls containing misrepresentations or omissions allegedly made at any time during the period February 24, 2012 through October 1, 2012 by DIXIE ELIXIRS, LLC in furtherance of alleged racketeering activity.

81.     Documents evidencing, reflecting or referring to alleged material misrepresentations, concealments and/or omissions made by DIXIE ELIXIRS, LLC at any time between February 24, 2012 and October 1, 2012 as to the ingredients, toxicology, and/or effects of the elixir product, and with full knowledge of the alleged falsities and/or with reckless disregard of the truth, as alleged at paragraph "51" of the complaint.

82.     Documents evidencing, reflecting or referring to the allegedly knowing sale by DIXIE ELIXIRS, LLC at any time between February 24, 2012 and October 1, 2012 of a defective, illegal and/or unreasonably dangerous elixir product.

83.     Documents evidencing, reflecting or referring to the allegedly illegal and harmful substances that were contained in the elixir product plaintiffs allegedly purchased and consumed, as alleged by paragraphs "58" and "59" of the complaint.

84.     Documents evidencing, reflecting or referring to the terms and provisions of the alleged written agreement plaintiffs allegedly entered into with MEDICAL MARIJUANA, INC., RED DICE HOLDINGS, LLC, DIXIE ELIXIRS, LLC, DIXIE BOTANICALS and/or Dixie Holdings, LLC, as alleged at paragraph "61" of the complaint.

85.     Documents evidencing, reflecting or referring to specific alleged representations and express warranties made by DIXIE ELIXIRS, LLC in connection with the sale of the elixir product, as alleged at paragraph "66" of the complaint.

86.     Documents evidencing, reflecting or referring to plaintiffs' allegation as set forth at paragraph DIXIE ELIXIRS, LLC have retained funds paid by plaintiffs.

87.     Documents evidencing, reflecting or referring to an alleged failure of DIXIE ELIXIRS, LLC to exercise due care in the processing of the elixir product at issue and/or in the distribution of the elixir product allegedly sold to plaintiffs in order to ensure its safety for human consumption, as alleged at paragraph "77" of the complaint.

88.     Documents evidencing, reflecting or referring to an alleged failure of DIXIE ELIXIRS, LLC to exercise due care in the product testing, reporting of the results of the toxicity levels, sale, marketing and/or distribution of the elixir product allegedly sold to plaintiffs, as alleged at paragraph "78" of the complaint.

89.     Documents evidencing, reflecting or referring to an alleged failure of DIXIE ELIXIRS, LLC to exercise due care to ensure that its products complied with all relevant state and federal laws and regulations, as alleged at paragraph "79" of the complaint.

90.     Documents evidencing, reflecting or referring to physical harm suffered by plaintiffs in the ingestion of caustic, toxic and/or illegal substance, as alleged at paragraph "84" of the complaint.

91.     Documents evidencing, reflecting or referring to plaintiffs' current employment, including but not limited to, plaintiffs' 2016 paystubs.

92.     Documents evidencing, reflecting or referring to plaintiffs' retainer agreement with Jeffrey Benjamin, P.C., and any record indicating the terms of plaintiffs' agreement as to how

plaintiffs are obligated to compensate Jeffrey Benjamin, P.C. for legal services provided to plaintiffs in this action.

93.     Documents evidencing, reflecting or referring to each controlled substance and/or listed chemical from the definitions and lists set forth in 18 U.S.C. §1961(1)(A) that DIXIE ELIXIRS, LLC allegedly manufactured, imported, received, concealed, bought, sold, or otherwise dealt with or in between February 24, 2012 and October 1, 2012.

94.     Documents evidencing, reflecting or referring to financial or fringe benefits other than salary and wages from their employer that plaintiffs allege they lost after October 1, 2012 as a result of plaintiff Douglas J. Horn allegedly testing positive for THC.

95.     Documents evidencing, reflecting or referring to actions plaintiffs took after October 1, 2012 to mitigate their damages.

96.     Documents evidencing, reflecting or referring to medical treatment plaintiffs received after October 1, 2012 that was necessitated by plaintiffs' alleged use and/or consumption of the elixir product on or after October 1, 2012.

PLEASE TAKE FURTHER NOTICE, that in the event you do not respond to this demand, a motion will be made to compel same seeking, among other things costs and disbursements, including reasonable attorneys' fees for your failure and refusal to so respond.

Dated: New York, New York
        August 24, 2016

By: _____
    Wendy J. Lindstrom, Esq.
    Messner Reeves LLP
    *Attorneys for Defendants*
    Dixie Elixirs, LLC
    805 Third Avenue, 18th Floor
    New York, NY 10022
    (646) 663-1853
    wlindstrom@messner.com

To:   Frank T. Housh, Esq,
      Housh Law Offices, PLLC
      70 Niagara Street
      Buffalo, NY 14202
      *Attorneys for Plaintiffs*
      Douglas J. Horn, Cindy Harp-Horn


      Roy Mura, Esq.
      Eric T. Boron, Esq
      Mura & Storm
      930 Rand Building
      14 Lafayette Square
      Buffalo, New York 14203
      *Attorneys for Defendants*
      Medical Marijuana, Inc., Red Dice Holdings