UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN and CINDY HARP-HORN,

*Plaintiffs*,

-against-

MEDICAL MARIJUANA, INC., DIXIE
HOLDINGS, LLC, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

*Defendants*.

Civil Action No.
15-cv-00701-FPG- MJR

Hon. Frank P. Geraci, Jr.
Chief U.S. District Judge

**Motion in Limine to Preclude Plaintiff's Proposed Trial
Exhibits Nos. 02, 03, 04, 07, 08, 09, 10, 13 & 14**

Mazzola Lindstrom, LLP
Attorneys for defendant Dixie Holdings, LLC
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
Tel:  646-216-8300
Cell: 646-250-6666
jeanclaude@mazzolalindstrom.com

Dated: September 25, 2020
         New York, New York

1

**PRELIMINARY STATEMENT**

Defendant Dixie Holdings, LLC by its undersigned counsel, hereby moves for an in limine order, barring introduction into evidence of plaintiff's proposed exhibits 02, 03, 04, 07, 08, 09, 10, 13, & 14, which are described as, respectively, FAQ by Defendant Dixie, Youtube videos, Dixie Press Release of May 2, 2012, Clinical Reference Laboratory test results, a report of testing lab EMSL Analytical, emails between plaintiff and EMSL, Defendants' Certificates of Analysis and reports of plaintiff's experts Kenneth Graham and Mark Zaporowski. Plaintiff's proposed exhibits will be addressed in numerical order. Also accompanying this motion is the Affirmation of Jean-Claude Mazzola, exhibits annexed thereto and a defense expert affidavit.[1]

**INTRODUCTION**

I.    <u>**General Principles of Law**</u>

Motions in limine, when granted, operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. See *Luce v. United States*, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). This aids the trial process by narrowing evidentiary issues and decreasing trial interruptions. See *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Evidence is excluded before trial only when it is clearly inadmissible on all grounds. *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010). A court faced with a motion in limine may defer decision to resolve the motion in context at trial or may resolve the motion and revisit the ruling if the trial evidence does not come in as expected. *Id.* a, 751 F. Supp. 2d at 428 (citing *Luce*, 469 U.S. at 41-42). But even if nothing unexpected occurs at trial, a court may revisit in limine rulings at any time in the exercise of its discretion. Luce, 469 U.S. at 41-42.

---

[1] The arguments herein may be elaborated upon at the pre-trial conference, and this submission is intended to provide an overview of the points, with brevity being our goal.

FRE 401, entitled "Test for Relevant Evidence," provides:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

FRE 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II.   Plaintiff Should Be Precluded from Introducing ANY Testimony or Documentary Evidence Regarding Cindy Horn's Dismissed Claim or Alleged Damages

Plaintiff has listed Cindy Horn as a witness on his Exhibit and Witness List (ECF Dkt No. 133). Various documents on plaintiff's exhibit list also contain reference to Cindy Horn, including Exhibit 12, Plaintiff's Tax Returns, and Exhibit 14, Expert Report of Mark Zaparowski.

The Court previously dismissed Cindy Horn's claims in this suit as against all defendants (ECF Dkt No. 88, p. 21). To the extent that plaintiff intends for Cindy Horn to testify, or to introduce evidence involving Cindy Horn, plaintiff should be precluded from making any mention of Cindy Horn's dismissed claims and damages as the Court has already found them without merit. Introduction of the same would not only be irrelevant to plaintiff's claim but prejudicial to the defendants.

### ARGUMENT

**I.**   **Plaintiff's Exhibits 02, 03 and 04 Should Be Excluded from Evidence as Plaintiff Failed to Disclose the Same in Response to Discovery Demands**

On August 24, 2016, Dixie served a Demand for Production of Documents Pursuant to Fed. R. Civ. P. Rule 34 on plaintiff. See Demand and Affidavit of Service attached hereto as **Exhibit A**. Dixie made the following demands at paragraphs 34 and 71[2]:

> Documents evidencing, reflecting or referring to alleged advertising materials, statements, and/or media published by DIXIE ELIXIRS, LLC during the period February 24, 2012 through October 1, 2012 in which DIXIE ELIXIRS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint contained no THC. ¶ 34.

