**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOUGLAS J. HORN, et. al.,Plaintiffs,-against-MEDICAL MARIJUANA, INC., et. al.,Defendants. | Civil Action No. 15-cv-701-G**Declaration of Dr. Cindy Orser** |

I, Cindy Orser, being duly sworn, depose and say:

1. I have personal knowledge of all matters contained in this affidavit.

2. I declare under penalty of perjury that the foregoing is true and correct.

3. I am the Chief Science Officer and Lab Director of CLIP Labs in San Diego, California.

4. My Summary Findings report dated September 29, 2017, which supports my conclusions below, is annexed as Exhibit "1" and is incorporated herein by reference, and by so doing, I aver, under penalty of perjury, that the statements set forth therein are true.

5. In preparation for rendering my opinions, I reviewed the following non-exhaustive list of case materials and conducted extensive research including:

   a. CannLabs Certificate of Analysis: 10.12.Dixie X 500mg Dew Drop (02475533xA9B4D).png

   b. CannLabs Certificate of Analysis: 10.16.12.500mg Dew Drop CBD0803MIXE2 (1) (02475534.xA9B4D).pdf

   c. CannLabs Certificate of Analysis: 10.16.12CBD1011RD-500mg (02475535xA9B4D).pdf

   d. CannLabs Certificate of Analysis: 10.16.12.DD 500 mg CBD0803MIXE2 (02475536xA9B4D).pdf

  e. Laboratory report #281201415 from EMSL Analytical Laboratory dated Nov 5, 2012 Clinical Reference Lab materials (02343464xA9B4D).pdf

  f. Complaint and Jury Demand—Douglas Horn v. Medical Marijuana Inc., Dixie Elixir & Edibles, Red Dice Holdings, LLC, and Dixie Botanicals.

  g. Douglas Horn Deposition Transcripts dated 5-9-17 and 5-8-17

  h. Written report by expert witness Kenneth Graham, PhD, RPh dated August 29, 2012

  i. Photo of Bottle – Plaintiff's Supplemental Disclosure

  j. Plaintiff's Expert Disclosure

6. In keeping with the assignment as discussed in the report, I applied my analysis of the laboratory results produced by EMSL Analytical Laboratory to determine whether there was proper chain of custody, whether the laboratory was properly accredited to test cannabis, and therefore have accredited validated procedures for that purpose, whether the results were valid or replicable insofar as the sample tested was not preserved.

7. Following my review of the aforementioned materials and research, the summary findings regarding EMSL's findings are contained herein, amongst the other conclusions and opinions contained in the report. I state these conclusions to a reasonable degree of scientific certainty.

8. The complaint relates to Cindy Harp-Horn's alleged purchase in September 2012 and plaintiff Douglas Horn's alleged use in October 2012 of a product known as Dixie X CBD Dew Drops 500 mg Tincture.

9. Plaintiff's employer required him to submit to random urinalysis screenings.

10. One such urinalysis screening occurred on or about October 9, 2012.

11. On October 11, 2012, plaintiff was informed by his employer that his urine had tested positive for tetrahydrocannabinol, or "THC," and that he was terminated from his job.

12. Following his job termination, Mr. Horn obtained a bottle of Dixie X Hemp 100 mg CBD Dew Drop to have it independently tested.

13. As an initial matter, without any analytical laboratory test results to review as to what was contained in the actual Dixie Elixir product that was used by Mr. Horn, no one can opine with any degree of scientific confidence that it was the Dixie product used by Mr. Horn that caused him to fail his random DOT urine test of October 9, 2012.

14. The 100 mg CBD product was submitted by Mr. Horn to an EMSL Analytical Laboratory in New Jersey for analysis.

15. EMSL Analytical has dozens of accredited analytical testing labs throughout the U.S. focusing on industrial hygiene, environmental and food testing using validated protocols (see Appendix A for full list of tests offered).

16. The EMSL lab report at issue herein originated from the corporate office in Cinnaminson, New Jersey.

17. It does not appear that the EMSL Analytical Laboratory network has any accreditation to test cannabis or its chemical derivatives, and has no accreditation-body approved validated procedures.

18. The laboratory purportedly identified THC in the product at a concentration of 170 μg/g or 170 ppm, but did not report a value for CBD or any other substance in the exemplar product.

19. The 100 mg exemplar CBD product was then purportedly destroyed, providing no possibility for any other laboratory to test the product to confirm the findings of the EMSL laboratory.

20. The EMSL Lab test result was on a different product, the Dixie X Hemp 100 mg Dew Drop, and not the 500 mg product as consumed by Mr. Horn and as tested by CannLabs in Denver.

21. EMSL reported a THC content of 170 μg/g or 0.017% THC. But the report did not also report a CBD value for the product, even though that was the main active ingredient and would have provided a critical comparative value.

22. No testing results were provided by the EMSL Lab or by the plaintiff for the Dixie X Hemp 500 mg CBD Dew Drop product that he actually consumed.

23. In Dr. Graham's report, he extrapolates from the THC content in the 100 mg CBD product to arrive at the THC content in the 500 mg CBD product by multiplying 0.017% x 5 = 0.085% which requires making the assumption that the 100 mg was a simple 5-fold dilution of the 500 mg; however, since there is no data as to the volume of the sample, it cannot be known whether this multiple is proper.

24. CannLabs test results report both a CBD value as well as a THC value. This is critically important data, given that the main ingredient was CBD.

25. Without both the CBD and THC values, there cannot be a correct determination of relative THC content. The test results from the EMSL Analytical Lab only reported a THC value, making comparison to the Colorado licensed independent third-party lab findings incongruous.

26. There is considerable uncertainty with regards to whether or not the plaintiff maintained a proper chain-of-custody over the Dixie X Hemp 100 mg CBD Dew Drops product that was tested by the EMSL Lab back in 2012. Even more uncertainty exists for the untampered state of the remaining Dixie X Hemp 500 mg CBD Dew Drop product.

27. Looking at the EMSL website (https://www.emsl.com/Default.aspx) for the accredited analytical testing lab in New Jersey where the testing was done, there is no listing for cannabinoid analysis, nor is there any testing method referenced. Accurate cannabinoid analysis would require having the proper certified reference standards in hand to compare with a previously generated calibration curve using those same reference standards.

28. Because we do not know the amount of Dixie X Hemp 500 mg CBD Dew Drop product Mr. Horn allegedly consumed prior to submitting to a urine drug test, it is impractical to calculate with any degree of scientific certainty a range of expected contaminating THC metabolite in his urine sample based on either the analytical lab testing results reported by CannLabs in Colorado or by the EMSL Lab in New Jersey.

29. The remainder of the actual product in question, i.e. Dixie X Hemp 500 mg CBD Dew Drops, should have been tested by a certified cannabis testing lab for both CBD and THC content. Testing only for THC by an unaccredited lab using unknown, and thus unverifiable, methods is scientifically inconclusive and indefensible.

Executed on September 24, 2020

_____
Cindy Orser, PhD.

5