IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN,

                Plaintiffs,

   -vs-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                Defendants.

**<u>MEMORANDUM OF LAW</u>**

Case No. 1:15-cv-00701

Respectfully Submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

MURA & STORM, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800

Dated: September 24, 2020
      Buffalo, New York

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## PRELIMINARY STATEMENT

Defendants, Medical Marijuana, Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by and through their undersigned counsel, hereby move *in limine* for an order precluding plaintiff from mentioning and introducing into evidence plaintiff's proposed trial exhibits 2, 3, 4, 7, 8, 9, 10, 13 and 14, which are described as, respectively:

| | |
|---|---|
| 2. | FAQs by Defendant Dixie; |
| 3. | YouTube videos; |
| 4. | Dixie Press Release of May 2, 2012; |
| 7. | Clinical Reference Laboratory test results; |
| 8. | EMSL Report; |
| 9. | EMSL Emails to Plaintiff; |
| 10. | Defendant's Certificates of Analysis; |
| 13. | Expert Reports of Kenneth Graham; and |
| 14. | Expert Reports of Mark Zaporowski. |

MMI/RDH also seeks to limit the testimony and documentary exhibits related to Cindy Horn.

## I.    GENERAL PRINCIPLES OF LAW

Motions *in limine*, when granted, operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). This aids the trial process by narrowing evidentiary issues and decreasing trial interruptions. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Evidence is excluded before trial only when it is clearly inadmissible on all grounds. *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010). A court faced with a motion *in limine* may defer decision to resolve the motion in context at trial or may resolve the motion and revisit the ruling if the trial evidence does not come in as expected. *Id.* at 428 (citing *Luce*, *supra* at 41-42). But even if nothing unexpected occurs at trial, a court may revisit *in limine* rulings at any time in the exercise of its discretion. *Luce*, *supra* at 41-42.

MURA & STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK  14203
(716) 855-2800 • FAX (716) 855-2816

FRE 401, entitled "Test for Relevant Evidence," provides:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

FRE 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II.   PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING ANY TESTIMONY OR EXHIBITS REGARDING CINDY HORN'S DISMISSED CLAIMS OR ALLEGED DAMAGES

The plaintiff has listed Cindy Horn as a witness on his Exhibit and Witness List (ECF Doc. 133). Various documents on the plaintiff's exhibit list also contain reference to Cindy Horn, including Exhibit 12 ("Plaintiff's Tax Returns"), and Exhibit 14 ("Expert Report of Mark Zaparowski).

The Court previously dismissed Cindy Horn's claims in this suit as against all defendants (ECF Doc. 88, p. 21). To the extent that the plaintiff intends for Cindy Horn to testify, or to introduce evidence involving Cindy Horn,  plaintiff's counsel and witnesses should be precluded from making any mention of Cindy Horn's dismissed claims and damages because this Court has already dismissed those claims.  Introduction of the same would not only be irrelevant to the plaintiff's claim but prejudicial to the defendants.

## III.   PLAINTIFF'S TRIAL EXHIBITS 2, 3 AND 4 SHOULD BE PRECLUDED FORM EVIDENCE AS PLAINTIFF FAILED TO DISCLOSE THE SAME IN RESPONSE TO DISCOVERY DEMANDS

Mura & Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

On May 18, 2016, MMI/RDH served a Demand for Production of Documents Pursuant to Fed. R. Civ. P. Rule 34 on the plaintiff. See Demand and Affidavit of Service attached hereto as **Exhibit A**. MMI/RDH made the following demands at paragraphs 45 and 86:

> 45.     Documents evidencing, reflecting or referring to alleged advertising materials, statements, and/or media published by MEDICAL MARIJUANA, INC. and/or RED DICE HOLDINGS, LLC during the period February 24, 2012 through October 1, 2012 in which MEDICAL MARIJUANA, INC. and/or RED DICE HOLDINGS, LLC represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs on or around October 1, 2012 as alleged at paragraph "14" of the complaint contained no THC.

