UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                 Civil Action No:

        Plaintiffs,                    15-cv-701 FPG/MJR

      -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

        Defendants,
------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW INOPPOSITION TO
DEFENDANTS'MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE**

**Jeffrey Benjamin, Esq.**
BENJAMIN ♦ HART, P.C.
5 Penn Plaza, 23rd Floor
New York, NY  10001
(212) 655-9536
A*ttorneys for Plaintiff*

Dated:  New York, New York
         October 22, 2020

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ....................................................................................................... 1

II.  LEGAL STANDARD .................................................................................................. 3

III. RULE 34 AND 26 OBJECTIONS ............................................................................... 4

IV.  AUTHENTICATION .................................................................................................. 6

   a. Plaintiff's Exhs. No. 2 and 4 – Defendant Dixie's FAQs and Dixie Press Release (May 2, 2012) ............................................................................................ 6

   b. Plaintiff's Exh. No. 3 – Defendant Dixie's YouTube Videos ................................. 9

   c. Plaintiff's Exh. No. 7 – Clinical Reference Laboratory Test Results ................... 11

   d. Plaintiff's Exhs. No. 8 and 9 – EMSL Report and Emails to Plaintiff ................. 12

   e. Plaintiff's Exh. No. 10 – Defendants' Certificates of Analysis ............................ 12

   f. Plaintiff's Exhs. No. 13 and 14 – Expert Reports, Kenneth Graham and Mark Zaporowski ............................................................................................................ 13

   g. More on Plaintiff's Exh. 14 – Expert Report, Mark Zaporowski ......................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*523 IP LLC v. CureMD. Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ......................................... 5

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................... 15

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998) .......................................................................................................... 3

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................................................................................................ 8, 14

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006) ........................................... 26

*Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) ............................................................... 3, 4

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) .......................... 15

*Marten Transport, Ltd. v. Plattform Advertising*, 184 F. Supp. 3d 1006 (D.C. Kan. 2016) ........................................................................................................................................ 8

*United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999) ............................................................. 8

*Nat'l Union Fire Ins. Co.v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) ........................................................................................................................................ 3

*Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir.2005) ................................... 14, 15

*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) .................................. 8

*Outley v. City of New York*, 837 F. 2d 587 (2nd Cir. 1988) ..................................................... 6

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ............................................................. 3

*Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F.Supp.2d 339, 348 (S.D.N.Y. 2010) ........................................................................................ 5

*US v. Hassan*, 742 F. 3d 104 (4th Cir. 2014) ......................................................................... 11

*United States v. Sliker*, 751 F.2d 477, 488 (2d Cir. 1984) ....................................................... 9

*United States v. Van Sach*, 2009 WL 3232989, *3 (N.D. W. Va. Oct. 1, 2009) ..................... 11

Rules

Fed. R. Civ. P. Rule 37 (c)(1) ..................................................................................................5

Fed. R. Evid. 902(11) ..............................................................................................................11

Fed. R. Evid. 702 ...............................................................................................................14. 15

## I. INTRODUCTION

Plaintiff, Douglas J. Horn, submits this response in opposition to the Defendants' virtually identical motions *in limine* seeking to exclude evidence that demonstrate the Defendants' culpability with respect to the claims raised in this action. Through these motions, it is evident that the Defendants seeks to (i) reargue summary judgment and (ii) compel Plaintiff to lay out the evidentiary basis for his case in advance of trial in order to gain tactical advantage. It is clear that the defendants seek to preclude the jury from seeing or hearing any evidence that would demonstrate their false and misleading marketing and advertising that affirmatively asserted that Defendants' products contained "no THC." Notably, many of the items that the Defendants' seek to preclude are digital documents and advertisements that they themselves created and published in the public domain for commercial gain.

