UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

Civil Action No:

Plaintiffs,

15-cv-701 FPG/MJR

-against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

Defendants.
------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUR-REPLY TO DEFENDANTS'MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE**

Jeffrey Benjamin, Esq.
THE LINDEN LAW GROUP, P.C.
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532
*Attorneys for Plaintiff*

Dated: New York, New York
January 15, 2021

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I. INTRODUCTION ........................................................................................ 1

II. RULE 34 AND 26 OBJECTIONS ........................................................................................ 1

III. AUTHENTICATION ........................................................................................ 3

a. Plaintiff's Exhs. No. 2 and 4 – Defendant Dixie's FAQs and Dixie Press Release (May 2, 2012) ........................................................................................ 3

b. Plaintiff's Exh. No. 3 – Defendant Dixie's YouTube Videos ........................................ 5

c. Plaintiff's Exh. No. 7 – Clinical Reference Laboratory Test Results ........................ 8

d. Plaintiff's Exhs. No. 8 and 9 – EMSL Report and Emails to Plaintiff ...................... 8

e. Plaintiff's Exh. No. 10 – Defendants' Certificates of Analysis ................................ 9

f. Plaintiff's Exhs. No. 13 and 14 – Expert Reports, Kenneth Graham and Mark Zaporowski ........................................................................................ 9

g. More on Plaintiff's Exh. 14 – Expert Report, Mark Zaporowski ............................ 11

CONCLUSION ........................................................................................ 11

# TABLE OF AUTHORITIES

Cases

*523 IP LLC v. CureMD. Com, 48 F. Supp. 3d 600 (S.D.N.Y. 2014)*...................................... 2

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011)................. 11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)....................................................................................4, 10

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006) .......................................... 2

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007)........................ 11

*Marten Transport, Ltd. v. Plattform Advertising*, 184 F. Supp. 3d 1006 (D.C. Kan. 2016)..................................................................................................... 4

*Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir.2005) ....................................... 10

*Outley v. City of New York*, 837 F. 2d 587 (2nd Cir. 1988) .................................................... 3

*Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F.Supp.2d 339, 348 (S.D.N.Y. 2010) ........................................................................ 2-3

*United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018) .............................................. 5

*US v. Hassan*, 742 F. 3d 104 (4th Cir. 2014)..................................................................4, 7, 8

*United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999) ........................................................ 4

*United States v. Sliker*, 751 F.2d 477, 488 (2d Cir. 1984)................................................... 6

*United States v. Van Sach*, 2009 WL 3232989, 3 (N.D. W. Va. Oct. 1, 2009) ...................... 7

Rules

Fed. R. Civ. P. Rule 37 (c)(1) ........................................................................................ 2

Fed. R. Evid. 201 ........................................................................................................... 4

Fed. R. Evid. 702 ......................................................................................................... 10

Fed. R. Evid. 902(11) .................................................................................................... 7

## *I. INTRODUCTION*

Plaintiff, Douglas J. Horn, submits this sur-reply in further opposition to the Defendants' virtually identical replies in connection with their respective motions *in limine* seeking to exclude evidence that demonstrate the Defendants' culpability with respect to the claims raised in this action. Defendants' respective replies are laced with inflammatory mischaracterizations designed solely to incite this Court and tread upon its discretion to do substantial justice given all of the factors and equities presented to date. The legal authority and newly raised arguments are without moment and fail to provide a legitimate basis for excluding clear, probative evidence. At any point over the last three years, the Defendants had the ability engage in further discovery related to these known items, many of which they created themselves. Instead, they opted to lay in wait and now seek to deprive the Plaintiff from an opportunity to fairly present the evidence in support of his claims. Rather than have to deal with evidence that the Defendants cannot adequately deal with on the merits, they now seek to preclude the introduction of same on unsupportable technical grounds.

## *II. DEFENDANTS' RULE 34 AND 26 OBJECTIONS*

Plaintiff timely filed and served his Exhibit and Witness List on September 17, 2020. Plaintiff's evidence that is the subject of the instant motion was referenced as far back as his deposition in May, 2017. The Defendants have long been aware of the evidentiary materials relief upon by the Plaintiff in connection with his claims. Rather than take any measures to make additional inquiry regarding these items, despite having had full knowledge and opportunity to so inquire, the Defendants saw fit to bide their time and lie in wait for a period of three years until an opportune time to seek preclusion arose.

