# MAZZOLA LINDSTROM LLP

Jean-Claude Mazzola  M: (646) 250-6666
jeanclaude@mazzolalindstrom.com

March 18, 2021

**Via ECF**

Magistrate Judge Jonathan W. Feldman
U.S. Courthouse
100 State Street
Rochester, NY 14614

>  RE:   Horn v. Medical Marijuana, Inc., Dixie Elixirs and Edibles, Red Dice
>         Holdings, LLC, and Dixie Botanicals
>         Index No.: 1:15-cv-00701-FPG-JWF
>         <u>Our File No.: Dixie Elixirs -00001</u>

**Supplemental Letter Brief on Issue of Expert
Opinions Contained in Purported Business Records**

Dear Judge Feldman:

  We represent defendant Dixie Elixirs in the above-referenced matter, and submit this supplemental letter brief in accordance with the court's directive during the March 4, 2021 virtual conference. The issue presented for supplemental briefing is, Whether a purported expert opinion stated in a business record can be admitted into evidence as a business record. Defendant Dixie Elixirs respectfully submits that the expert opinion must be precluded.

  As the court noted during the virtual conference, plaintiff's proposed exhibit 7 contains an expert opinion – *viz.*, that a urine sample from Clinical Reference Laboratory was "positive for marijuana metabolite by GC/MS analysis" – and thus the issue is whether it can be presented to the jury without having been addressed in expert discovery. It is not within the layman's experience as to what a "GC/MS analysis" is, how it is performed, and how such an analysis could lead to a conclusion that a urine sample has "marijuana metabolites," as opposed to metabolites from hemp, and that such metabolites in themselves contain THC. Indeed, defendant submits that a lay juror will likely have no understanding of what a metabolite even is.

  With respect to exhibit 8 (aside from that it was prepared in anticipation of litigation, as has already been briefed) there remains the same issue if it is to be treated as an ordinary business record notwithstanding defendant's objection thereto. The lay juror will have no ability to understand how the tests were conducted, what the tests even mean, and how sample size could affect the results.

  These are hardly mere issues of the weight of the evidence; rather, they concern whether what is manifestly expert opinion can be presented to the jury without compliance with Rule 26 requirements, thereby allowing them to draw whatever inferences they wish from the exhibit, howsoever speculative. We learn in law school that to understand a reported decision, we should

not just read the headnotes. Similarly, to allow these exhibits into evidence, and to permit plaintiff's counsel to point to the unexplicated "headnotes," if you will, would be to invite the jury to speculate as to the meaning of the expert conclusions and the methodologies. A layman could easily understand that when an x-ray report concludes with the opinion "hairline fracture of the femur;" such an opinion is based upon a simple test – an x-ray – that is indeed understandable to all. In contrast, the lay juror will have no idea what a GC/MS study is, what its margin of error is, how it is performed, what the sample size is, or what a metabolite is.

This analysis is supported by well-reasoned case law. In *Forward Communications Corp. v. United States*, 608 F. 2d 485, 511 (Court of Claims 1979), the court considered the admissibility of expert opinions contained in business records, stating: (emphasis added)

> The note [of the Advisory Committee on the Federal Rules of Evidence] indicates that, in allowing opinions in business records to be admitted in evidence, the committee meant to choose between two lines of authority, one admitting and the other denying admissibility to diagnostic entries in medical reports containing both the facts found by the doctors and medical technicians and their conclusions from such facts. Review of the cases cited by the committee shows that most of the medical examinations were routine; they were incident to and contemporaneous with accidents or illnesses; they were designed for diagnosis or treatment and there could be no reasonable motive for falsification or shading; and unless the particular medical reports were admitted in evidence the transitory events and medical diagnoses and opinions which were the subject of the reports would not be accurately or fully disclosed. It must be concluded therefore that the opinions referred to in Rule 803(6) are those which are incident to or part of factual reports of contemporaneous events or transactions. *On the other hand, reports which are prepared to state or to support expert opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705*.

Here, exhibit 7 – the Clinical Reference Laboratory report – was prepared to state an expert conclusion as to the presence of drugs or other substances in plaintiff's urine. The conclusion was stated as an expert opinion that plaintiff's urine was "positive for marijuana metabolite by GC/MS analysis." The report itself was prepared to present data to support that conclusion. Thus, without the preparer presenting in court to explain the meaning of the terms and the methodology used to reach the expert conclusion, the conclusion must be excluded. Likewise, the ESML report – prepared in anticipation of litigation, and thus inadmissible as a business record – must be excluded, because the expert opinions therein cannot be understood without the assistance of the preparer.

In *Gould Electronics, Inc. v. Livingston County Road Commission*, Case No. 17-11130, (E.D. Mich. 2020), the court stated: (emphasis added)

> Additionally, as LCRC contends, even if the MSG reports qualified as business records under Rule 803(6), they are nevertheless inadmissible under Rules 702

and 705 **because their preparer did not testify and was unavailable for cross-examination** regarding his qualifications and the substance of the reports. In *Forward Communications Corp. v. United States*, 608 F.2d 485, 627 (Ct. Cl. 1979), the court held that expert reports determined to be business records under Rule 803(6) can nevertheless be excluded if they fail to satisfy Rules 702 and 705. That is, although business records containing expert opinions may be admissible if they "are incident to or part of factual reports of contemporaneous events or transactions[,] . . . . reports which are prepared to state or to support expert opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705." Id. at 629. Thus, an appraisal report containing a valuation of the company was held to be inadmissible in the absence of supporting testimony **from the consultant who prepared the report**. Id. at 626, 629.[1]

