**THE LINDEN LAW GROUP, P.C.**
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532
(718) 425-0692 (Fax)

---

March 18, 2021

*Via ECF*

Hon. Jonathan W. Feldman
U.S. Magistrate Judge
Western District of New York
2120 U.S. Courthouse
100 State Street
Rochester, New York  14614

        Re:    ***Horn v. Medical Marijuana, Inc., et al.***
                  **Case No: 15-CV-701 (FPG-MJR)**

Dear Judge Feldman:

      This letter is written pursuant to Your Honor's request at the hearing on March 4, 2021 regarding the admissibility of certain of Plaintiff's trial exhibits: the CRL Laboratory Report (Plaintiff's Exh. #7), the EMSL Laboratory Report and email (Plaintiff's Exhs. #8 and #9), and the Defendant's press release launching the product in May, 2012 in Plaintiff's Exhibit #4. Plaintiff respectfully contends that applicable legal authority provides for the admission into evidence at trial of the foregoing exhibits.

      In general, Defendants' have attacked virtually every piece of evidence to which Plaintiff wishes to testify at trial. Simply put, this evidence is proffered to show the jury how he was lured to this product, and that it contained THC. This caused Plaintiff to test "dirty" in his employer's random drug screening and lose his job. Defendants, in certain respects, make these arguments in bad-faith since the evidence proffered by Plaintiff are statements that came from their own mouths, and, in the case of their Certificates of Analysis, produced by themselves in discovery herein. Also elicited at the hearing was the fact that Defendants had ample opportunity to pursue further discovery if they so chose, but did not.[1]

---

[1] First, I told the Court that I in fact worked with defense counsel even after the Discovery End Date by the Court, and in good-faith did produce documents to Defendants after the deadline. No discovery motion was ever necessary in this case, not before nor after depositions, and even after the Court's Discovery End Date, despite Plaintiff's denied motion to extend that deadline. Second, with respect to the EMSL lab materials discussed herein, defense counsel stated to the Court that he had reached out to obtain the sample it tested without success. I responded that had I been notified of that effort, I would have easily facilitated further discovery on the EMSL material that we disclosed, and that we now fight about. As I stated to Court, this evidence is crucial to Plaintiff's case as it is third-party confirmation of the presence of THC in Defendants' product proximate in time to the product Plaintiff took.

*Applicable Evidentiary Principles*

### a) <u>FRE 803</u>

The 2nd Circuit has enunciated that "… Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Williams*, 205 F.3d 23, 34 (2d Cir.2000)  Rule 803(6) (the "Business Records Exception" or "BRE") provides for the admissibility of conforming and certified business records in lieu of the production of a certifying witness.  The business records exception to the hearsay rule provides for the admission of:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions ... made at or near the time by ... a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness.... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

*United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)

The practical purpose of the BRE is to ensure that documents were not created for personal purposes or in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question. *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)  In all such cases, the principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable.  Thus, laboratory reports are admissible as substantive evidence under the BRE, where the proponent demonstrates that: (i) the report was made at or near the time the testing of the sample took place took place, by someone with knowledge; (ii) the report was kept in the ordinary course of business; and (iii) the making the report was a regular practice. See Fed. R. Evid. 803(6).

Provided the foregoing elements are met, the report is admissible without a sponsoring witness if such report is certified in accordance with Fed. R. Evid. 803(6) and 902(11).

Furthermore, requiring the testimony of the chemists would have little potential utility as it would be unrealistic to expect them to admit on cross-examination that they were either mistaken or lying when they prepared their reports.  See, *Reardon v. Manson*, 806 F. 2d 39 (2d Cir. 1986).  The *Reardon* Court made several relevant observations that are germane to this issue:

- It is rare that an expert can give an opinion without relying to some extent upon information furnished him by others;

- It is quite reasonable for a chemist to review another chemist's analysis when forming an opinion as to the veracity of the latter's test results;

- The court should consider the fact that the opponent had access to the same sources of information through subpoena or otherwise. (Here, Defendants had every opportunity to subpoena and/or depose either of the certifying authors of the respective reports. In fact at the hearing, defense counsel acknowledged reaching out to the EMSL lab via telephone but then let the matter drop after receiving no response, but remarkably did not include Plaintiff's counsel in that effort).

See, generally, *Reardon v. Manson*, 806 F. 2d 39 (2d Cir. 1986).

The subject laboratory reports hereto (the CRL urine drug test, and the EMSL sample product test) clearly bear the necessary indicia of reliability. The CRL report was certified by the required certification immediately annexed to it. Both reports are the regular reports of a company whose business it is to conduct chemical confirmatory tests and for others, employers and clients, to act on the basis of its reports. Moreover, the Defendants have provided no evidence whatsoever to contradict the substance of either report substituting instead only vague, general, and unsubstantiated claims that such reports cannot be "authenticated," and the like. As discussed more fully below, Plaintiff's expert Dr. Kenneth Graham, a forensic toxicologist and pharmacologist, can also testify to both these reports and their materials.

