

Roy A. Mura
716.855.2800 x101
roy.mura @muralaw.com

March 18, 2021

**VIA ECF**

Hon. Jonathan W. Feldman
U.S. Courthouse
100 State Street
Rochester, New York 14614

> **Re:** **Horn v. Medical Marijuana, Inc., et al.**
> **Civil No.    :    1:15-cv-00701 FPG/MJR**
> **Our File No.  :    7023**

Dear Judge Feldman:

This office represents Medical Marijuana, Inc. and Red Dice Holdings, LLC ("MMI/RDH") in the above-captioned matter. Please accept this letter in response to the Court's request for supplemental letter briefs with respect to defendants' motion in limine.

Question Posed by the Court:

Even where Exhibits 7 and 8 may otherwise have qualified under the business records exception to the hearsay rule, are they still inadmissible to the extent that they contain expert opinions, where the plaintiff has failed to disclose the experts who formed and expressed those opinions?

Summary Answer:

Yes, even where Exhibits 7 and 8 could otherwise satisfy the business records exception under FRE 803(6), the reports are still inadmissible where they were clearly prepared to state and support the expert opinions contained therein, and the plaintiff has failed to disclose experts with respect to those opinions. Plaintiff's disclosed expert, Dr. Kenneth Graham, is limited to the testimony set forth in his expert disclosure and is not able to personally interpret or validate the tests. The absence of an expert to interpret and validate the tests precludes their admission.

Discussion:

In *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, No. 17-11130, 2020 WL 6793335 (E.D. Mich. Nov. 19, 2020), the court cited to *Forward Communications Corp. v. United States*, 608 F.2d 485, 627 (Ct. Cl. 1979), stating "that expert reports determined to be business records under Rule 803(6) can nevertheless be excluded if they fail to satisfy Rules 702 and 705. That is, although business records containing expert opinions may be admissible if they 'are incident to or part of factual

# MURA|LAW GROUP, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 2

reports of contemporaneous events or transactions… reports which are prepared to state or to support expert opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705.'"

In *Forward Communications, supra*, the court discussed at length the admissibility of an appraisal report as a business record under FRE 803(6), after examining the proper meaning of the word "opinion" in Rule 803(6), concluded:

> [T]he opinions referred to in Rule 803(6) are those which are incident to or part of factual reports of contemporaneous events or transactions. On the other hand, reports which are prepared to state or to support expert opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705.

*Id.* at 511.

Similarly, in *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.*, 172 F.3d 44 (Table), 1999 WL 12931 (4th Cir. 1999), the Fourth Circuit, citing *Forward Communications*, reversed the District Court's decision to rely on a report from an expert absent at trial: "Since the report presents the opinion of someone who did not testify at trial, and it was offered as evidence of the appraisal value of the damaged cars, it was hearsay." 1999 WL 12931, at *3. The appeals court "also disagree[d] with the district court's alternative theory for admitting it under the business records exception to the hearsay rule." *Id.*

Exhibit 7 is the "Clinical Reference Laboratory Test Results" performed on October 9, 2012, purportedly showing through urinalysis testing that plaintiff tested positive for 29 ng/ml of marijuana metabolite.

Exhibit 8 is the "EMSL Report," purportedly showing that a sample of 100 mg Dixie X product, which Plaintiff sent to EMSL, allegedly tested positive for THC in the amount of 170 parts per million.

There is no question that Exhibits 7 and 8 both contain "expert opinions." A common person cannot possibly look at these reports and understand how Clinical Reference Laboratory allegedly determined that the Plaintiff's urine contained 29 ng/ml of marijuana metabolite or how EMSL allegedly determined that the 100 mg Dixie X product contained 170 ug/g of THC – let alone, understand what any of these terms even mean.

There is further no question that the expert opinions contained in Exhibits 7 and 8 are not "incident to or part of factual reports of contemporaneous events or transactions." To the contrary, they are quite obviously reports that were specifically "prepared to state or support expert opinions."

# MURA|LAW GROUP, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 3

Exhibit 7 was specifically prepared so that Plaintiff's employer could state and support the expert opinion that Plaintiff did or did not test positive for various substances.  Exhibit 8 was specifically prepared so that Plaintiff could state and support the expert opinion that the 100 mg product did or did not contain certain amounts of THC.

