UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

====================================

DOUGLAS J. HORN, et al.,

                         Plaintiffs,

          v.

MEDICAL MARIJUANA, INC., et al.,

                         Defendants.

<u>Decision and Order</u>
&
<u>Final Pretrial Order</u>

15-CV-701-JWF

====================================

<u>PRELIMINARY STATEMENT</u>

Before the Court are two motions *in limine*, one filed by defendants Medical Marijuana, Inc. ("MMI") and Red Dice Holdings, LLC ("RDH"), and the other by Dixie Holdings, LLC ("Dixie LLC"). Docket ## 141, 142. The parties are advised that "[a]though the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4 (1984) (citations omitted). The parties have no inherent right to an *in limine* ruling and such rulings are viewed as a preliminary opinion given to allow the parties to formulate their trial strategy and allow the Court to manage the trial in the most efficient way possible. <u>See Highland Capital Mgmt., L.P. v. Schneider</u>, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). "The trial court is not bound by an *in limine* ruling and can change its determination during the trial where

sufficient facts have developed to warrant the change or even if nothing unexpected happens at trial. <u>Bar's Prods., Inc. v. Bar's Prods. Int'l, Ltd.</u>, No. 10-CV-14321, 2014 WL 1922764, at *1 (E.D. Mich. May 14, 2014). Accordingly, this Decision and Order constitutes a preliminary determination of the <em>in limine</em> motions filed and is subject to change at the Court's discretion.

In addition, the Court has included within this Decision a Final Pretrial Order setting forth the relevant dates and deadlines related to the upcoming jury trial.

<u>DISCUSSION</u>

Defendants' motions <em>in limine</em> largely overlap and will be considered together. Defendants request that the Court exclude a number of plaintiffs' exhibits from evidence and prohibit plaintiffs from introducing evidence related to several topics. <u>See</u> Docket ## 141, 142. The following represents my preliminary determination with respect to each exhibit/topic.

1. <u>Testimony or Evidence Related to Cindy Horn's Claims/Damages</u>: At oral argument, plaintiffs' counsel stated that they did not oppose defendants' request to preclude any evidence or testimony relevant to plaintiff Cindy Horn's claims or damages. Accordingly, plaintiffs shall not seek to admit such evidence or elicit such testimony.

2

2. Screenshots of Two "Frequently Asked Questions" Webpages (Pl. Ex. 2): Defendants' request is denied to the extent it is premised on plaintiffs' failure to disclose the exhibit during discovery. Given the nature and scope of discovery that did occur, any such failure is harmless under Rule 37(c)(1). The Court will not issue an advance ruling on defendants' arguments concerning authentication, attribution, or relevance, but will rule on any evidentiary objection made at trial.

3. Three YouTube Videos (Pl. Ex. 3): At oral argument, plaintiffs' counsel did not oppose defendants' motion to preclude the third YouTube video dated June 19, 2013. The Court grants the motion to that extent. As to the other two videos, the Court rejects defendants' argument on nondisclosure and concludes that, based on the nature and scope of discovery that did occur, any such nondisclosure was harmless under Rule 37(c)(1). Like the "FAQ's", the Court will not issue an advance evidentiary ruling on defendants' arguments concerning authentication, attribution, or relevance, but will rule on any evidentiary objection made at trial.

4. Press Release Dated May 2, 2012 (Pl. Ex. 4): Defendants' motion to preclude is granted as to Plaintiffs' Exhibit 4 based on plaintiffs' failure to disclose the exhibit during discovery. Unlike Exhibits 2 and 3, neither Douglas nor Cindy sufficiently

identified the press release during the depositions so as to render any failure to disclose harmless.  Furthermore, at oral argument, plaintiffs' counsel did not articulate a substantial justification for the failure to disclose.  Given the untimely disclosure and prejudice to defendants, it is appropriate to preclude the exhibit from trial pursuant to Rule 37(c)(1).

