UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

       Plaintiff,

-against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

       Defendants,
-----------------------------------------------------------------X

Civ Action: 15-CV-701 FPG/JWF

***PLAINTIFF'S OMNIBUS DECLARATION IN OPPOSITION TO MOTION TO QUASH and IN REPLY ON MOTION FRCP 43***

JEFFREY BENJAMIN, ESQ., declares the following, pursuant to 28 USC § 1746, under penalty of perjury:

1. I am an attorney at law licensed to practice in the State of New York and the Western District of New York and represent the Plaintiff in the above-captioned matter.

2. I submit this Declaration in opposition to Defendant's motion for an order to quash the trial subpoena of Medical Marijuana, Inc.'s ("MMI") Chief Operating Officer, Michelle Sides, Esq., dated June 25, 2021 (Docket # 181-4).

3. While service of process has not yet been obtained on Tripp Keber and Chuck Smith, Defendant Dixie has adopted the arguments in the Motion to Quash by MMI. As such, Plaintiff likewise adopts these arguments as against Dixie.

4. I also make and submit this Declaration in support of Plaintiff's motion filed July 5, 2021, seeking "an Order pursuant to Fed. R. Civ. P. 43 and 45…directing that Defendants' party officers, Tripp Keber, Chuck Smith and Michelle Sides appear for trial and testify before this Court via contemporaneous video transmission" (Docket # 181).

A. **Current Status of Service on the Party Officers**

As of the date of this Declaration, the following is a Chronology of Plaintiff's attempts at serving the three party officers at issue with Subpoenas for their trial testimony:

1) Tripp Keber was served personally on March 19, 2021 with the attached prior Subpoena; along with its accompanying Proof of Service attached as **Exhibit 1.** However, the process server did not serve a check for appearance and mileage fees at that time.

2) Michelle Sides was served personally on July 1, 2021 with the attached Subpoena along with its Affidavit of Service. **Exhibit 2**.

3) Four (4) Attempts at serving Tripp Keber again from July 1 to July 8, 2021 were made with the attached Subpoena and Proof of non Service. **Exhibit 3.**

4) Four (4) Attempts at serving Chuck Smith were made from July 1 to July 8, 2021 with the attached Subpoena and Proof of Service. **Exhibit 4.**

B. ***The Subpoenas issued stated clearly that they were "subject to Order" of this Court***

5) By issuing these Subpoenas, I was not being presumptuous. At the Pre-Trial Conference with the Court on June 29, 2021, the issue of our FRCP Rule 43 motion was discussed as well as the Subpoenas attached as Exhibits hereto. I specifically used the "subject to" language in recognition that the Court must approve the Subpoenas pursuant to Rule 43, and I respectfully believe the Court was expecting the instant application.

6) Plaintiff does not dispute that seeking witnesses' remote testimony is a legal nullity without a corresponding order under Rule 43(a) permitting the testimony. *See In re: 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *3 (N.D. Fla. May 28, 2021). This is precisely why I inserted the limiting language in each of the Subpoenas.

7) If this Court rules that Plaintiff's issuing of subpoenas and attempted service is in error, counsel's actions stemmed from *an immediate need to ensure notice to all witnesses, and because defense counsel refused to accept service* on behalf of Tripp Keber, Chuck Smith, and Michelle L. Sides, Esq.

8) Should the Court rule counsel was in error in issuing the Subpoenas, Plaintiff submits that such actions are harmless and easily rectified by granting (or denying) permission for testimony in open court by contemporaneous video transmission from a different location. *See id.*

9) Only when a Plaintiff fails to seek leave is it appropriate to quash a subpoena as procedurally flawed. Plaintiff inserted explicit language in the subpoenas that their required testimony was entirely contingent on this Court's ruling.

C. *Allowing Witnesses to Testify Remotely is Increasingly Common and Much Safer Because of Advancements in Technology.*

10) Witnesses testifying remotely with the use of improved video and electronic appearances became more common even prior to the COVID-19 pandemic. *See Flores v. Town of Islip*, No. 18-CV-3549 (GRB)(ST), 2020 WL 5211052, at *2 (E.D.N.Y. Sept. 1, 2020).

11) Courts in many districts have gradually moved toward allowing contemporaneous video testimony more frequently and with increasing regularity as technology has improved. *See, e.g., Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (noting increased judicial approval as technology has evolved); *In re Vioxx Products Liability Litigation*, 439 F. Supp. 2d 640, 642 (E.D. La. 2006) (stating that "there has been an increased trend by federal courts allowing and by legal commentators advocating for the use of contemporaneous transmission of trial testimony"); *Edwards v. Logan*, 38 F. Supp. 2d 463, 466–67, 43 Fed. R. Serv. 3d 1114 (W.D. Va. 1999) (pointing to video transmission

provisions of the Prisoner Litigation Reform Act of 1995 as illustrating "the growing acceptance of video conferencing as an alternative in judicial proceedings").

