UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOUGLAS J. HORN and CINDY HARP-HORN,

                                                                                             Civil Action No:

                        Plaintiffs,                                15-cv-701 FPG/MJR

                -against-

MEDICAL MARIJUANA, INC.,
DIXIE ELIXIRS AND EDIBLES,
RED DICE HOLDINGS, LLC, and
DIXIE BOTANICALS,

                        Defendants,
------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT DIXIE'S MOTION *IN LIMINE* TO PRECLUDE
TESTIMONY OF EXPERT MARK P. ZAPOROWSKI, Ph.D.**


**Jeffrey Benjamin, Esq.**
THE LINDEN LAW GROUP, P.C.
5 Penn Plaza, 23rd Floor
New York, NY  10001
(212) 655-9536
A*ttorneys for Plaintiff*


Dated:  New York, New York
         July 29, 2021

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT and RELEVANT PROCEDURAL HISTORY ................... 1

ARGUMENT ......................................................................................................................... 3

    I.      INTRODUCTION ....................................................................................... 3

    II.     MR. HORN'S LOSS OF EARNINGS CLAIM IS COMPENSABLE IN CONNECTION WITH HIS RICO CLAIM ................................................. 4

    III.    THE AUTHORITY RELIED UPON BY MOVANT IS WHOLLY INAPPLICABLE AND READILY DISTINGUISHABLE ............................ 6

    IV.    MR. HORN'S DAMAGES UNDER HIS FRAUD CLAIM WERE NOT SPECULATIVE, AND ARE RECOVERABLE ................................... 8

    V.     THERE CAN BE NO DISPUTE THAT PLAINTIFF'S PAST LOST WAGES ARE NOT SPECULATIVE AND ARE AWARDABLE BY A JURY; AND PLAINTIFF'S CLAIM FOR FUTURE LOST WAGES ARE BASED ON THE EVIDENCE AND EXPERT ECONOMIST ANALYSIS........................................................................... 11

CONCLUSION .................................................................................................................... 14

TABLE OF AUTHORITIES

**Cases:**

*American National Bank v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) .................................................................................................................. 7

*Anza v. Ideal Steel Supply Corp.*, 547 US 451 (2006) ............................................ 4

*Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984) ................................... 7

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) ................................................................................................... 5

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606 (4th Dept 1983) ............ 8

*City of New York v. FedEx*, 175 F. Supp. 3d 351, 369 (S.D.N.Y. 2016) ............................... 3, 4

*Clanton v. Agoglitta*, 206 A.D.2d 497 (N.Y. App. Div. 2d Dep't 1987) ................................ 12

*Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271-272 (2010) ............ 10

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) .................................... 2, 3, 8

*Ferguson v. City of New York*, 73 A.D.3d 649 (1d Dep't A.D. 2010) .................................. 13

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994) ............... 3

*Fljer v. Cayuga County*, No. 5:03–CV–578, 2006 WL 2655698, at *4 (N.D.N.Y. Sept.15, 2006) ......................................................................................................... 6

*Freeman v. Tuan Anh Nguyen*, 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004) ............. 13

*Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000) ............................................................................................................ 6

*Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 U.S. Dist. LEXIS 74037, at *25-28 (N.D.N.Y. Sep. 30, 2006) ....................................................................... 6

*Gilfus v. Adessa*, No. 5:03-cv-1368 (N.D.N.Y. Sept 30, 2006) ............................................ 6

*Gomez-Jimenez v. New York L. Sch.*, 36 Misc. 3d 230, 231, (Sup. Ct.), aff'd, 103 A.D.3d 13 (2012) .............................................................................................. 10-11

*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988) .................................................................... 7

*Hanley v. Sumitomo Bank, Ltd.*, 1993 WL 362388, at *3 (S.D.N.Y. 1993) ............................. 9

*Hotaling v. Leach & Co.* 247 NY 84, 87-88 (1928) ................................................................ 9

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995) .............................. 5

