UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS J. HORN,

Plaintiff,

vs.

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC,
RED DICE HOLDINGS, LLC,
DIXIE BOTANICALS,

Defendants.
_____

Case No. 1:15-cv-00701-JWF
_____


**MMI AND RDH'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT DIXIE HOLDINGS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY OF EXPERT MARK P. ZAPOROWSKI, PH.D. AND PLAINTIFF'S OPPOSITION TO SAME**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .............................................................................................................. 2

      I.     PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS
           RICO CAUSE OF ACTION AS THEY DERIVE FROM A PERSONAL INJURY
           ..................................................................................................................... 2

           A.  The Plaintiff's Cases in Opposition ................................................... 2

           B.  The Cases in Support of Dixie's Position ......................................... 6

      II.    PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS
           FRAUDULENT INDUCEMENT CAUSE OF ACTION WHERE SUCH
           DAMAGES ARE SPECULATIVE .................................................................... 12

      III.   PLAINTIFF CANNOT PROVE LOST INCOME DAMAGES WHERE HEN IS
           UNABLE TO PROVE A CAUSAL CONNECTION BETWEEN THE ALLEGED
           LOSS AND THE ALLEGED FRAUD ............................................................. 12

CONCLUSION ........................................................................................................... 13

i

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir.1984) (dictum), *vacated on other grounds,* 473 U.S. 922 (1985)........................................................................................10

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560 (E.D.N.Y. 1999) ...................................................................................................................................3, 4

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006.....................................................2

*Doe v. Roe,* 958 F.2d 763 (7th Cir.1992)........................................................................8

*Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765 (1984)............10

*Gause v. Philip Morris*, 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000)...............6, 7, 10

*Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002)......................................................3, 8

*Gilfus v. Vargason*, 2006 WL 2827658 (N.D.N.Y. Sep. 30, 2006)............................................8, 9

*Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), cert den'd 488 U.S. 981 (1988).....................3, 10

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963 (E.D.N.Y. 1995)...............................................3

*Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) ..................................5

*Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) ...........................................................9

*Rodonich v. House Wreckers Union*, 627 F. Supp. 176 (S.D.N.Y. 1985) ......................................4

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

## PRELIMINARY STATEMENT

Defendants, Medical Marijuana Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by their undersigned counsel, submit the following memorandum of law with respect to the opposition submitted by plaintiff, Douglas J. Horn ("Plaintiff") to the motion *in limine* of defendant Dixie Holdings, LLC ("Dixie") to preclude the testimony of Mark P. Zaporowski.

As MMI/RDH did not initially join Dixie's motion, we now take the opportunity to reply to both the initial motion (Doc. 194) and plaintiff's opposition (Doc. 198).

After reviewing the same, as well as the relevant cases, MMI/RDH agrees with Dixie's position set forth in Point I of its motion, that Plaintiff must be precluded from introducing any evidence with respect to lost income damages with respect to his RICO cause of action, as the same is not recoverable under RICO where it derives from a personal injury. MMI/RDH joins Dixie with respect to this part of their motion. As the Court has noted, this effectively dismisses the Plaintiff's RICO cause of action against all defendants.

MMI/RDH further substantively agrees with Dixie's position set forth in Point II of its motion, that Plaintiff cannot recover for lost income damages pursuant to his cause of action for fraudulent inducement, insofar as such damages are entirely speculative.

MMI/RDH further substantively agrees with Dixie's position set forth in Point III of its motion, that Dr. Zaporowski should be precluded from testifying insofar as Plaintiff will, inevitably, not be able to lay a foundation with respect to his earning capacity both before and after his failed drug test.

1

## ARGUMENT

## POINT I

## PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS RICO CAUSE OF ACTION AS THEY DERIVE FROM A PERSONAL INJURY

As stated in Plaintiff's MOL in Opposition to this motion:

The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore**, is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product.**

Doc. 198, p. 7 (emphasis added).

It is Plaintiff's own position in this case that his "resulting economic damages" were not caused by damage to any business or property. He acknowledges that they were caused by the alleged "harm," or injury, of unwanted "THC" being "introduced into [his] system."

The caselaw is clear that any economic damages, such as lost income, which result from a personal injury, do not amount to damage to "business or property" and, therefore, are not recoverable under a civil RICO cause of action.

### a.  The Plaintiff's Cases in Opposition

Plaintiff's counsel states that the case of *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) "sets out the controlling standard for RICO damages: '[a] RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation[,]' and only when his or her 'actual loss becomes clear and definite.'" Doc. 198, p. 6.

