UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUGLAS J. HORN and CINDY HARP-HORN,

                *Plaintiffs*,

-against-

MEDICAL MARIJUANA, INC., DIXIE
HOLDINGS, LLC, RED DICE HOLDINGS, LLC,
and DIXIE BOTANICALS,

                *Defendants*.

Civil Action No.
15-cv-00701-FPG

Hon. Magistrate Judge
Jonathan W. Feldman

### Defendant Dixie Holdings' Reply Memorandum in Response to Plaintiff Douglas Horn's Opposition to Motion to Preclude Testimony of Mark P. Zaporowski, Ph.D.

MAZZOLA LINDSTROM, LLP
Attorneys for defendant Dixie Holdings, LLC
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
Tel: 646-216-8300
Cell: 917-584-4864

Of Counsel:   Richard E. Lerner
                  Jean-Claude Mazzola
                  Hanoch Sheps

Dated: August 2, 2021
        New York, New York

**Table of Contents**

Page(s)

Table of Authorities .................................................................................................................. ii

Preliminary Statement............................................................................................................... 1

Argument in Reply.................................................................................................................... 3

    Point I:    Most of the Cases Plaintiff Cites in Opposition Predate the Second Circuit's 2002 Affirmance of *Gause,* so Do Not Support His Position. And while *Kriss v. Bayrock* Post-Dates *Gause*, Plaintiff Misreads the Case. *Kriss v. Bayrock* Allowed Recovery for Converted Partnership Distributions – Money Actually Taken from the Kriss Plaintiffs by Fraud – Not Loss of "Wages." ..................................................................3

    Point II:    Plaintiff's Loss of Earnings Do Not Directly Flow from the Alleged Fraud; Moreover, Plaintiff Has Not Shown the Right to Recover for Loss of Earnings Where There has Been no Diminishment in Loss of Earning Capacity.......................9

## Table of Authorities

**Cases**                                                                                           **Page Number(s)**

*Bankers Trust Co. v. Rhoades*
    741 F.2d 511 (2d Cir. 1984) ................................................................................... 4

*Blue Cross & BlueShield of N.J., Inc. v. Philip Morris, Inc.*
    36 F. Supp. 2d 560 (E.D.N.Y. 1999) ........................................................................ 7

*Butts v. Braun*
    204 A.D.2d 1069, 612 N.Y.S.2d 520 (1994) ............................................................ 11

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*
    95 A.D.2d 5 (4th Dep't 1983) .................................................................................... 9

*Connaughton v. Chipotle Inc.*
    29 N.Y.3d 137 (2017) ................................................................................................ 9

*Denney v. Deutsche Bank AG*
    443 F.3d 253 (2d Cir. 2006) ...................................................................................... 4

*Evans v. City of Chicago*
    434 F.3d 916 (7th Cir. 2006) .................................................................................... 5

*Ferguson v. City of New York*
    73 A.D.3d 649, 901 N.Y.S.2d 609 (2010) ........................................................ 11, 12

*Freeman v. Anh Nguyen*
    11 A.D.3d 304 (1st Dep't 2004) ........................................................................ 11, 12

*Gause v. Phillip Morris, Inc.*
    CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000),
    *aff'd* 29 F. App'x 761 (2d Cir. 2002) ........................................................... 1, 6, 7, 9

*Geiss v. Weinstein Co. Holdings*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ...................................................................... 1

*Grogan v. Platt*
    835 F.2d 844 (11th Cir. 1988) ............................................................................... 4, 5

*Jackson v. Sedgwick Claims Management Svcs.*
    731 F.3d 556 (6th Cir. 2013) .................................................................................... 5

*Kane v. Coundorous*
    11 A.D.3d 304 (1st Dep't 2004) .............................................................................. 11

*Kriss v. Bayrock Group LLC*
    SDNY Docket No. 10-cv-3959 ................................................................................ 3, 7, 8, 9

*Laborer's Local 17 Health and Benefit Fund v. Philip Morris, Inc.*
    191 F.3d 229 (2d Cir. 1999), *cert. denied*, 528 U.S. 1080 (2000) ......................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014) ................................................................................................. 4

