UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS J. HORN,

Plaintiff,

vs.

MEDICAL MARIJUANA, INC.,
DIXIE HOLDINGS, LLC,
RED DICE HOLDINGS, LLC,
DIXIE BOTANICALS,

Defendants.
_____

Case No. 1:15-cv-00701-JWF
_____

**MEMORANDUM OF LAW OF MEDICAL MARIJUANA, INC.,
AND RED DICE HOLDINGS, LLC, IN RESPONSE TO COURT'S REQUEST
FOR BRIEFING ON SUPPLEMENTAL JURISDICTION**

Roy A. Mura, Esq.
Scott D. Mancuso, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants*
*Medical Marijuana, Inc.*
*and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
roy.mura@muralaw.com
scott.mancuso@muralaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 1

    I.    THE COURT MUST FIRST DETERMINE WHETHER DIVERSITY JURISDICTION EXISTS PURSUANT TO 28 U.S.C. §1332 ...................................... 1

    II.    WHERE THE COURT FINDS DIVERSITY JURISDICTION DOES NOT EXIST – IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION ...................................... 6

CONCLUSION ........................................................................................................................... 9

i

Mura Law Group, PLLC • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

## TABLE OF AUTHORITIES

**Federal Statutes**

28 U.S.C. §1332 ................................................................................................................1, 2, 3

28 U.S.C. §1367 ............................................................................................................1, 2, 7, 9

**Cases**

AFA *Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912 (1982) ........................................4

*Carnegie-Melon University v. Cohill*, 484 U.S. 343 (1988) ............................................................7

*Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) ........................1, 2, 6, 7, 8

*Cayuga Harvester v Allis-Chalmers Corp.*, 95 AD2d 5 (4th Dept 1983).........................................4

*Connaughton v Chipotle Mexican Grill, Inc.*, 135 AD3d 535, 538-539 (1st Dept 2016) ...............4

*Foster v Di Paolo*, 236 N.Y. 132 (1923) .........................................................................................4

*Hanlon v MacFadden Publ.*, 302 N.Y. 502 (1951) ........................................................................4

*Kumiva Group, LLC v. Garda USA Inc.*, 146 AD 3d 504, 506-507 (1st Dept. 2017)..................3, 4

*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421-422 (1996) ...........................................3, 4

*New York Wheel Owner LLC v. Mammoet Holding BV*, 481 F. Supp. 3d 216 (SDNY 2020) ........4

*Reno v Bull*, 226 NY 546, 552-553 (1919) .....................................................................................4

*Revell v. Guido*, 124 AD3d 1006 (3rd Dept. 2015) ........................................................................4

*Sager v Friedman*, 270 NY 472, 481 (1936) ..................................................................................4

ii

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

**PRELIMINARY STATEMENT**

Defendants, Medical Marijuana Inc. and Red Dice Holdings, LLC ("MMI/RDH"), by their undersigned counsel, submit the following memorandum of law in response to the Court's Text Order of August 3, 2021 (Doc. 202), in which the Court directed the parties to "brief the issue of whether the Court should exercise supplemental jurisdiction over Plaintiff's sole remaining cause of action: a state law claim for fraudulent inducement." The Court cited to the case of *Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) and directed that "the parties simultaneously file briefs on the supplemental jurisdiction question before August 10, 2021."

As set forth below, respectfully, the Court must first resolve the issue of whether diversity jurisdiction exists in this case pursuant to 28 U.S.C. §1332. If diversity jurisdiction exists, the issue of whether to exercise supplemental jurisdiction is moot. However, if diversity jurisdiction does not exist, the Court must then determine whether to exercise supplemental jurisdiction.

If the Court determines that diversity jurisdiction does not exist and reaches the question of whether to exercise supplemental jurisdiction, "judicial economy, convenience, fairness, and comity" strongly support the exercise of supplemental jurisdiction in this case and strongly agitate against declining to exercise such jurisdiction under 28 U.S.C. §1367(c)(3).