> Documents evidencing, reflecting, or referring to the advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which DIXIE ELIXIRS, LLC allegedly represented the elixir product was "THC free" and/or "non-THC", as alleged in paragraph "28" of the complaint. ¶ 71.

Plaintiff's Exhibit and Witness List sets forth the following exhibits:

2. FAQS by Defendant Dixie
3. YouTube Videos
4. Dixie Press Release May 2, 2012

These exhibits were not disclosed to Dixie in response to the aforementioned discovery demands. Moreover, plaintiff did not make Dixie aware of the existence of the YouTube videos listed in Exhibit No. 03 until after discovery was complete and the parties moved for summary judgment. Plaintiff did not make Dixie aware of the existence of the specific FAQ documents contained in Exhibit No. 04 and the Dixie Press Release contained in Exhibit No. 05 until it submitted its Exhibit List for the upcoming trial.

---

[2] On May 18, 2016, MMI/RDH served functionally identical demands as relates to MMI/RDH, their demands number paragraphs 45 and 86 and are annexed to their parallel motion in limine.

FRCP 37(c)(1) provides:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Rule 26(e)(1)(A) provides:

A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Plaintiff failed to provide specific information that was requested of them during discovery, namely that Dixie "represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs… contained no THC" or that Dixie "represented the elixir product was 'THC free' and/or 'non-THC.'" The failure to disclose this information to Dixie in discovery was not "harmless." It was substantially prejudicial insofar as it ended up providing a partial basis for the court to maintain plaintiff's fraudulent inducement and RICO causes of action in its April 17, 2019 (ECF Dkt. No. 88) and November 22, 2019 (Doc. 124) orders. By failing to disclose these items to Dixie during discovery, the defendants were prevented from fully questioning plaintiff regarding the same.

Given the foregoing, Plaintiff's Exhibits 02, 03 and 04 should be excluded from evidence pursuant to Rule 37(c)(1) based on plaintiff's failure to disclose the same in response to demands that specifically requested "advertising materials, statements, and/or media" and "advertising media, website posts, and/or press releases" pertaining to whether the product at issue contained THC.

## II.   **Plaintiff's Exhibits 02, 03 and 04 Should be Excluded from Evidence as Plaintiff Cannot Authenticate Them**

### a.   Plaintiff's Exhibit No. 02 - FAQs

Plaintiff's Exhibit and Witness List No. 02, sets forth two sets of screenshots, seemingly taken from the "Wayback Machine," that purport to be FAQs.

In *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018), the Second Circuit noted that in *Novak v. Tucows, Inc.*, 330 F.App'x 204 (2d Cir. 2009) it had affirmed a district court decision excluding screenshots from the "Internet Archive, more commonly known as the 'Wayback Machine'" for lack of authentication.

In distinguishing that decision, the *Gasperini* court noted that the government had presented testimony from the office manager of the Internet Archive, who explained how the Archive captures and preserves evidence of the contents of the internet at a given time. The witness also compared the screenshots sought to be admitted with true and accurate copies of the same websites maintained in the Internet Archive, and testified that the screenshots were authentic and accurate copies of the Archive's records. Based on this testimony, the Second Circuit affirmed the district court's finding that the screenshots had been sufficiently authenticated.

Plaintiff has failed to disclose any witnesses that will testify with respect to how the Internet Archive captures and preserves evidence or that the screenshots are authentic and accurate copies of the same website maintained in the Internet Archive.

Plaintiff has not otherwise indicated how else he may authenticate these items pursuant to Fed. R. Evid. 901 (a) such that he can "produce evidence sufficient to support a finding that the items [are] what [he] claims [they are]." As plaintiff cannot authenticate the items in Plaintiff's Exhibit No. 02, the same should be excluded from evidence.

b.     Plaintiff's Exhibit No. 03 – YouTube Videos[3]

Plaintiff's Exhibit and Witness List, Exhibit No. 03, sets forth three links to YouTube videos.