> 86.     Documents evidencing, reflecting or referring to the advertising media, website posts, and/or press releases from the period February 24, 2012 through October 1, 2012 by which MEDICAL MARIJUANA, INC. and/or RED DICE HOLDINGS, LLC allegedly represented the elixir product was "THC free" and/or "non-THC", as alleged in paragraph "28" of the complaint.

Plaintiff's Exhibit and Witness List (ECF Doc. 133) lists the following exhibits plaintiff intends to offer and introduce into evidence at trial:

> 2.     FAQs by Defendant Dixie;
> 3.     YouTube videos; and
> 4.     Dixie Press Release of May 2, 2012.

These exhibits were not disclosed to MMI/RDH in response to its aforementioned discovery demands. Moreover, the plaintiff did not make MMI/RDH aware of the existence of the YouTube videos listed in Exhibit 3 until after discovery was complete and the parties had moved for summary judgment. The plaintiffs did not make MMI/RDH aware of the existence of the specific "FAQ" documents comprising Exhibit 4

and the purported "Dixie Press Release of May 2, 2012" comprising Exhibit 4 until he submitted his Exhibit and Witness List for the upcoming trial.

FRCP 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 26(e)(1)(A) provides that " [a] party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Plaintiff failed to provide specific information that was requested of him during discovery, namely that MMI/RDH "represented, whether on social media, websites or elsewhere, that the elixir product allegedly purchased by plaintiffs… contained no THC" or that MMI/RDH "represented the elixir product was 'THC free' and/or 'non-THC.'" The failure to disclose this information to MMI/RDH in discovery was not "harmless."  Plaintiff's failure to disclose these proposed trial exhibits and evidence was substantially prejudicial insofar as they ended up, in part, providing a basis for the Court to deny summary judgment to defendants dismissing plaintiff's RICO and fraudulent inducement claims (*see* Decision and Order issued April 17, 2019 [ECF Doc. 88] and Decision and Order issued November 22, 2019 [ECF Doc. 124]). By failing to disclose these items to

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

MMI/RDH during discovery, the defendants were prevented from fully questioning the plaintiff regarding the same.

Given the foregoing, Plaintiff's Trial Exhibits 2, 3 and 4 should be excluded from evidence pursuant to Rule 37(c)(1) based on the plaintiff's failure to disclose the same in response to demands that specifically requested "advertising materials, statements, and/or media" and "advertising media, website posts, and/or press releases" pertaining to whether the product at issue contained THC.

## IV. PLAINTIFF'S TRIAL EXHIBITS 2, 3 AND 4 SHOULD BE PRECLUDED FROM EVIDENCE AS THE PLAINTIFF CANNOT AUTHENTICATE THE SAME

### A. Plaintiff's Trial Exhibit 2 – "FAQs by Defendant Dixie"

Comprising Plaintiff's Trial Exhibit 2 of Plaintiff's Exhibit and Witness List (ECF Doc. 133), are two sets of what appear to be screenprints or screenshots of webpages, seemingly taken from the "Wayback Machine"; those documents are purported to be FAQs by Defendant Dixie.

In *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018), the Second Circuit noted that in *Novak v. Tucows, Inc.*, 330 F.App'x 204 (2d Cir. 2009) it had affirmed a district court decision excluding screenshots from the "Internet Archive, more commonly known as the 'Wayback Machine'" for lack of authentication.

In distinguishing that decision, the *Gasperini* court noted that the government had presented testimony from the office manager of the Internet Archive, who explained how the Archive captures and preserves evidence of the contents of the internet at a given time. The witness also compared the screenshots sought to be admitted with true and accurate copies of the same websites maintained in the Internet Archive, and testified that the screenshots were authentic and accurate copies of the

MURA&STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

Archive's records. Based on this testimony, the Second Circuit affirmed the district court's finding that the screenshots had been sufficiently authenticated.