The Court considered all of the evidence now at issue when it determined the parties' respective motions for summary judgment. All of the items now objected to were in the record prior to and in connection with summary judgment as far back as August, 2018. This Court made a number of legal and factual determinations supported by this evidence including the fact that the Defendants' statements that their product contained "no THC" was false as indicated by their own testing; the fact that the Plaintiffs' carefully researched the Defendants' products in order to ensure "no THC;" the fact that the Defendants made explicit representations in FAQs and YouTube videos that would allay consumers' concerns concerning their claim of "no THC;" evidence that the Plaintiff was terminated from his employment because he consumed DIXIE X under false pretenses; that Defendants' CEO, Tripp Keber, asserted publicly in August, 2012, that the Defendants' product contained "no THC."

The Court, in its deliberation, considered and specifically referenced these items in

connection with its rendering of its April 17, 2019 Decision and Order [ECF Doc#88] including the following findings:

- P. 19 -- Evidence that Defendants' statement that its product contained "no THC" was false as demonstrated by its own testing;

- P. 19 -- Plaintiffs' carefully researched the Defendants' product to ensure that it contained no THC;

- P. 20 – Defendants published explicit representations in their own FAQs and YouTube videos in order to allay consumers' concerns;

- P. 20 – The record contained evidence that Plaintiff lost his job because he consumed the Defendants' product containing THC;

- P. 20 -- In August, 2012, Defendants' CEO, Tripp Keber publically asserted that the Defendants' products did not contain THC;

- P. 20 – It would be a fair inference for the jury to determine that Mr. Keber's leadership position in *all three* defendant companies would demonstrate the falsity of his claims of "No THC" and that that the 2012 statement could be fairly attributed to all three defendants;

- P.20 – It was for the jury to determine whether RDH knew that his statements were false (i.e. corporate parent liable for the acts of its subsidiary);

- P.20 -- All three Defendants clear possessed motivation (i.e. pecuniary) to mislead and defraud consumers;

- P.20 – The jury would decide whether the Defendants misrepresentations were prompted by a desire to distinguish Dixie X from unlawful competitors. By misrepresenting the fact that their products contained no THC, the Defendants would position themselves as unique in the industry through their dispelling of consumer concerns;

- P. 26 – The credibility of competing experts is for jury to consider.

2

This Court additionally found that Keber's leadership position in all three entity defendants raised an inference of scienter, that a jury could reasonably attribute the Defendants' false representations to all three corporate defendants and the fact that they were all motivated to misrepresent (i.e. sales and profits).  In this regard, regarding much of the proffered evidence, this Court established the "law of the case."  It is respectfully contended that the testimony of both Plaintiffs and Defendant's CEO, Tripp Keber, will serve to authenticate and provide foundation for virtually all of the items contested by the Defendants (as will other witnesses which can be identified if and as necessary once Defendants disclose their witnesses).  Plaintiff's experts will authenticate their own reports via their testimony.

On September 17, 2020, Plaintiff duly filed his Exhibit and Witness List, which among others, listed Tripp Keber. As a result of the instant motions by Defendants, these lists may be amended as the Court stated at the Pre-Trial Conference on October 2, 2020.

## II.  LEGAL STANDARD

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. See *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); see also *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds. See *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion in limine may reserve decision until trial so that the motion is placed in the appropriate factual context. See *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, courts are "free, in the exercise of sound judicial discretion, to alter a previous in limine ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the

[movant's] proffer." *Luce*, 469 U.S. at 41-42.

### III.  DEFENDANTS' RULE 34 AND 26 OBJECTIONS

Plaintiff timely filed and served his Exhibit and Witness List on September 17, 2020. Plaintiff's evidence that is the subject of the instant motion was referenced as far back as his deposition in May, 2017. Defendants' grilled[1] both Plaintiff and Cindy Horn on exactly how they researched the Defendants' product to ensure it contained no "THC." Moreover, each and every exhibit set forth on the List was previously provided to the Defendants and made part of the parties' respective motions for summary judgment, and oppositions thereto in August, 2018. Perhaps most importantly, there were no post-deposition demands from Defendants to which Plaintiff did not respond. In fact and in good faith, Plaintiff produced cell phone and bank statement records long after the discovery deadline in this matter, avoiding any need for a Motion to Compel. Those records were all that Defendants indicated they were interested in. As such, their discovery objections here are disingenuous.