Neither Defendant propounded any post-deposition demands to which Plaintiff did not

respond. However in fact, and in good faith, Plaintiff produced cell phone and bank statement records long after the Court's discovery deadline in this matter, avoiding any need for a Motion to Compel. This begs the question: after both reading the allegations in the Complaint and comprehensively questioning the Plaintiff and his wife in May, 2017 *eliciting all aspects of Plaintiff's proofs in this matter*, why did Defendants choose to persist only on phone records and bank statements after the discovery deadline? The undersigned counsel did not object to Defendants' post-deadline discovery and promptly produced same. There is simply no surprise or prejudice to Defendants of any of Plaintiff's proofs he seeks to introduce at trial. These proofs of Defendants' various statements as to the product were widely and publicly available, and Defendants' vehement efforts to suppress them are disingenuous.

The Defendants have failed to provide any authority that compels preclusion of these evidentiary items. This Court fully considered all of these subject evidentiary items in rendering its April 17, 2019 Decision [ECF Doc #88]. The Defendants did not previously argue or assert that these items should be excluded or not considered by the Court, and Court acknowledged therein that the Defendants did not develop them. Throughout the numerous motions in this matter, Defendants did not even assert any prejudice or surprise. Most significantly, Rules 26 and 37 provide the Court with wide discretion to consider the admission of such evidence. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir.2006).

More to the point, preclusion is not automatic and sanctions will not be imposed where the failure to disclose was substantially justified or is harmless. Fed.R.Civ.P. 37(c)(1); *523 IP LLC v. CureMD. Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014). The purpose of these rules is straightforward—to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726

F.Supp.2d 339, 348 (S.D.N.Y. 2010).

As previously asserted, the Defendants seek to argue their case—to wit, the fact that their own adverse statements spread throughout the Internet in 2012, and even *their own testing* (or lack thereof) of their product, cannot be proven. It is respectfully asserted that the Defendants should not be able to preempt Plaintiff's proffer of trial evidence in this motion before trial. The jury's specific purview is to assess the weight of evidence that Plaintiff will offer by admissible testimony and documentary evidence.

Rules 34 and 26 were not implemented to deprive "the right of a party to a full and fair trial on the merits." See, *Outley v. City of New York*, 837 F. 2d 587 (2nd Cir. 1988).

### *III. AUTHENTICATION*

**a. Plaintiff's Exhs. No. 2 and 4 – Defendant Dixie's FAQs and Dixie Press Release (May 2, 2012)**

In Plaintiff's previous submission, he attached Affidavits from 1) Elizabeth Rosenberg of the Internet Archive and 2) forensic computer analyst Jon Berryhill. These Affidavits alone or in combination with one another, either self- or otherwise authenticate these Plaintiff's Exhibits which *were and are* widely and publicly available to anyone with Internet access. Indeed, these are the evidence that Plaintiff states he actually sought out and found in September, 2012; a process he wishes to show the jury at trial.

At trial, the Plaintiff intends to introduce "screen shots" of the aforementioned FAQs and Press Release to support his claim of fraudulent inducement. These screen shots could only be obtained from the Internet Archive otherwise known as the "Wayback Machine" as Defendants later deleted and/or removed the subject false representations. In addition, both Plaintiff and Mrs. Horn will testify from first-hand knowledge how and when they came upon these representations by showing the jury the exact processes by which they accessed them and the fact that they are

identical to what they initially reviewed on the Defendants' website back in 2012. Finally, in the alternative and in the unlikely event that the aforementioned is insufficient pursuant to Rule 901 concerning authentication, the Plaintiff will call those authentication witnesses to testify. The standard for authentication, and hence for admissibility, is one of reasonable likelihood." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir.1999). "[T]he burden to authenticate under Rule 901 is not high – only a *prima facie* showing is required." *United States v. Hassan*, 742 F. 3d 104, 133 (4th Cir. 2014), citing *United States v. Vidacek*, 553 F.3d 344, 349 (4th Cir. 2009).

This objection is another example of the Defendants' continuing effort to hide their modified warnings to consumers about their product's THC content. Furthermore, the time for witness disclosure has not expired. Defendants' own disclosure provided only that they will identify their witnesses "30 days before trial." Defendants apparently seek to compel Plaintiff to identify additional authentication witnesses for trial.