The distinction between expert opinion evidence and lay testimony is frequently addressed in the context of whether a witness may testify in an expert capacity without there having been compliance with Rule 26(a)(2). *In re Matter of the Complaint Illusions Holdings, Inc.*, 189 F.R.D. 316,320 (S.D.N.Y.1999), involved a scuba diving accident. Two witnesses were listed to testify at trial, but without having been disclosed as experts pursuant to Rule 26(a). They were precluded because the testimony of the witnesses, concerning "scuba diving training methods, procedures for scuba diving, and their opinions about currents, water temperature, visibility, and certain dive sites in the British Virgin Islands," was expert testimony as it was "clearly based on 'specialized knowledge' (*i.e.*, their diving expertise)."

Here, the interpretation of exhibits 7 and 8 require specialized knowledge and expertise, even more complex, defendant submits, then knowledge of water temperature, currents and visibility, as in the scuba-diving case. As plaintiff Horn has failed to call the preparers of these reports to testify, they must be excluded from evidence, because the means and methods used to reach the expert conclusions therein cannot be understood by the layman. Moreover, plaintiff has failed to disclose an expert to testify as to the meaning of the expert opinions in the reports, as well as their methodology and technique, and discovery has been closed since February 2018. It is respectfully submitted that exhibits 7 and 8 must therefore be precluded.

Moreover, Dr. Graham can offer no relevant testimony with respect to the validity or interpretation of Exhibits 7 and 8. He has not, at any point, ever claimed that he was involved in preparing those reports and has not been disclosed as an expert to interpret and explain the reports to the jury.

---

[1] Another recent case citing *Forward Communications*, is *Johnson v. State Farm Fire & Casualty Company*, 2013 U.S. Dist. LEXIS 123525; 2013 WL 4607548 (SD Ala. 2013), wherein the court likewise observed that a report that presents the expert opinion of someone who did not testify at trial, specifically as to the appraisal value of the damaged cars, constitutes inadmissible hearsay.

Mazzola Lindstrom LLP

  In *Brown v. Dubois,* (NDNY Docket No. 15-CV-1515) (June 16, 2017), the magistrate judge observed that a non-percipient witness can only be presented to testify as an expert, stating "I have no difficulty determining that Connolly's testimony is that of an expert. His deposition makes clear that he knows nothing about the facts of this case and that he was not assigned to Sing Sing until 1997, six years after the incident occurred." (The magistrate's report and recommendation is not on the court's electronic docket, nor is there an order confirming or overruling it. The R&R however is available [here](here)). Here, Dr. Graham has no knowledge of the facts regarding how the tests were performed nor how the conclusions were reached. Thus, he could only testify if he had been timely and properly disclosed as an expert to so testify (which he was not) and if he had a basis for such testimony (which he admitted at deposition that he does not). Indeed, during his deposition, Dr. Graham offered sworn testimony that he can offer no opinion at all regarding the results of either Exhibit 7 or Exhibit 8. With respect to Exhibit 7, the "Clinical Laboratory Test Results" (pp. 25-26):

Q. Clinical Reference Laboratory, is that the name of the laboratory?

A. It is.

Q. Do you know that laboratory?

A. Not offhand.

Q. Have you ever had any experience with them?

A. I have not.

Q. Did you do any research regarding their competency?

A. I did not.

Q. Did you do any research regarding their protocols?

A. I did not.

Q. Did you do any research regarding the quality of their technicians?

A. I did not.

**With respect to Exhibit 8 (p. 165-167):**

Q. Do you know what protocol was used by the EMSL lab to test?

A. No, I don't.

Q. Do you know if the protocol that was used by EMSL lab to test the product was the appropriate one?

A. Appropriate one?

Q. The best one?

A. I imagine they used a protocol that could specifically test

Q. Do you know if it was the best one to use?

A. There are multiple ones you can use.

Q. In your opinion, do you know if it was the best one?

A. No.

Q. Do you know if it was even a good one to use?

A. I would imagine it was a good one.

Q. Okay. But maybe not the best one, right?

A. Maybe not the best one.

Q. Do you know what safeguards were used by the EMSL lab to protect the chain of custody?

A. I don't.

Q. Do you know if they used any?

A. I do not.

* * *

Q. EMSL labs was not the best choice, correct?

A. No. It wasn't my first choice.

Q. EMSL labs, you have no idea what protocol they used for doing the testing; is that correct?

A. Correct.

Q. You have no idea whether or not they used proper chain of custody; is that correct?

A. Correct.

Mazzola Lindstrom LLP

5

      Clearly, Dr. Graham is not capable of offering any testimony to validate or interpret the expert opinions found in Exhibits 7 and 8, which is required under Rules 702 and 705. The Plaintiff has failed to disclose any other expert that is capable of offering such testimony.

      As such, Exhibits 7 and 8 should be excluded from evidence. They were prepared for the sole purpose of expressing the expert opinions contained therein and Plaintiff seeks to introduce them for the sole reason of relying on those expert opinions, while denying the defendants any opportunity to challenge the basis for the same.

      We thank the court for its consideration of this request and attention to this matter.

Respectfully submitted,

Mazzola Lindstrom LLP

Jean-Claude Mazzola

cc:    All parties via email