### *CRL Report  - Exh #7*

The CRL Report, Exh. #7 is the report that the Plaintiff's former employer (Enterprise) requisitioned in October of 2012 in connection with usual random drug testing of said employer's truck drivers. It was fully and timely disclosed to the Defendants during discovery. The report of the Plaintiff's urine test result was not prepared in contemplation of litigation. The Plaintiff's termination from his employment resulted from the content of this report. Finally, this report is self-authenticated by reason of the contemporaneous certification (November 21, 2012) by David J. Kuntz, PhD in conformity with Fed. R. Evid. 803(6) and 902(11).

### *EMSL Report and Email – Exh #8 and 9*

Immediately upon learning of his termination of employment, the Plaintiff commissioned his own test of the Defendants' product in order to determine independently whether the Defendants' product did, or did not, contain THC (it did) so that he could either challenge his former employer's findings or, at least, demonstrate that his positive test was inadvertent, and somehow be reinstated to his job. EMSL's testing, too, was not solicited in contemplation of litigation, but rather in contemporaneous and reasonable response to a devastating positive test result. In fact, this action was not commenced until 2015, *three years after* the October, 2012 testing. This report and companion emails were fully disclosed to the Defendants during discovery, and fully discussed in Plaintiff's deposition of May 8, 2017.

This report confirmed that a lesser concentration of the Defendants' product (i.e. 100mg) contained a clear amount of THC sufficient to produce a positive urine finding of marijuana metabolite. The actual product ingested by the Plaintiff was the 500mg which plaintiff's experts

opined may have contained as much as five (5X) times the level of THC as the 100mg sample EMSL tested. The EMSL report and follow-up emails were later duly and fully authenticated by Scott W. VanEtten, a senior chemist with EMSL, by affidavit dated October 22, 2020. Dr. VanEtten specifically acknowledged that it was unlawful for EMSL to return the sample product since it tested positive. He also confirmed that the sample was tested in the same month (October 2012) to when the Plaintiff's test showed positive. The EMSL findings were additionally corroborated by Plaintiff's expert, Kenneth D. Graham, PhD in his disclosed report and his October 22, 2020 affidavit. The aforementioned affidavits are contained in the Record as Attachments #4 and #5, respectively, to Docket Entry #151.

On this basis, and in accordance with the discussion supra, the EMSL report and related emails are duly authenticated and certified and should be admissible as a BRE. As discussed more fully below, in the event that the Court was not so disposed, Plaintiff's expert toxicologist can and will testify as to the validity of the CRL report and the EMSL report and emails.

### b) **FRE 703**

In the alternative, Plaintiff's toxicologist and pharmacologist Dr. Graham should be allowed to testify as to the lab reports at issue.

FRE 703 states:

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

Both of the reports at issue, the CRL and EMSL lab reports, were timely disclosed to Defendants, they were reviewed by Plaintiff's expert Dr. Graham, discussed in his timely disclosed report, and were subject to vigorous cross-examination at Dr. Graham's deposition on December 1, 2017. Dr. Graham can and should be subject to further cross-examination as to these reports at trial. The point is that he can testify to them without the need of calling additional experts.

There are abundant and time-honored bases in case law under FRE 703 to allow Dr. Graham to testify as to these reports. It is permissible for chemist testifying as expert witness to review another chemist's analysis when forming opinion as to veracity of latter's test results. *United States v. Posey,* 647 F.2d 1048, (10th Cir. 1981). Where an expert's testimony was based on analyses performed by unrelated company, which was not admitted as evidence, district court did not abuse its discretion in determining that it was reasonable for expert to rely on company's analyses as basis for his testimony. *CBS Broad., Inc. v. EchoStar Communs. Corp.,* 450 F.3d 505, (11th Cir.), reh'g, en banc, denied, 186 Fed. Appx. 983, (11th Cir. 2006), cert. denied, 549 U.S. 1113, (2007).

Forensic scientist reliance on another's report does not make his testimony inadmissible but rather it is factor to be considered by jury in assessing weight of his testimony. *United States v. Arias*, 678 F.2d 1202, (4th Cir. 1981), cert. denied, 459 U.S. 910 (1982). Under Rule 703, expert could testify about results of a toxicology report analyzing blood samples regardless of whether findings were admissible standing alone and regardless of whether examiner in fact relied on report in making his pathology findings, where information was known to examiner before hearing and was type of data on which he would rely in arriving at opinions in his expert field. *Government of the V.I. v. Petersen*, 131 F. Supp. 2d 707, (D.V.I.), aff'd, 281 F.3d 220, 2001 U.S. App. LEXIS 27978 (3d Cir. 2001).