The reports in Exhibit 7 and 8 were not created incidentally in the regular course of business. They were created for the sole purpose of reflecting the expert opinions contained therein with respect to the alleged marijuana metabolite levels in the Plaintiff's urine and the alleged THC content of the 100 mg product – which is exactly the purpose for which the Plaintiff now seeks to introduce them.

The court in *Van Der AA Invs., Inc. v. Comm'r*, 125 T.C. 1, 6–7 (2005) stated:

> Like the Court of Claims in *Forward Communications Corp. v. United States,* 221 Ct.Cl. 582, 608 F.2d 485, 510 (1979), we do not view the business record rule found in Fed. R. Evid. 803(6) as overriding the rules governing opinion testimony. If Fed. R. Evid. 803(6) were deemed to override the rules governing opinion testimony, it would allow the introduction of opinion testimony by lay witnesses in the form of a report as to scientific, technical, or other specialized matters and would allow an expert to express his opinion in a report without being subject to cross-examination on the facts and data underlying that opinion. All that would be required for admission would be the mere showing that the preparer was in the business of giving such opinions.

Allowing Exhibits 7 and 8 into evidence under FRE 803(6), at the expense of the rules governing opinion testimony, would do precisely what the courts have warned against – it would allow the experts who created those reports to express their opinions (regarding the Plaintiff's alleged positive urinalysis test and the alleged TCH content of the 100 mg Dixie X product) without being subject to cross-examination on the facts and data underlying those opinions. All that would be required is Plaintiff merely showing that the preparers of the reports were "in the business" of testing urine and products for THC.

Further, it is granted that "most authorities take the view that a party offering a document admissible as a 'report of regularly conducted activity' under Rule 803(6)… as medical records generally are… need not also show, under Rule 702, the qualifications of the document's author to render any opinions in the report." *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 85 (D.N.H. 2009).

However, there is a serious distinction between Exhibits 7 and 8 and routine medical records, especially, with respect to the basis for the creation of such documents. When a doctor orders an MRI of a patient and express a written opinion with respect to what she viewed on the MRI, that may be an expert opinion. However, it one that is incidental to the business of diagnosing and

# MURA|Law Group, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 4

treating the patient. The doctor did not take the MRI for the purpose of using the results to prove something is true or not true in support of a legal position.

To the contrary, Exhibit 7 was clearly generated for the sole purpose of proving whether the Plaintiff tested positive for various substance so that his employer could use those results to justify his continued employment or termination. The expert opinion contained therein regarding the Plaintiffs alleged positive test is not "incidental" to anyone's regular business – obtaining that expert opinion is the sole reason the record was created.

The same is true with respect to Exhibit 8. This record was clearly only generated for the purpose of proving whether the 100 mg Dixie X product contained THC. Again, the expert opinion contained therein, regarding the alleged amount of THC in the product, is not "incidental" to anyone's regular business – obtaining that opinion is the sole reason the record was created.  The Plaintiff cannot use FRE 803(6) to smuggle the expert opinions contained in Exhibits 7 and 8 into this case, unchallenged, by merely claiming that they were created in the "regular course of business" by experts whose entire business is the creation of such opinions.

As such, Exhibits 7 and 8 are not admissible without the preparers of those reports being present in court to testify as to their qualifications as experts and to be cross-examined on the substance, pursuant to Rules 702 and 705. Unquestionably, the Plaintiff has failed to disclose any such experts in this litigation, and, with the trial of this action only months away, defendants MMI/ RDH would object to the reopening of expert discovery and disclosure.  Plaintiff freely chose his litigation course and was not prevented by any of the defendants in doing so.