5. Clinical Reference Laboratory Test Results (Pl. Ex. 7): Defendants object to the admission of the results of Douglas Horn's urine testing on grounds of hearsay, authentication, and failure to disclose an expert under Rule 26.  The dispute over this exhibit requires the Court to consider the interplay between the admission of records of a regularly conducted activity under Rule 803(6) and the requirements for the admission and disclosure of expert testimony under Rule 702 and Rule 26(a)(2)(A).

Rule 803(6) excepts from the rule against hearsay the records of a regularly conducted activity, which may include the record of an "opinion" or "diagnosis."  As the Advisory Committee Notes indicate, the purpose of the rule is to dispense with the burdensome production of witnesses to support the admission of records which, by their nature, have an unusually high level of reliability.  Fed. R. Evid. 803 Advisory Comm. Notes; see also Parker v. Reda, 327 F.3d 211, 214-15 (2d Cir. 2003).  Moreover, the rule was intended to encompass records that are "in the form

4

of opinions," including, but not limited to, medical opinions and diagnoses.  Fed. R. Evid. 803 Advisory Comm. Notes; <u>Dell Publ'g Co. v. Whedon</u>, 577 F. Supp. 1459, 1464 n.5 (S.D.N.Y. 1984) (stating that "Rule 803(6) was drafted expressly to cover recorded opinions"); <u>see, e.g.</u>, <u>United States v. Feliz</u>, 467 F.3d 227, 236-37 (2d Cir. 2006) (autopsy reports qualified as business records); <u>United States v. Baker</u>, 855 F.2d 1353, 1359 (8th Cir. 1988) ("When made on a routine basis, laboratory analyses of controlled substances are admissible as business records.").

Thus, if the Court were to focus narrowly on the logic and purpose of Rule 803(6), it would have no trouble concluding that urine-test results are admissible: the test results include a signed, notarized affidavit from David Kuntz, who avers that (1) he is the Executive Director of the laboratory which conducted the testing; (2) he has personal knowledge of the facts contained in the affidavit; (3) the test results are kept in the regular course of laboratory's business; (4) it was within the regular course of its business for an employee with knowledge to make the record and transmit the information to be included in the record; and (5) the record was made at or near the time of the event in question.  In addition, defendants have not developed any argument to challenge the conclusion that the Kuntz affidavit renders the test results self-authenticating under Rule 902(11).  <u>See</u> Fed. R. Evid. 902(11)

(no extrinsic evidence of authenticity is necessary to admit "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian").

The foregoing does end the discussion, for Rule 702 sets forth independent requirements for the admission of expert testimony "in the form of an opinion." Fed. R. Evid. 702. The question raised here is whether the proponent of opinion evidence contained within a business record must also satisfy Rule 702's requirements before the opinion can be admitted. On the one hand, a reasonable argument can be made that Rule 803(6) merely exempts business records from the rule against hearsay, and other rules of evidence may render a business record inadmissible. See Forward Comm'ns Corp. v. United States, 608 F.2d 485, 510 (Ct. Cl. 1979) ("Nothing in Rule 803 says that [the business record] may not be excluded by some other rule."). There are considerations that favor that argument. Rule 702 serves an important gatekeeping function and ensures that only reliable, helpful expert testimony comes before the factfinder. See Fed. R. Evid. 702 Advisory Comm. Notes. Those interests are important regardless of whether the expert opinion is in the form of a record or live testimony. See Forward Comm'ns, 608 F.2d at 510. There is also a degree of unfairness to the opposing party with a broader interpretation of Rule 803(6). As

one court wrote, "The troublesome aspect of such a procedure is that it is totally unfair to an opposing party adversely affected by the opinion. [The party opposing the evidence] would have no opportunity to cross-examine the expert on[] his/her qualifications; the facts on which the opinion was based; the reasoning behind the opinion; and alternative theories, reasons, and facts." Bruneau v. Borden, Inc., 644 F. Supp. 894, 896 (D. Conn. 1986). That unfairness is exacerbated by the fact that, during discovery, an expert need only be identified as such if the party "may use [the expert] at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added).