12) The recent *Liu* case is most instructive. It is questionable whether a difference in value exists between live and in-person testimony. *See Liu v. State Farm Mut. Auto. Ins. Co.*, No. 2:18-1862-BJR, 2020 WL 8465987, at *2 (W.D. Wash. Dec. 17, 2020) ("[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live' testimony, thereby allowing a juror to judge credibility unimpeded."); Fed. R. Civ. P. 43(a) advisory committee notes (1996).

13) "Appropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Aoki v. Gilbert, No. 211CV02797*, 2019 WL 1243719, at *1 (E.D. Cal. Mar. 18, 2019) (internal quotation omitted).

14) These witnesses are adversary witnesses to the Plaintiff, not ones to which defense counsel can reasonably claim any surprise or prejudice as to their testimony. The witnesses will be placed under oath to testify, and Defendants will have the same ability to directly examine them as Defendants would have if the witnesses were in-person. In fact, these witnesses, as described below, *are party officers of the Defendants* and not low-level non-knowledgeable employees. These witnesses have before (in producing their Affidavits for their Motions for Summary Judgment) and will again, work closely with defense counsel to prepare for their trial testimony and be hostile witnesses for the Plaintiff. Defendants have failed to provide any substantive reason in their motion or oppositions as to why they would be prejudiced should this Court rule to take their video testimony. There simply is no such prejudice to the Defendants.

15) Indeed, in this scenario proposed by Plaintiff, Defendants avoid the cost of producing their own witnesses.

16) Live testimony via video still allows the jury to evaluate a witness's demeanor so they may evaluate credibility. *See F.T.C. v. Swedish Match North America, Inc.*, 197 F.R.D. 1, 2, 48 Fed. R. Serv. 3d 144 (D.D.C. 2000) (rejecting the claim that a court's ability to assess demeanor and credibility is compromised by video testimony). *See also Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) ("With videoconferencing, a jury will also be able to observe the witness' demeanor and evaluate his credibility in the same manner as traditional live testimony.")

### D. The Cases Defendant Relies on Do Not Address Relevant Considerations of the Present Case Which Weigh in Favor of Granting Plaintiff's Motion.

17) Defendant relies on a number of cases which are easily distinguished from this matter. In *Niemeyer v. Ford Motor Co.*, the Plaintiff did not depose the witness during discovery despite living in the same area; the plaintiff selected the trial date; the witness was a doctor and until he testified, the defendant could not know what questions to ask or which medical records and other documents should be presented to the witness; the testimony would be long and unpredictable; and the witness planned a trip out of the country (likely) well in advance. 2012 WL 5199145 (D. Nev. Oct. 18, 2012).

18) In *Sille v. Parball Corp.*, the defendant requested a "blanket authorization" for witnesses in Norway to testify remotely, and the Court held international travel alone was not good cause. 2011 WL 2680560, *1 (D. Nev. July 8, 2011). It was also unclear how many of the witnesses, if called, would provide relevant testimony. *Id.*

19) In *Christians of California, Inc. v. Clive Christian New York, LLP*, after the plaintiff failed to depose the witness during discovery, the plaintiff sought to subpoena live in-

person testimony and was denied. 2014 WL 6467254, *1 (S.D.N.Y. 2014). The plaintiff then unsuccessfully moved for remote testimony. *Id.* at *2. The court ruled that international travel was not a compelling circumstance—unlike various other courts have over the course of the past year. *See id.* at *5.

20) In *Rodriguez v. SGLC, Inc.*, the plaintiff relied solely on the expense of international travel for the plaintiff, a foreseeable issue that was not proven with actual dollar amounts. No. 2:08–cv–01971, 2012 WL 3704922, at *2–3 (E.D. Cal. Aug. 24, 2012). The Court recognized that international travel can be good cause for a Rule 43 motion, when it involves third party witnesses who are not parties to the action. *Id.* at *3 ("The bulk of the cases relying on this basis to justify the taking of remote testimony have done so, however, in the context of taking third-party witness testimony, not in the context of taking the testimony of parties themselves.").

E. **Other Considerations.**

21) Plaintiff seeks testimony from three witnesses who live in two different states, separated by thousands of miles, from Plaintiff. This case is very straightforward, and involves no confidential medical records. Indeed, the evidentiary record before the Court is not voluminous.

22) This case is rather straightforward, and involves no confidential medical records.

23) Testimony, particularly of these proposed witnesses, is expected to be short.

24) Plaintiff's attorneys did not depose the three witnesses in question during discovery by the June 1, 2017 deadline. Plaintiff's counsel made a motion to extend discovery that was denied. Due to a miscommunication between outgoing and incoming counsel at that time,

neither of us appeared at the hearing on the motion. But Judge Roehmer denied the motion to extend the discovery deadline nonetheless.