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ........................... 5

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ................................................... 6

*Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151 A.D.2d 345, 346 (1989) ................................. 10

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221
(E.D.N.Y. 1999) ........................................................................................................................ 7

*Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F.Supp.2d 492 (N.D.N.Y. 2013) ..................... 13

*Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) ...................... 5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ........... 8

*Subramanian v. Lupin Inc.*, No. 17CV5040RAKHP, 2020 WL 7029273, at *18
(S.D.N.Y. Aug. 21, 2020) ......................................................................................................... 9

*Waring v. Sunrise Yonkers SL, LLC*, 134 A.D.3d 488 (1st Dep't 2015) ............................... 13

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y.
2007) ......................................................................................................................................... 9

**Rules:**

CPLR 5501(c) ......................................................................................................................... 12

Fed. R. Civ. P. Rule 9(b) .......................................................................................................... 6

Fed. R. Civ. P. Rule 12(c) ........................................................................................................ 1

Fed. R. Civ. P. Rule 56 ............................................................................................................. 1

## PRELIMINARY STATEMENT and RELEVANT PROCEDURAL HISTORY

On Thursday, July 22, 2021, one (1) business day before a "day-certain" trial[1], the Dixie Holdings, LLC Defendant ("Dixie") filed a mis-named *Motion in Limine* but what is, in actuality, a latent Motion for Summary Judgment on the issue of damages. At the close of business, Friday, July 23, 2021, Dixie's counsel then e-mailed three cases omitted from its motion, purportedly in further support of same.

Noticeably absent from Dixie's moving papers is the statutory basis for making this motion on the eve of trial. Although the moving papers avoid mention of Rule 56, this motion may also be characterized as a dispositive *pleadings* motion under FRCP 12(c). For the first time, Dixie's motion attacks the Plaintiff's prayer for relief in his pleadings because it bears directly upon the threshold issue of standing under Plaintiff's causes of action for RICO and Fraud. As such, the timing of Dixie's motion frustrates both this Court's Pre-Trial Order, and FRCP 12(c) against the "delay of trial."

In addition, the timing of Dixie's motion runs afoul of the unequivocal directive in the Court's Pre-Trial Order Page 23, Paragraph H at Doc #174:

> "The Court expects the parties to raise any potential issues at the pre-trial conference, or as soon as they become evident, so that the Court and the parties will have adequate time to consider the issues."

The issue of Plaintiff's clear and definite damages is, for the first time throughout this six-year litigation, being challenged on the eve of trial. The subject matter that Dixie now challenges for the first time, has been evident and part of the record since the disclosure of Plaintiff's expert Economist's Report in August, 2017 and, certainly, after his deposition in December, 2017. His updated 2020 Report is annexed hereto as **Exhibit "A."** Dixie's claim of

---

[1] Pursuant to the Court's Pre-Trial Order of April 29, 2021, bottom of Page 17 at Doc #174.

oversight is remarkable as they have had nearly four (4) years to consider the Plaintiff's damages and move accordingly.

The Dixie Defendant well knew the specific nature of Plaintiff's claims for damages (i.e. past and future lost compensation) as far back as the filing of Plaintiff's Complaint, or at least their Answer dated October 23, 2015, wherein they *actually pleaded* an Eleventh Affirmative Defense of "standing" as to Plaintiff's injuries under RICO. (See Doc #9, bottom of Page 11.) The Court respectfully should not accept this sharp and dilatory practice—particularly since Dixie's legal assertions are not supported by the authority they cite, or are otherwise inapplicable to Mr. Horn's case.

The time for dispositive motions expired, by order of Court, years ago. Judge Geraci decided all summary judgment motions long ago and further established the law of the case in so ruling. Indeed, Judge Geraci considered each of the elements of Plaintiff's Fraud and RICO cases before denying summary judgment on those two claims. Additionally, this Court decided Dixie's numerous and extensive Motions in Limine in its Pre-Trial Order.