This is true. It cannot be argued that the standard for proving damages in a civil RICO case is whether there has been injury to "business or property." However, we must go to the next level of analysis, which is whether damages that stem from personal injuries, even if

2

economic in nature, can be considered injuries to business or property for the purposes of RICO. The *Denney* court did not address this issue. The words "personal injury" or "personal injuries" do not even appear in the *Denney* case.

This is precisely why we must look to Second Circuit cases such as *Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002), *infra*, discussed in detail below, as they directly address the more nuanced question being presented to the Court on this motion – whether Plaintiff's alleged economic damages derive from a personal injury.

Plaintiff's counsel seemingly does not appreciate the subtlety of this issue as he cites to *Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 968 (E.D.N.Y. 1995) and *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999) and states, broadly, that they "distinguish[] personal injuries from economic injuries which the court deemed compensable." In reality, these cases distinguish between economic injuries that are derived from personal injuries and, therefore, are not RICO compensable, and economic injuries that are caused directly to business or property and, therefore, are RICO compensable.

As stated in *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 568 (E.D.N.Y. 1999), "[t]he broad scope of the statute's standing provision is not, however, boundless. Only those plaintiffs who have been injured in their 'business or property' may sue. Personal injuries are not cognizable, regardless of whether they were caused by racketeering."

The court in *Blue Cross* expanded on this by stating that:

> In all the cases where pecuniary damages were not allowed, the gravamen of the plaintiffs' claims was for personal injuries. The plaintiffs' economic losses were interfused with and merely supplemental to their personal injuries. Conceptually, as well as practically, the two types of claims were joined together as a single cause of action. *See Grogan*, 835 F.2d at 846 ("[T]he pecuniary and non-pecuniary

3

aspects of personal injury claims are not so separated as the appellants would have us accept; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief.").

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 571 (E.D.N.Y. 1999).

The court in *Blue Cross* found that, "by contrast, the plaintiffs have suffered entirely economic injuries." *Id*. However, the plaintiffs in that case were healthcare insurance companies. They were not personally injured by the conduct of the defendants. If anything, the court explicitly drew a distinction between the health insurer plaintiffs and those that were personally injured by the defendants stating: "Any personal injuries to smokers and to persons exposed to cigarette smoke caused by the defendants' alleged racketeering are separate and distinct from the plaintiffs' economic injuries suffered by their businesses." *Id*.

Doug Horn is not a health insurance company. He is a person. He is analogous to the "smokers" and "persons exposed to cigarette smoke," which the court identified as parties that would have had personal injuries rather than direct economic injuries to business.

Plaintiff further cites to *Rodonich v. House Wreckers Union*, 627 F. Supp. 176, 180 (S.D.N.Y. 1985) when stating that "loss of earnings claims have been held to be recoverable under RICO in multiple cases." (Doc. 198, p. 9).

Again, the words "personal injury" or "personal injuries" do not appear in the *Rodonich* case. The case merely notes that "lost wages" can possibly be considered as part of a RICO injury (seemingly derived from Hobbs Act and Travel Act allegations, *Id*. at 178), which is theoretically possible if such injuries resulted from direct damage to business or property and did not derive from a personal injury.

4

Finally, Plaintiff cites to *Kriss v. Bayrock Group LLC*, 2016 WL 7046816 (S.D.N.Y. Dec. 2, 2016) because, similarly, it holds that the plaintiff in that case could "adequately plead RICO damages by alleging lost contracts or lost wages."

Again, the *Kriss* case does not discuss the specific point at issue here – whether alleged "lost contracts and lost wages" were derived from a personal injury. They were not. The plaintiffs were "well-credentialed real estate finance professionals" who "passed up lucrative opportunities at other firms to work for" the defendant based on allegations of fraudulent concealment. *Id*. at 19.

Again, Plaintiff's situation is not analogous. The plaintiffs in *Kriss* allegedly sustained economic damages, as employees of the defendant, based on the defendant's alleged fraudulent activities, which, in turn, decreased the plaintiffs' earnings' capacity under their contracts with the defendant.

For this to be analogous to Plaintiff, he would have needed to have been an employee or investor in one of the defendant companies and argue that alleged misrepresentations regarding the THC content of the products damaged his compensation or return on investment. Those may, theoretically, be damages to "business or property" for RICO purposes.

To the contrary, Plaintiff's role in this entire scenario was that of an individual person. A consumer. Someone who purchased a product and was allegedly harmed by it because it contained an ingredient that he did not expect it to contain. For him, personally, he alleges that this resulted in lost income – but this does not make that lost income a loss of "business or property" merely because the damages are tangentially economic.