*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*
    392 F.2d 380 (2d Cir. 1968) ..................................................................................... 3

*Morrison v. Syntex Laboratories*
    101 F.R.D. 743 (D.D.C.1984) .................................................................................. 5

*Norcia v. Dieber's Castle Tavern, Ltd.*
    980 F. Supp. 2d 492 (SDNY 2013) ......................................................................... 11

*Waring v. Sunrise Yonkers SL, LLC*
    134 AD 3d 488 (1st Dep't 2015) ........................................................................ 11, 12

**Rules**
18 U.S.C. § 1341 .................................................................................................... 2

18 U.S.C. §§ 1961 .................................................................................................. 6

**Preliminary Statement**

Defendant Dixie Holdings, LLC, by its undersigned counsel, hereby submits this memorandum in reply to plaintiff Douglas Horn's opposition to Dixie Holding's motion *in limine* to preclude the trial testimony of plaintiff's expert economist Mark P. Zaporowski, Ph.D. With regard to the argument that loss of earnings is not compensable in RICO, plaintiff has cited several cases that pre-date the Second Circuit's affirmance of the district court's decision in *Gause v. Phillip Morris, Inc.*, CV-99-6226 (JS), 2000 U.S. Dist. LEXIS 14268 (E.D.N.Y. Aug. 2, 2000), *aff'd* 29 F. App'x 761 (2d Cir. 2002). The Second Circuit's 2002 affirmance renders irrelevant the district court cases cited that pre-date the decision, to the extent that they may hold that loss of earnings is recoverable in RICO. Moreover, while there are indeed cases that hold in plaintiff's favor, the case law overwhelmingly holds that loss of earnings is not recoverable, as was recently stated in *Geiss v. Weinstein Co. Holdings*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019):

> "RICO provides a civil remedy to [a]ny person injured in [her] business or property by' a RICO violation." [*Canosa v. Ziff*], 2019 U.S. Dist. LEXIS 13263, 2019 WL 498865, at *25 (quoting 18 U.S.C. § 1964(c)). "The phrase 'business or property' . . . exclude[s] personal injuries suffered." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). "The ***overwhelming weight*** of authority interprets *Reiter* ***to exclude the economic consequences of personal injuries.***" *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) (collecting cases and holding that former students' diminished career opportunities and lost earning potential flowing from personal injuries caused by former coach's sexual abuse were not compensable RICO injuries).

383 F. Supp. 3d at 170 (emphasis added).

Economic injury deriving from alleged personal injury is not recoverable in RICO because the predicate acts of mail[1] and wire[2] fraud – upon which plaintiff's RICO claim is based

---

[1] As to mail fraud, 18 U.S.C. § 1341 provides, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining **money or property** by means of false or

– prohibit schemes to defraud for the purpose of "*obtaining money or property*," and because RICO law only allows for recovery of injury to business or property. Here, Dr. Zaporowski has been noticed as an expert to testify as to damages other than "money or property" *obtained* through a RICO scheme; therefore, as to RICO, he has no relevant testimony to give, and must be precluded from testifying at trial. If plaintiff Horn's paycheck had been diverted and the money stolen as part of RICO scheme, he could surely recovery for the theft of such "wages." But he cannot recover for the attenuated loss of wages that results indirectly from having been fired by his employer, as such damages result from the vicissitudes of life – his loss of a job, and not being hired by another company being the acts of third persons – not from his paycheck having been *obtained* by mail or wire fraud as part of a RICO scheme.

As for the common-law fraud claim, and the claim for loss of earnings, such damages are as indirect, and unrecoverable, as in RICO. Moreover, such damages would have required plaintiff to identify a vocational expert to testify as to plaintiff's alleged lost earning capacity.

While counsel devotes several pages to arguing that this motion is untimely, this was already addressed, when the court acknowledged that these same arguments could have been made at the charge conference, and that it is the duty of the court to charge the jury on the applicable law, such that if lost wages are not recoverable then the jury cannot be charged that they may award such damages. Furthermore, we note that a denial of a motion to dismiss or a

---

fraudulent pretenses … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office … any matter or thing whatever to be sent or delivered by the Postal Service … shall be fined under this title or imprisoned not more than 20 years, or both. …" (Emphasis added).