**ARGUMENT**

**POINT I**

**THE COURT MUST FIRST DETERMINE WHETHER DIVERSITY JURISDICTION EXISTS PURSUANT TO 28 U.S.C. §1332**

1

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

Respectfully, prior to consideration of the supplemental jurisdiction question, the Court must first determine whether it has diversity jurisdiction, which would render moot whether the Court should exercise supplemental jurisdiction.

The plaintiffs in *Catzin*, *supra*, "worked at laundromats in New York City owned by various defendants." *Id*. at 80. While it is not explicitly stated in *Catzin*, it appears that the plaintiffs were New York residents, and the defendants were New York-based entities. Moreover, the "three plaintiffs [were] seeking approximately $13,000 in unpaid wages and other relief available under the wage-and-hour laws." *Id*. As such, in *Catzin*, there was both a lack of diversity among the parties and the amount sought was under the jurisdictional threshold of $75,000. There is no discussion of diversity jurisdiction in *Catzin*, however, it appears that the plaintiffs' only path to jurisdiction in that case was through supplemental jurisdiction.

The same is not necessarily true in the present case. In Plaintiff's initial complaint (Doc. 1 at ¶2), he alleged:

> This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states. This Court also has subject matter jurisdiction over certain claims herein pursuant to RICO, 18 U.S.C. §1964, and 28 U.S.C. §1331, because they arise under the laws of the United States, and over other claims herein pursuant to supplemental jurisdiction, 28 U.S.C. §1367.

Plaintiff alleged that there were two separate grounds for original jurisdiction: 1) diversity jurisdiction pursuant to 28 U.S.C. §1332; and 2) under RICO, with supplemental jurisdiction pursuant to 28 U.S.C. §1367.

As such, any analysis of whether the court should exercise supplemental jurisdiction under 28 U.S.C. §1367 where Plaintiff's RICO cause of action has been dismissed is

2

Mura Law Group, PLLC • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

potentially obviated by first considering whether diversity jurisdiction exists pursuant to 28 U.S.C. §1332.

Upon information and belief, there is complete diversity between the plaintiff and defendant parties. Plaintiff, Doug Horn, is a citizen of New York, and the defendants are California and Colorado-based entities.

The only remaining question is whether the matter in controversy exceeds the sum of $75,000. Plaintiff has asserted through the opinion of Dr. Zaporowski (Plaintiff's proposed Exhibit 12) that he is entitled to lost earnings and interest amounting to over $500,000. Presumably, Plaintiff will continue to assert entitlement to this amount, even under his lone remaining cause of action for fraudulent inducement.

However, as was already broached in Point II of Dixie's Motion *in Limine* (Doc. 194), Plaintiff's damages under the fraudulent inducement cause of action must be limited to "out of pocket" damages under New York State law.

The First Department in *Kumiva Group, LLC v. Garda USA Inc.*, 146 AD 3d 504, 506-507 (1st Dept. 2017) held:

> New York courts for over 100 years have differentiated between the damages recoverable for a breach of contract action and those recoverable for fraudulent inducement. While a plaintiff alleging breach of contract is entitled to damages restoring the full benefit of the bargain, a plaintiff alleging fraudulent inducement is limited to "out of pocket" damages, which consist solely of the actual pecuniary loss directly caused by the fraudulent inducement. "Out of pocket" damages are calculated in three steps. First, the plaintiff must show the actual value of the consideration it received. Second, the plaintiff must prove that the defendant's fraudulent inducement directly caused the plaintiff to agree to deliver consideration that was greater than the value of the received consideration. Finally, the difference between the value of the received consideration and the delivered consideration constitutes "out of pocket" damages (see *Lama Holding Co. v Smith Barney*,

> 88 NY2d 413, 421-422 [1996]; *Sager v Friedman*, 270 NY 472, 481 [1936]; *Reno v Bull*, 226 NY 546, 552-553 [1919]; *Connaughton v Chipotle Mexican Grill, Inc.*, 135 AD3d 535, 538-539 [1st Dept 2016]).

This line of cases was recently recognized by the Southern District in *New York Wheel Owner LLC v. Mammoet Holding BV*, 481 F. Supp. 3d 216 (SDNY 2020), which held:

> Under New York law, a plaintiff asserting a claim for fraudulent inducement can recover only "out of pocket" damages. Kumiva Grp., LLC v. Garda USA Inc., 146 A.D.3d 504, 506, 45 N.Y.S.3d 410 (1st Dep't 2017); see also Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1374 (1996) ("Even if the claims of fraud were sufficiently alleged, plaintiffs would be limited to recovering their losses.")