In *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014), the court held that Federal Rule of Evidence 902(11) can authorize the admission into evidence of records, such as YouTube videos, that satisfy the requirements of Rule 803(6)(A)-(C), "as shown by a certification of the custodian ... that complies with a federal statute or a rule prescribed by the Supreme Court." The court noted that "Rule 803(6), in turn, provides that business records are admissible if they are accompanied by a certification of their custodian or other qualified person that satisfies three requirements: (A) that the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (B) that they were "kept in the course of a regularly conducted activity of a business"; and (C) that "making the record was a regular practice of that activity."

In *Hasan*, the Court held that in "establishing the admissibility of" YouTube videos, "the government presented the certifications of records custodians of… Google, verifying that the… YouTube videos had been maintained as business records in the course of regularly conducted business activities. According to those certifications… Google create[s] and retain[s] such pages and videos when (or soon after) their users post them through use of the… Google servers."

Plaintiff has failed to provide any certifications of records custodians from Google verifying that the YouTube videos listed in Plaintiff's Exhibit No. 03 have been maintained as

---

[3] Insofar as the court deems this evidence admissible, though defendants deny same, plaintiffs have not put forth any proposal as to how they intend to present multiple hours of video content. We expect that the court will not want to subject the jury to hours of material, especially to the extent it contains irrelevant material or which was addressed in the court's prior orders.

business records in the course of regularly conducted business activities and that Google has created and retained the pages and videos contemporaneous with when they were posted.

Again, plaintiff has offered no indication as to how he may, otherwise, authenticate these videos pursuant to Fed. R. Evid. 901 (a) such that he can "produce evidence sufficient to support a finding that the items [are] what [he] claims [they are]." As plaintiff cannot authenticate the videos in Plaintiff's Exhibit No. 03, the same should be excluded from evidence.

        c.    Plaintiff's Exhibit No. 04 – Dixie Press Release

Plaintiff's Exhibit and Witness List, Exhibit No. 04, sets forth what appears to be a screenshot of a website purporting to be a "press release" dated May 2, 2012. There is a print date in the top left corner of the document of August 17, 2020. The URL at the bottom of the page appears to be broken and does not lead to the document set forth in Exhibit No. 04.

Again, plaintiff has the same problem that it has with respect to Exhibits No. 02 and 03 – there is no indication as how they plaintiff may authenticate this electronic document under Federal Rule of Evidence 901(a). He has not indicated any witness that may be able to testify with respect to the website and has not provided any certifications from records custodians with respect to the website. As plaintiff cannot authenticate the item in Plaintiff's Exhibit No. 04, the same should be excluded from evidence.

**III.**    **Plaintiff's Exhibit 02 and the Third Video from Plaintiff's Exhibit 03 Should be Excluded from Evidence as the Same Postdate the Purchase Date of the Product and are Not Relevant**

        a.    Plaintiff's Exhibit No. 03 – YouTube Videos

In its April 17, 2019 order, the Court noted that although plaintiff cited three YouTube videos, it "disregarded" the third video as this video was "posted on YouTube after Plaintiffs purchased Dixie X" (ECF Dkt. No. 88, p. 5, fn 5).

Plaintiff's Exhibit and Witness List, Exhibit No. 03, sets forth three links to YouTube videos:

- https://youtu.be/Urlwtw_xQ48 (August 8, 2012)
- https://youtu.be/yDjIGXS58ds (August 23, 2012)
- https://youtu.be/k42_Kpp13mk (June 19, 2013)

The third video, dated June 19, 2013, is evidently the video referenced by the Court in its footnote to the April 17, 2019 order as it was posted after plaintiff's purchase of the alleged purchase of the product September 17, 2012.

As such, plaintiff should be precluded from using the third video as evidence that he relied on the statements made therein with respect to the THC content of the product prior to purchasing the same.

b.    Plaintiff's Exhibit No. 02 - FAQs

Similarly, Plaintiff's Exhibit No. 02, sets forth two sets of screenshots, seemingly taken from the "Wayback Machine," websites that purport to be FAQs. The images are poor quality but it appears that the first set of screenshots state that they were captured by the Wayback Machine on October 19, 2012. The second set of screenshots indicate that they were captured sometime between February of 2015 and May of 2017.