The plaintiff has failed to disclose any witnesses that will testify with respect to how the Internet Archive captures and preserves evidence or that the purported screenshots of webpages comprising Plaintiff's Exhibit 2 are authentic and accurate copies of the same website maintained in the Internet Archive.

The plaintiff has not otherwise indicated how else he may authenticate these items pursuant to Fed. R. Evid. 901 (a) such that he can "produce evidence sufficient to support a finding that the items [are] what [he] claims [they are]." As the plaintiff cannot authenticate the items in Plaintiff's Exhibit 2, the same should be excluded from evidence.

B.    Plaintiff's Trial Exhibit 3 – "YouTube videos"

Plaintiff's Exhibit and Witness List (ECF Doc. 133) lists three hyperlinks, and nothing else, purportedly to active YouTube videos as Plaintiff's Exhibit 3.

In *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014), the Fourth Circuit held that FRE 902(11) can authorize the admission into evidence of records, such as YouTube videos, that satisfy the requirements of Rule 803(6)(A)-(C), "as shown by a certification of the custodian ... that complies with a federal statute or a rule prescribed by the Supreme Court." The court noted that "Rule 803(6), in turn, provides that business records are admissible if they are accompanied by a certification of their custodian or other qualified person that satisfies three requirements: (A) that the records were "made at or near the time by—or from information transmitted by—someone with knowledge";

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

(B) that they were "kept in the course of a regularly conducted activity of a business"; and (C) that "making the record was a regular practice of that activity."

In *Hasan*, the court held that in "establishing the admissibility of" YouTube videos, "the government presented the certifications of records custodians of… Google, verifying that the… YouTube videos had been maintained as business records in the course of regularly conducted business activities. According to those certifications… Google create[s] and retain[s] such pages and videos when (or soon after) their users post them through use of the… Google servers."

The plaintiff has not listed or provided any certifications of records custodians from Google verifying that the YouTube videos listed by their alleged hyperlinks comprising Plaintiff's Exhibit 3 have been maintained as business records in the course of regularly conducted business activities and that Google has created and retained the pages and videos contemporaneous with when they were posted.

Again, the plaintiff has offered no indication as to how he may, otherwise, authenticate these videos pursuant to Fed. R. Evid. 901 (a) such that he can "produce evidence sufficient to support a finding that the items [are] what [he] claims [they are]." As the plaintiff cannot authenticate the videos in Plaintiff's Exhibit 3, the same should be excluded from evidence.

C.     Plaintiff's Trial Exhibit 4 – "Dixie Press Release dated May 2, 2012"

Comprising Plaintiff's Exhibit 4 is what appears to be printed copies of a website article purporting to be a "press release" of defendant Dixie dated May 2, 2012. There is a print date in the top left corner of the document of August 17, 2020. The URL

Mura & Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • Fax (716) 855-2816

at the bottom of the page appears to be broken and does not lead to the document set forth in Plaintiff's Exhibit 4.

Again, the plaintiff has the same problem that he has with respect to Exhibits 2 and 3, namely, that there is no indication of how plaintiff intends to authenticate these webpage prints under Federal Rule of Evidence 901(a). He has not identified any witness who will testify with respect to the provenance of those webpages or the article or provided any certifications from records custodians with respect to the website. As the plaintiff cannot authenticate the document comprising Plaintiff's Exhibit 4, the same should be precluded from evidence.

## V.   PLAINTIFF'S TRIAL EXHIBIT 2 AND THE THIRD VIDEO LISTED AS A HYPERLINK ON PLAINTIFF'S EXHIBIT 3 SHOULD BE PRECLUDED FROM EVIDENCE AS THE SAME POSTDATE THE PURCHASE DATE OF THE PRODUCT AND ARE NOT RELEVANT

### A.   Plaintiff's Trial Exhibit 3 – "YouTube videos"

In its April 17, 2019 order, the Court noted that although the plaintiffs had listed and based their arguments against defendants' summary judgment in part on three YouTube videos, the Court "disregarded" the third hyperlinked video because that video was "posted on YouTube after Plaintiffs purchased Dixie X" (ECF Doc. 88, p. 5, fn 5).