This Court fully considered all of these subject evidentiary items in rendering its April 17, 2019 Decision [ECF Doc #88].  The Defendants did not previously argue or assert that these items should be excluded or not considered by the Court. Throughout the numerous motions in this matter, Defendants did not object or demonstrate any assertion of prejudice or surprise. Moreover, the Defendants had the opportunity to consider all of the evidentiary items that they now seek to exclude in connection with the depositions of the Plaintiff's experts as far back as December, 2017, in addition to their collective proffer in connection with motions for summary judgment.

Defendants' effort to conceal this evidence from the jury is misguided.  Rules 26 and 37 provide the Court with wide discretion to impose sanctions under Rule 37 resulting from non-

---

[1] Pages 64, 239-240, 250, 289, 291 and 355 of Plaintiff's deposition transcript.

compliance with Rule 26. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006). Preclusion is not automatic and sanctions will not be imposed where the failure to disclose was substantially justified or is harmless. Fed.R.Civ.P. 37(c)(1); *523 IP LLC v. CureMD. Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014). The purpose of these rules is straightforward—to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F.Supp.2d 339, 348 (S.D.N.Y. 2010).

The evidentiary items sought to be excluded by the Defendants are critical material, relevant to the Plaintiff's two causes of action. Aside from asserting the preclusion is warranted, the Defendants fail to demonstrate any prejudice or surprise—they have been aware of the Plaintiff's reliance upon these items since the Horns' depositions in May 2017, then had ample opportunity to depose the Plaintiff's experts thereon, and did not raise any objection to their introduction in connection with the summary judgment motion practice. The Defendants had ample opportunity but failed to request post-deposition discovery on these materials that were the subject of these depositions. Furthermore, the Court fully considered and accepted many of these items in its consideration of those motions.

Contrary to the Defendants' insinuation in connection with their motions in limine, the documents and witness testimony discussed here are raised solely in response to Defendants' efforts to preclude material evidence in advance of trial. These evidentiary items are by no means additional discovery. Defendants seek to argue their case—to wit, the fact that their own adverse statements spread throughout the Internet in 2012 and their own testing of their product cannot be proven. It is respectfully asserted that the Defendants should not be able to preempt Plaintiff's proffer of trial evidence in this motion before trial. The jury's specific purview is to assess the weight of evidence that Plaintiff will offer by admissible testimony and documentary

5

evidence.

Rules 34 and 26 were not implemented to deprive "the right of a party to a full and fair trial on the merits." See, *Outley v. City of New York*, 837 F. 2d 587 (2nd Cir. 1988). Before it deems evidence excluded, that Court should consider the conduct of the trial, the importance of the evidence to its proponent, whether the proponent was willful or acted in bad faith, and the ability of the defendant to formulate a response. See, *id.* This analysis requires the trial Court to consider the importance of the testimony to the case, unfair surprise or prejudice to the party inconvenienced, and the administrative difficulty which the court itself would face. See, *id.* Given the factors articulated herein, the Court should deny each of Defendants motions *in limine* to exclude evidence pursuant to Rules 34 and 26.

## IV.  AUTHENTICATION

### a.    Plaintiff's Exhs. No. 2 and 4 – Defendant Dixie's FAQs and Dixie Press Release (May 2, 2012)

Annexed immediately to these opposition papers are Affidavits from 1) Elizabeth Rosenberg of the Internet Archive and 2) forensic computer analyst Jon Berryhill. These Affidavits alone or in combination with one another, should either self- or otherwise authenticate these Plaintiff's Exhibits which *were and are* widely and publicly available to anyone with Internet access. Indeed, these are the evidence that Plaintiff states he actually sought out and found in September, 2012; a process he wishes to show the jury at trial. However, in the alternative, the following.