Further in this regard, Rule 201 provides for judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 US 579 (1993); 201(b). Pursuant to Rule 201, courts are authorized to take judicial notice of sites from the InternetArchive. See, *Marten Transport, Ltd. v. Plattform Advertising*, 184 F. Supp. 3d 1006 (D.C. Kan. 2016).

Here, though the Defendants assert that these screen shots are (somehow) inadmissible because they cannot be authenticated, they do not articulate a basis opposing Rule 201 judicial notice. There is no authority that expressly requires authentication for Wayback Machine documents. These screenshots were published by the Defendants on their own website.

Finally, the authority cited by the Defendants does not seem support the proposition set forth. The *Gasperini* case, as does much of the legal authority regarding authentication, involved a criminal prosecution. In that case, the 2nd Circuit accepted evidence from the Wayback Machine where an authenticating witness testifies from personal knowledge about "how the Wayback Machine website works and how reliable its contents are." Such proof was deemed "sufficient" and further acknowledged the District Court's discretion to accept this proffer into evidence. *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018). The *Gasperini* Court specifically held as to the Wayback Machine screenshots:

> "'sufficient proof . . . that a reasonable juror could find in favor of authenticity or identification.'" quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004). "Gasperini was free to cross-examine the witness about the nature and reliability of the Archive's procedures for capturing and cataloguing the contents of the internet at particular times, and the jury was thus enabled to make its own decision about the weight, if any, to be given to the records."

Such is the case here, and it is precisely why Plaintiff has offered both the Rosenberg and Berryhill Affidavits in his Opposition papers if they are necessary.

Parenthetically, it is unclear why the defendant cited to *Novak v. Tucows, Inc.* In that case, the district court's discretionary admission into evidence of certain affidavits executed in Canada was upheld.

**b. Plaintiff's Exh. No. 3 – Defendant Dixie's YouTube Videos**

Annexed hereto as Exhibit "1" is the response by Google to Plaintiff's Subpoena to it for a certification. Notice of this Subpoena was contemporaneously sent to Defendants as well. The Google Legal Investigations unit opined that Plaintiff herein did not need Google to authenticate the YouTube videos. It further naturally stated that it could authenticate the identity of the person (here Tripp Keber).

Again, in Plaintiff's previous submission, he submitted Affidavits from 1) Elizabeth

Rosenberg of the Internet Archive and 2) forensic computer analyst Jon Berryhill. These Affidavits alone or in combination with one another, either self- or otherwise authenticate the YouTube Videos in Plaintiff's Pre-Trial Exhibits which *were and are* widely and publicly available to anyone with Internet access. Again, the defendants object to the introduction of this evidence before the Plaintiff ever attempts to proffer same at trial on the imprecise ground of authentication. The Defendants' speculative objection is unsupported by any applicable authority and should be disregarded on that basis. Defendants simply want to suppress clear admissions as to the product that are issues in this case.

Contrary to the Defendants' assertions, evidence may be authenticated in many ways and as with any piece of evidence whose authenticity is in question, the `type and quantum' of evidence necessary to authenticate a web page will always depend on context. See, *United States v. Sliker*, 751 F.2d 477, 488 (2d Cir. 1984). The Plaintiff's and Mrs. Horn's research into the DIXIE X product also involved their viewing of YouTube videos and audios that featured interviews of the Defendants' CEO, Tripp Keber. In these videos, Keber states continuously that the products are "THC-free"; there is "no THC"; and that it has "0% THC." These videos, in contrast to the Wayback Machine screen shots, are direct, verifiable, and reliable statements about the product made by the CEO who represented all Defendants. Tripp Keber is listed as one of Plaintiff's witnesses and will be subpoenaed to testify regarding his own video in the event he is not voluntarily produced by the Defendants.

Furthermore, these YouTube videos were viewed and witnessed first hand by both Plaintiff and Mrs. Horn who will testify that they did in fact view these items just prior to the time that they purchased DIXIE X from the Defendants. In the alternative, as previously stated, to the extent that the Court rules so necessary, Plaintiff will call to testify the authentication

witnesses discussed above.