By analogy, this case is no different than the common case of a medical doctor called to testify to the reports of an injured person's treating physician (a different, out-of-court medical doctor). As long as the requirements of FRE 702 are met, the expert can testify to the other's reports and findings. As stated above, Defendants here have known Dr. Graham's opinions of the two reports for over 3 years, and after rigorous cross-examination at deposition.

As borne out by case precedent, the crux of FRE 703 is its liberal allowance of expert reliance on other experts reports and findings for the purpose of explaining and clarifying his opinion to the jury. This is the reason these reports should be brought to the jury here.

*Additional Expert Discovery*

Also as discussed at the hearing, the Court has the authority to grant additional disclosure to the opposing party prior to trial. In this regard, though Plaintiff disagrees or believes is otherwise unnecessary, in the event that the Court finds expert testimony in connection with the proffer of the CRL or EMSL reports, then it is respectfully requested that the Court grant the parties further limited expert discovery. These evidentiary issues are brought by Defendants in their respective pre-trial Motions in Limine. Plaintiff should have the opportunity to produce rebuttal discovery to those evidentiary arguments.

*The Press Release in Plaintiff's Exhibit #4*

The Court also asked Plaintiff to comment on the press release being offered as Exhibit #4. As stated, the press release is admissible because it was disclosed, linked to the Defendant's website and YouTube videos, cross-examined by Defendants in Plaintiff's and Mrs. Horn's deposition testimonies of May 8 and 9, 2017, and subject to Defendant's further inquiry if they so desired. Page 271-277 of Mr. Horn's transcript shows where he referred to the news "Article" discussing Defendants as a "non-THC company" that is Exhibit #4, and that Defendant did have it for the deposition.

As discussed in Plaintiff's papers, Plaintiff wants and is entitled to testify to the jury what he read and how he was lead to the product by this press release and announcement of the product's launch of May, 2012. He should further be allowed to cross-examine Defendants' witnesses on these Company statements. Again, Defendants attempt to distance themselves from their own damaging statements.

*Dr. Zaporowski's Scenario #2*

Finally, the Court also asked Plaintiff to confirm that we would pursue Scenario #2 in the updated report Plaintiff's Economist expert Dr. Mark Zaporowski. Plaintiff wishes to pursue that Scenario.

As stated to the Court at the hearing, in his decision on the Motions for Summary Judgment, Judge Geraci dismissed the damage claims of Mrs. Cindy Horn and she is not able to pursue her (combined) claim for her salary which was equal to Plaintiff Mr. Horn. The reason for the updated report was that subsequent to the dismissal of Mrs. Horn's salary claims, Plaintiff's damages case markedly changed. The purpose of the updated report was to amend out her lost wage claim, and to refresh Mr. Horn's claim due to the passage of time and trial being imminent.

As stated in Affidavit and at his deposition starting at page 89, just prior to being terminated in 2012, the Horns had the then-present ability to be "promoted" to hauling crude oil at a significantly higher salary. It is that lost salary, as an alternative, Plaintiff wishes to measure his damages to the jury, and it is the basis for the calculations in Dr. Zaporowski's expert report Scenario #2.

Again, defense counsel competently questioned Mr. Horn as to this Scenario of lost wage throughout his deposition. While it is Plaintiff's position that this second Scenario is merely an adjustment of numbers, with the underlying facts remaining the same (that he lost his job because of taking the product), Plaintiff will consent to further deposition of Dr. Zaporowski, as defense counsel suggested at the hearing, at a convenient time for the parties, and if the Court deems appropriate. For his part, Dr. Zaporowski is ready, willing and able to submit to same.

*Conclusion*

Within their virtually identical Motions in Limine, Defendants' continue an ongoing campaign to distance themselves from their own statements as to the THC content in the product, confirmatory lab reports of THC content in the product, and even their own Certificates of Analysis confirming the presence of THC in the product. In Plaintiff's humble opinion, Defendants' zealous advocacy has crossed over to bad faith. In the end, Plaintiff merely wants his day in Court for the jury to weigh his evidence, each piece of which is clearly probative and non-prejudicial to Defendants. Further, each piece has been disclosed to Defendants without any further inquiry by them beyond the depositions of the parties and experts, and despite Plaintiff counsel's demonstrated willingness to do conduct same, even post discovery deadline.

The subject reports are relevant and compliant with Rules 803(6) and 902(11). For all of the reasons articulated herein, it is respectfully requested that the Court determine that these reports are admissible. Alternatively, should the Court deem that one or both of the subject reports require foundational expert testimony (a point which Plaintiff does not concede), then it is respectfully requested that Dr. Graham be allowed to testify to them, or the Defendants be given the opportunity to depose these witnesses as to their reports before trial on July 26, 2021.

Thanking the Court for consideration of this additional brief.

- 7 -

                                  Very truly yours,

                                  *Jeffrey Benjamin*

                                  Jeffrey Benjamin, Esq.

cc: All parties via *ECF*