Plaintiff's Pre-Trial Statement (Doc. 135), under section IV, Expert Testimony, states that "Plaintiff has two expert witnesses." Dr. Zaparowski is stated to be an "Economist" and clearly cannot state any opinion with respect to Exhibits 7 and 8. With respect to the other expert, Dr. Kenneth Graham, the plaintiff states:

> Graham is expected to testify as to inter alia the illegality of Defendants' tincture
> product taken by plaintiff, as well as the Defendants' advertising and labelling of
> same relevant to Plaintiff's causes of action. Dr. Graham will testify consistent with
> his reports disclosed in discovery in this matter

Firstly, Dr. Graham may not testify to the "illegality of Defendants' tincture product" as this Court has already explicitly held that Dr. Graham's opinions in that regard "fail to create a genuine issue of material fact" on, among things, the basis that an "expert's testimony on issues of law is inadmissible," and dismissed the plaintiff's claim with respect to "the allegation that Dixie X is a controlled substance." (Doc. 124 at p. 6)

This leaves only purported testimony from Dr. Graham with respect to "Defendants' advertising and labelling" of the product at issue. Plaintiff has never claimed that Dr. Graham is an expert in

# MURA|LAW GROUP, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 5

"advertising" or "labelling," and it is unclear what expert testimony Dr. Graham could possibly offer with respect to the Plaintiff's only remaining causes of action – Fraudulent Inducement (Doc. 88 at p. 20) and RICO based on alleged mail and wire fraud (Doc. 124 at p. 10).

Regardless, what is clear is that Dr. Graham can offer no relevant testimony with respect to the validity or interpretation of Exhibits 7 and 8. He has not, at any point, ever claimed that he was involved in preparing those reports or that he can be cross-examined on the substance of those reports, pursuant to Rules 702 and 705.  In fact, during his deposition, Dr. Graham offered sworn testimony that he can offer no opinion at all regarding the results of either Exhibit 7 or Exhibit 8.

With respect to Exhibit 7, the "Clinical Laboratory Test Results", Dr. Graham testified (pp. 25-26):

> Q.    Clinical Reference Laboratory, is that the name of the laboratory?
> A.    It is.
> Q.    Do you know that laboratory?
> A.    Not offhand.
> Q.    Have you ever had any experience with them?
> A.    I have not.
> Q.    Did you do any research regarding their competency?
> A.    I did not.
> Q.    Did you do any research regarding their protocols?
> A.    I did not.
> Q.    Did you do any research regarding the quality of their technicians?
> A.    I did not.

Similarly, with respect to Exhibit 8, the "EMSL Report", Dr. Graham testified (pp. 165-167):

> Q.    Do you know what protocol was used by the EMSL lab to test?
> A.    No, I don't.
> Q.    Do you know if the protocol that was used by EMSL lab to test the product was the appropriate one?
> A.    Appropriate one?
> Q.    The best one?
> A.    I imagine they used a protocol that could specifically test –
> Q.    Do you know if it was the best one to use?
> A.    There are multiple ones you can use.
> Q.    In your opinion, do you know if it was the best one?
> A.    No.
> Q.    Do you know if it was even a good one to use?
> A.    I would imagine it was a good one.
> Q.    Okay. But maybe not the best one, right?

# MURA│LAW GROUP, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 6

A.  Maybe not the best one.
Q.  Do you know what safeguards were used by the EMSL lab to protect the chain of custody?
A.  I don't.
Q.  Do you know if they used any?
A.  I do not.

\* \* \* \* \* \*

Q.  EMSL labs was not the best choice, correct?
A.  No. It wasn't my first choice.
Q.  EMSL labs, you have no idea what protocol they used for doing the testing; is that correct?
A.  Correct.
Q.  You have no idea whether or not they used proper chain of custody; is that correct?
A.  Correct.

Clearly, Dr. Graham is not capable of offering any testimony to validate or interpret the expert opinions found in Exhibits 7 and 8, which is required under Rules 702 and 705. The Plaintiff has failed to disclose any other expert who is capable of offering such testimony.

Conclusion:

For these reasons and those given in MMI/RDH's original motion in limine papers, Plaintiff's Trial Exhibits 7 and 8 should be excluded from evidence. They were prepared for the sole purpose of expressing the expert opinions contained therein, and Plaintiff seeks to introduce them for the sole reason of having the jury accept and rely on those expert opinions. Plaintiff made no expert disclosure of the experts who conducted the testing and formed those opinions. Moreover, even if Exhibits 7 and 8 are qualified as business records, Dr. Graham should not be permitted to testify about the contents of or expert opinions in those reports.

Very truly yours,

MURA|LAW GROUP, PLLC

Roy A. Mura

RAM/SDM

# MURA|Law Group, PLLC

Hon. Jonathan W. Feldman
March 18, 2021
Page 7

cc:      All parties via ECF