On the other hand, it is evident from the Advisory Committee Notes that the very purpose of Rule 803(6) is to relieve parties of the burden of producing unnecessary witnesses, including in the case of witnesses who provided medical diagnoses or test results in the course of a regularly conducted activity. See Fed. R. Evid. 803 Advisory Comm. Notes. Rigid adherence to Rule 702 would thus defeat the reform efforts at the heart of Rule 803(6). See id. And while Rule 702 certainly protects important interests, it is not necessary to interpret Rule 803(6) to undermine those interests. That is, the Court need not construe the rule as an unrestricted vehicle through which to admit opinion evidence.

7

To be admissible, a business record must satisfy the requirements of Rule 803(6)(A)-(C), but it may nonetheless be excluded if the "source of [the] information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). For example, the record cannot have been created "for personal purposes or in anticipation of litigation," United States v. Kaiser, 609 F.3d 556, 574 (2d Cir. 2010) (internal brackets, quotation marks, and ellipsis omitted), and courts have the authority to exclude opinions contained in records where their origin or reliability is in doubt. See, e.g., United States v. Licavoli, 604 F.2d 613, 622-23 (9th Cir. 1979) ("[T]he trial judge, in the exercise of his or her discretion, [may] exclude from evidence a record of the opinion of an expert whose qualifications are seriously challenged."); Petrocelli v. Gallison, 679 F.2d 286, 289-90 (1st Cir. 1982) (exclusion of diagnosis proper where it was unclear whether it reflect medical judgment of doctor or the subjective report of patient). Thus, much like Rule 702, these requirements serve to ensure that only reliable, useful opinions are presented to the factfinder.

For these reasons, the Court concludes that an opinion properly admitted under Rule 803(6) does not necessarily need to satisfy the strictures of Rule 702. This is the majority view. See Licavoli, 604 F.2d at 622 ("We see no reason to adopt an

inflexible rule that every case requires the proponent of a business record containing expert opinion to affirmatively establish the qualifications of the person forming the opinion."); Sosna v. Binnington, 321 F.3d 742, 747 (8th Cir. 2003) (affirming admission of business record containing expert opinions of pathologist); Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1009 n.8 (8th Cir. 2002) (concluding that, because laboratory reports were admissible under Rule 803(6), it was not necessary to reach opponent's alternative argument that reports did not meet the requirements of Rule 702); Aumand v. Dartmouth Hitchcock Med. Ctr., 611 F. Supp. 2d 78, 85 (D.N.H. 2009) ("[M]ost authorities take the view that a party offering a document admissible as a report of regularly conducted activity under Rule 803(6) . . . need not also show, under Rule 702, the qualifications of the document's author to render any opinions in the report." (internal quotation marks omitted)); 2 McCormick on Evid. § 287 n.11 (8th ed.). By extension, a party seeking to admit a business record that contains an opinion need not identify the person who made the opinion as a formal expert under Rule 26(a)(2)(A), as that provision only applies to a "witness [the party] may use at trial to present evidence under Federal Rule of Evidence 702."

As the Court stated above, the urine-test results meet the requirements of Rule 803(6) and are self-authenticating under Rule

902(11).   Nowhere  in  their  briefing  do  defendants  meaningfully
contradict those conclusions.   Nor have defendants articulated any
reason  why  the  results  are  untrustworthy;  their  own  expert
acknowledged that the laboratory in question was qualified to test
urine samples and that she had "no reason to question" the results.
Docket # 61-8 at 200-01.   Moreover, the opinions expressed in
test  result  report  were  obtained  and  processed  in  the  regular
course of business of plaintiff's former employer, the laboratory
(CRL) had no reason to falsify the test results, the testing was
not  requested  for  purposes  of  this  or  any  other  litigation  and
plaintiff's  former  employer  relied  on  and  trusted  the  laboratory
result.   The  report  meets  the  requirements  of  Rule  803(6)  and
902(11),  and  under  the  particular  facts  present  here,  need  not
satisfy  the  independent  requirements  of  Rule  702,  including  the
expert  identification  requirements  under  Rule  26(a)(2)(A).   See,
e.g., Garrett v. City of Tupelo, Mississippi, No. 1:16-CV-197-DMB-
DAS,  2018  WL  2994808,  at  *3  (N.D.  Miss.  June  14,  2018)(medical
opinion  contained  in  a  business  record  need  not  satisfy  the
independent  requirements  of  Rule  702).   Defendants'  objections  on
hearsay,  authentication,  and  nondisclosure  grounds  are  therefore
overruled.[1]