25) However, defense counsel now argues that because these witnesses were not deposed during discovery, somehow plaintiff is now barred for subpoenaing them for trial testimony. The argument is nonsensical and not based on any Rule of discovery. Defendants argument is especially mal-aligned as the proposed witnesses are *adverse to Plaintiff, and they are Defendants' party officers*.

26) Both parties know the witnesses in question will provide testimony relevant to the issues at trial, and, moreover, that their testimony is uncomplicated and relatively predictable.

27) Certain questions Plaintiff seeks to ask Mr. Keber are based on his two YouTube appearances and the "FAQs" exhibit which the defense counsel. As such, defense counsel will not be surprised or prejudiced by Plaintiff's counsel anticipated brief cross examination.

28) With respect to proposed witnesses Smith and Sides, both have submitted Declarations in this case in support of Defendants' successful motions for summary judgment. They should not now be able to hide from cross examination on that prior testimony in this case and again, Defendants cannot claim surprise or prejudice.

F. **The Relevant Considerations Weigh in Favor of Allowing Video Conference Trial Testimony.**

29) The 100-mile geographic limitation of Rule 45(c) is treated as "a shield for witnesses and not a sword wielded by a litigant." *Liu*, No. 2:18-1862-BJR, 2020 WL 8465987, at *4 (emphasis in original). The Court should not presume that it burdens a witness to travel fewer than 100 miles to give testimony via contemporaneous transmission. *Id.*

30) Indeed, Plaintiff here seeks to have them travel 1 and 5 miles from their homes respectively.

31) In the case at bar, the Defendants are seeking to use Rule 45(c) as a "shield." Plaintiff's proposed contemporaneous transmission of their trial testimony, with appropriate safeguards, ensures that the witnesses will not be inconvenienced, or have to bear great expense to travel to Buffalo with a receding COVID-19 pandemic, through travel restrictions still abound. The Defendants understand these party officer witnesses to have critical information in many aspects of this case.

32) Even with greater acceptance by courts in general, there must be good cause and compelling circumstances to grant an order permitting video conference trial testimony. *See In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d at 643.

33) The primary considerations to be weighed when determining whether to permit video conference trial testimony are:

    a. The control exerted over the witness by the Defendant.

    b. The complex, multi-party, multi-state nature of the litigation.

    c. The apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily.

    d. The lack of any true prejudice to the Defendant.

34) By their own statements, each of these witnesses are critical.

35) Tripp Keber, was Chief Executive Officer of Dixie Elixirs, LLC, and an officer of both Medical Marijuana, Inc. and Red Dice Holdings, LLC.

36) Chuck Smith, is Dixie Elixirs, LLC's Chief Operating Officer.

37)  Michelle Sides, is Red Dice Holdings, LLC's Chief Operating Officer.

38) All of these witnesses are corporate officers of Dixie, Medical Marijuana, Inc., and Red Dice Holdings.

39) Medical Marijuana, Inc. is incorporated in California, where Ms. Sides is located.

40) Red Dice Holdings, LLC is incorporated in Colorado, where upon information and belief, Mr. Keber and Mr. Smith are located. As shown in **Exhibits 1, 2, 3 and 4**, diligent efforts have been made to serve them to no avail, despite successful personal service of Tripp Keber on March 19, 2021.

41) It was not until the close of discovery at the time for motions for summary judgment that Mr. Smith and Ms. Sides testified unilaterally in this case. Despite the relevance of statements made by the witnesses, the defense has excluded these statements from their exhibit list, and indeed will call no liability witness in defense, as indicated in their June 18, 2021 disclosure.

42) Defendant claims they would be prejudiced by granting Plaintiff's motion for the purpose of the *Vioxx* factors because they must respond to the motion. The prejudice considered should come from allowing remote contemporaneous testimony of the witnesses, not from requiring Defendant to respond to a motion made by Plaintiff. *See In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d at 643. Granting the Plaintiff's motion would actually seem to inure a benefit to Defendants from their adversary.

### G. The Witnesses Are Critically Important to Relevant Issues.

43) As stated above, Defendants have already benefited from the sworn statements of two of the witnesses and "availed themselves of the benefit of the jurisdiction of this Court." They should not now be allowed to avoid its scrutiny.

44) For these reasons, Plaintiff respectfully asks this Court to: (1) grant Plaintiff's motion for an order pursuant to Rule 43(a) permitting the testimony of Tripp Keber, Chuck Smith, and Michelle Sides in open court by contemporaneous transmission from remote locations; and (2) authorize the Subpoenas of the three witnesses so subpoenaed.

DATED:   New York, New York
         July 13, 2021

*Jeffrey Benjamin, Esq.*
Jeffrey Benjamin, Esq.
THE LINDEN LAW GROUP, P.C.
*Attorney for Plaintiff*
5 Penn Plaza, 23rd Floor
New York, New York 10001
(212) 835-1532
jbenjamin@nyfraudlaw.com