Setting aside the egregiously prejudicial[2] timing of this motion, as will be discussed more fully below, the moving Defendant somehow missed the Second Circuit precedent of *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006), and then its progeny which sets out the controlling standard for RICO damages: "[a] RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and

---

[2] The Horns, their experts and their counsel sustained a substantial loss of money and time, and loss of work, due to the timing of Dixie's motion. The Plaintiff and his witnesses made a complete effort consistent with the Final Pre-Trial Order to be ready for July 26, 2021 as ordered, and at great and lost expense.

definite." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994)); *see also City of New York v. FedEx*, 175 F. Supp. 3d 351, 369 (S.D.N.Y. 2016). The notable absence and discussion of this controlling precedent is telling.

## ARGUMENT

### I. Introduction

Dixie's motion is improper both procedurally and substantively.  This Defendant's failure to raise the Second Circuit case, *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), was a fatal substantive flaw.  In *Denney,* the Second Circuit articulated the standard for damages available pursuant to a RICO Claim confirming that a plaintiff is entitled to recover where "he has been injured in his business...by the conduct constituting the [RICO] violation…when (as here) his…actual lost becomes clear and definite. *Id*. at 266 (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767-69 (2d Cir. 1994).  In so holding, the *Denny* Court recognized a RICO Plaintiff's right to damages once same have been demonstrated to be "clear and definite."  Plaintiff's expert is being called to establish the extent of the Plaintiff's heretofore clear and demonstrated damages.

Mr. Horn suffered demonstrable and definite economic damages resulting directly from his loss of employment caused by the Defendant's malfeasance after urinalysis test results showed THC in his system, which Mr. Horn was exposed to by Defendants' product.  Mr. Horn, upon being terminated, lost a lucrative means of employment, and therefore lost past and future wages from this job. The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore, is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product. The issue Mr. Horn brings to the jury is that his non-

3

speculative economic damages flowed from Defendant's combined conduct in bringing the product to market and selling and sending it to Mr. Horn.

As for Plaintiff's expert, his Economist Dr. Zaporowski's and his expert report of past and future lost wages were disclosed to the movant years ago. Dr. Zaporowski's report is based on Mr. Horn's filed and fixed tax returns, and is based upon compensation that was never paid in cash. Over the years of this case, there has been no secret as to their nature of his damages, their clarity or their definiteness. In actuality, Mr. Horn mitigated his damages over nine years by clawing his way back into the trucking industry over that period. Plaintiff's Economist calculates the exact past lost compensation had he not been fired over that long period of time, and calculates the future loss based on widely accepted statistical work-life expectancy tables of the U.S Bureau of Labor Statistics, a source upon which even the defense expert relied. In Dr. Zaporowski's annexed report, he pertinently and competently uses the Employee Cost Index to calculate Plaintiff's future lost compensation with a growth rate of 2.5% from 2019 onward.

II.   **Mr. Horn's Loss of Earnings Claim is Compensable in Connection with his RICO Claim**

As stated above, the issue of the Plaintiff's claims under his RICO claim has been fully litigated and ruled upon previously in this action by Judge Geraci and remains the law of the case. Neither a timely application for reconsideration, or new motion was ever sought by this movant. Plaintiff should be entitled to proceed to trial in good faith reliance upon the rulings and prior orders of the Court. The applicable standard is clear that where proximate cause has been established, a RICO Plaintiff may recover for the "injury flowing from [the RICO] violation…'necessarily is the harm caused by [the] predicate acts.'" *City of New York v. FedEx Ground Package Sys.*, 175 F. Supp. 3d 351, 370 (S.D.N.Y. 2016) (citing *Anza v. Ideal Steel Supply Corp.*, 547 US 451 (2006). Defendant's challenge in this regard fails substantively, as

Mr. Horn's case falls squarely within the parameters of the *Denney* case and the New York District Court cases which followed.