Unknowingly consuming trace amounts of THC when you expect not to (the fraud that Plaintiff alleges in this matter) does not, and cannot, result in damage to business or property.

5

At most, it results in putting unwanted trace amounts of THC in someone's system, which, in and of itself, does not result in any economic damage. In almost all cases, the only result is an unexpected chemical in the body that is very likely never even noticed.

Any additional, consequential, damage is entirely dependent on the circumstances of the person. For a great many people, the world of possibilities in which they could be economically damaged by such an alleged fraud is incredibly small. This is because THC does not affect "business or property" – it affects persons. If those persons so affected, coincidentally, go on to allegedly sustain some additional damage based on that injury, such damages are clearly derivative of their personal circumstances – a personal injury.

We might not instinctively think of this as a personal injury because the physical harm caused by unexpected trace amounts of THC in CBD oil is relatively small and temporary. But that does not change the nature of the injury – it is one to the person. Any resultant damages, such as loss of income, are entirely specific to that person. There is no damage to "business" or "property." This means that person cannot maintain a cause of action under civil RICO, which limits standing to those that have sustained damage directly to business or property, and excepts damages that derive from personal injury, even when economic in nature.

**b. The Cases in Support of Dixie's Position**

Given the above, the cases cited by Dixie, and opposed by Plaintiff as "inapplicable, wholly distinguishable or misleading" (Doc. 198, p. 10), are all relevant and helpful to appreciate this nuanced point regarding the difference between economic damages that stem from a personal injury and those that are caused directly to business or property.

First, contrary to plaintiff's assertion, *Gause v. Philip Morris*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000) is precisely the type of case that applies to

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

Plaintiff. Plaintiff's counsel claims that this case is "wholly distinct from loss of earnings and thus inapplicable to the present dispute" (Doc. 198, p. 10), but this fails to appreciate the actual holding in *Gause*. It is not that "lost earnings," as a category of damages, are "distinct" from "*personal injury* damages," it is that it depends from where such lost earnings derive.

Indeed, *Gause* makes clear the plaintiff's lost earnings damages derived from her personal injuries: "As a result of these injuries, Plaintiff seeks compensation for loss of employment, loss of income, loss of spouse, and for forty years of buying an allegedly faulty product." *Della GAUSE, Plaintiff, v. Philip MORRIS, Defendant.*, No. CV99-6226, 2000 WL 34016343 (E.D.N.Y. Aug. 8, 2000), *aff'd sub nom. Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002). The court then held:

> Although Plaintiff characterizes her injuries as a "loss of property," Cplt. at p. 2, in an effort to create a cognizable injury under RICO, an analysis of her complaints reveals otherwise. Specifically, Plaintiff's asserted "loss of property" is, in essence, a loss of income due to an alleged inability to work since becoming afflicted with emphysema. Cplt. at pp. 1-2. A loss of income, however, is not considered a "loss of property" as required under RICO.

Plaintiff's alleged injuries are different in cause and severity but are of the same type. One merely needs to trade the word "emphysema" for "unwanted THC in his system" to reach the exact same position:

> "Plaintiff's asserted 'loss of property' is, in essence, a loss of income due to an alleged inability work since becoming afflicted with [unwanted THC in his system]."

Unwanted THC in one's system is, fundamentally, a type of "personal injury." The injury may not be as damaging as emphysema, but this does not change the fact that we are talking about injuries to a person and loss of income due to an alleged inability to work because

7

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

of those injuries. The *Gause* court specifically held that such a loss of income claim is not

cognizable under RICO.

Moreover, the Second Circuit affirmed the same, explicitly holding:

Personal injuries of smokers are not injuries to "business or property" within the
meaning of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§
1961 et seq. See, e.g., Laborers Local 17 Health and Benefit Fund v. Philip Morris,
Inc., 191 F.3d 229, 241 (2d Cir.1999), cert. denied, 528 U.S. 1080, 120 S.Ct. 799,
145 L.Ed.2d 673 (2000).

*Gause v. Philip Morris Inc.*, 29 F. App'x 761 (2d Cir. 2002).

Again, one may just as well replace "smokers" with "CBD oil users" to reach the

exact same holding:

"Personal injuries of [CBD oil users] are not injuries to 'business or property'
within the meaning [RICO]."