[2] As to wire fraud, 18 U.S.C. § 1341 provides, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or **for obtaining money or property** by means of false or fraudulent pretenses … transmits or causes to be transmitted by means of wire … any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." (Emphasis added).

motion for summary judgment is not law of the case. See *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 384 (2d Cir. 1968).[3] Thus, the mere fact that defendants' motions for summary judgment were previously denied, in part, does not, *ipso facto*, establish that the plaintiff's case will withstand a motion to dismiss at the close of the case in chief, or a motion for a directed verdict at the close of all evidence.

## Argument in Reply

**Point I:** **Most of the Cases Plaintiff Cites in Opposition Predate the Second Circuit's 2002 Affirmance of *Gause,* so Do Not Support His Position. And while *Kriss v. Bayrock* Post-Dates *Gause*, Plaintiff Misreads the Case. *Kriss v. Bayrock* Allowed Recovery for Converted Partnership Distributions – Money Actually Taken from the Kriss Plaintiffs by Fraud – Not Loss of "Wages."**

A RICO plaintiff has no injury unless RICO acts caused a deprivation of property; lost wages from an alleged personal injury do not count, though they would in a different case without the predecessor bodily injury (for example the *Kriss* case which plaintiff misreads, see *infra*). In his opposition papers, plaintiff Horn *admits* that the "RICO injury" from which his alleged damages flow, the causal nexus between the RICO violations (the fraudulent inducement) and Horn's allegedly resulting damages is the constellation consisting of, first, the injury that allegedly occurred when THC was introduced into his body by defendants' product, and, second, defendant's fraudulent inducement that led him to consume it. (Plaintiff's Opp. at p.3). Indeed, the parties *agree* that this is the conduct *plaintiff claims* directly *and* proximately establishes the causal nexus. Plaintiff might as well complain that defendant fraudulently

---

[3] See also *Rosenberg v. American Bowling Congress*, 589 F. Supp. 547, 549 (M.D. Fla. 1984)*; Shearer v. Homestake Mining Co.*, 557 F. Supp. 549, 556 (D.S.D. 1983), *aff'd* 727 F.2d 707 (8th Cir. 1984); *Weit v. Continental Illinois National Bank and Trust Co.*, 478 F. Supp. 285, 292 n. 4 (N.D. Ill. 1979), *aff'd*, 641 F.2d 457 (7th Cir. 1981), *cert. denied* 455 U.S. 988, 71 L. Ed. 2d 847, 102 S. Ct. 1610 (1982).

3

induced him to eat poison, so is liable, not for the cost of pumping his stomach, but the loss of income he suffered while it was being pumped. Were he to make that claim his position would be no different than it is: Unsupportable.[4]

In *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir. 1988), the families of FBI agents killed or wounded by members of a criminal organization, sued to recover lost wages. Holding such damages not recoverable, whether denominated personal injuries, economic loss, or property damage, the court said:

> [A]ppellants argue that a common-sense interpretation of the words "business or property" includes the economic damages that result from injury to the person. We are not convinced that…contention accurately captures the ordinary meaning of those words. In our view, the ordinary meaning of…"injured in his business or property" excludes personal injuries, including pecuniary losses therefrom. As a Second Circuit panel remarked, "requirement that the injury be to the plaintiff's business or property means…the plaintiff must show a proprietary type of damage.-*Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 515 (2d Cir. 1984) (dictum).
>
> Moreover, the pecuniary and non-pecuniary aspects of personal injury claims are not so separated as the appellants would have us accept; rather, loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering are often to be found, intertwined, in the same claim for relief. We agree that "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to

---

[4] Plaintiff's reliance on *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), is inapt because the court limited its discussion of RICO to drawing a distinction between parties with standing under RICO versus Article III as it concerned a challenge to class certification. Unlike in *Denney*, the case at bar has nothing to do with whether plaintiff Horn's damages are clear and definite so much as whether he can claim them under RICO at all – he cannot. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014) (Supreme Court restructured causation and interests analysis, requiring they be not relegated only back-end damages considerations but be promoted to statutory standing considerations as well. That is, plaintiff's RICO claim cannot be heard (so no evidence supporting it can be admitted) for lack of his statutory standing, as his claim falls outside the scope of RICO protections. This argument, of course, is reserved for appeal, as it has already been found that Mr. Horn has standing to assert his claims.

injury generally, without any restrictive language." *Morrison v. Syntex Laboratories*, 101 F.R.D. 743, 744 (D.D.C.1984) (emphasis added).