The New York Court of Appeals in *Lama Holding v. Smith Barney, Inc.*, 88 N.Y.2d 413 (1996) further held:

> The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the "out-of-pocket" rule (*Reno v Bull*, 226 N.Y. 546, 553; *Hanlon v MacFadden Publ.*, 302 N.Y. 502). Under this rule, the loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 N.Y. 472, 481). Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained (see, *Cayuga Harvester v Allis-Chalmers Corp.*, 95 AD2d 5). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud (*Foster v Di Paolo*, 236 N.Y. 132; AFA *Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912).

See also, *Revell v. Guido*, 124 AD3d 1006 (3rd Dept. 2015) (The Third Department, citing the foregoing case law, affirmed a New York Supreme Court ruling where testimony in a trial for fraudulent inducement regarding "lost rents was stricken from the record" and "the jury was specifically instructed to disregard the accountant's testimony in this regard and that any mention

4

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

of lost profits was removed from the verdict sheet." As a result, the court was satisfied that Supreme Court's remedial efforts and curative instructions "were sufficient to alleviate the prejudicial effect of the error" of allowing evidence regarding lost profits to be introduced in fraudulent inducement case.)

Following the New York State law on this issue, Plaintiff cannot recover for alleged lost earnings and interest on the same (his only remaining claimed damages in this suit), as this is, quintessentially, "recovery of profits which would have been realized in the absence of fraud." Plaintiff can only potentially recover what he lost "because of the fraud" and "not to compensate [him] for what [he] might have gained."

When considering the equation of the "difference between the value of the bargain which a plaintiff was induced by fraud to make" and "the amount or value of the consideration exacted as the price of the bargain" – one could not possibly plug over $500,000 in alleged lost earnings into either side of this equation.

Plaintiff, indisputably, was not even allegedly induced by the defendants to bargain for anything more than a single bottle of CBD oil, which Plaintiff allegedly believed to be free of THC. The "amount or value of consideration exacted as the price of [that] bargain" was, at most, $167.95 (Plaintiff's proposed Exhibit 5). Plaintiff does not, and cannot, allege that the defendants in this action exacted consideration of over $500,000 in alleged lost earnings for a single bottle of CBD oil. Instead, these alleged lost earnings damages are, quite literally, what Plaintiff "might have gained" in the absence of the alleged fraud. Such damages are explicitly not recoverable under New York State law pursuant to fraudulent inducement.

Given the foregoing, it seems possible that the Court may be prepared to hold that it does not have diversity jurisdiction over this case, as a matter of law. Where Plaintiff's only

remaining cause of action is a state court action for fraudulent inducement, and New York State caselaw makes clear that damages under such a cause of action are limited as set forth above, diversity jurisdiction would not exist under 28 U.S.C. §1332 because the amount in controversy could not possibly exceed $75,000.

As such, respectfully, the Court must make this determination prior to proceeding to a determination with respect to whether it should exercise supplemental jurisdiction:

1) If the Court finds that Plaintiff <u>can</u> potentially recover more than $75,000 under his fraudulent inducement cause of action, then diversity jurisdiction exists and there is no need to evaluate whether the court should exercise supplemental jurisdiction.

2) If the Court finds that Plaintiff <u>cannot</u> recover more than $75,000 under his fraudulent inducement cause of action, then diversity jurisdiction does not exist and the court must proceed to evaluate whether to exercise supplemental jurisdiction, as set forth below.

## POINT II

**WHERE THE COURT FINDS DIVERSITY JURISDICTION DOES NOT EXIST – IT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION**

As set forth above, the Court should only reach this question where it has found that grounds for diversity jurisdiction no longer exist in this case. In such event, we turn again to the case cited in the Court's Text Order (Doc. 202), *Catzin v. Thank You and Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018).