Regardless, all of the documents listed under Plaintiff's Exhibit No.02 postdate the September 17, 2012 date when plaintiff allegedly purchased the product. As such, plaintiff should be precluded from using these documents as evidence that he relied on any statements therein with respect to the THC content of the product prior to purchasing the same.

### IV.   Plaintiff Should be Precluded from Attributing any Statements in Exhibits 02 and 04 to Dixie

#### a.   Plaintiff's Exhibit No. 02 – FAQs by Defendant Dixie

Plaintiff has labeled this exhibit, "FAQs by Defendant Dixie." The documents contained therein purport to be screenshots of FAQs from a "Dixie Botanicals" website. Plaintiff has not offered any evidence showing that any statement made in these documents can be attributed to any person who now, or has ever had, any affiliation with Dixie.

To that extent, plaintiff should be precluded from attributing any statements in Exhibit No. 02 to Dixie.

#### b.   Plaintiff's Exhibit No. 04 – Dixie Press Release of May 2, 2012

Plaintiff has labeled this exhibit, "Dixie Press Release of May 2, 2012." The document contained therein purports to be screenshots of a website article written by a person named Jeffrey Stamberger. (The screenshots are missing text in various spots and should be precluded as an incomplete document).

This purported "press release" is similar to plaintiff's prior attempt to attribute statements to the defendants made in an article in the "High Times" magazine. As stated by the Court in its April 17, 2019 Order, that article was not "not an advertisement but a writeup about Dixie X by a third party" (ECF Dkt. No. 88, p. 21). As further stated by the Court with respect to that article, "Plaintiff offer[s] nothing but speculation to argue that Defendants had a role in publishing the article" *Id*.

Similarly, plaintiff has not offered any evidence showing that any statements made by Jeffrey Stamberger can be attributed to any person who now, or has ever had, any affiliation with Dixie. By all appearances the website printout is not a "Press release" but a writeup about Dixie

products by a third party with nothing but speculation that the defendants had a role in publishing the same.

To that extent, plaintiff should be precluded from attributing any statements in Exhibit No. 04 to Dixie.

### V.  Plaintiff's Exhibit 07 – Clinical Reference Laboratory Test Results Should be Precluded as it Cannot be Authenticated

Again, plaintiff has the same problem that it has with respect to Exhibits No. 02, 03 and 04 – there is no indication as how plaintiff may authenticate this document under Federal Rule of Evidence 901(a). He has not indicated any witness that may be able to testify with respect to the document and has not provided any certifications from records custodians with respect to the document. As plaintiff cannot authenticate the item in Plaintiff's Exhibit No. 07, the same should be excluded from evidence.

### VI.  Plaintiff's Exhibit 08 – Reports of Testing Lab EMSL Should be Precluded as Irrelevant and More Prejudicial than Probative

Federal Rule of Evidence 401 defines "relevant evidence" as follows: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.E. 401. In addition, Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403.

Plaintiff seeks to introduce into evidence the reports of EMSL. EMSL's report must be excluded as irrelevant in that EMSL was not accredited in 2012 to test cannabis, and had no

validated procedures for testing cannabis.[4]  As more fully described in Dr. Cindy Orser's accompanying affidavit (annexed as Exhibit C) and report (Defendants' pretrial statement Exhibit B, ECF Dkt No. 137), accurate cannabinoid analysis would require having the proper certified reference standards in hand to compare with a previously generated calibration curve using those same reference standards. EMSL's report therefore, and for other reasons delineated herein, lacks scientific validity and has no bearing on what caused plaintiff Doug Horn to fail a random DOT urine test.

No testing results were provided by EMSL or by plaintiff for the Dixie X Hemp 500 mg Dew Drop product that plaintiff actually consumed. Rather, he submitted an entirely different product for testing by EMSL, namely Dixie X Hemp 100 mg Dew Drop. This is not an apples-to-apples comparison, but instead an apples-and-oranges comparison. Another critical flaw is that the data is not verifiable because EMSL destroyed its testing sample, and the results are therefore irreplicable.