Plaintiff's Trial Exhibit 3 is nothing more than a single-page listing of three hyperlinks and dates to YouTube videos:

- https://youtu.be/Urlwtw_xQ48 (August 8, 2012)
- https://youtu.be/yDjIGXS58ds (August 23, 2012)
- https://youtu.be/k42_Kpp13mk (June 19, 2013)

The third video, dated June 19, 2013, is evidently the video referenced by the Court in its footnote to the April 17, 2019 order as it was posted after the plaintiff's purchase of the alleged purchase of the product on September 17, 2012.

As such, even if plaintiff is able to authenticate the YouTube videos, he should be precluded from mentioning or seeking to introduce the third video as evidence that he relied on the statements made therein with respect to the THC content of the Dixie X product prior to purchasing it.

B.    Plaintiff's Trial Exhibit 2 – "FAQs by Defendant Dixie"

Comprising Plaintiff's Trial Exhibit 2 of Plaintiff's Exhibit and Witness List (ECF Doc. 133), are two sets of what appear to be screenprints and screenshots of webpages, seemingly taken from the "Wayback Machine"; those documents are purported to be FAQs by Defendant Dixie.

The images are poor quality but it appears that the first two pages of Plaintiff's Trial Exhibit 2 are screenshots of Wayback Machine archived or cached webpages created or taken by the Wayback Machine on October 19, 2012. The third, fourth and fifth pages of Plaintiff's Trial Exhibit 2 show a print date in the lower right-hand corner of December 10, 2017 and appear to be screenprints of Wayback Machine archived or cached webpages created or taken by the Wayback Machine sometime between February of 2015 and May of 2017.

Regardless, even if plaintiff can authenticate that Internet content, it all postdates September 17, 2012, the date plaintiff allegedly purchased the Dixie X product. As such, the plaintiff should be precluded from using these documents as evidence that he relied on any statements therein with respect to the THC content of the product prior to purchasing it.

## VI.    PLAINTIFF SHOULD BE PRECLUDED FROM ATTRIBUTING ANY STATEMENTS IN PLAINTIFF'S TRIAL EXHIBITS 2, 3 AND 4 TO MMI/RDH

A.      Plaintiff's Trial Exhibit 2 – "FAQs by Defendant Dixie"

Plaintiff has labeled this exhibit "FAQs by Defendant Dixie" and the documents comprising that exhibit purport to be prints of FAQs from a "Dixie Botanicals" website. Plaintiff has not listed or offered any evidence showing that any statement made in these documents can be attributed to any person who now, or has ever had, any affiliation with MMI or RDH.  For that reason, in the event Plaintiff is allowed to introduced that exhibit into evidence, plaintiff should be precluded from attributing any statements in it to MMI/RDH.

B.      Plaintiff's Exhibit 3 – "YouTube videos"

The statements allegedly made by Tripp Keber in the YouTube videos listed in Exhibit 3 cannot be attributed to MMI/RDH because the record contains and plaintiff has offered no evidence demonstrating that Tripp Keber was affiliated with MMI/RDH at the time these videos were produced.   If that remains the case, plaintiff should be precluded from attributing any statements made in any YouTube videos admitted into evidence to MMI/RDH.

C.      Plaintiff's Exhibit4 – "Dixie Press Release of May 2, 2012"

This exhibit is not a press release at all, but appears to be an article written a "Jeffrey Stamberger".  For the same reason this Court rejected plaintiff's prior attempt to attribute statements contained in a *High Times* magazine "article" to the defendants (that article was "not an advertisement but a writeup about Dixie X by a third party" [ECF Doc. 88, p. 21]) the Court should preclude any mention or introduction of Plaintiff's Trial Exhibit 4.  The so-called press release lacks any byline of any person listed as a witness by Plaintiff or proven to be speaking on behalf of any of the defendants.