FAQs, i.e. "Frequently Asked Questions," are generally prepared by an entity and published as stand-alone or incorporated webpages and made publicly available to consumers. As the Court even recognized in its Decision, their ostensible purpose is to provide additional product information and further promote the products being purveyed, all the while anticipating

and answering critical consumer questions about the product. This was the case with respect to Defendants' DIXIE X product in September, 2012 and before. As set forth in the Plaintiff Douglas Horn's testimony, his introduction to the DIXIE X product was through an article published in *High Times Magazine* while at a truck stop in 2012. Mr. Horn then went directly to the Defendant Dixie's website and researched their DIXIE X product, both for use by his mother-in-law who was suffering from cancer, as well as for his chronic pain issues resulting from his erstwhile occupation as an over-the-road long distance truck driver.

As set forth by Mr. Horn, upon accessing the Dixie website, he the focused specifically on the FAQs (Exh #2) which were created and published by the Dixie Defendants and affirmatively represented, albeit untruthfully, that the DIXIE X contained no illegal tetrahydrocannabinol ("THC"). Therein, he was also directed to a link for the Defendants' Press Release as to the May, 2012 launch of the product and absence of THC (Exh #4). On the basis of the express representations made by the Defendants[2], the Plaintiff was induced to purchase and use their product purported to contain "No THC," even though this was later proven not to be the case.

At trial, the Plaintiff intends to introduce "screen shots" of the aforementioned FAQs and Press Release to support his claim of fraudulent inducement. These screen shots could only be obtained from the Internet Archive otherwise known as the "Wayback Machine" as Defendants later deleted and/or removed the subject false representations. In addition, both Plaintiff and Mrs. Horn will testify from first-hand knowledge how and when they came upon these representations by showing the jury the exact processes by which they accessed them and the fact that they are identical to what they initially reviewed on the Defendants' website back in 2012. Finally, in the

---

[2] And in particular, the *links* within their website connecting to the Press Release article and YouTube videos with all consistently false statements.

alternative and in the unlikely event that the aforementioned is insufficient pursuant to Rule 901 concerning authentication, the Plaintiff will call those authentication witnesses to testify. The standard for authentication, and hence for admissibility, is one of reasonable likelihood." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999).

In this regard, Rule 201 provides for judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 US 579 (1993); 201(b).  Pursuant to Rule 201, courts are authorized to take judicial notice of sites from the InternetArchive.  See, *Marten Transport, Ltd. v. Plattform Advertising*, 184 F. Supp. 3d 1006 (D.C. Kan. 2016).  Here, though the Defendants assert that these screen shots are (somehow) inadmissible because they cannot be authenticated, they do not articulate a basis opposing Rule 201 judicial notice.  There is no authority that expressly requires authentication for Wayback Machine documents.  These screenshots were published by the Defendants on their own website.  They certainly have the internal means to discredit the authenticity of these screen shots by referencing their own archives.  They have not undertaken this mode of attack.[3]  Nor have Defendants demonstrated how these screen shots are otherwise unreliable.  Under these circumstances, the Tenth Circuit deemed failure to take judicial notice of Wayback Machine screen shots an abuse of discretion.  *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007).

The aforementioned FAQs and Press Release are documents that were created and published by the Defendants for commercial gain, a fact the Court acknowledged on pages 19-20

---

[3] Interestingly however, in this motion they have undertaken to discredit their own Certificates of Analysis that they produced herein showing, a measurable content of THC in their sample tested.

of its Decision. They were placed by the Defendants into the public domain. In response to this publication, the Plaintiffs came upon these items and in reliance upon these actually purchased the Defendants' product. In advance of trial, the Defendants now seek to quash their own published representations despite failing to provide a substantive basis for this draconian imposition. Plaintiff should have the right to present to the jury the exact process by which he and Mrs. Horn accessed this publicly available information about the product before they purchased it. Plaintiff accordingly requests that the Court deny this portion of the Defendants' Motions in Limine.

   b.  **Plaintiff's Exh. No. 3 – Defendant Dixie's YouTube Videos**

In an identical respect as to the printed material on Defendants' website and press release discussed above, annexed immediately to these opposition papers are Affidavits from 1) Elizabeth Rosenberg of the Internet Archive and 2) forensic computer analyst Jon Berryhill. These Affidavits alone or in combination with one another, should either self- or otherwise authenticate the YouTube Videos in Plaintiff's Pre-Trial Exhibits which *were and are* widely and publicly available to anyone with Internet access. Indeed, these are the video evidence that Plaintiff states the Defendants website actually led him to, he sought out and viewed in August and September, 2012; a process he wishes to show the jury at trial. However, in the alternative, the following.