Significantly, Defendants do not dispute that these items originate from YouTube or that their CEO, the real Tripp Keber, is not in these. They do not deny that Tripp Keber gave these interviews and stated what he stated. Rather, cognizant of probative impact in favor of the Plaintiff's claims, the Defendants will do whatever is necessary to keep these YouTube clips away from the fact trier as they are effectively dispositive. The Plaintiffs' own testimony, together with the response from YouTube, without anything more, should be sufficient to authenticate this material. Again, Plaintiff has authentication witnesses lined up to the extent such additional measure is deemed necessary by the Court. But as Google itself states in Exhibit "1" hereto, Tripp Keber is one who can so authenticate. He is a witness for trial.

Furthermore, as previously argued, many courts deem YouTube videos "self-authenticating" under Federal Rule of Evidence §902(11). See, e.g., *US v. Hassan*, 742 F. 3d 104 (4th Cir. 2014)[holding that these items are admissible as business records accompanied by a legally compliant certification of a custodian]; see, e.g., *United States v. Van Sach*, 2009 WL 3232989, *3 (N.D. W. Va. Oct. 1, 2009) ["A videotape which clearly identified the persons depicted in it may be self-authenticating."]. Again, it is unclear why the defendants cite *Hassan* as authority to preclude this video. *Hassan* also involved a criminal prosecution in the Fourth Circuit. The trial court there ruled that the proffered YouTube videos are self-authenticating under Rule FRE 902(11) and therefore admissible as business records on that basis alone. In that case, the Government proffering that evidence presented the certifications of records custodians verifying that the videos had been maintained as business records in the court of regularly conducted business activities (YouTube "creates and retains such videos when (or soon after) its users post them through use of the server"). The Fourth Circuit thereby held that its admission

into evidence what not an abuse of discretion. Significantly, the *Hassan* court did not articulate a single or unified standard for admission as suggested by the Defendants.

All of the foregoing notwithstanding, if the Court deems necessary, Plaintiff will submit any further necessary certifications from Google at trial, or a competent authenticating witness, like Tripp Keber himself. Of course, Plaintiff would consider consenting to a limiting order related to the introduction of statements by Tripp Keber as to the Dixie Elixir.

**c. Plaintiff's Exh. No. 7 – Clinical Reference Laboratory Test Results**

As to the report of Plaintiff's drug test screening that revealed the THC in his system, Defendants are just plain mistaken. Page 32 of Plaintiff's Trial Exhibit #7 is the Affidavit of Dr. David Kuntz, the Executive Director of that lab fully authenticating the lab report, and this was done contemporaneously November 21, 2012. But again, if the Court deems that Plaintiff must call Dr. Kuntz at the time of trial, Plaintiff will have to later disclose that further authenticating witness as well. Contrary to the Defendants' point of contention, Dr. Kuntz's testimony is related solely to authentication and not as an expert as Defendants allude.

**d. Plaintiff's Exhs. No. 8 and 9 – EMSL Report and Emails to Plaintiff**

As to the technical and scientific issues Defendants' attack in their motions mainly by Defendants' own expert Dr. Cindy Orser, the Court is respectfully referred to its own findings cited previously. Like many of the Defendants' arguments, these are preemptive trial objections intent upon depriving plaintiff the opportunity to prove relevance. On this topic, Defendants fail to provide either legal support for their contention or competent proof that EMSL was not accredited to measure THC in 2012. As previously indicated, Plaintiff's already disclosed witness, Mr. Scott Van Etten of EMSL, is competent to testify as to his own emails stating the product was illegal and he could not return it because it would jeopardize the lab's DEA

registration.

**e. Plaintiff's Exh. No. 10 – Defendants' Certificates of Analysis**

In an effort that can only be described as disingenuous to the point of comical, Defendants seek to exclude their very own Certificates of Analysis on the ground that same are "inadmissible hearsay." Without any basis in law or fact, the Defendants seek to preclude the introduction of its own product testing results. It is extremely curious that the Defendants would have produced documents related to a purported "different product." These documents were provided by the Defendants to their own expert who specifically testified that the subject offending product contained measurable THC at the time it was consumed by the Plaintiff. The findings of these Certificates are clearly contrary to the Defendants' proprietary or pecuniary interest in that they directly contradict the Defendants' representation that their DIXIE X product contains "no THC." Indeed, Defendant's expert herself was perplexed at why she was not provided the actual, applicable Certificates of Analysis. This begs another question for trial: was the product Mr. Horn took ever tested at all?