---

[1] To the extent defendants argue that the jury will be unable to understand and
interpret the test results, Docket # 171 at 1, the Court does not share their
concern.   Both sides' experts have reviewed the results and will be able to
contextualize and explain them to the jury.

<u>6. EMSL Report (Pl. Ex. 8)</u>:  Defendants primarily object to the admission of the EMSL Report on the basis that plaintiffs failed to disclose an expert who could provide the necessary foundation for the report.  Plaintiffs argue that, notwithstanding the failure to disclose an expert, the report can be admitted under Rule 803(6).  <u>See</u> Docket # 172 at 2-3.  The Court concludes that the report is not admissible under Rule 803(6).

As discussed in the preceding section, a business record may be deemed inadmissible if the source of the information or the method or circumstances of preparation "indicate a lack of trustworthiness."  Fed. R. Evid. 803(6)(E).  This determination "necessarily depends on the circumstances," and cannot be reduced to any categorical formulation or test.  Fed. R. Evid. 803 Advisory Comm. Notes ("The formulation of specific terms which would assure satisfactory results in all cases is not possible.").

In light of the circumstances surrounding the EMSL report, the Court is not convinced that the opinion contained therein bears the hallmarks of unusual reliability that would justify admission under Rule 803(6)(E) and dispensing with the requirements of Rule 702 and Rule 26(a)(2)(A).  This is not a case where the opinion was procured and created wholly free from the taint of anticipated litigation.  The evidence suggests that, around the time Douglas Horn ordered the test from EMSL, he was contemplating litigation

11

against the makers of Dixie X.[2]   Although there is no indication
that EMSL – the actual maker of the record – was contemplating
litigation when it created the report, Douglas Horn, who procured
the test and provided the sample, was.   Cf. Pace v. Nat'l R.R.
Passenger Corp., 291 F. Supp. 2d 93, 102-03 (D. Conn. 2003)
(independent medical examination of plaintiff, which was conducted
"in connection with pending litigation," may "present a question
of  trustworthiness").    Accordingly,  the  transaction  between
Douglas and EMSL is not the type of situation in which reliability
can be as readily assumed.   See 2 McCormick on Evid. § 288 n.32
(8th ed.) ("[W]here the only function that the report serves is to
assist in litigation or its preparation, many of the normal checks
upon the accuracy of business records are not operative. Reliance

---

[2] At his deposition, Douglas stated that, apart from the bottle he sent to EMSL,
he also ordered various other Dixie X products after his positive drug test.
See Docket # 61-5 at 245-47.   He testified:

> Q.  And you ordered those [additional products] because you wanted to
> make a case against Dixie?
>
> A.  I was going to have them tested.
>
> . . . .
>
> Q. Did you think that would help build your case against Dixie?
>
> A.  Yep.

Id. at 247.   Similarly, in his emails to EMSL, Douglas discusses "false
advertising" and the possible illegality of Dixie X.   See Pl. Ex. 9.   This
evidence undercuts Plaintiffs' present claim that Douglas obtained the testing
from EMSL simply to challenge his termination.   See Docket # 172 at 3.

upon the report's accuracy in the day-to-day operation of the business is significant.").