Plaintiff's claim for past and future lost wages are recoverable damages under RICO. *See, Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) [distinguishing personal injuries from economic injuries which the court deemed compensable].

Loss of earnings claims have been held to be recoverable under RICO in multiple cases. In *Rodonich v. House Wreckers Union*, the Court noted that the plaintiffs suffered a requisite proprietary-type injury under RICO, holding that as direct injury is not required, "… to the extent that plaintiffs' purported injuries consist[ed] of lost wages, sufficient property damage [was] alleged." *Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985).

As in *Blue Cross*, the injuries suffered by Mr. Horn in the present case are entirely economic, and specifically not personal.  This line of reasoning has been likewise followed by the Southern District of New York in *Kriss v. Bayrock Group, LLC*:

> The TAC adequately alleges injury to Plaintiffs… Subject to… requirements and the proximate cause element discussed below, a plaintiff can adequately plead RICO damages by alleging lost contracts or lost wages. *See, e.g.*, *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 382 (2d Cir. 2001) (finding RICO injury satisfied because, "[i]f plaintiffs can substantiate their claims, the plaintiffs may well show that they lost contracts directly because of the cost savings defendant realized through its scheme to employ illegal workers"); *Apollon Waterproofing & Restoration, Inc. v. Bergassi*, 87 Fed. Appx. 757, 759 (2d Cir. 2004) (summary order) ("Lost contracts that could have been obtained but for racketeering activities are cognizable injuries under RICO."); *Tho Dinh Tran*, 281 F.3d at 35 (noting without discussion that the alleged RICO injury was lost wages) … [emphasis added].

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016).

III. **<u>The Authority Relied Upon by Movant is Wholly Inapplicable and Readily Distinguishable</u>**

No authority cited by the Defendant in the Second Circuit or its districts supports its present motion. All of its purported authority is either inapplicable, wholly distinguishable or misleading.

(i) *Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000). Held that *personal injury* damages from smoking cigarettes is not damage to "business or property" for a RICO claim (wholly distinct from loss of earnings and thus inapplicable to the present dispute);

(ii) *Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 U.S. Dist. LEXIS 74037, at *25-28 (N.D.N.Y. Sep. 30, 2006) ("G1"). This is part of a series of cases with pro se litigants. This case must be reviewed in tandem with *Fljer v. Cayuga County*, No. 5:03–CV–578, 2006 WL 2655698, at *4 (N.D.N.Y. Sept.15, 2006) and *Gilfus v Adessa*, No. 5:03-cv-1368 (N.D.N.Y. Sept 30, 2006) ("G2"). In sum, there were 6-7 pro se plaintiffs, over 100 defendants, and various constitutional, criminal, and civil claims, most of which had no RICO nexus. *Fljer* was decided first and then, in G2, the court explicitly states that the RICO claim was already dismissed in *Fljer* and is again dismissed on the same grounds having nothing to do with the injury to plaintiffs "business or property." Rather, dismissal was due to plaintiff's failure to show causation and for insufficient particularity necessary to survive a FRCP 9(b) motion to dismiss.

(iii) *Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014). This case involved dismissal of the plaintiff's RICO claim was due solely to the fact that the damages

6

claimed by plaintiff were actually sustained by the City of Greece as a result of the alleged predicate and plaintiff's mere allegations of loss of career, livelihood, reputation, and ability to gain future employment were "speculative and indefinite." The issue of lost income was neither raised nor disposed of.

(iv) *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir. 1984). This case appears to no longer be good law. This case held that an alleged injury must be due to the racketeering activity, not a predicate offense. The Supreme Court vacated and remanded this case for further consideration in light of the seminal case of *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and *American National Bank v. Haroco, Inc.*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)." Both of these cases state that the injury can be based on a predicate offense.

(v) *Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), cert den'd 488 U.S. 981 (1988) This case focuses on the ancillary relationship between personal and related pecuniary damages where such can be litigated together in connection with a primary personal injury claim and is wholly inapplicable here.