With respect to *Gilfus v. Vargason*, No. 5:04-CV-1379 (HGM/DEP), 2006 WL

2827658 (N.D.N.Y. Sep. 30, 2006), Plaintiff's counsel's claim that this case has "nothing to do

with injury to plaintiff's business or property" (Doc. 198, pg. 10 ). This is erroneous – the court

directly addressed the same issue as *Gause*, *supra*, and reached the same conclusion, even citing

to the same Seventh Circuit caselaw:

Although the Second Circuit has not squarely addressed the issue, other Circuits
have held that economic damages resulting from personal injuries are not
actionable under RICO. As the Seventh Circuit explained:

Most personal injuries-loss of earnings, loss of consortium, loss of
guidance, mental anguish, and pain and suffering, to name a few-will entail
some pecuniary consequences. Perhaps the economic aspects of such
injuries could, as a theoretical matter, be viewed as injuries to "business or
property," but engaging in such metaphysical speculation is a task best left
to philosophers, not the federal judiciary. Rather, we must determine if
these injuries fall within the framework of § 1964(c) as understood by
Congress ... They do not.

*Doe v. Roe,* 958 F.2d 763, 770 (7th Cir.1992)

8

*Gilfus v. Vargason*, No. 5:04CV1379(HGM/DEP), 2006 WL 2827658 (N.D.N.Y. Sept. 30, 2006).

Plaintiff's counsel's attempt to distinguish *Mackin v. Auberger*, 59 F. Supp. 3d 528 (W.D.N.Y. 2014) is similarly unavailing. There, this Court cited to *Gilfus, supra*, and held:

> Plaintiff also alleges that he was injured by the loss of his career, livelihood, reputation, and ability to obtain future employment. (Dkt. 4 at ¶ 15(a)). The Court is uncertain as to what Plaintiff means by "loss of career," but notes that this alleged injury appears speculative and indefinite. Furthermore, the loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO.

*Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014).

If anything, the *Gilfus* and *Mackin* cases expand the world of injuries that courts consider "personal" (and, therefore, not within the realm of RICO) to include those where one is not merely physically injured, but where one is allegedly traumatized from a raid performed on their farm (*Gilfus*) or where one is unable to obtain future employment due to damage to their reputation (*Mackin*).

In this respect, Plaintiff is similarly situated to the plaintiff in *Mackin, supra*, where this Court held that "the loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO." Plaintiff does not allege that any fraud by the defendants was directly perpetrated upon any business or property. He alleges that defendants caused him to unexpectedly ingest trace amounts of THC and that this, consequently, damaged his reputation to the point that he was not able to gain future employment as a truck driver. Plaintiff's reputation as a truck driver and his ability to continue working at Enterprise is not a "business" or "property" under any definition of those words. As stated in *Mackin*, these are allegations of damage to the Plaintiff, as a person.

9

Finally, the assertion by Plaintiff's counsel that *Grogan v. Platt*, 835 F.2d 844 (11th Cir. 1988), cert den'd 488 U.S. 981 (1988) is "wholly inapplicable here," again, ignores the nuance of the issue under consideration. The case is relevant because the very issue at hand is whether economic damages, such as loss of income, are recoverable as damage to "business or property" where they derive from personal injuries. The *Grogan* court reached almost the exact same conclusion as *Doe v. Roe*, *supra*:

> Our task, however, is not to decide whether the economic aspects of damages resulting directly from personal injuries could, as a theoretical matter, be considered injury to "business or property," but rather to determine whether Congress intended the damages that plaintiffs seek in this case to be recoverable under civil RICO. Relying on the assumption that Congress intends the ordinary meanings of the words it employs, *see, e.g., Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984), appellants argue that a common-sense interpretation of the words "business or property" includes the economic damages that result from injury to the person. We are not convinced that appellants' contention accurately captures the ordinary meaning of those words. In our view, the ordinary meaning of the phrase "injured in his business or property" excludes personal injuries, including the pecuniary losses therefrom. As a panel of the Second Circuit remarked, "[t]he requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage. For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit." *Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir.1984) (dictum), *vacated on other grounds,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985)…

*Grogan v. Platt*, 835 F.2d 844, 846–47 (11th Cir. 1988).

As stated in both *Grogan*, *supra*, and *Doe v. Roe*, *supra*, one could theoretically engage in the metaphysical debate of whether "loss of income" damages can be severed from a personal injury, placed in a bubble, and considered as damage to "business or property." But as both the Seventh and Eleventh Circuits found (and the Second Circuit essentially agreed in *Gause*, *supra*), the job of the courts is to only consider what types of claims were anticipated by

10

MURA LAW GROUP, PLLC ● 930 RAND BUILDING ● 14 LAFAYETTE SQUARE ● BUFFALO, NEW YORK 14203
(716) 855-2800 ● FAX (716) 855-2816

Congress to be brought pursuant to the RICO statute. All of the courts cited above have agreed that economic damages such as loss of income, when derived from "personal injury," are not damages to "business or property," and are not recoverable under RICO.