The Seventh Circuit agrees: *Evans v. City of Chicago*, 434 F.3d 916, 927 (7th Cir. 2006), involved a claim of malicious prosecution and unlawful imprisonment. The Seventh Circuit rejected plaintiff Evans' claim that he had been injured in his "business or property":

> The fact that *Grogan* was premised on a tort claim of wrongful death and Evans' case is premised on false imprisonment and malicious prosecution is of no import. The real question is whether Congress intended RICO laws to compensate plaintiffs for pecuniary losses, such as loss of income, stemming from what is essentially a personal injury like the inability to work or seek employment. We are of the opinion that Congress did not intend to do so. See infra p. 926 n. 21. This is particularly true given the "restrictive significance" of the RICO standing requirement, which was adopted directly from the Clayton Act. … Indeed, we are inclined to agree with the United States District Court for the District of Columbia's statement in *Morrison v. Syntex Labs*. that "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, all of which will cause some financial loss, it could have enacted a statute referring to injury generally, without any restrictive language." 101 F.R.D. 743, 744 (D.D.C.1984), cited with approval in *Grogan*, 835 F.2d at 847.

Thus, RICO does not allow for recovery of lost wages of murder victims or those injured by other predicate acts. Rather, a plaintiff seeking such damages must do so by bringing a common-law tort claim (such as for assault and battery, or a statutory claim (such as for wrongful death), which do allow recovery for personal injuries and the pecuniary losses flowing therefrom. Plaintiff did bring several such tort-styled actions, all of which have been dismissed.

The Sixth Circuit concurs. *Jackson v. Sedgwick Claims Management S*vcs., 731 F.3d 556 (6th Cir. 2013) (*en banc*), involved a Coca-Cola truck driver who alleged that he had suffered bodily injury that rendered him unable to drive, and that his employer – pursuant to a RICO scheme of employing "cutoff" doctors who fraudulently wrote letters denying workers' compensation claims – was unable to obtain his rightful benefits because of the scheme of sending those fraudulent letters to the board. The Sixth Circuit held that he could not maintain a

5

RICO action against those responsible because the fraudulent deprivation of his worker's compensation was not an injury to his property. The court stated:

> [P]laintiffs claim … they were…entitled to receive … benefits mandated by statute as a consequence of their personal injuries, and … received less than they were entitled to under that system because of the defendants' racketeering …. But the losses they allege are simply a shortcoming in the compensation they believed they were entitled to receive for a personal injury. They are not different from the losses the plaintiffs would experience if they had to bring a civil action to redress their personal injuries and did not obtain the compensation from that action they expected to receive …. Accordingly, racketeering … leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to "business or property" under RICO.

The case at bar is remarkably similar. Plaintiff Horn claims he was fraudulently induced to take THC by defendants' failure to warn, or properly label, an over-the-counter analgesic it sold, and so he has in fact here in this very same action brought suit, sounding in state common-law fraud fraud (his other state-law claims having been dismissed). In opposition, plaintiff has cited several district court cases that *appear* to support his position that such loss may be recoverable in RICO, but on closer examination they are easily seen to be of no help to plaintiff, in no small sense because most of the cases plaintiff cites were Second Circuit district court decisions predating, their *rationes decidendi* thus negated by, the Second Circuit's affirmance in *Gause,* 29 F. App'x 761: (emphasis added)

> [T]he judgment…is affirmed substantially for the reasons stated in Judge Seybert's Memorandum and Order dated August 2, 2000. ***Personal injuries of smokers are not injuries to "business or property" within the meaning of the Racketeer Influenced and Corrupt Organizations Act*** 18 U.S.C. §§ 1961 et seq. *See, e.g., Laborer's Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 191 F.3d 229, 241 (2d Cir. 1999), *cert. denied*, 528 U.S. 1080 (2000).