*Catzin* involved a case in which, like the present case, the plaintiffs initially brought causes of action under both federal and New York State law. Also, like the present case,

at the time of trial, the plaintiffs were no longer proceeding with the federal claims and were only proceeding with their state claim.

In *Catzin*, the District Court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), which states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if," under subsection (3), "the district court has dismissed all claims over which it has original jurisdiction…" Moreover, the Court noted that it believed the inclusion of the federal claims "had all along been disingenuous and was a stratagem to manufacture federal jurisdiction." *Id*. at 79.

The Second Circuit's reversal of this decision largely focused on the District Court's failure to give the party's "notice and an opportunity to be heard" and "impugn[ing] plaintiffs' counsel's motives without affording any notice" or "an opportunity to explain himself" – factors are that not relevant in our case. *Id*. at 81. Only then did the Second Circuit analyze the District Court's decision with respect to the factors under 28 U.S.C. § 1367.

The Second Circuit held that even where § 1367(c)(3) arguably applied:

> the district court must still meaningfully balance the supplemental jurisdiction factors. The principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction "in the usual case" clearly does not mean that the balance of the factors always points that way. Indeed, *Cohill* stated that this principle "does not establish a mandatory rule to be applied inflexibly in all cases." *Cohill*, 484 U.S. at 350 n.7, 108 S.Ct. 614. Nor does the record in this case establish that it falls within the ambit of the "usual case," where judicial economy, convenience, fairness, and comity counsel against exercising supplemental jurisdiction when § 1367(c)(3) applies.

*Catzin*, 899 F.3d at 86.

7

Mura Law Group, pllc • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

As the District Court had failed to take into account considerations of "judicial economy, convenience, fairness, and comity" in its decision of whether to exercise supplemental jurisdiction, the Second Circuit vacated and remanded. Specifically, the Second Circuit noted:

> Supplemental jurisdiction was revoked one day prior to the final pretrial conference and a week before the scheduled trial date. The trial was to be short, roughly three days, and the parties and the District Court were ready for trial. The case presented no issues of special state court expertise nor any novel questions of state law or state-law causes of action that would be better decided in state court. Instead, wage-and-hour cases like this one are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices. The District Court did not explain how comity between state and federal courts is advanced by saddling a state court colleague with a wage-and-hour case of the type that is tried in federal court every day. Nor does the record lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly two years and causing them to expend who knows how much time, legal fees, and distraction starting over in state court.

*Id*. at 86.

Similar to *Catzin*, in this matter, the parties were within a week of proceeding with a scheduled trial, the trial was to be short (not three days but, likely, not much longer), and the parties and the Court were ready for trial. This case, which is now only a single cause of action for fraudulent inducement, presents no issues of special state court expertise or any novel questions of state law that would be better decided by a state court. Similarly, it is not clear how comity between the courts would be advanced by "saddling" a state court with this action nor would the interests of convenience or fairness be served by setting backwards the course of this case, which the parties have litigated for <u>six years</u>, almost to the day. (Plaintiff's Complaint, Doc.1, was filed on August 6, 2015.)

The parties and the Court are fully prepared to go to trial on the remaining cause of action for fraudulent inducement. If the Court determines that diversity jurisdiction does not exist in this case, and that the only path forward for subject matter jurisdiction is supplemental jurisdiction under 28 U.S.C. § 1367, "judicial economy, convenience, fairness, and comity" certainly suggest declining the option presented by § 1367(c)(3) and retaining jurisdiction over this matter through, what should be, a swift resolution of the same.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that the Court should find that diversity jurisdiction does not exist in this case as the amount in controversy does not exceed $75,000 and therefore, in the interests of justice, the Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367.

In the alternative, if the Court finds that the amount in controversy in the case could potentially still exceed $75,000, then diversity jurisdiction exists and there is no need to determine supplemental jurisdiction.

DATED:   Buffalo, New York
         August 10, 2021

Respectfully submitted,

_____
Scott D. Mancuso, Esq.
Roy A. Mura, Esq.
Mura Law Group, PLLC
*Attorneys for Defendants Medical Marijuana Inc. and Red Dice Holdings, LLC*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
scott.mancuso@muralaw.com
roy.mura@muralaw.com

9

MURA LAW GROUP, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816