As an initial matter, Dr. Orser opined that there is considerable uncertainty with regards to whether plaintiff maintained a proper chain-of-custody over the product tested by EMSL. Dr. Orser also opined that because we do not know the amount of 500 mg product that Mr. Horn allegedly consumed prior to submitting to a random urine drug test, it is impractical to calculate with any degree of scientific certainty a range of expected contaminating THC metabolite in his urine sample based on either the analytical lab testing results reported by CannLabs in Colorado or by EMSL.

---

[4] We note that plaintiffs have identified Scott van Etten of EMSL as a trial witness. In that he was not identified as an expert witness, he must be precluded from offering any testimony other than, at most, testimony to authenticate business records under FRE 803(6).

EMSL purportedly identified THC in the 100 mg product at a concentration of 170 μg/g or 170 ppm but did not report a value for CBD or any other substance in the exemplar product. The 100 mg exemplar product was then purportedly destroyed, providing no possibility for any other laboratory to test the product to confirm EMSL's findings. In Dr. Graham's report, he extrapolates from the THC content in the 100 mg product to arrive at the THC content in the 500 mg product by multiplying 0.017% x 5 = 0.085% which requires making the assumption that the 100 mg was a simple 5-fold dilution of the 500 mg. However, without data as to the volume of the sample, it cannot be known if this is appropriate or not.

Additionally, EMSL's report only contains a THC value but lacks a CBD value. The CBD value is an important reference for the product, because the main ingredient was CBD. Therefore, it is incongruous to compare EMSL's report to CannLab's certificates of analysis in that the latter has both THC and CBD values.

Based upon the foregoing, the EMSL report should be precluded, as it is substantially more prejudicial than probative and irrelevant.

**VII.** **Plaintiff's Exhibit 09 – Plaintiff's Emails with EMSL Should Be Excluded from Evidence as it Is Inadmissible Hearsay and Improper Bolstering of Anticipated Testimony**

Plaintiff seeks to introduce into evidence as Plaintiff's Exhibit No. 09 emails between EMSL and Douglas Horn. They must be precluded in that they are being offered for truth of their contents, constitute improper bolstering of plaintiff's anticipated testimony, are inadmissible hearsay and fall without the exception to hearsay for business records.

VIII.    **Plaintiff's Exhibit 10 – Defendants' Certificates of Analysis Should be Excluded from Evidence as it is Inadmissible Hearsay and Irrelevant as it Postdates the Alleged Purchase Date of the Product**

Plaintiff's Exhibit No. 10 contains documents regarding testing of the "Dixie X Hemp CBD 500 mg Dew Drop" product on October 16, 2012.

First, the information contained on these documents is inadmissible hearsay. It does not satisfy any exception to the rule against hearsay under Federal Rule of Evidence Rule 803 and the records are not otherwise self-authenticating under Rule 902. Plaintiff has failed to submit any certification of a custodian or another qualified person that complies with Rule 803(6)(A)-(C) or Rule 902(11).

Second, regardless of the foregoing, the records contained in Exhibit 10 are not relevant to plaintiff's claim as they concern testing of a different product performed on October 16, 2012, several weeks after plaintiff allegedly purchased the product at issue in this lawsuit on September 17, 2012.

IX.    **Plaintiff's Exhibit 13 – Plaintiff's Proposed Expert Reports of Kenneth Graham**

    **a. Expert Opinion Evidence**

FRE 702, entitled "Testimony by Expert Witnesses," provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

With regard to proposed expert testimony, the proponent has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant, and reliable. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y .2000); *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)).

As to competence, the requirements to qualify as an expert witness are construed broadly: "Liberality and flexibility in evaluating qualifications should be the rule[;] . . . the expert should not be required to satisfy an overly narrow test of his own qualifications." *Bunt v. Altec Indus., Inc.*, 962 F. Supp. 313, 317 (N.D.N.Y. 1997) (quoting *Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994)). Nor does an expert's knowledge about a particular subject need be precisely informed about all the details of the issue raised to offer an opinion. Id. (citing Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)). As to relevance, expert testimony is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. Fed. R. Civ. P. 401; see also *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002).