Mura & Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

**VII.  PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING PLAINTIFF'S TRIAL EXHIBIT 7**

Plaintiff's Trial Exhibit 7 is described as "Clinical Reference Laboratory Test Results" and comprises multiple pages of records purportedly of or from the laboratory that conducted plaintiff's random urine test that allegedly led to his termination.  The exhibit is not authenticated or self-authenticating and Plaintiff lists no witnesses on his witness list who can or will testify to the authenticity of those records.

Moreover, the hearsay records contain hearsay results of testing, and Plaintiff has never disclosed any expert who will testify to the science underlying and expert results and conclusions of that testing.

**VIII.  PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING PLAINTIFF'S TRIAL EXHIBIT 8**

Plaintiff's Trial Exhibit 8 is described as "EMSL Report" and comprises multiple pages of records purportedly of or from the laboratory that conducted testing of a Dixie product someone purchased for plaintiff after he was terminated from his employment.

FRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  In addition, FRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

Plaintiff seeks to introduce into evidence the reports of EMSL. EMSL's report and materials must be excluded as irrelevant in that EMSL was not accredited in 2012 to test cannabis, and had no validated procedures for testing cannabis.[1]  As more fully described in Dr. Cindy Orser's accompanying affidavit and report, accurate cannabinoid analysis would require having the proper certified reference standards in hand to compare with a previously generated calibration curve using those same reference standards. EMSL's report therefore, and for other reasons delineated herein, lacks scientific validity and has no bearing on what caused plaintiff Doug Horn to fail a random DOT urine test.

No testing results were provided by EMSL or by plaintiff for the Dixie X Hemp 500 mg Dew Drop product that plaintiff actually consumed.  Rather, he submitted an entirely different product for testing by EMSL, namely Dixie X Hemp 100 mg Dew Drop. This is not an apples-to-apples comparison, but instead an apples-to-oranges comparison. Another critical flaw is that the data is not verifiable because EMSL destroyed its testing sample, and the results are therefore irreplicable.

As an initial matter, Dr. Orser opined that there is considerable uncertainty with regards to whether plaintiff maintained a proper chain-of-custody over the product tested by EMSL. Dr. Orser also opined that because we do not know the amount of 500 mg product that Mr. Horn allegedly consumed prior to submitting to a random urine drug test, it is impractical to calculate with any degree of scientific certainty a range of expected

---

[1] We note that plaintiffs have identified Scott Van Etten of EMSL as a trial witness. In that he was not identified as an expert witness, he must be precluded from offering any testimony other than, at most, testimony to authenticate business records under FRE 803(6).

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816

contaminating THC metabolite in his urine sample based on either the analytical lab testing results reported by CannLabs in Colorado or by EMSL.

EMSL purportedly identified THC in the 100 mg product at a concentration of 170 µg/g or 170 ppm but did not report a value for CBD or any other substance in the exemplar product. The 100 mg exemplar product was then purportedly destroyed, providing no possibility for any other laboratory to test the product to confirm EMSL's findings. In Dr. Graham's report, he extrapolates from the THC content in the 100 mg product to arrive at the THC content in the 500 mg product by multiplying 0.017% x 5 = 0.085% which requires making the assumption that the 100 mg was a simple 5-fold dilution of the 500 mg. However, without data as to the volume of the sample, it cannot be known if this is appropriate or not.

Additionally, EMSL's report only contains a THC value but lacks a CBD value. The CBD value is an important reference for the product, because the main ingredient was CBD. Therefore, it is incongruous to compare EMSL's report to CannLab's certificates of analysis in that the latter has both THC and CBD values.

Based upon the foregoing, the EMSL materials should be precluded, as it is irrelevant and substantially more prejudicial than probative.