Evidence may be authenticated in many ways and as with any piece of evidence whose authenticity is in question, the `type and quantum' of evidence necessary to authenticate a web page will always depend on context. See, *United States v. Sliker*, 751 F.2d 477, 488 (2d Cir. 1984). The Plaintiff's and Mrs. Horn's research into the DIXIE X product also involved their viewing of three YouTube videos and audios that featured interviews of the Defendants' CEO,

9

Tripp Keber.[4]  In these videos, Keber states continuously that the products are "THC-free"; there is "no THC"; and that it has "0% THC."  These videos, in contrast to the Wayback Machine screen shots, are direct, verifiable, and reliable statements about the product made by the CEO who represented all Defendants. Tripp Keber was listed as one of Plaintiff's witnesses. In addition to the Plaintiff's testimony that the videos are what he personally accessed, viewed and heard, Mr. Keber will testify to those portions with his likeness and voice as well.

     It is significant to note that these YouTube items are not being proffered to show that the Defendants placed these items on YouTube.  Rather, these are being proffered to demonstrate specific statements made by the Defendants' CEO to the general public regarding their multiple, verifiable and corroborated representations that their products contained "No THC" at the time just prior to the Plaintiff's purchase of the DIXIE X product.  These YouTube videos were viewed and witnessed first hand by both Plaintiff and Mrs. Horn who will testify that they did in fact view these items just prior to the time that they purchased DIXIE X from the defendants.  As stated in his Declaration, counsel for Plaintiff has additionally learned from Google, the owner of YouTube, that the authentication of YouTube videos is unnecessary as they are publicly available. In the alternative, to the extent that the Court rules so necessary, Plaintiff will call to testify the authentication witnesses discussed above.

     Significantly, Defendants do not dispute that these items originate from YouTube or that their CEO, the real Tripp Keber, is not in these.  They do not deny that Tripp Keber gave these interviews and stated what he stated.  Rather, cognizant of probative impact in favor of the

---

[4] For the past eight (8) years, these three YouTube pieces can be found at the following links:

https://www.youtube.com/watch?v=Urlwtw_xQ48  8-8-2012 1:29:34
https://www.youtube.com/watch?v=yDjIGXS58ds  8-23-2012 1:01:22
https://www.youtube.com/watch?v=k42_Kpp13mk  6-19-2013 57:59

Plaintiff's claims, the Defendants will do whatever is necessary to keep these YouTube clips away from the fact trier as they are effectively dispositive. The Plaintiffs' own testimony, together with the subpoena response from YouTube, without anything more, should be sufficient to authenticate this material. However, Plaintiffs have authentication witnesses lined up to the extent such additional measure is deemed necessary by the Court.

The YouTube videos, perhaps more than any other Exhibit offered by Plaintiff, have independent, direct or at least circumstantial guarantees of evidentiary reliability that can be on the very face of them.

Finally, many courts deem YouTube videos "self-authenticating" under Federal Rule of Evidence §902(11). See, e.g., *US v. Hassan*, 742 F. 3d 104 (4th Cir. 2014)[holding that these items are admissible as business records accompanied by a legally compliant certification of a custodian]; see, e.g., *United States v. Van Sach*, 2009 WL 3232989, *3 (N.D. W. Va. Oct. 1, 2009) ["A videotape which clearly identified the persons depicted in it may be self-authenticating."].

In light of the foregoing, Plaintiff accordingly requests that the Court deny this portion of the Defendants' Motions in Limine as it relates to both of Plaintiff's self-authenticated exhibits and his exhibits that will be authenticated at trial.