**f. Plaintiff's Exhs. No. 13 and 14 – Expert Reports, Kenneth Graham and Mark Zaporowski**

Plaintiff disclosed to the Defendants the identities and reports of their two expert witnesses whom they intend to call to testify at trial, Dr. Kenneth Graham and Dr. Mark Zaporowski. Defendants' primary contention for excluding this evidence is, according to the Defendants, that these experts have (somehow) interjected impermissible legal opinion. Even a cursory review of all reports will indicate to the contrary, in addition to the very statement Dr. Graham made and Defendants' quoted: that Dr. Graham "can relate a scientific principle to the way the statute is stated."

The propriety of Dr. Graham's 08/29/2017 and 10/31/2017 Reports [Plaintiff's Exh. No.

13] are self-evident. Dr. Graham, a well-known and highly experienced toxicologist and pharmacologist, meticulously lays out the matter of inquiry, the materials that he considered (inclusive of materials produced and published by the Defendants) and the precise bases for his opinions, all of which are within his professional purview and all of which were based upon evidence in the record. Dr. Zaporowski, a well known and regarded economist, fully sets forth and articulates his bases for calculating the value of the plaintiff's lost income based upon two distinct scenarios. Nothing in the record credibly challenges the credentials or credibility of either Dr. Graham or Dr. Zaporowski as experts competent to testify on the subject matter asserted. Defendants deposed both experts and offer nothing in the way of a factual basis to discredit or challenge the knowledge, skill or experience of either. See, *Daubert* at 590. Plaintiff previously submitted the additional Affidavit of Dr. Graham as further propriety of his report.

Expert reports and expert testimony are admissible where it is determined that such testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir.2005). Reliability is analyzed under Rule 702 of the Federal Rules of Evidence, which provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may provide testimony that is (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) based on reliable application of the principles and methods to the facts of the case. Fed.R.Evid. 702. So long as there exists a "sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions," such evidence is admissible. See, *Nimley* at 397.

Defendants fail to support their conclusory assertions that these reports are flawed. The reliability of the anticipated testimony of the Plaintiff's experts has not been discredited on any

legitimate basis and is thus properly admissible. See, *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011). Certainly, the Defendants have in no way demonstrated that the probative value of the Plaintiffs' experts' reports and expected testimony is substantially outweighed by any suggested prejudicial effect or serious potential to mislead the jury. See, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007).

**g. More on Plaintiff's Exh. 14 – Expert Report, Mark Zaporowski**

The same standard above is true for Plaintiff's damages expert, Economist Dr. Zaporowski.

In addition, the Defendants arguments as to both of Plaintiff's experts go to the *weight* of evidence and testimony, and not to *admissibility*. Throughout their Motions in Limine, they seek to rob the jury of its purview to weigh the admissible evidence of Plaintiff.

But as to Dr. Zaporowski's updated report, same was disclosed immediately upon its availability and close to a year before trial. It is also most current in that it calculates Plaintiff's damages as close to the point of trial as possible. Since the dismissal of Cindy Horn from the case, Plaintiff's damage calculation markedly changed to what appears now in Dr. Zaporowski's updated report in the two employment scenarios by this expert. As it stands, Defendants have had a year to prepare for his cross-examination as to this report.

For the foregoing reasons, Defendants' motions to exclude the Plaintiff's aforementioned expert reports and expert testimony must likewise respectfully be denied.

## ***CONCLUSION***

For the foregoing reasons, the Court should respectfully deny Plaintiff's Motions *in Limine* seeking to exclude virtually all of Plaintiff's evidence. Defendants have not provided this Court with sufficient factual or legal arguments as to why such evidence is not or cannot be

authenticated, would be irrelevant or would create a substantial danger of surprise or undue prejudice. On the contrary, the evidence that the Plaintiffs seeks to proffer at trial is relevant, probative and reliable and Plaintiff should be afforded the opportunity to present his case to the jury.

Dated: New York, New York
January 15, 2021

Respectfully submitted,

*Jeffrey Benjamin, Esq.*

THE LINDEN LAW GROUP, P.C.
5 Penn Plaza, 23rd Floor
New York, NY 10001
(212) 835-1532