In addition, plaintiffs' conduct during this litigation has insulated the report from meaningful scrutiny. Despite believing this to be "crucial" evidence, Docket # 172 at 1 n.1, plaintiffs did not identify the testing lab technician as an expert and did not disclose an affidavit from a custodian until October 2020 — more than one year after summary judgment litigation. See Docket # 151-5. They offer no justification for these decisions. Under these circumstances, it would be unfair to defendants to allow plaintiffs to skirt Rules 702 and 26(a)(2)(A). While the Court has determined that Rule 803(6) may permit parties to avoid Rule 702 in some circumstances, it is also mindful that this exception should not be construed too broadly. See Bruneau, 644 F. Supp. at 896. For these reasons, Plaintiffs' Exhibit 8 is not admissible under Rule 803(6).

To the extent plaintiffs seek to disclose the report through Dr. Graham under Rule 703, the Court will not make an advance ruling on that issue. However, the Court notes that evidence disclosed under Rule 703 may not be used for substantive purposes. See United States v. Pablo, 696 F.3d 1280, 1288 (10th Cir. 2012) ("[T]he disclosure of this otherwise inadmissible information is to assist the jury in evaluating the expert's opinion, not to prove

the   substantive   truth   of   the   otherwise   inadmissible
information."); Fed. R. Evid. 703 Advisory Comm. Notes.

7. Emails Between EMSL and Douglas Horn (Pl. Ex. 9): The
Court will not issue an advance ruling on defendants' arguments
concerning hearsay and improper bolstering but will rule on any
evidentiary objection made at trial.

8. CannLabs Certificates of Analysis (Pl. Ex. 10): Defendants
argue that the CannLabs certificates are inadmissible on hearsay,
relevance,   and   authentication   grounds.   However,   defendants'
arguments concerning this exhibit are inconsistent with their own
representations to the Court during this litigation.  At summary
judgment,   defendants   affirmatively   represented   that,   before
plaintiffs' purchase, CannLabs was retained to perform testing on
Dixie X and that such testing revealed the presence of THC.[3]
Although the CannLabs certificates are dated after plaintiffs'
purchase, defendants themselves relied on those certificates as
exemplars of the testing performed and results received before

---

[3] See Docket # 61-12 ¶¶ 8, 13 (stating that testing was done "at various stages
of production" and that "[a]ny public statement made by or on behalf of RDH
during and before the fall of 2012 regarding the THC content of the product at
issue was made pursuant to the testing of the product performed by CannLabs");
Docket # 61-14 at 25 (citing the CannLabs certificates and stating that "the
product at issue, when tested during its development and manufacturing stages,
contained THC content well below the state and federal limit of 0.3%"); Docket
# 62-4 ¶ 15 ("Testing of Dixie X was done at various stages of production to
ensure compliance with state and federal laws . . . .  Examples of copies of
the certificates of testing . . . are annexed hereto . . . .  CannLabs
certificates merely confirmed the THC and CBD levels we believed the products
already contained.").

plaintiffs' purchase. <u>See</u> note 3, <u>supra</u>. Similarly, defense counsel and defendant-employees affirmatively represented that the CannLabs certificates which plaintiffs seek to admit are what they purport to be.[4] <u>See</u> Fed. R. Evid. 901.

The Court need not address the import of defendants' prior, affirmative representations at this time. <u>See, e.g.</u>, <u>Guadagno v. Wallack Ader Levithan Assocs.</u>, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (discussing judicial and evidentiary admissions). Rather, the Court declines to issue an advance ruling on this exhibit. As it stands, defendants articulate no reason why plaintiffs could not call a defendant-employee, like Michelle Sides or Chuck Smith,[5] to provide the necessary foundation for the admission of the certificates as business records under Rule 803(6). <u>See</u> <u>United States v. Jakobetz</u>, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.").

9. Expert Report of Kenneth Graham (Pl. Ex. 13): Defendants' motion is granted insofar as it seeks to preclude the admission of Dr. Graham's expert report. <u>See</u> <u>Granite Partners, L.P. v. Merrill</u>

---

[4] <u>See</u> Docket # 62-3 ¶ 16 (Affidavit of Jean-Claude Mazzola); Docket # 62-2 ¶ 8 (Affidavit of Chuck Smith); Docket # 61-2 ¶ 16 (Affidavit of Roy Mura); Docket # 61-12 ¶ 8 (Affidavit of Michelle Sides).