Notably, the EDNY declined to follow this reasoning in *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221 (E.D.N.Y. 1999):

"The recovery of pecuniary losses associated with physical injuries directly caused by racketeering conduct is consistent with the language of the RICO statute. Such claims, furthermore, would materially advance the statute's legislative purposes of deterring racketeering, in all its forms, and of remedying, as fully as practicable, the economic consequences of racketeering. Finally, the recovery of these pecuniary losses is consistent with the expansive scope of RICO's civil remedy provisions as consistently interpreted by the Supreme Court." *Id.*, at 229.

The cases that Defendants cite are not controlling, persuasive nor even applicable. The

7

authority cited by the movant quite literally "tap dances" around the controlling authority enunciated in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) and its progeny, but never even acknowledged by the movant in relation to a motion within the 2nd Circuit. The movant's cases are nearly uniform in their respective focus on factual scenarios that are primarily personal-injury related. The present case is readily differentiated from these cases since Mr. Horn's injuries are economic in nature and recovery under RICO is thereby not precluded, the movant's unwarranted protestations notwithstanding.

### IV. **Mr. Horn's Damages under his Fraud Claim Were Not Speculative, and Are Recoverable**

Again, as above, the moving Defendant's brief has an utter paucity of precedent as to damages under a New York common law fraud claim, and failed to cite their progeny which hold the opposite of what Dixie argues. The cases cited do not involve cases that are even remotely similar or applicable to Mr. Horn's claim of clear and definite past and future lost wages. Additionally, Defendant's reliance on cases that were decided at the pleadings stage, further belies the impropriety of its instant motion.

In *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606 (4th Dept 1983), the Defendants made the same argument as Dixie makes here, claiming Plaintiff is limited to only pecuniary loss. The Court held that conceptualization "misapplied" when it reversed summary judgment on the fraud claim. *Id*. at p. 618-619:

> "Defendants would have us apply the court's statement: 'All elements of profit are excluded' (Reno v Bull, supra, p 553) as an inflexible rule categorically precluding damages based on the market value of plaintiff's lost crops because such value would include some element of profit. That the rule in *Reno v Bull (supra)* is not to be applied in such arbitrary fashion is explained in Hotaling v Leach & Co. (247 NY 84, 92, *supra*): 'Proximate damages may not be fixed by arbitrary rule. Sometimes other damages flow from fraud in inducing a purchase,

8

<u>besides the difference between the price paid and the value of the article received. Consequential damages may also be awarded.</u>' As stated, plaintiff here does not seek profits based on the bargain it was fraudulently induced to make but the loss sustained because it made the bargain.'" [Emphasis added]

"Whether the loss . . . and any other consequential damages established resulted directly from the alleged wrongs of the defendants are, of course, questions of fact for the jury." *Cayuga Harvester* at p. 619. As long as the loss was a consequence flowing from the of the fraud, Plaintiff was allowed to prove the element of his damages. That is Mr. Horn's case.

New York District Courts have similarly held that fraud damages must compensate for what was lost, including consequential damages stemming from fraud claims which are not speculative. *See Subramanian v. Lupin Inc.*, No. 17CV5040RAKHP, 2020 WL 7029273, at *18 (S.D.N.Y. Aug. 21, 2020), report and recommendation adopted sub nom. *Subramani an v. Lupin Inc.*, No. 17-CV-5040 (RA), 2020 WL 6075523 (S.D.N.Y. Oct. 15, 2020); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009); *Hanley v. Sumitomo Bank, Ltd.*, 1993 WL 362388, at *3 (S.D.N.Y. 1993).