Ultimately, the issue here seems to be less with respect to what the caselaw states on this issue – which seems clear – and more to do with Plaintiff's counsel not conceding that Plaintiff's injury is "personal." As he states:

> The movant's cases are nearly uniform in their respective focus on factual scenarios that are primarily personal-injury related. The present case is readily differentiated from these cases since Mr. Horn's injuries are economic in nature and recovery under RICO is thereby not precluded, the movant's unwarranted protestations notwithstanding.

Doc. 198 pg. 12 of 18.

In other words, Plaintiff's counsel does not dispute that the cases state what they state with respect to personal injuries. He merely believes that Plaintiff's case does not fall under those rules because his injuries are "economic in nature." By this he, presumably, means to also state that Plaintiff sustained no personal injury and that any alleged injury was done directly to his business or property, taking him out from under the authority of the above cases.

However, as fully detailed above, this is not true – Plaintiff's alleged lost income clearly derives from a personal injury." Moreover, Plaintiff's counsel is aware of the same as, again, he himself stated:

> The nexus between the RICO violations and fraud at issue and Mr. Horn's resulting economic damages, therefore, **is the harm of the THC that was introduced into Mr. Horn's system by Defendants' product.**

Doc. 198, p. 7 of 18.

From Plaintiff's own pen, his "economic damages" were caused by "the harm of the THC that was introduced into Mr. Horn's system by Defendant's product." By his own

11

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

allegations, he was personally injured by unwanted THC in his system. Any resulting economic damages, such as a personal inability to continue working the same job because of a failed drug test, directly stems from that personal injury. Plaintiff has not alleged damage to "business or property," as is required to maintain his RICO cause of action.

As such, MMI/RDH agrees with Dixie's position that Plaintiff be precluded from introducing evidence related to such damages at trial and joins in their motion for the same. As the Court has already noted, this effectively results in the dismissal of Plaintiff's RICO cause of action against all defendants.

## POINT II

### PLAINTIFF CANNOT RECOVER LOST INCOME DAMAGES UNDER HIS FRAUDULENT INDUCEMENT CAUSE OF ACTION WHERE SUCH DAMAGES ARE SPECULATIVE

Dixie argues that under New York law, the Plaintiff cannot recover for lost income damages pursuant to his cause of action for fraudulent inducement, insofar as such damages are entirely speculative (Doc. 194, p. 4).

In substance, MMI/RDH agrees that New York law holds that speculative damages are not recoverable and that Plaintiff's claim for lost income damages requires vast speculation regarding the supposed nature of his future employment and career opportunities after his failed drug test and whether the same can be causally connected to any alleged fraud.

## POINT III

### PLAINTIFF CANNOT PROVE LOST INCOME DAMAGES WHERE HE IS UNABLE TO PROVE A CAUSAL CONNECTION BETWEEN THE ALLEGED LOSS AND THE ALLEGED FRAUD

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Dixie additionally argues that because Plaintiff failed to notice a vocational expert to lay a foundation with respect to earning capacity for Dr. Zaporowski's proposed testimony, his testimony would be lacking a foundation and must be precluded (Doc. 194, p. 6).

MMI/RDH essentially understands this argument to be that while Dr. Zaporowski may, theoretically, be capable of testifying as to "how much" income Plaintiff allegedly lost, he is clearly not being offered to testify with respect to "why" Plaintiff lost that income. In other words, Plaintiff must prove that any loss of income was causally connected to the alleged fraud.

In this sense, MMI/RDH agrees with the position that Plaintiff's earning capacity, both before and after he tested positive for THC, must be proved in order for Dr. Zaporowski's testimony, with respect to how much income was lost, to have any relevance.

As Plaintiff has failed to notice an expert that is capable of testifying with respect to both Plaintiff's earning capacity prior to the failed drug test, and how the failed drug test changed that earning capacity, Plaintiff will not be able to reach the question of how much income he allegedly lost. As this appears to be inevitable, it would be appropriate for the Court to preclude Dr. Zaporowski from testifying.

## **CONCLUSION**

Based on the foregoing, it is respectfully requested that the Court grant Defendant Dixie Holdings' motion in limine to preclude testimony of Mark P. Zaporowski, Ph.D., together with such other and further relief to MMI/RDH as this Court deems just and proper.

DATED:     Buffalo, New York
           August 2, 2021

13

Respectfully submitted,

_____
Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants Medical Marijuana Inc. and*
*Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

14

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816