Plaintiff's reliance on *Kubecka* is of no use, as it was decided before *Gause*, and failed to analyze the issues, merely "presuming" there was a viable claim, then noting *Grogan* constitutes

6

contra authority, without explaining why plaintiffs' claims were viable. The *Kubecka* court stated:

> If Kubecka and Barstow had been merely disabled by the attempt on their lives but survived, **_presumably_** they would have had a RICO claim for lost earnings from their business activities because they had been injured in their "business or property." See, e.g. *Hunt v. Weatherbee*, 626 F.Supp. 1097, 1101 (D.Mass.1986); **but see Grogan v. Platt, 835 F.2d 844 (11th Cir. 1988)**." (Emphasis added).

The *Blue Cross* court[5] sinned the same way, accepting district court decisions as precedent without demonstrating that the Sixth, Seventh and Eleventh circuit courts had misapprehended RICO.

Plaintiff's citation to *Kriss v. Bayrock Group LLC*, SDNY Docket No. 10-cv-3959, is misplaced: In fact, *Kriss* proves *defendant's* point.[6] Plaintiff Kriss alleged that he had been fraudulently induced to work for Bayrock Group by defendants who had hidden from him that one, Felix Sater, was a twice-convicted Russian mobster and that they were running the firm through a pattern of such predicate crimes as would eventually cause hundreds of millions of damages to third parties. He alleged that had he known the truth, he would have taken another job, but because he did not, and was subsequently told that he would not be paid as promised and, if he didn't like it, he could shut up about it or be killed, thus was positioned to have been defrauded into working for free. That is pure RICO fraud, obtaining his services by fraudulently promising payment and fraudulently concealing the Bayrock criminality.

Kriss also alleged that he had membership interests in Bayrock LLCs which the RICO defendants had no intention of honoring, and did not honor, stealing them from him, or at least

---

[5] *Blue Cross & BlueShield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560 (E.D.N.Y. 1999).
[6] Attorney Richard Lerner represented plaintiffs Kriss and Ejekam, as appellate counsel to trial counsel Frederick M. Oberlander, and directly in related proceedings, and so is quite familiar with the fact that they did not sue for lost wages, but only stolen partnership interests.

7

stealing his right to distributions pursuant to those interests (under New York law, partnership interests are property capable of being converted). The third amended complaint (link) alleged:

> ¶8. In late May 2007, Defendants participated in a transaction with FL Group that brought proceeds of $50 million into Bayrock Group. In substance, the transaction sold a majority participation in the greater than $200 million in profits that Bayrock Group projected it would earn from 4 of its development projects, including the Trump SoHo. Defendants benefited tremendously from this deal, which guaranteed them returns on the financial and "sweat" investments they had made in Bayrock Group. Defendants refused to share the $50 million in proceeds with Plaintiffs who, as equity partners in the 4 projects based on the valuable work they performed for Bayrock Group, were entitled to millions in distributions. Kriss received only a $500,000 "bonus"; Ejekam received nothing.
>
> ***
>
> ¶168. Under the 2004 Kriss Agreement, Kriss was to receive $10,000 per month in taxable wages. The 2004 Kriss Agreement also provided Kriss, as additional compensation for his services, with the following membership interests in entities in which Bayrock Group was a controlling member: (1) a 10% membership in Defendant Ocean Club; (2) a 10% membership interest in Defendant Merrimac; and (3) a 5% membership interest in Defendant Camelback. The Agreement states that the membership interests in these entities granted to Kriss "will be set forth in the operating agreements of the following affiliated entities: Bayrock Ocean Club LLC, Bayrock Merrimac LLC, Bayrock Camelback LLC." The 2004 Kriss Agreement further states that once certain conditions were met, Kriss would "receive distributions in the aforesaid limited liability companies in the proportions set forth in said operating agreements."

*Kriss* involved aggrieved plaintiffs defrauded into *investing* in a criminal enterprise. That the form of the investment was sweat equity and not cash is irrelevant to the fact that they were fraudulently induced into making it and *directly* harmed financially by the theft of that property conveyed without the interposition of any personal or bodily injury. These were vested membership interests that were granted solely in exchange for services or promises thereof.