If the expert witness is competent and the proffered testimony is relevant, the court then turns to "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" by the trier of fact. *Amorgianos*, 303 F.3d at 265. That is, the court must assume its "gatekeeper role" and make "a preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; see also Fed. R. Evid. 702 (Advisory Committee Notes, 2000 amendment) (noting that trial judges have

"the responsibility of acting as gatekeepers to exclude unreliable expert testimony"). In considering the reliability of an expert witness's opinion, the court must determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" by the trier of fact. *Amorgianos*, 303 F.3d at 265.

Expert testimony must be based on sufficient facts or data and be grounded in reliable methods and procedures of science; it cannot be based on unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 590. In examining the reliability of the expert's opinion, the court's focus is on the methodology employed, rather than the expert's conclusions. *Id.* at 595; *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002).

### b. Expert Reports

Retained expert witnesses must prepare and sign written reports for production in discovery. See Rule 26 (a)(2)(B). Such reports must contain the following information: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. *Id*.

Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Factors to be considered in determining whether to impose sanctions under Rule 37 include (1) the party's explanation for the failure to comply with the disclosure

requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice

suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4)

the possibility of continuance. *Kennedy v. Arias*, (S.D.N.Y., 12-cv-4166; July 5, 2017) (citing

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

### c.  Bases for preclusion

Plaintiff seeks to introduce into evidence as Plaintiff's Exhibit No. 13 the reports of his

expert Kenneth Graham dated August 29, 2017 and October 31, 2017. As it is expected that

Graham will be called to testify at trial, the introduction of the reports into evidence can serve no

useful purpose. They should be precluded, in whole or in part, on the following grounds:

- The reports are unsworn.

- The reports contain narratives that are unlikely to be connected to testimony at trial, and

  therefore, if allowed into evidence, they will convey to the jury information that is not

  otherwise properly before them. For example, Graham's report of August 29, 2017 bases

  his lengthy narrative upon information that must be precluded, such as:

  > "1. Statement of James Horn to Elizabeth Horn …." which constitutes
  > inadmissible hearsay.

  > "5. Email communications between James Horn and Scott Van Etten (EMSL
  > Analytical, Inc.)…." and "6. Laboratory data and report … by EMSL …" which
  > also constitute inadmissible hearsay. Because Horn did not prepare such emails
  > in the ordinary course of his business, and EMSL neither responded to the Horn
  > emails nor created its reports in the ordinary course of business, but instead in
  > anticipation of litigation, they must be precluded and so too the Graham reports to
  > the extent they are predicated thereon.

  > "9. Follow-up SAP evaluation report prepared by [Horn's rehab counselor]
  > Kenneth Dennis, Ph.D." is inadmissible because Dennis has not been noticed as a
  > witness to authenticate his report or any findings therein, and thus they must be
  > precluded, and so too any recitation in the Graham reports predicated thereon.

  > "10. Facebook post of Tamara Wise …and exposé of Medical Marijuana, Inc.
  > CBD products appearing on beyondTHC.com website" are inadmissible because
  > Wise has not been noticed as a witness, and therefore the Facebook posting

cannot be authenticated, and any opinions of Graham predicated thereon must be precluded.

- Throughout the report, Graham presents conclusions of law, interpreting federal and state criminal statutes. Graham, however, is not an attorney, much less the judge wearing the robes in this case, and it invades the province of the court for him to state his interpretation of statutes.

- His ultimate opinions are predicated upon the foregoing, and should therefore be precluded.

Defendants further seek to preclude testimony from Graham regarding legal opinion or conclusions of law. "Each courtroom comes equipped with a 'legal expert' called a judge*." In re Initial Public Offering Sec. Lit.*, 174 F.Supp.2d 61, 69, n. 11 (SDNY 2001) (citations omitted); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992). An expert may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Expert testimony on the law is excluded because the special legal knowledge of the judge makes such testimony superfluous, and because it invades the province of the Court. *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977).