## IX. PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING PLAINTIFF'S TRIAL EXHIBIT 9

Plaintiff's Trial Exhibit 9 is described as "EMSL Emails to Plaintiff" comprises six pages of purported emails between Scott Van Etten and plaintiff.  They must be precluded in that they are being offered for truth of their contents, constitute improper bolstering of plaintiff's anticipated testimony, are inadmissible hearsay and fall without the exception to hearsay for business records.

-14-

**X.   PLAINTIFF'S TRIAL EXHIBIT 10 SHOULD BE PRECLUDED AS IT IS INADMISSIBLE HEARSAY AND IRRELEVANT AS POSTDATING THE ALLEGED PURCHASE DATE OF THE PRODUCT**

Plaintiff's Trial Exhibit 10 contains documents regarding testing of the "Dixie X Hemp CBD 500 mg Dew Drop" product on October 16, 2012.

First, the information contained on these documents is inadmissible hearsay. It does not satisfy any exception to the rule against hearsay under FRE 803 and the records are not otherwise self-authenticating under Rule 902. The plaintiff has failed to submit any certification of a custodian or another qualified person that complies with Rule 803(6)(A)-(C) or Rule 902(11).

Second, regardless of the foregoing, the records contained in Exhibit 10 are not relevant to the plaintiff's claim as they concern testing of a different product performed on October 16, 2012, several weeks after the plaintiff allegedly purchased the product at issue in this lawsuit on September 17, 2012.

**XI.   PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING PLAINTIFF'S TRIAL EXHIBIT 13**

Plaintiff's Trial Exhibit 13 is described as "Expert Reports of Kenneth Graham".

A.   <u>Expert Opinion Evidence</u>

FRE 702 is entitled "Testimony by Expert Witnesses" and provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and

Mura&Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

(d)  the expert has reliably applied the principles and methods to the facts of the case.

With regard to proposed expert testimony, the proponent has the burden of demonstrating by a preponderance of the evidence that the testimony is competent, relevant, and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y .2000); *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)).

As to competence, the requirements to qualify as an expert witness are construed broadly: "Liberality and flexibility in evaluating qualifications should be the rule[;] . . . the expert should not be required to satisfy an overly narrow test of his own qualifications." *Bunt v. Altec Indus., Inc.*, 962 F. Supp. 313, 317 (N.D.N.Y. 1997) (quoting *Lappe v. American Honda Motor Co.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994)). Nor does an expert's knowledge about a particular subject need be precisely informed about all the details of the issue raised to offer an opinion. Id. (citing Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)). As to relevance, expert testimony is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. Fed. R. Civ. P. 401; *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002).

If the expert witness is competent and the proffered testimony is relevant, the court then turns to "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" by the trier of fact. *Amorgianos*, 303 F.3d at 265. That is, the court must assume its "gatekeeper role" and make "a preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically

Mura&Storm, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York  14203
(716) 855-2800 • fax (716) 855-2816

valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; see also Fed. R. Evid. 702 (Advisory Committee Notes, 2000 amendment) (noting that trial judges have "the responsibility of acting as gatekeepers to exclude unreliable expert testimony"). In considering the reliability of an expert witness's opinion, the court must determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered" by the trier of fact. *Amorgianos*, 303 F.3d at 265.

Expert testimony must be based on sufficient facts or data and be grounded in reliable methods and procedures of science; it cannot be based on unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 590. In examining the reliability of the expert's opinion, the court's focus is on the methodology employed, rather than the expert's conclusions. *Id.* at 595; *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002).

B.   <u>Expert Reports</u>

Retained expert witnesses must prepare and sign written reports for production in discovery. See Rule 26 (a)(2)(B). Such reports must contain the following information: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. *Id.*

Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Factors to be considered in determining whether to impose sanctions under Rule 37 include (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of continuance. *Kennedy v. Arias*, (S.D.N.Y., 12-cv-4166; July 5, 2017) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

C.    Bases for Preclusion

Plaintiff seeks to introduce into evidence the reports of his expert Kenneth Graham dated August 29, 2017 and October 31, 2017. As it is expected that Graham will be called to testify at trial, the introduction of the reports into evidence can serve no useful purpose. They should be precluded, in whole or in part, on the following grounds:

- The reports are unsworn.