    **c.**    **Plaintiff's Exh. No. 7 – Clinical Reference Laboratory Test Results**

As to the report of Plaintiff's drug test screening that revealed the THC in his system, Defendants are just plain mistaken. Page 32 of Plaintiff's Trial Exhibit #7 is the Affidavit of Dr. David Kuntz, the Executive Director of that lab fully authenticating the lab report, and this was done contemporaneously November 21, 2012. But again, if the Court deems that Plaintiff must call Dr. Kuntz at the time of trial, Plaintiff will have to later disclose that further authenticating

11

witness as well.

      **d.**      **Plaintiff's Exhs. No. 8 and 9 – EMSL Report and Emails to Plaintiff**

As to the technical and scientific issues Defendants' attack in their motions mainly by defense expert Dr. Cindy Orser, the Court is respectfully referred to the following:

    i)    Dr. Orser's sworn statements in her deposition transcript, the specific excerpts of which are in Plaintiff's Declaration paragraph #12 and its subparts;

    ii)    The annexed Affidavit of Plaintiff's liability expert Dr. Kenneth Graham who refutes the statements of Dr. Orser therein; and

    iii)    The further annexed Affidavit of Scott VanEtten, the very lab manager of EMSL Analytical lab who tested Defendants' product provided by Plaintiff on October 18, 2012, which was proximate in time to the same product he took at the time of the bad drug-screening on October 11, 2012. Mr. VanEtten testifies to EMSL's status, its proper and thorough testing procedures of this product and further refutes Dr. Orser's attack on its credibility. Mr. VanEtten was also the very person who e-mailed (Plaintiff's Exhibit #9) Plaintiff that he could not send the tested sample back to Plaintiff because it contained THC.

      **e.**      **Plaintiff's Exh. No. 10 – Defendants' Certificates of Analysis**

In an effort that can only be described as disingenuous to the point of comical, Defendants seek to excluded their very own Certificates of Analysis on the ground that same are "inadmissible hearsay." The following question is therefore begged: Was the production of

12

allegedly irrelevant testing of their product showing the presence of THC just a ruse by Defendants used in discovery to distract the Court and Plaintiff?

Defendants' argument for the exclusion of their own testing results is desperate as they are obvious declarations against interest and excepted as admissible hearsay pursuant to F.R.Evid. 804(b)(3)(a) and (b). Pursuant to section (a), the findings of these Certificates are clearly contrary to the Defendants' proprietary or pecuniary interest in that they directly contradict the Defendants' representation that their DIXIE X product contains "no THC." Did the Defendants ever actually test their products prior to offering them for sale? As stated above, their own expert Dr. Orser opined in the *negative*. These testing results are fair game for the jury to consider. If not, the absence of such testing should be acknowledged and the Court is asked to take judicial notice of same. In that case, the Defendants' fraudulent representations reach new levels.

The Defendants previously submitted the affidavit of their expert, Dr. Cindy Order and report (Defendants' pretrial statement Exhibit B, ECF Dkt. No. 137) that specifically referenced and discussed the findings of Defendants' own tests. Defendants' own expert does not even challenge the results of Defendants' tests. There exists no basis to preclude Plaintiff's Exhibit #10.

    **f.**    **Plaintiff's Exhs. No. 13 and 14 – Expert Reports, Kenneth Graham and Mark Zaporowski**

Plaintiff disclosed to the Defendants the identities and reports of their two expert witnesses whom they intend to call to testify at trial, Dr. Kenneth Graham and Dr. Mark Zaporowski. Defendants' primary contention for excluding this evidence is, according to the Defendants, that these experts have (somehow) interjected impermissible legal opinion. Even a cursory review of all reports will indicate to the contrary, in addition to the very statement Dr.

Graham made and Defendants' quoted: that Dr. Graham "can relate a scientific principle to the way the statute is stated."