[5] Plaintiffs did not list either Sides or Smith on their previous witness list, but because the Court is issuing a new pretrial order, that list is not binding.

Lynch, Pierce, Fenner & Smith Inc., No. 96-CV-7874, 2002 WL 826956, at *7 (S.D.N.Y. May 1, 2002) (collecting cases and agreeing that "where an expert is expected to testify at trial, her report is inadmissible hearsay and redundant").  To the extent defendants object to any opinions about which Dr. Graham may testify, they may raise those objections at trial.

10.  Expert Report of Mark Zaporowski (Pl. Ex. 14): Defendants' motion is granted to the extent it seeks to preclude the admission of Dr. Zaporowski's expert report.  See id.  This ruling does not preclude plaintiffs from moving to admit any charts or tables, should they wish to do so.  To the extent defendants move to preclude any of Dr. Zaporowski's expected testimony, they may raise those objections at trial (except as discussed below).

11. Second Scenario of Mark Zaporowski:  Defendants' motion is granted insofar as it seeks to preclude Dr. Zaporowski from testifying about a previously undisclosed "second scenario" for calculating Douglas Horn's damages.  Plaintiffs did not disclose this new opinion until after the close of discovery and dispositive motion practice, and their claimed reason for the changes was to "refresh Mr. Horn's claim due to the passage of time and trial being imminent."  See Docket # 172 at 6.  This is not a valid reason.  Preclusion is appropriate given the late disclosure, the

absence of justification, the scope of the "refreshed opinion", the proximity to trial, and the resulting prejudice to defendants.

CONCLUSION

For the reasons stated above, defendants' motions *in limine* (Docket # 141, 142) are **granted in part and denied in part**, as set forth herein.

FINAL PRETRIAL ORDER

**Trial:**

This case is hereby ordered for trial beginning on **July 26, 2021 at the Buffalo Courthouse, 2 Niagara Square, Buffalo, NY 14202.** Jurors will arrive at 9:30 A.M. and jury selection will commence at 10:00 A.M. Once a jury has been selected, we will proceed immediately with opening statements and presentation of testimony. This is a day-certain trial date which will not be adjourned. The parties have advised that trial is expected to last approximately **two weeks.**

**Pretrial Conference:**

A pretrial conference is scheduled for **June 29, 2021 at 10 A.M. at the Rochester Courthouse, 100 State Street, Rochester, NY**

14614.  Unless excused by the Court, the attorneys who will try the case must be present at the pretrial conference.

The Court recognizes that the parties already submitted some trial materials when the case was last scheduled for trial, but given the length of time since the parties' filings and the present decision on the motions *in limine*, the Court orders each side to provide all of the materials listed below, even if they have previously been filed.  To the extent possible, the Court requests that copies of documents provided to the court be three-hole-punched for insertion into a notebook.  The Court requests that two copies of the materials described below be submitted.  Unless otherwise noted, all listed materials shall be filed and provided to the Court **no later than 5 P.M. on June 15, 2021.**

## A.  **Voir Dire Material**:

Each party must prepare a document entitled "Voir Dire Information" containing the following material:

1.  A short description of the case to be read to the jury to identify the case and the claims and defenses at issue.

2.  The full name and address of the client.  Include here the name of any corporate representative that intends to appear at trial for the client.

3.   The full name and address of counsel, including assistants.

4.   A list of prospective witnesses that are expected to be called at trial, including adverse party witnesses.  A copy of this list must be provided to the court reporter at the commencement of trial.  Also list here witnesses that you intend to introduce by reading depositions.  Indicate that the witness will be a "deposition witness."  (If there is an individual who will not be a witness, but who will otherwise be referred to at trial, please disclose the name of the individual so that appropriate voir dire can be conducted.).