Again, with respect to the Fraud claim, as in the RICO claim above, economist Dr. Zaporowski's report is based on Mr. Horn's tax returns. Over the years of this case, there has been no secret as to the non-speculative nature of his damages. Mr. Horn mitigated his damages over nine years by clawing his way back into the trucking industry over that period. Plaintiff's Economist calculates the exact past lost compensation had he not been fired over that long period of time, and calculates the future loss based on widely accepted statistical work-life expectancy tables of the U.S Bureau of Labor Statistics, a source upon which even the defense expert relied. In Dr. Zaporowski's annexed report, he pertinently and competently uses the Employee Cost Index to calculate Plaintiff's future lost compensation with a growth rate of 2.5% from 2019 onward.

Polar opposite in fact and law to Mr. Horn's claims, Dixie cites *Continental Gas*, where the court reasoned any damages for expected earnings were too speculative because the plaintiff, even though he could have, did not provide an evaluation to support his claim. *See Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271-272 (2010) (citing but distinguishing *Hotaling v Leach & Co.* 247 NY 84, 87-88 (1928) which recognized an exception when a measure of damages based on the market value when the value could not be determined and would have left the plaintiff without any remedy).

Mr. Horn's lost compensation claims are based on conditions as they existed prior the fraud. The case for the trier of fact here is whether Dixie's multiple statements that there is no THC in their product cost Mr. Horn the job he held at Enterprise. Mr. Horn was just past his *ten-year anniversary* at Enterprise when he used Defendant's product.  His demonstrated clear and definite damages as fully articulated by the expert economist are based upon a long and impeccable record and an excellent compensation package. Mr. Horn's lost compensation damages do not require any great assumptions or speculation by the court or the jury, the citing by Dixie of certain "cherry-picked" cases—primarily in the personal injury realm— have no application to the damages issues here.

In *Mihalakis*, the court was asked to determine the value of defendant's internship compared to a hypothetical internship program, assume how she would have performed in such a program, and that she would have become a doctor after completing such a program. *Mihalakis v. Cabrini Med. Ctr. (CMC)*, 151 A.D.2d 345, 346 (1989). Similarly, In *Gomez-Jiminez*, the court was asked to compare "a degree where a high paying, full-time, permanent job was highly likely and . . . [a] degree where full-time, permanent legal employment at any salary, let alone a high salary, is scarce, as is the case in the legal market." *Gomez-Jimenez v. New York L. Sch.*, 36

Misc. 3d 230, 231, (Sup. Ct.), aff'd, 103 A.D.3d 13 (2012). Mr. Horn's claim is based on a defined ten plus year career in his chosen field, where he received a clear and definite salary and benefits, all of which he lost as a direct result of the Defendants' misrepresentations as to their product.

Neither the jury nor the Court is being asked to consider a hypothetical, i.e. what could have been, non-existent career that Mr. Horn never had. The jury and the Court are not being asked to determine the value of defendant's product with THC compared to defendant's product if it lacked THC. Mr. Horn's damages are measurable and comprised of the difference in compensation between his established over ten-year career at Enterprise and his attempts to climb back to the same compensation and benefits.

V. **There Can Be No Dispute that Plaintiff's Past Lost Wages Are Not Speculative and Are Awardable by A Jury; and Plaintiff's Claim for Future Lost Wages Are Based on the Evidence and Expert Economist Analysis**

Plaintiff has made an ongoing and cumulative claim for lost wages of over $500,000. (Zaporowski Report annexed as **Exhibit "A"**). Such damages flow directly from the termination of his employment on October 11, 2012, nine (9) years ago, resulting from the failed drug test after he ingested a product promoted, manufactured, tested, marketed, and distributed by the Defendants and up until he found alternative employment with nine (9) different employers over that time period.

In no way can such past lost wages be categorized as "speculative" as the Defendant suggests. They are, in fact, concrete. The Defendant conflates the concepts of past lost wages and future lost wages. Lost earning capacity is only relevant in the context of a future lost wage.

This is the situation Plaintiff finds himself in: the past lost wages have already accrued in the past. As such, there is nothing speculative about them. Defendants may, if they wish, cross-

11

examine the Plaintiff and his expert, as they did in their respective depositions, about his attempts to find alternative work during the period he is claiming past and future lost wages. Plaintiff is expected to testify that, during the period of time he claims lost wages, he applied for over 50 jobs. It was only after years of effort that he was able to rebuild his life where he began making money again. Defendants have no witnesses to contradict this.