That is the key. No one would argue that had a plaintiff been defrauded into contributing property to an LLC in return for membership interests conveying the right to shares of profits to be earned from the venture which would use his property along with the sweat equity of other members to make profits that that was not garden-variety RICO. In the judge's opinion and order

8

in *Kriss* – as noted in plaintiff Horn's opposition papers – the court stated that lost "wages" are recoverable in RICO. However, as LLC members (of an LLC taxed as a partnership, as Bayrock was) the plaintiffs in *Kriss* could not possibly have been suing for "wages" qua wages, as that would have pled themselves into tax fraud: Because LLCs are treated as partnerships under the tax law, partners ("members" in LLC parlance) cannot lawfully be paid "wages." IRS Rev. Rul. 69-184, 1969-1 C.B. 256 (bona fide partner in partnership is not employee and remuneration received not wages with respect to "employment.") Thus, it was merely loose talk by the judge, and not a holding, much less a holding that could override the Second Circuit's binding precedent in *Gause* that loss of earnings is not recoverable. The plaintiffs in RICO were suing for what was stolen from them, their distributions.

**Point II:**   **Plaintiff's Loss of Earnings Do Not Directly Flow from the Alleged Fraud; Moreover, Plaintiff Has Not Shown the Right to Recover for Loss of Earnings Where There has Been no Diminishment in Loss of Earning Capacity.**

Plaintiff cites *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5 (4th Dep't 1983), for the proposition that loss of profits (which plaintiff analogizes to loss of earnings) are recoverable in fraud claims. Plaintiff asserts that consequential damages "may also be awarded" if they are direct and that the rule barring such recovery is not inflexible. Here, however, the requisite degree of directness is lacking. In *Connaughton v. Chipotle Inc.*, 29 N.Y.3d 137 (2017), the Court of Appeals cited Cayuga Harvester for the proposition that lost profits must indeed be direct, and held that plaintiff Connaughton's claim that he was fraudulently induced to forego other business opportunities was indirect, thus holding his lost profits (ergo, lost earnings in the case at bar) to be unsustainable on the claim of fraud:

> In New York, as in multiple other states, the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the out-of-pocket rule. Under that rule, damages are to be calculated to

9

> compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained. There can be no recovery of profits which would have been realized in the absence of fraud. Moreover, this Court has consistently refused to allow damages for fraud based on the loss of a contractual bargain, the extent, and, indeed, the very existence of which is completely undeterminable and speculative.
>
> Here, plaintiff's pleading is fatally deficient because he did not assert compensable damages resulting from defendants' alleged fraud. The complaint alleges that in reliance on defendants' fraudulent omissions, plaintiff stopped soliciting potential buyers. However, the complaint fails to allege that, in doing so, he rejected another prospective buyer's offer to purchase the concept. Instead, plaintiff avers that once Ells showed an interest in his ramen restaurant idea, plaintiff turned to selling the concept to Chipotle. These are factual assertions of the quintessential lost opportunity, which is not a recoverable out-of-pocket loss. As this Court has repeatedly stated, such damage is disallowed as too speculative a recovery.

29 N.Y.3d at 142-143 (citations and internal quotes omitted, punctuation modified).[7]

Here, plaintiff's alleged economic loss does not directly flow from the alleged fraud; rather, it takes an attenuated path. Here are the steps: (1) Plaintiff was allegedly fraudulently induced to purchase CBD oil based upon a representation that it contained no THC; (2) he allegedly ingested the oil which, as alleged, contained trace amounts of THC; (3) he underwent a random urine test at work; (4) the lab reported the positive test result for trace THC to his employer; and (5) his employer terminated his employment. His employer's independent act renders the claim for damages indirect. Moreover, to the extent that plaintiff was not hired by other persons, such other persons' acts were, themselves, independent and non-direct. As there is no direct claim of damage, Dr. Zaporowski cannot opine as to the alleged loss of earnings that so indirectly flowed from the alleged fraud.