Local Rule 7(a)(3) also serves to prohibit the Graham Affidavit (and its exhibits) from containing legal opinions; it must be limited to factual and procedural background. Moreover, FRCP 26(a)(2)(B) requires that Plaintiff's expert report contain "the basis and reasons" for Graham's opinions and "the data or other information" that he considered in forming those opinions. However, Graham's reports contain no basis for his legal opinions; and he testified that he has no proper foundation for those opinions.

Graham testified, in relevant part, that he is neither a lawyer nor trained in the law, read no decisional law or advisory opinions concerning the relevant statue, read any opinions written by any federal, state or local judge regarding their own interpretation of that statute, read no legislative history or decisional law, and that he was looking at the 2017 statute rather than the one in effect in September/October 2012 when most of the events giving rise to the instant action took place. (Graham Depo., pp. 92-95). Dr. Graham admits that he never read the 2012 statute (Id. at Pg. 95, lines 2-5) and understood that to be the applicable time period (Id. at lines 6-17).

In the annexed **Exhibit B**, Dr. Graham testified:

**PAGE 93 (lines 10 – 25)**

Q. So it is fair to say -- I'm not trying to be difficult over here - when it comes to the interpretation of the law, that is not your professional discipline; isn't that correct?

A. Correct.

Q. So is it also fair to say that you're not qualified to opine on how a law should be interpreted; is that correct?

A. I can relate a scientific principle to the way the statute is stated.

Q. When the statute is given to you?

A. Yes;

**PAGE 94, lines 2-6**

Q. And when the statute is interpreted for you; is that correct?

A. Well, I can interpret that for myself without all of the bells and whistles that you just went to.

Critically, Dr. Graham has no first-hand knowledge of the facts and circumstances of this case. He can only offer his subjective belief regarding the legal significance of facts provided to him by plaintiff's counsel and documents reviewed by him in preparing his reports. But that

subjective belief is not the proper province of expert testimony. Under the rules governing the admission of expert testimony at trial, "expert testimony on ... purely legal issues is rarely admissible." *Harris v. Key Bank Nat'l Ass'n*, 193 F. Supp. 2d 707, 716 (WDNY 2002) (citing *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (adding that "at least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule")). Graham's subjective beliefs regarding the law are therefore inadmissible and should be stricken.

Defendants therefore request that this Court strike all references in Dr. Graham's Affidavit and annexed reports regarding what is legal or lawful (e.g., references in the Graham Affidavit and August 2017 report at pp. 6-7 regarding legal THC levels, labeling and packaging requirements, what constitutes a controlled substance and false advertising, etc.).

## X.  Plaintiff's Exhibit 14 – Plaintiff's proposed expert report of Mark P. Zaporowski, Ph.D.

Plaintiff seeks to introduce into evidence as Plaintiff's Exhibit No. 14 the August 17, 2020 report of economist Mark Zaporowski. It must be precluded on the following grounds:

- It is unsworn.

- If admitted into evidence, it would constitute improper bolstering, as, presumably, Zaporowski will be called to offer testimony of the same tenor.

- The report is predicated upon invalid, unsupportable assumptions. For example, Zaporowski assumes that the loss of family health insurance provided by Mr. Horn's employer Enterprise was due to his having been discharged; however, Mr. Horn's wife Cindy Harp-Horn was employed by Enterprise, and was, presumably, entitled to keep the health insurance coverage.

**Conclusion**

Wherefore, plaintiff's proposed trial exhibits No. 02, 03, 04, 07, 08, 09, 10, 13 & 14 must

be precluded.

Dated: September 25, 2020
        New York, New York

                                        Respectfully submitted,

                                        Mazzola Lindstrom LLP


                                        By: Jean-Claude Mazzola
                                        Richard E. Lerner
                                        Hanoch Sheps
                                        Attorneys for defendant
                                        Dixie Holdings, LLC
                                        1350 Avenue of the Americas, 2nd Floor
                                        New York, New York 10019
                                        Tel:    646-216-8300
                                        Cell:   646-250.6666
                                        Email: jeanclaude@mazzolalindstrom.com

cc:     All parties via ECF