- The reports contain narratives that are unlikely to be connected to testimony at trial, and therefore, if allowed into evidence, they will convey to the jury information that is not otherwise properly before them. For example, Graham's report of August 29, 2017 bases his lengthy narrative upon information that must be precluded, such as:

   "1. Statement of James Horn to Elizabeth Horn ...." which constitutes inadmissible hearsay.

Mura & Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

"5. Email communications between James Horn and Scott Van Etten (EMSL Analytical, Inc.)…." and "6. Laboratory data and report … by EMSL …" which also constitute inadmissible hearsay. Because Horn did not prepare such emails in the ordinary course of his business, and EMSL neither responded to the Horn emails nor created its reports in the ordinary course of business, but instead in anticipation of litigation, they must be precluded and so too the Graham reports to the extent they are predicated thereon.

"9. Follow-up SAP evaluation report prepared by [Horn's rehab counselor] Kenneth Dennis, Ph.D." is inadmissible because Dennis has not been noticed as a witness to authenticate his report or any findings therein, and thus they must be precluded, and so too any recitation in the Graham reports predicated thereon.

"10. Facebook post of Tamara Wise …and exposé of Medical Marijuana, Inc. CBD products appearing on beyondTHC.com website" are inadmissible because Wise has not been noticed as a witness, and therefore the Facebook posting cannot be authenticated, and any opinions of Graham predicated thereon must be precluded.

- Throughout the report, Graham presents conclusions of law, interpreting federal and state criminal statutes. Graham, however, is not an attorney, much less the judge wearing the robes in this case, and it invades the province of the court for him to state his interpretation of statutes.

Mura & Storm, pllc ● 930 Rand Building ● 14 Lafayette Square ● Buffalo, New York  14203
(716) 855-2800 ● fax (716) 855-2816

- His ultimate opinions are predicated upon the foregoing, and should therefore be precluded.

Defendants further seek to preclude testimony from Graham regarding legal opinion or conclusions of law. "Each courtroom comes equipped with a 'legal expert' called a judge." *In re Initial Public Offering Sec. Lit*., 174 F.Supp.2d 61, 69, n. 11 (SDNY 2001) (citations omitted); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992). An expert may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Expert testimony on the law is excluded because the special legal knowledge of the judge makes such testimony superfluous, and because it invades the province of the Court. *Marx & Co. v. Diner's Club, Inc*., 550 F.2d 505, 509-10 (2d Cir. 1977).

Local Rule 7(a)(3) also serves to prohibit the Graham Affidavit (and its exhibits) from containing legal opinions; it must be limited to factual and procedural background. Moreover, FRCP 26(a)(2)(B) requires that Plaintiffs' expert report contain "the basis and reasons" for Graham's opinions and "the data or other information" that he considered in forming those opinions. However, Graham's reports contain no basis for his legal opinions; and he testified that he has no proper foundation for those opinions.

Graham testified, in relevant part, that he is neither a lawyer nor trained in the law, read no decisional law or advisory opinions concerning the relevant statue, read any opinions written by any federal, state or local judge regarding their own interpretation of that statute, read no legislative history or decisional law, and that he was looking at the 2017 statute rather than the one in effect in September/October 2012 when most of the

-20-

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

events giving rise to the instant action took place. (Graham Depo., pp. 92-95). Dr. Graham

admits that he never read the 2012 statute (Id. at Pg. 95, lines 2-5) and understood that

to be the applicable time period (Id. at lines 6-17).

In addition, Dr. Graham testified:

Page 93 (lines 10 – 25)

Q. So it is fair to say -- I'm not trying to be difficult over here - when it comes
to the interpretation of the law, that is not your professional discipline; isn't
that correct?