The propriety of Dr. Graham's 08/29/2017 and 10/31/2017 Reports [Plaintiff's Exh. No. 13] are self-evident. Dr. Graham, a well-known and highly experienced toxicologist and pharmacologist, meticulously lays out the matter of inquiry, the materials that he considered (inclusive of materials produced and published by the Defendants) and the precise bases for his opinions, all of which are within his professional purview and all of which were based upon evidence in the record. Dr. Zaporowski, a well known and regarded economist, fully sets forth and articulates his bases for calculating the value of the plaintiff's lost income based upon two distinct scenarios. Nothing in the record credibly challenges the credentials or credibility of either Dr. Graham or Dr. Zaporowski as experts competent to testify on the subject matter asserted. Defendants deposed both experts and offer nothing in the way of a factual basis to discredit or challenge the knowledge, skill or experience of either. See, *Daubert* at 590. Plaintiff herein submits the additional Affidavit of Dr. Graham as further propriety of his report. Defendants seem to believe they are allowed to offer expert testimony as to the interplay between science and the law, but Plaintiff is not. Defendants seem to further believe that Plaintiff is not allowed to refute Defendants' liability expert at trial. The argument that Dr. Graham makes a legal conclusion is simply a red herring.

Expert reports and expert testimony are admissible where it is determined that such testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir.2005). Reliability is analyzed under Rule 702 of the Federal Rules of Evidence, which provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may

provide testimony that is (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) based on reliable application of the principles and methods to the facts of the case. Fed.R.Evid. 702. So long as there exists a "sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions," such evidence is admissible. See, *Nimley* at 397.

Without any substantive basis, Defendants attack the reliability of both reports asserting—without supporting—lack of relevance, unsound methodology, lack of first-hand knowledge and improper legal conclusions. A review of these three reports demonstrate to the contrary. Defendants fail to support their conclusory assertions that these reports are flawed due to the foregoing. Rather, both experts have applied their respective methodologies consistent with the norms of their respective fields. Having so presented reliable methodologies, ineffectively assailed by the Defendants, these reports, and these Experts' anticipated testimony, are reliable and thus properly admissible. See, *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011). Certainly, the Defendants have in no way demonstrated that the probative value of the Plaintiffs' experts' reports and expected testimony is substantially outweighed by any suggested prejudicial effect or serious potential to mislead the jury. See, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007).

Lastly, Defendants' suggestion that Dr. Graham have "first-hand knowledge of the facts and circumstances of this case" is nonsensical. Were that true, no expert would be competent to testify in any case.

   g. **More on Plaintiff's Exh. 14 – Expert Report, Mark Zaporowski**

The same standard above is true for Plaintiff's damages expert, Economist Dr. Zaporowski.

15

In addition, the Defendants arguments as to both of Plaintiff's experts go to the *weight* of evidence and testimony, and not to *admissibility*. Throughout their Motions in Limine, they seek to rob the jury of its purview to weigh the admissible evidence of Plaintiff.

But as to Dr. Zaporowski's updated report, same was disclosed immediately upon its availability and close to a year before trial. It is also most current in that it calculates Plaintiff's damages as close to the point of trial as possible. Since the dismissal of Cindy Horn from the case, Plaintiff's damage calculation markedly changed to what appears now in Dr. Zaporowski's updated report in the two employment scenarios by this expert. As it stands, Defendants have close to a year to prepare for his cross-examination as to this report.

For the foregoing reasons, Defendants' motions to exclude the Plaintiff's aforementioned expert reports and expert testimony must be denied.

## *CONCLUSION*

For the foregoing reasons, the Court should deny Plaintiff's Motions *in Limine* seeking to exclude virtually all of Plaintiff's evidence. Defendants have not provided this Court with sufficient factual or legal arguments as to why such evidence would be irrelevant or would create a substantial danger of surprise or undue prejudice. On the contrary, the evidence that the Plaintiffs seek to proffer at trial is relevant, probative and reliable and Plaintiffs should be afforded the opportunity to present their case to the jury.

Dated: New York, New York
      October 22, 2020

Respectfully submitted,

*Jeffrey Benjamin, Esq.*
BENJAMIN ♦ HART, P.C.
5 Penn Plaza, 23rd Floor
New York, NY  10001
(212) 835-1532