For proper identification to the jury and for use by the Court, this list, which must be on a separate sheet of paper, should include:

(i)   The full name of the witness.

(ii)  The occupational association of the witness, e.g., FBI, Eastman Kodak Company, Delta Laboratories, etc.

(iii) The address of witness.

(iv)  A short summary statement (one or two sentences) of the general subject matter expected to be covered by the witness.

5.   The Court will conduct some voir dire and has many standard questions that it asks of every prospective panel.  After

19

the Court is finished counsel will be permitted to question the jury.  If there are questions or a particular topic that a party would rather the Court to question the jury about, counsel should submit those questions or identify the topic for the Court.


**B.  <u>Exhibits and Exhibit List</u>:**

Each party must prepare an exhibit list containing those exhibits that the party anticipates introducing in its direct case.  These lists must be prepared on forms supplied by the Clerk's Office and must contain a brief description of the proposed exhibit.

All exhibits shall be denominated by number. Plaintiff shall use numbers 1 through 399; defendant shall use numbers beginning at 400.

Each exhibit must be physically tagged with the appropriate colored sticker (pink for plaintiff, blue for defendant and third-party defendants), and each exhibit must be physically numbered prior to commencement of trial.

A complete copy of the exhibit list must be given to the court reporter at the commencement of trial.

Parties do not have to mark at the pretrial conference those exhibits that may only be used on cross-

examination for impeachment of a witness or to refresh the recollection of any witness.

Except for good cause, the Court will not allow introduction into evidence of exhibits unless they are listed on the exhibit list submitted at the pretrial conference.

COPIES OF EACH DOCUMENTARY EXHIBIT, PHOTOGRAPH, CHART OR OTHER PAPER MUST BE DUPLICATED FOR THE ADVERSE PARTY AND EXCHANGED AT THE PRETRIAL CONFERENCE UNLESS THE PROPONENT CERTIFIES THAT THE DOCUMENT HAS ALREADY BEEN COPIED OR EXCHANGED DURING DISCOVERY, OR IF THE DOCUMENT CANNOT BE COPIED, THAT IT IS AVAILABLE FOR INSPECTION.

C.  **Exhibit Book**:

Each side shall prepare an exhibit book containing copies of the exhibits.  This book will consist of a three-ring binder with tabs for each exhibit.  The proponent must prepare a binder for each party, two binders for the Court, and a binder for use of witnesses on the stand.

D.  **Charts, Demonstrative Evidence and Physical Evidence**:

All charts not intended to be offered into evidence, other demonstrative evidence or items of physical evidence, must be made available for examination in Buffalo or some other mutually agreeable place for a review at least two (2) business days before they are offered in evidence or displayed to the jury.

21

## E. Expert Testimony:

The identity of all experts that will be called as witnesses must be provided to the Court.  The proponent must also provide a brief summary of the ultimate opinions that will be rendered by the expert.  The testimony of experts will be limited to the opinions and the grounds for each opinion set forth in answers to expert interrogatories and expert reports.  See Fed. R. Civ. P. 26(a)(2)(B).  The parties are responsible for taking steps to timely supplement any expert disclosures to be in full compliance with this Rule.

## F. Deposition Testimony and Discovery Material:

Each side must prepare and exchange an itemized list of deposition testimony (with page and line references), that it intends to use in its direct case.  The parties should attempt to reconcile and resolve any disputes as to admissibility between the time of the pretrial conference and trial.

At least two weeks in advance of trial, the objecting party must file, in writing, a document listing its objections to the opponent's deposition material and the basis for that objection. If no objections are received, it will be deemed to be a waiver of objections to the proffered deposition testimony.  The Court must be provided with complete copies of the depositions if there are objections to be resolved.

22

G. **Damages**:

Plaintiff must prepare an itemized statement of each element of special damages.