The Defendant's reliance solely on *Clanton v. Agoglitta*, 206 A.D.2d 497 (N.Y. App. Div. 2d Dep't 1987) is misplaced. In this negligence action to recover damages for personal injuries, the defendant appealed from a jury verdict in favor of the plaintiff for both past and future damages against the defendant " in the principal amount of $ 495,500 ($ 16,000 for past medical expenses, $ 247,000 for impairment of earning ability, $ 50,000 for past pain and suffering, $ 7,500 for future medical expenses, $ 150,000 for future loss of earnings, and $ 25,000 for future pain and suffering)".

Relevant to the case at bar, the court noted that $150,000 of the total $495,000 verdict was for "future loss of earnings." It is this amount that the court took issue with when it ruled:

"We find, however, that the verdict as to damages for impairment of earning ability "deviates materially from what would be reasonable compensation" (*CPLR 5501[c]*). The basic rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning plaintiff's earning capacity before and after the accident. In this case, the plaintiff's earnings prior to the accident, combined with his failure to mitigate damages lead to the conclusion that the jury's award for impairment of earning ability deviates materially from what would be [***5] reasonable compensation and should be reduced to the extent indicated." (Citations omitted).

Clearly, the *Clanton* court addressed the issue of the Plaintiff's damages to earn money into the future. The court found this specific part of the verdict speculative because it could not be "established with reasonable certainty" and importantly, was "combined with his failure to mitigate."

The *Clanton* court was issued a fact-specific ruling that the Plaintiff's "future loss of earnings" claim was speculative, and that he did not mitigate his damages.

Defendant points to not one case suggesting that a vocational expert's testimony is required for claims of past and future lost wages, and that an economist's testimony, based upon widely accepted government sources, is in any way insufficient. However, there are examples of lay testimony alone sufficient to support a claim for past and future lost wages. *Freeman v. Tuan Anh Nguyen*, Not Reported in F.Supp.3d (E.D.N.Y. 2015) (Damages for loss of past earnings may be awarded "based solely on plaintiff's testimony without supporting documents. 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004); *accord* .S.2d 609, 609 (App. Div. 1st Dep't 2010); *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F.Supp.2d 492 (N.D.N.Y. 2013) (the Court may rely upon such sworn statements in reaching a damages determination); *Ferguson v. City of New York*, 73 A.D.3d 649 (1d Dep't A.D. 2010) (reinstated lost earnings claim based upon lay testimony alone); *Waring v. Sunrise Yonkers SL, LLC*, 134 A.D.3d 488 (1st Dep't 2015) (Plaintiff's past lost wages were established with reasonable certainty through the testimony of only an executive director).

The case Mr. Horn brings to the jury here is the opposite of the fact-specific ruling in *Clanton*. The Court and the jury will be left with no speculation from his and his qualified economist expert's proposed testimony. In addition, and Mr. Horn has a nine (9) year track record of mitigating his damages through nine (9) different attempted employers.

13

### *CONCLUSION*

The controlling, persuasive and applicable case law clearly allow for Mr. Horn's specific and limited damages claims under RICO and Fraud. As the Chairman of an Economics Department and an economist, Dr. Zaporowski's proposed testimony regarding past and future lost wages is relevant to the case from a competent witness.

DATED:    New York, New York
          July 29, 2021                    Respectfully,

                                           THE LINDEN LAW GROUP, P.C.
                                           *Jeffrey Benjamin*
                                           By:  Jeffrey M. Benjamin, Esq.
                                           *Attorney for Plaintiffs*
                                           5 Penn Plaza, 23rd Floor
                                           New York, NY 10001
                                           (212) 835-1532
                                           jbenjamin@nyfraudlaw.com