Plaintiff also cites several cases for the proposition that a claim of lost wages may be proved without expert testimony – *viz*., *Freeman v. Anh Nguyen*, EDNY Docket No. 13-CV-832;

---

[7] Attorney Jean-Claude Mazzola represented the Chipotle defendants, and argued for dismissal of the case before the Court of Appeals, and so is quite familiar with the fact that plaintiff failed to articulate direct damages resulting from the alleged fraud.

10

*Kane v. Coundorous*, 11 A.D.3d 304 (1st Dep't 2004);[8] *Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492 (SDNY 2013); *Ferguson v. City of New York*, 73 A.D.3d 649, 901 N.Y.S.2d 609, 611 (2010); and *Waring v. Sunrise Yonkers SL, LLC*, 134 AD 3d 488 (1st Dep't 2015).

*Norcia* (which cites several of the other cases cited by plaintiff) was a dram-shop act, wherein the plaintiff sustained actual physical injuries that prevented her from working. Where there is physical injury, that is objectively verifiable, which manifestly prevents someone from working, it is uncontroversial to argue that loss of earnings can be established without the need to call an expert. The *Norcia* court stated:

> Damages for loss of past earnings may be awarded "based solely on plaintiff's testimony without supporting documentation." *Kane v. Coundorous*, 11 A.D.3d 304, 783 N.Y.S.2d 530, 531 (2004); see also *Ferguson v. City of New York*, 73 A.D.3d 649, 901 N.Y.S.2d 609, 611 (2010) ("[P]roof of past lost earnings must be established with `reasonable certainty'.... Such proof can consist [solely] of testimony...."); cf. *Butts v. Braun*, 204 A.D.2d 1069, 612 N.Y.S.2d 520, 521 (1994) (basing finding of "highest amount [of damages for loss of future earnings] that can be justified by plaintiff's evidence" on plaintiff's trial testimony). However, establishing loss of future earnings is more complicated, and requires "comput[ing] ... the monetary value of the diminution in the plaintiff's annual earning capacity, multiplying that amount by the number of years the plaintiff could have worked—[her] work-life expectancy—and then discounting that amount to the present value." *Braccia*, 2011 WL 2848146, at *5 (internal quotation marks omitted).

*Kane v. Coundorous*, 11 A.D.3d 304 (1st Dep't 2004), was a wrongful-death action, wherein the loss of earnings was unchallenged. In any event, the court stated, "While the lost earnings award was based solely on plaintiff's testimony without supporting documentation, defendants expressly declined to challenge such testimony by the use of the W-2 forms in their possession. The evidence of plaintiff's earnings immediately preceding his accident was sufficient to support the jury's modest award of $208,000 for past lost earnings." In *Freeman*,

---

[8] Note: Plaintiff cited this case without identifying its name, referring to it by its unofficial cite 783 N.Y.S.2d 530, 531 (App. Div. 1st Dep't 2004), at page 13 of the opposition papers.

there was objective evidence of physical injury which prevented plaintiff from working. (See [link to the EDNY decision](#)). So too in *Waring* and in *Ferguson* (a wrongful-death action) there were objective physical injuries.

Here, however, the plaintiff sustained no physical injuries, and thus, this case falls squarely within the proposition that establishing loss of earnings is "more complicated," requiring the computation of the monetary value of the diminution in his "***earning capacity***," *Norcia*, supra. If plaintiff had been poisoned, and been bedridden for a period, his loss of earnings could have been established by his mere testimony. But he in fact sustained no physical injury that prevented him from working, and thus he must establish, with competent evidence, a loss of earning capacity. Dr. Zaporowski is not competent to give such testimony, and has not been disclosed as having expertise in loss of earning capacity.

***

WHEREFORE, it is respectfully submitted that plaintiff's expert economist Mark P. Zaporowski Ph.D. must be precluded from testifying at trial.

Dated: New York, New York
   August 2, 2021

                 MAZZOLA LINDSTROM, LLP
                 By: */s/ Richard E. Lerner*
                   Richard E. Lerner
                 Attorneys for defendant Dixie Holdings, LLC
                 1350 Avenue of the Americas, 2nd Floor