A. Correct.

Q. So is it also fair to say that you're not qualified to opine on how a law
should be interpreted; is that correct?

A. I can relate a scientific principle to the way the statute is stated.

Q. When the statute is given to you?

A. Yes;

Page 94, lines 2-6

Q. And when the statute is interpreted for you; is that correct?

A. Well, I can interpret that for myself without all of the bells and whistles
that you just went to.

Critically, Dr. Graham has no first-hand knowledge of the facts and

circumstances of this case. He can only offer his subjective belief regarding the legal

significance of facts provided to him by Plaintiffs' counsel and documents reviewed by

him in preparing his reports. But that subjective belief is not the proper province of expert

testimony. Under the rules governing the admission of expert testimony at trial, "expert

testimony on ... purely legal issues is rarely admissible." *Harris v. Key Bank Nat'l Ass'n*,

193 F. Supp. 2d 707, 716 (WDNY 2002) (citing *Nieves-Villanueva v. Soto-Rivera*, 133

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

F.3d 92, 99 (1st Cir. 1997) (adding that "at least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule")). Graham's subjective beliefs regarding the law are therefore inadmissible and should be stricken.

Defendants therefore request that this Court strike all references in Dr. Graham's Affidavit and annexed reports regarding what is legal or lawful (e.g., references in the Graham Affidavit and August 2017 report at pp. 6-7 regarding legal THC levels, labeling and packaging requirements, what constitutes a controlled substance and false advertising, etc.).

## XII.   PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING PLAINTIFF'S TRIAL EXHIBIT 14

Plaintiff's Trial Exhibit 14 is described as "Expert Report of Mark Zaparowski".

Plaintiff apparently seeks to introduce into evidence the August 17, 2020 report of plaintiff's expert economist, Mark Zaporowski. The report must be precluded from being introduced into evidence because:

- It is unsworn.

- It contains irrelevant information.

- It contains hearsay information.

- It contains inflammatory and argumentative statements such as "Had it not been for the deceptive business practices of the defendants, Mr. Horn would have remained employed as an over-the-road commercial truck driver for the Enterprise Products Company."

- If admitted into evidence, it would constitute improper bolstering, as, presumably, Zaporowski will be called to offer testimony consistent with the content of his report.

- The report is predicated upon invalid, unsupportable assumptions. For example, Zaporowski assumes that the loss of family health insurance provided by Mr. Horn's employer Enterprise was due to his having been discharged; however, Mr. Horn's wife Cindy Harp-Horn was employed by Enterprise, and was, presumably, entitled to keep the health insurance coverage.

The Zaporowski report must also be precluded from being introduced wholesale into evidence because it contains expert opinion not disclosed in this action until just last month.  The report states that plaintiff's expert now

> "projects Mr. Horn's economic loses under the following alternative scenarios concerning the income he would have earned had he not been terminated from the Enterprise Products Company.
>
> 1.  Mr. Horn's lost income as a truckdriver is based on the income he was earning at the Enterprise Products Company prior to his termination.
>
> 2.  Mr. Horn's lost income  as a truckdriver is based on a wage of $120,000 beginning in 2013."

In Plaintiff's expert disclosure for Mark Zaporowski dated August 30, 2017, Plaintiff disclosed nothing about Mr. Zaporowski giving expert testimony based on a second "scenario".  Plaintiff's expert disclosure for Zaporowski attached his original report dated August 23, 2017, in which Zaporowski says nothing about and makes no calculation based on this second "scenario".  Defendants had no opportunity to depose Zaporowski on that second "scenario" and his calculations based on same.  For this addition, Plaintiff's Exhibit 14 must be precluded  form evidence and Zaporowski should not be allowed to give any testimony – expert or otherwise – about based "on a wage of $120,000 beginning in 2013."

Dated:    Buffalo, New York
          September 25, 2020

-23-

Respectfully submitted,

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.

MURA & STORM, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800

cc:    All parties via ECF

MURA & STORM, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK  14203
(716) 855-2800 ● FAX (716) 855-2816