H. **Legal and Evidentiary Issues**:

To the extent not addressed by the present order on the motions *in limine*, all parties should prepare a detailed statement as to issues of law involved in the case and any unusual questions relative to the admissibility of evidence, trial procedure or substantive issues. This submission should include legal authority.

The Court expects the parties to raise any potential issues at the pretrial conference, or as soon as they become evident, so that the Court and the parties will have adequate time to consider the issues.

I. **Instruction Material**:

At the pretrial conference, in a separate document, plaintiff must supply the Court with two copies, and all parties with one copy, of its proposed charge on the substantive matters raised in the complaint — that is, the law relating to the causes of action pleaded including damages.

Each charge should be listed on a separate page with supporting authority or the source of the instruction listed at the bottom.

Each charge should also contain a notation at the bottom, "Given _____; Not Given _____; Given in Substance _____."

If counsel requests "form" instructions from form books, for example, Sand, Modern Federal Jury Instructions; Devitt & Blackmar, Federal Jury Practice and Instructions, or New York Pattern Jury Instruction (PJI), it will be sufficient to list the section number and a brief description of the charge.

The Court has standard general instructions that it routinely gives, but it is the burden of counsel to make specific requests for special instructions relating to, for example, evidentiary issues, limiting instructions, impeachment matters, etc.

If defendant objects to plaintiff's proposed charge, or if defendant has alternative charges to submit, they should be submitted at least two weeks before commencement of the trial. The foregoing notwithstanding, I certainly understand that matters may develop during trial that will require instructions, but the essential elements of the claims and defenses should be set forth before trial commences. Preparation of instructions before trial is important because the court, from time to time, may instruct the jury on some issues in the case at the commencement of the trial or even during the trial in addition to the full instructions given at the conclusion of the trial.

24

**NOTES ABOUT TRIAL PROCEDURE**:

1. **Jury Selection**:

  Concerning jury selection, the parties should be familiar with Local Rule 47(e).  The Court will use the "struck jury system" as described in Local Rule 47(e), pursuant to Rule 48 of the Federal Rules of Civil Procedure, there will be no "alternate" jurors and all jurors selected will participate in the verdict.

  The Court will limit peremptory challenges as provided in Local Rule 47; 28 U.S.C. § 1870; Fed. R. Civ. P. 48.

  Plaintiff's counsel will exercise peremptory challenges first by writing the name and number of the juror on the strike sheet that will be provided.  The strike sheet will then go to the defendant who will make his/her own strike by writing the name and number of a juror.  The strike sheet will then come to the Court who will announce the jurors that have been excused.

  If a party chooses not to exercise a challenge during a particular round, the party loses only that peremptory challenge and may make other peremptory challenges in later rounds against any prospective juror in the jury box.

2. **Trial Schedule, Procedure, Exhibits, etc.**:

  It is expected that we will maximize jury time as much as possible.  This means that the Court will not engage in lengthy bench conferences or conferences in chambers concerning matters

25

that could have been resolved before the jury arrives, during the luncheon recess or in the evening.  When the jury is scheduled to appear, it is expected that we will begin proof at that time. Therefore, it is the burden of counsel, if they anticipate problems, to notify the Court so that time can be set aside when the jury is not present to resolve those issues.  If necessary, the Court may direct the parties to appear 30-60 minutes before the jury arrives each day to resolve problems.

The parties are responsible for having witnesses available.  The Court will take witnesses out of turn to accommodate witnesses.  At least by the evening before each day's session, counsel should advise opposing counsel and the Court of those witnesses expected to be called the following day.

The Court may set time limits for opening statements and closing arguments, and it is expected that counsel will adhere to those limits.

Exhibits that have been received into evidence must be kept on the table between the lecterns during court proceedings. During evening recesses, each side will be responsible for maintaining custody of its exhibits and returning them to Court the next day (unless other arrangements are made with the Court).

Counsel need not ask permission to approach a witness with a document, but otherwise questioning should be done from no closer than the lectern unless counsel receives permission from the Court.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:    Rochester, New York
          April 29, 2021