

Roy A. Mura, Esq.
716.855.0071 Direct
roy.mura@muralaw.com

April 10, 2025

Hon. Jonathan W. Feldman                                    **ECM/ECF FILED**
United States Magistrate Judge
100 State Street
Rochester, New York 14614

      **Re:**   *Horn v. Medical Marijuana, Inc. et al.*
           **Case No.   :    15-CV-701**
           **Our File No. :    7023**

Dear Judge Feldman:

        On April 2, 2025 the United States Supreme Court issued its decision in this case, the 5-4 majority affirming the Second Circuit's opinion that had vacated Your Honor's September 14, 2021 order to the extent that order dismissed plaintiff's civil RICO claim.  A copy of SCOTUS' decision is attached, Justice Barrett's majority opinion concluding:

             The phrase "injured in his business or property" does not preclude recovery for all economic harms that result from personal injuries. We therefore affirm the Second Circuit's judgment and remand the case for further proceedings consistent with this opinion.

        Defendants are advised that SCOTUS will issue a certified judgment in early May and, in light of some of the comments of Justice Barrett in her majority opinion, are reviewing what the "remand [of this] case for further proceedings" at the Second Circuit or in this Court could or should look like.

        Thank you for your time and attention to this matter.

        `                                    Respectfully submitted,

                             MURA|LAW GROUP, PLLC

                             Roy A. Mura

RAM/me
Attachment
cc:    All Counsel of Record (via CM/ECF)

(Slip Opinion)          OCTOBER TERM, 2024          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MEDICAL MARIJUANA, INC., ET AL. *v.* HORN

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT

No. 23–365.   Argued October 15, 2024—Decided April 2, 2025

Seeking relief from his accident-related chronic pain, Douglas Horn purchased and began taking "Dixie X," a purportedly THC-free, non-psychoactive CBD tincture produced by Medical Marijuana, Inc.  A few weeks later, however, Horn's employer selected him for random drug screening, and Horn tested positive for THC.  After he refused to participate in a substance abuse program, his employer fired him.  Horn then sued Medical Marijuana under the Racketeer Influenced and Corrupt Organizations Act (RICO), which creates a cause of action for "[a]ny person injured in his business or property" by reason of a criminal RICO violation.  18 U. S. C. §1964(c).  The District Court granted summary judgment to Medical Marijuana.  Horn's lost employment derived from a personal injury (ingesting THC), the court reasoned.  And in the court's view, §1964(c) forecloses recovery not only for personal injuries, but also for business or property harms that result from such injuries.  The Second Circuit reversed, concluding that Horn had been "injured in his business" when he lost his job.  In so holding, the Second Circuit rejected the "antecedent-personal-injury bar," a rule adopted by several circuits that precludes recovery for business or property losses that derive from a personal injury.

*Held*: Under civil RICO, §1964(c), a plaintiff may seek treble damages for business or property loss even if the loss resulted from a personal injury.  Pp. 4–19.

   (a) The sole question before the Court is whether civil RICO categorically bars recovery for business or property losses that derive from a personal injury.  The Court does not address issues implicated by this case but outside the scope of the question presented, *i.e.*, whether Horn suffered a personal injury when he consumed THC, whether the term

Syllabus

"business" encompasses all aspects of "employment," and what "injured in his . . . property" means for purposes of §1964(c). Pp. 4–5.

(b) Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of [RICO] may sue . . . ." The ordinary meaning of "injure" is to "cause harm or damage to" or to "hurt." American Heritage Dictionary 676. So the meaning of §1964(c) is straightforward: A plaintiff has been "injured in his business or property" if his business or property has been harmed or damaged.

Even so, §1964(c) does not allow recovery for all harms. By explicitly permitting recovery for harms to business and property, §1964(c) implicitly excludes recovery for harm to one's person. But the business or property requirement operates with respect to the *kinds* of harm for which the plaintiff can recover, not the *cause* of the harm for which he seeks relief. For example, a gas station owner beaten in a robbery cannot recover for his pain and suffering. But if injuries from the robbery force him to shut his doors, he can recover for the loss of his business. A plaintiff can seek damages for business or property loss, in other words, regardless of whether the loss resulted from a personal injury. Pp. 5–6.

(c) Medical Marijuana argues that while "injury" ordinarily means harm, it can also refer to the "invasion of a legal right." Ballentine's Law Dictionary 627. Seizing on the latter definition, Medical Marijuana asserts that "injured in his business or property" means "suffered an invasion of a business or property right"—*i.e.*, a business or property tort. And Medical Marijuana contends that the invasion of a personal right never gives rise to a RICO claim. So if a personal-injury tort causes a business or property harm, the plaintiff "cannot recast" his harm "as the basis for a RICO suit."

Medical Marijuana in effect tries to make a term-of-art argument without the term of art. True, "injury" can mean the "invasion of a legal right," but even legal dictionaries confirm that "injury" often means "harm" or "damage." In any event, when a word carries both an ordinary and specialized meaning, context determines the choice between them. Here, context favors ordinary meaning. The statute uses "injured," not "injury," and the dictionary Medical Marijuana relies on defines "injured" *only* according to its ordinary meaning. And Medical Marijuana's argument based on the presence of the word "damages" in §1964(c) is untenable. The phrase "threefold the damages he sustains" refers to monetary redress—*i.e.*, a plaintiff may recover triple the amount that makes him whole. Pp. 6–9.

(d) Medical Marijuana ignores the many cases in which the Court has used the words "injury," "harm," and other terms connoting loss interchangeably. See, *e.g., Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 497 ("[T]he compensable *injury* necessarily is the *harm* caused by

Syllabus

predicate acts sufficiently related to constitute a pattern"); *Anza* v. *Ideal Steel Supply Corp.*, 547 U. S. 451, 457; *Hemi Group, LLC* v. *City of New York*, 559 U. S. 1, 12. Medical Marijuana's tort-centric definition of "injured" also stands in significant tension with the Court's holding in *Yegiazaryan* v. *Smagin*, 599 U. S. 533. In *Yegiazaryan* the Court addressed the circumstances in which injuries to property qualify as "domestic" and thus provide a basis for recovery under §1964(c). Yegiazaryan urged the Court to rely on common-law principles governing "'the situs'" of economic and property injuries. *Id.*, at 546–547. After questioning whether such common-law principles were even "germane" to §1964(c), the Court rejected their application and instead adopted a contextual inquiry. *Id.,* at 544. In other words, the Court rejected an appeal to rely on the common law, deeming that approach inconsistent with "the thrust of §1964(c)." *Id.*, at 548. The Court reaches the same conclusion here. Pp. 9–11.

(e) While Medical Marijuana insists that the Court's antitrust precedent settles the question, its reliance on antitrust law is misplaced. For one, antitrust law does not require plaintiffs to allege business or property injuries that track common-law torts. And for another, the Court has long recognized that the Clayton Act's and §1964(c)'s injury requirements are not "interchangeable." *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. 325, 352. Pp. 11–13.

(f) Medical Marijuana offers little guidance about how courts should assess whether a plaintiff has suffered a qualifying legal injury. In fact, the conclusions Medical Marijuana draws from its own hypotheticals rely on pure *ipse dixit*. It admits, for example, that draining a bank account using a computer password obtained by violence injures the account holder's property; it concedes that §1964(c) allows recovery for a ransom payment despite the antecedent kidnapping; and it insists that a human-trafficking victim can sue for her business or property harm despite it resulting from her captivity. But if an antecedent-personal-injury bar exists, it is unclear why any of these plaintiffs can recover for their losses.

Defining "injured" by reference to legal rights also raises questions about defining the right at issue. Medical Marijuana's proposed solution—that courts should consult the complaint, state law, and general tort principles—does not work. Taking those sources in order, the parties' disagreement over whether Horn pleaded a personal injury exposes the problems with looking to the plaintiff's complaint. Relying on state law would create choice-of-law questions. And looking to general tort law poses problems of its own. Not only does general tort law not always clearly distinguish between "business," "personal," and "property" torts, but it also is difficult to apply when there is no clear analogue or majority rule. Pp. 13–17.

4               MEDICAL MARIJUANA, INC. *v.* HORN

Syllabus

(g) Medical Marijuana warns that the Second Circuit's rule will evis-
cerate RICO's "business or property" limitation, allowing plaintiffs to
transform personal-injury claims into RICO suits for treble damages.
But Medical Marijuana understates the other constraints on civil
RICO claims.  Even so, civil RICO has no doubt evolved "into some-
thing quite different from the original conception of its enactors,"
*Sedima*, 473 U. S., at 500, and Medical Marijuana is not the first to
express concern about the over-federalization of state-law claims.  As
the Court has said before, if the statute allows the undue proliferation
of RICO suits, the "correction must lie with Congress." *Id.*, at 499.
Pp. 17–18.

80 F. 4th 130, affirmed and remanded.

BARRETT, J., delivered the opinion of the Court, in which SOTOMAYOR,
KAGAN, GORSUCH, and JACKSON, JJ., joined.  JACKSON, J., filed a concur-
ring opinion.  THOMAS, J., filed a dissenting opinion.  KAVANAUGH, J., filed
a dissenting opinion, in which ROBERTS, C. J., and ALITO, J., joined.

Cite as: 604 U. S. ____ (2025)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

———

No. 23–365

———

## MEDICAL MARIJUANA, INC., ET AL., PETITIONERS *v.* DOUGLAS J. HORN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[April 2, 2025]

JUSTICE BARRETT delivered the opinion of the Court.

The Racketeer Influenced and Corrupt Organizations Act (RICO) creates a cause of action for "[a]ny person injured in his business or property." 18 U. S. C. §1964(c). We must decide whether the statute, by implicitly denying a remedy for *personal* injuries, also denies a remedy for business and property loss that derives from a personal injury. It does not.

I

A

In 2012, Douglas Horn was working as a commercial truck driver when he crashed his truck and injured his back and shoulder. Months later, he was still suffering from chronic pain, and neither physical therapy nor traditional medicine provided relief. While searching for a natural alternative, Horn came across "Dixie X," a tincture infused with cannabidiol—more commonly known as CBD—sold by Medical Marijuana, Inc.[1] CBD, like its cannabis "cousin"

_____
[1] Red Dice Holdings, LLC, is a joint venture of Medical Marijuana, Inc., and Dixie Holdings, LLC. All three petitioners—defendants in the courts below—played a role in producing and selling Dixie X. The details of

Opinion of the Court

tetrahydrocannabinol (THC), is a naturally occurring chemical compound found in the cannabis plant. Only THC, however, has the mind-altering properties associated with marijuana.[2]

Because a positive drug test could cost him his job, Horn was wary of any product that might contain THC. But Dixie X seemed safe. It was described as a "CBD-rich," nonpsychoactive medicine that is "0% THC." App. 19. Medical Marijuana's online FAQ page promised that Dixie X was "legal to consume both here in the U.S. and in many countries abroad." *Id.*, at 40. Additional research, including a call to a customer-service representative, reinforced those representations. Satisfied that Dixie X was THC-free, Horn bought a bottle and gave it a try.

A few weeks later, Horn's employer selected him for a random drug screening. To his surprise, the test detected THC in his system. After Horn refused to complete a substance-abuse program—in his view, doing so would constitute "an admission to doing drugs," *id.*, at 91–92—his employer fired him. Horn then ordered another bottle of Dixie X and sent it to a third-party lab for testing. This test also came back positive for THC. In fact, the lab refused to mail the sample back to him, fearing that doing so would violate federal law.

Horn sued Medical Marijuana in Federal District Court, raising a civil RICO claim (as well as a host of state-law claims not relevant here). See 18 U. S. C. §1964(c). He alleged that Medical Marijuana was a RICO "'enterprise'" engaged in marketing, distributing, and selling Dixie X. §1961(4); see *United States* v. *Turkette*, 452 U. S. 576, 583 (1981) (a RICO enterprise is "a group of persons associated

_____

their respective roles do not matter here, so we refer to them collectively as "Medical Marijuana."

[2]See Substance Abuse and Mental Health Services Administration, Cannabidiol (CBD)—Potential Harms, Side Effects, and Unknowns 1 (Feb. 2023).

Opinion of the Court

together for a common purpose of engaging in a course of conduct"). He also asserted that Medical Marijuana's false or misleading advertising satisfied the elements of mail and wire fraud and that those crimes constituted a "'pattern of racketeering activity.'" §§1961(1), (5); see also §§1341, 1343.

The District Court granted summary judgment to Medical Marijuana on the RICO claim. According to the court, Horn's lost employment "flow[ed] from, and [was] derivative of, a personal injury he suffered"—the introduction of THC "into his system through the ingestion of Dixie X." 2021 WL 4173195, *2, *5 (WDNY, Sept. 14, 2021). Yet RICO's civil cause of action, the court stressed, is available only to a "'person injured in his *business* or *property*.'" *Id.*, at *2 (emphasis added). Because a plaintiff cannot recover for a *personal* injury, it reasoned, neither can he recover for a business or property harm that results from a personal injury. *Id.*, at *5. So for Horn, §1964(c) offered no path to relief.

The Second Circuit reversed. 80 F. 4th 130 (2023). It began by analyzing an issue that neither the District Court nor the parties had addressed: whether the term "business" in §1964(c) encompasses not only a "'commercial or industrial establishment or enterprise,'" but also an individual's "'employment.'" *Id.*, at 135–136. Adopting the broad definition, the Second Circuit concluded that Horn had been "'injured in his business'" when he lost his job. *Ibid.*

It then turned to the District Court's holding that a plaintiff like Horn cannot recover for a business or property harm that flows from an "antecedent personal injury." *Id.*, at 137. Horn insisted that any personal-injury bar was inapplicable because the court had mischaracterized his "unwitting ingestion of THC" as a "personal injury" from which his lost employment derived. *Id.*, at 135, n. 2. But the Second Circuit put this issue aside, instead holding that §1964(c) does not impose an "antecedent-personal-injury

bar." *Id.*, at 137. It acknowledged that by granting recovery to someone "injured in his business or property," §1964(c) "implicitly excludes recovery for personal injuries." *Ibid.* Even so, the court said, nothing in "RICO's text or structure" justifies reading this "negative implication" to exclude recovery for all business and property injuries that happen to derive from a personal injury. *Id.*, at 138. Rather, Congress "expressly authorized" a plaintiff to sue for injuries to his business or property. *Id.*, at 140. And "business and property are no less injured simply because" the plaintiff also suffered "an antecedent personal injury." *Id.*, at 140–141.

By rejecting an antecedent-personal-injury bar, the Second Circuit deepened a split among the circuits. The Sixth, Seventh, and Eleventh Circuits have each interpreted §1964(c) to preclude relief for any economic loss (including loss to business or property) that results from a personal injury. See *Jackson* v. *Sedgwick Claims Mgmt. Servs., Inc.*, 731 F. 3d 556, 565 (CA6 2013) (en banc); *Doe* v. *Roe*, 958 F. 2d 763, 770 (CA7 1992); *Grogan* v. *Platt*, 835 F. 2d 844, 847 (CA11 1988). The Second Circuit has joined the Ninth Circuit in refusing to distinguish between a business or property loss suffered as an immediate consequence of a RICO violation and one "derived from" or "a secondary effect of" a personal injury. *Diaz* v. *Gates*, 420 F. 3d 897, 901 (2005) (en banc). We granted certiorari to resolve the split. 601 U. S. ___ (2024).

### B

Because this case implicates several issues that fall outside the scope of the question presented, we begin by emphasizing what we do *not* decide.

First, we express no view on whether Horn suffered an antecedent personal injury when he consumed THC. In the courts below, Horn characterized his injury as exclusively to his business and property because the defendants hurt

Opinion of the Court

his livelihood, not his body.  Whatever the merits of this theory, the Second Circuit did not address it, and neither party asks us to revisit the District Court's conclusion that Horn suffered a personal injury.  So like the Second Circuit, we proceed on the understanding that he did.

Second, we do not decide whether the Second Circuit correctly interpreted "business" to encompass "employment" for purposes of §1964(c).  This interpretation may or may not be right.  But because Medical Marijuana has not challenged it, we leave the issue for another day.

Finally, we do not opine on what it means for a plaintiff to be "injured in his . . . property" under §1964(c).  The parties suggest that this phrase covers all pecuniary loss.  We need not engage this argument, however, because Horn's claim does not depend on it.  After concluding that Horn was "injured in business," the Second Circuit expressly reserved the question "whether Horn suffered an injury to property when he lost his job."  80 F. 4th, at 136, n. 3.  We follow suit.

The only question we address is the one squarely before us: whether civil RICO bars recovery for all business or property harms that derive from a personal injury.

## II

### A

Section 1964(c) provides that "[a]ny person *injured in his business or property* by reason of a violation of [RICO] may sue. . . ."  (Emphasis added.)  The ordinary meaning of "injure" is to "cause harm or damage to" or to "hurt."  American Heritage Dictionary 676 (1969); Webster's Third New International Dictionary 1164 (1971) ("to impair the soundness of"; "to inflict material damage or loss on"); Ballentine's Law Dictionary 626 (3d ed. 1969) ("[t]o harm; to hurt; to wound").  "Injury," which shares a common root, ordinarily refers to "[d]amage of or to a person, property, reputation, or thing."  American Heritage Dictionary, at 676; see also

6                MEDICAL MARIJUANA, INC. *v.* HORN

Opinion of the Court

Webster's Third New International Dictionary, at 1164.[3] The meaning of the relevant phrase is therefore straightforward: A plaintiff has been "injured in his business or property" if his business or property has been harmed or damaged. Section 1964(c) requires nothing more.

Even so, §1964(c) does not allow recovery for all harms. Instead, by explicitly permitting recovery for harms to business and property, it implicitly excludes recovery for harm to one's person. See *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. 325, 350 (2016); see also A. Scalia & B. Garner, Reading Law §10, p. 107 (2012) ("[S]pecification of the one implies exclusion of the other"). But the "business or property" requirement operates with respect to the *kinds* of harm for which the plaintiff can recover, not the *cause* of the harm for which he seeks relief. For example, if the owner of a gas station is beaten in a robbery, he cannot recover for his pain and suffering. But if his injuries force him to shut his doors, he can recover for the loss of his business. In short, a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury.

B

Medical Marijuana resists this conclusion, contending that "injured in his business or property" carries a specialized meaning. While "injury" ordinarily means harm, it can also refer to the "invasion of a legal right." Ballentine's Law Dictionary, at 627; see also Restatement (Second) of Torts §7(1) (1964). Seizing on the latter definition, Medical Ma-

───────────

[3] Section 1964(c), which was enacted in 1970, see 84 Stat. 944, was modeled on a materially identical provision in the Clayton Act, which was enacted in 1914, see 38 Stat. 731. *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 150 (1987). "Injure" had the same meaning then. See Webster's New International Dictionary 1111 (1913) (defining "injure" as "[t]o do harm to; to hurt; damage; impair" and "injury" as "[d]amage or hurt done to or suffered by a person or thing").

Opinion of the Court

rijuana, echoed by the principal dissent, argues that "injured in his business or property" means "suffered an invasion of a business or property right"—that is, a business or property tort.[4] The invasion of a personal right, they assert, never gives rise to a cause of action under RICO. See Brief for Petitioners 11, 15, 35; *post*, at 7 (opinion of KAVANAUGH, J.). So if a personal-injury tort causes a business or property harm, the plaintiff "cannot recast" his harm "as the basis for a RICO suit." Brief for Petitioners 15.

It is true that "injury" can mean "invasion of a legal right." But even in the language of lawyers, this specialized definition is not exclusive. Ballentine's, for example, defines the full phrase "injury in his property" to mean either "[a]n injury to his property" or "[h]arm or damage resulting to his property directly or indirectly." Ballentine's Law Dictionary, at 627. And Black's defines "injury" to mean "[a]ny wrong *or damage* done to another, either in his person, rights, reputation, or property." Black's Law Dictionary 924 (rev. 4th ed. 1968) (emphasis added). So in legal dictionaries, as in lay ones, "injury" often means "harm" or "damage."

When a word carries both an ordinary and specialized meaning, we look to context to choose between them. *United States* v. *Hansen*, 599 U. S. 762, 775 (2023). Here, context cuts decisively in favor of ordinary meaning. As an

---

[4] Neither Medical Marijuana nor the principal dissent explains why the common law of torts supplies the entire universe of relevant rights. After all, §1964(c) also confers a legal right: a protection against business or property harms that result from racketeering activity. Accordingly, if a defendant's racketeering activity causes such a harm, the defendant has "inva[ded]" the plaintiff's "legally protected interest"—in other words, has *injured* the plaintiff, according to Medical Marijuana and the principal dissent's own definition. Restatement (Second) of Torts §7(1); see *post*, at 1, 5 (KAVANAUGH, J., dissenting). Under their view, then, a civil RICO plaintiff must establish not just one but *two* injuries: first, a violation of the statutory right established by §1964(c), and second, a violation of a right recognized by the common law of torts.

Opinion of the Court

initial matter, the statute uses the word "injured" rather
than "injury." The word choice is notable, because while the
legal dictionary on which Medical Marijuana primarily re-
lies includes the specialized meaning ("invasion of a legal
right") in the possible definitions of "injury," it defines "in-
jured" *only* according to its ordinary meaning: "[h]urt, dam-
aged, [or] wounded." Ballentine's Law Dictionary, at 627.
It is hard to make a term-of-art argument without the term
of art.

And although Medical Marijuana argues otherwise, the
presence of the word "damages" does not suggest that "in-
jured" conveys a specialized meaning. Recall that §1964(c)
allows "[a]ny person *injured* in his business or property by
reason of" a RICO violation to "recover threefold the *dam-
ages* he sustains." (Emphasis added.) Medical Marijuana
insists that the definitions of "injured" and "damages" must
be different, because "Congress' use of 'certain language in
one part of the statute and different language in another'
can indicate that 'different meanings were intended.'"
*Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145,
156 (2013) (quoting *Sosa* v. *Alvarez-Machain*, 542 U. S. 692,
711, n. 9 (2004)). According to Medical Marijuana, "dam-
age[s]" refers to the "loss, hurt or harm" resulting from the
RICO violation. Ballentine's Law Dictionary, at 303. So
"injured" must mean something else—namely, "having suf-
fered an invasion of a legal right." See Brief for Petitioners
15.

Once again, Medical Marijuana edits the statute to make
its point. Much as it treats "injured" as interchangeable
with "injury," it treats "damages" as interchangeable with
"damage." Yet the distinction matters, because "damages"
has a specialized legal meaning referring to monetary re-
dress. See Ballentine's Law Dictionary, at 303; *American
Stevedores, Inc.* v. *Porello*, 330 U. S. 446, 450, n. 6 (1947).
Section 1964(c) is best read as using "damages" in precisely
this way. By allowing a plaintiff to recover "threefold the

damages he sustains," the statute allows a plaintiff to re-
cover triple the amount that makes him whole. §1964(c).
And if "damages" refers to "monetary redress," it obviously
means something different from "hurt or harmed." Giving
"injured" its ordinary meaning, therefore, is perfectly con-
sistent with the meaningful-variation canon. Besides, Med-
ical Marijuana's preferred definition of "damages" is unten-
able. Under it, the statute would allow a plaintiff to recover
"threefold the loss, hurt, or harm he sustains." That makes
little sense.

### C

#### 1

Medical Marijuana admits that "depending on context,
injury can mean harm" and that "injury, harm, and dam-
ages" can be used interchangeably. Reply Brief 8. Tell-
ingly, it ignores the many cases treating the terms synony-
mously in this very context.

*Sedima* holds that "the compensable *injury* necessarily is
the *harm* caused by predicate acts sufficiently related to
constitute a pattern." *Sedima, S. P. R. L.* v. *Imrex Co.*, 473
U. S. 479, 497 (1985) (emphasis added). Tracking *Sedima*,
*Anza* is replete with language about the plaintiff's harms.
See, *e.g.*, *Anza* v. *Ideal Steel Supply Corp.*, 547 U. S. 451,
457 (2006) ("Ideal's theory is that Joseph and Vincent Anza
harmed it"); *id.*, at 458 ("To be sure, Ideal asserts it suffered
its own harms"); *ibid.* ("The cause of Ideal's asserted harms,
however, is a set of actions . . . entirely distinct from the
alleged RICO violation"). The same is true of *Hemi Group*,
which reiterates that "in the RICO context, the focus is on
the directness of the relationship between the conduct and
the *harm*." *Hemi Group, LLC* v. *City of New York*, 559 U. S.
1, 12 (2010) (emphasis added). In case after case, we have
used the words "injury," "harm," and other terms connoting
loss interchangeably. See, *e.g.*, *Bridge* v. *Phoenix Bond &
Indemnity Co.*, 553 U. S. 639, 644, n. 3 (2008) ("For present

Opinion of the Court

purposes, it suffices that respondents allege they 'suffered the loss of property related to the liens they would have been able to acquire'");[5] *Klehr* v. *A. O. Smith Corp.*, 521 U. S. 179, 191 (1997) ("[T]heir injuries—the harm to their farm—have always been specific and calculable"); *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 271 (1992) (equating "injuries" with "losses suffered"). Accepting Medical Marijuana's argument would require an about-face.

Vocabulary aside, if "injured" does not mean "harmed," it is difficult to understand our holding in *Yegiazaryan* v. *Smagin*. 599 U. S. 533 (2023). There, we addressed the circumstances in which injuries to property qualify as "domestic" and thus provide a basis for recovery under §1964(c). Yegiazaryan urged us to rely on "common-law principles governing 'the situs'" of economic and property injuries. *Id.*, at 546–547. In his view, these principles established a "bright-line rule": An injury is located at the plaintiff's domicile. *Ibid.* We rejected his argument, reasoning that he had not clearly explained why those principles were "germane" to §1964(c). *Id.*, at 547. His view, we observed, "generate[d] results . . . far afield from any reasonable interpretation of what qualifies as a domestic application of §1964(c)." *Id.*, at 548. We instead adopted a contextual, fact-intensive inquiry that accounts for "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Id.*, at 544 (footnote omitted).

---

[5] The principal dissent thinks that *Bridge* supports its view, but the opposite is true. See *post*, at 19 (opinion of KAVANAUGH, J.). In *Bridge*, we rejected an invitation to look to a common-law tort analogue to resolve whether the defendant's fraudulent conduct could form the basis of a civil RICO suit. 553 U. S., at 652. There was no reason to think, we explained, that Congress had limited §1964(c)'s reach to only "'those acts [that] would have been actionable under the common law.'" *Ibid.* In this case, however, Medical Marijuana and the principal dissent adopt precisely that logic.

Opinion of the Court

Medical Marijuana's argument stands in significant tension with *Yegiazaryan*.  Carried to its logical conclusion, a tort-centric reading of §1964(c) would require that courts refer to choice-of-law principles governing the "place of wrong" when locating the situs of a RICO injury.  Restatement of Conflict of Laws §377 (1934).  Those principles dictate looking to where "the last event necessary to make an actor liable for an alleged tort takes place."  *Ibid.*  So there would be no reason for a court to use a contextual approach, surveying the "injurious effects" of the defendant's conduct and pinpointing where they "largely manifested."  *Yegiazaryan*, 599 U. S., at 546.  But this is the precise approach we outlined in *Yegiazaryan*.  And we rejected the petitioner's appeal to the common law, deeming it inconsistent with "the thrust of §1964(c)."  *Id.*, at 548.  We reach the same conclusion here.

### 2

Perhaps realizing that our civil RICO precedent is not on their side, Medical Marijuana and the principal dissent largely ignore it, insisting instead that our *antitrust* precedent settles the issue.  See *post*, at 8–11 (opinion of KAVANAUGH, J.).  But their reliance on antitrust law is misplaced.[6]

Despite what the principal dissent says, antitrust law has *not* "long required plaintiffs to allege business or property injuries" that track common-law torts.[7]  See *post*, at 5–6, 10.

---

[6] As the principal dissent itself observes: "Few antitrust violations are likely to inflict personal injury" because "anticompetitive acts break laws, not legs."  *Post*, at 13 (opinion of KAVANAUGH, J.).  Well put—and all the more reason to wonder why antitrust law is particularly helpful here.

[7] Tellingly, the principal dissent builds its antitrust argument on a single sentence from a century-old case about rate fixing, see *Keogh* v. *Chicago & Northwestern R. Co.*, 260 U. S. 156, 162 (1922), and an unadorned *citation* to a District Court case, see *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 339 (1979) (citing *Hamman* v. *United States*, 267 F. Supp. 420, 432

Opinion of the Court

In *Radiant Burners*, for example, we said that "to state a claim" under the Sherman and Clayton Acts, "allegations adequate to show a violation and, in a private treble damage action, that [the] plaintiff was damaged thereby are *all the law requires*." *Radiant Burners, Inc.* v. *Peoples Gas Light & Coke Co.*, 364 U. S. 656, 660 (1961) (*per curiam*) (emphasis added). And more recently, we observed that the "broad text" of the Clayton Act—"'any person' who has been 'injured'"—"readily covers consumers who purchase goods or services at higher-than-competitive prices from an allegedly monopolistic retailer." *Apple Inc.* v. *Pepper*, 587 U. S. 273, 279 (2019). In neither *Radiant Burners* nor *Apple* (nor any case in between) did we pause to ask whether "the plaintiff's business or property rights" had been "legally violated" according to the common law of torts. *Post*, at 10 (KAVANAUGH, J., dissenting).[8]

In fact, to the extent our modern antitrust precedent forecloses recovery for certain economic harms, it does so because of a requirement that we have expressly declined to extend to civil RICO. Several decades ago, we interpreted the Clayton Act to require a particular kind of injury—namely, an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U. S. 477, 489 (1977); *Atlantic Richfield Co.*

———————

(Mont. 1967)). *Post*, at 8–10 (opinion of KAVANAUGH, J.). And while the dissent claims that we have recognized the former as "'settled law,'" *post*, at 9, n. 1, the "settled" rule of *Keogh* is that "tariff-related claims" do "not give rise to treble-damages antitrust actions," *Square D Co.* v. *Niagara Frontier Tariff Bureau, Inc.*, 476 U. S. 409, 419–420 (1986). Horn's case, of course, has nothing to do with tariffs.

  [8]Consistent with these cases, the prominent Areeda and Hovenkamp treatise states that the Clayton Act's "'business or property' requirement is virtually always satisfied provided there is some kind of injury that can be properly characterized as economic." 2A P. Areeda, H. Hovenkamp, R. Blair, & C. Durrance, Antitrust Law: An Analysis of Antitrust Principles and Their Application §336 (5th ed. 2021).

Opinion of the Court

v. *USA Petroleum Co.*, 495 U. S. 328, 342 (1990) (This "requirement . . . ensures that the *harm* claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place" (emphasis added)). In *Sedima*, however, we concluded that "transplant[ing]" this cause-of-action-specific interpretation of "injured" into the RICO context "would be inappropriate." *RJR Nabisco*, 579 U. S., at 352 (describing *Sedima*). Rejecting the Second Circuit's "[a]nalog[y] to the Clayton Act," we held that a civil RICO plaintiff need not allege a "'racketeering'" or "'RICO-type injury'"; all that is required is business or property "harm" resulting from the defendant's "predicate acts." *Sedima*, 473 U. S., at 484–485, 495. "There is no room in the statutory language" we explained, "for an additional, amorphous 'racketeering injury' requirement." *Id.*, at 495; see also *Holmes*, 503 U. S., at 269, n. 15 ("'[A]ntitrust injury' has no analogue in the RICO setting"). In short, we recognized then and reiterate today that the Clayton Act and §1964(c) are not "interchangeable." *RJR Nabisco*, 579 U. S., at 352.

D

You can't replace something with nothing. And aside from its repeated assertions that "injury" means "invasion of a legal right," Medical Marijuana offers next to nothing about how courts should assess whether the plaintiff has suffered such an invasion.

The proof lies in Medical Marijuana's own hypotheticals. Unable to identify a guiding principle, it lets pure intuition do the work. It asserts that if a mobster assaults a carwash owner and the owner does "business with the mob" as a result, the owner has suffered a "business or property injury." Brief for Petitioners 34. But why? The business or property loss flowed from an assault on the carwash owner. According to Medical Marijuana, the example works because "[f]orcing someone to do business with the mob instead of a

Opinion of the Court

cheaper, legitimate competitor is a prototypical business or
property injury." *Ibid.* It offers nothing, however, to sup-
port this *ipse dixit*. What makes choosing a more expensive
business partner a "prototypical" business injury? And why
does this rationale not extend to losing your job, as Horn
did after consuming Dixie X? Medical Marijuana does not
say. [9]

Its other examples continue in the same vein. It admits
that "if Tony Soprano drains a bank account using a com-
puter password obtained by violence, Mr. Soprano has in-
jured the account holder's property by taking his money."
*Id.*, at 34–35 (citation omitted). It concedes that §1964(c)
allows recovery for a ransom payment, even if a kidnap-
ping—a personal harm—was the catalyst. *Id.*, at 34. And
it insists that a human-trafficking victim can sue for her
business or property harm, even though the harm neces-
sarily resulted from her captivity. Reply Brief 8. But if an
antecedent-personal-injury bar exists, it is unclear why any
of these plaintiffs can recover for their business or property
losses. In each scenario, the economic harm resulted from
a personal injury.

As Medical Marijuana's own hypotheticals reveal, defin-
ing "injured" by reference to legal rights raises difficult
questions about how to define the right at issue. And Med-
ical Marijuana's proposed solution is illusory.[10] Its reply

───────────

[9]The principal dissent has the same problem. It asserts that "negli-
gently driving a car into a pedestrian" inflicts a personal injury that it
calls "wrongful invasion of the pedestrian's physical safety." *Post*, at 7
(opinion of KAVANAUGH, J.). But not even a cover-to-cover reading of the
Restatement will reveal a "wrongful invasion of physical safety" tort.
(And wisely, the dissent does not rest on the general tort of negligence,
which is not susceptible to fixed categorization as a business, property,
or personal tort.)

[10]As is the principal dissent's. It offers the half-hearted reassurance
that ascertaining "whether a plaintiff [has] plausibly allege[d] a business
or property injury as distinct from a personal injury . . . is at least a fa-
miliar judicial exercise." *Post*, at 20 (opinion of KAVANAUGH, J.). Suffice

brief simply asserts that "plaintiffs are the masters of their complaints and what legal rights they assert." *Id.*, at 4. But how should a court determine whether the plaintiff has asserted a qualifying "legal right?" When asked this question at oral argument, Medical Marijuana suggested that courts could consult three sources: the complaint, state law, and general tort principles. Tr. of Oral Arg. 35. Yet this list gives rise to a host of new questions. Must a court examine all three sources? In what order? What should it be looking for? And what if the sources conflict?

Start with the complaint in this very case. The parties vigorously dispute whether Horn pleaded a personal injury. Medical Marijuana says yes, Horn says no, and the Second Circuit declined to address the question. See 80 F. 4th, at 135, n. 2. We express no view on which party is right, but their disagreement exposes the gaps in Medical Marijuana's theory. Do the plaintiff's asserted causes of action govern? Or must a court try to match the alleged facts with a particular business or property tort? And what if no particular tort squarely governs the facts of the case? As Horn notes, "harboring" undocumented immigrants and "'trafficking in counterfeit labels for phonorecords'" are just two of many RICO predicate offenses that lack obvious tort-law analogues. See Brief for Respondent 26; see also 18 U. S. C. §1961(1); 8 U. S. C. §1324 (harboring); 18 U. S. C. §2318 (trafficking).

Next, consider state law. In its briefing, Medical Marijuana posits that "[i]ngesting an unwanted product" is "plainly a personal injury," citing two state-court opinions as primary support. Brief for Petitioners 21 (citing *Commonwealth* v. *Stratton*, 114 Mass. 303, 304–305 (1873); *Gupta* v. *Asha Enterprises, L.L.C.*, 422 N. J. Super. 136, 142, 153–154, 27 A. 3d 953, 956, 963 (App. Div. 2011)). But if state law controls, other questions arise. States need not

—————————

it to say, we have our doubts.

Opinion of the Court

define their torts using the specific categories of "business," "person," and "property." Nor do all torts obviously fall into a particular category. Some States, for example, have recently recognized a tort action against medical providers who disclose "information obtained during treatment." See *Lawson* v. *Halpern-Reiss*, 2019 VT 38, ¶14, 210 Vt. 224, 233, 212 A. 3d 1213, 1219; *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 327 Conn. 540, 564–568, 175 A. 3d 1, 15–17 (2018). Does disclosure implicate a privacy interest? If so, does violating that interest constitute a "personal injury"? Or does disclosure implicate a property interest in one's medical information?

Relying on state law would also create choice-of-law questions. Many RICO enterprises transcend the boundaries of a single jurisdiction. See 18 U. S. C. §1965(a) (establishing venue in "any district" in which the defendant "resides, is found, has an agent, or transacts his affairs"); see also *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 154 (1987) ("[P]redicate acts will often occur in several States"). Which jurisdiction must supply the necessary tort-law analogue? Is it where the plaintiff felt her injury? Where the defendant engaged in the racketeering activity? Where the majority of the enterprise resides?

The third source on Medical Marijuana's list—general tort law—avoids the choice-of-law concern but has theoretical problems of its own. For one, like state tort law, general tort law does not always clearly distinguish between "business," "personal," and "property" torts. For another, general tort law is neither static nor uniform. See *Air & Liquid Systems Corp.* v. *DeVries*, 586 U. S. 446, 453 (2019) (observing that "the federal and state courts ha[d] not reached consensus on how to apply" a particular principle of general tort law). When a majority rule does not exist, when the law is unsettled, or when there is no analogous tort, deferring to general tort principles is difficult, to say the least.

Opinion of the Court

\*      \*      \*

Medical Marijuana tries valiantly to engineer a rule that yields its preferred outcomes. (Civil RICO should permit suit against Tony Soprano, but not against an ordinary tortfeasor.) But its textual hook—the word "injured"—does not give it enough to go on. When all is said and done, Medical Marijuana is left fighting the most natural interpretation of the text—that "injured" means "harmed"—with no plausible alternative in hand. That is a battle it cannot win.

## III

Medical Marijuana, together with the principal dissent, warn that the Second Circuit's rule will eviscerate RICO's "business or property" limitation. See *post*, at 12 (opinion of KAVANAUGH, J.). In their view, a plaintiff can characterize any economic harm flowing from a personal injury as a harm to his business or property. Hence, they say, plaintiffs can easily transform garden-variety personal-injury claims into RICO suits for treble damages. While we understand the concern, Medical Marijuana and the dissent understate other constraints on civil RICO claims.

*First* and foremost is RICO's direct-relationship requirement. Time and again, we have reiterated that §1964(c)'s "by reason of" language demands "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U. S., at 268. The key word is "direct"; foreseeability does not cut it. *Hemi Group*, 559 U. S., at 12. Rather, whenever the plaintiff's theory of causation requires moving "well beyond the first step," it "cannot meet RICO's direct relationship requirement." *Id.*, at 10.

Given the number of steps in Horn's theory and the multiple actors involved, this requirement may present an insurmountable obstacle in his case. Indeed, even Horn concedes that he faces "a heavy burden on remand." Tr. of Oral Arg. 45, 63, 70. There is, after all, some distance between

18        MEDICAL MARIJUANA, INC. *v.* HORN

Opinion of the Court

the first link in the chain (Medical Marijuana's misrepresentations) and the last (Horn's job loss).

*Second*, pleading a RICO claim is not as simple as pointing to a business or property harm. A plaintiff must first establish a pattern of racketeering activity. 18 U. S. C. §§1962, 1964(c). Doing so requires identifying two or more predicate crimes "within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H. J. Inc.* v. *Northwestern Bell Telephone Co.*, 492 U. S. 229, 237 (1989); see also §§1961(1) and (5), 1962. So harm resulting from a single tort is not a ticket to federal court for treble damages.

*Third*, the reach of §1964(c) turns on more than the meaning of "injured." As we noted at the outset, "business" may not encompass every aspect of employment, and "property" may not include every penny in the plaintiff's pocketbook. Accordingly, not every monetary harm—be it lost wages, medical expenses, or otherwise—necessarily implicates RICO. Medical Marijuana brushes away this possibility, instead attributing the broadest definitions to both terms.

All of this said, civil RICO has undeniably evolved "into something quite different from the original conception of its enactors." *Sedima*, 473 U. S., at 500. More suits are brought against ordinary businesses than against "archetypal, intimidating mobster[s]," *id.*, at 499, and given this development, Medical Marijuana is not the first litigant to express concern about "the 'over-federalization' of traditional state-law claims," *Bridge*, 553 U. S., at 659. But we respond today as we have before: If the breadth of the statute "leads to the undue proliferation of RICO suits, the 'correction must lie with Congress.'" *Id.*, at 660 (quoting *Sedima*, 473 U. S., at 499); see also *H. J. Inc.*, 492 U. S., at 248–249; *Boyle* v. *United States*, 556 U. S. 938, 950–951 (2009).

Opinion of the Court

\*    \*    \*

The phrase "injured in his business or property" does not preclude recovery for all economic harms that result from personal injuries.  We therefore affirm the Second Circuit's judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

Cite as: 604 U. S. ____ (2025)      1

JACKSON, J., concurring

# SUPREME COURT OF THE UNITED STATES

_____

No. 23–365

_____

## MEDICAL MARIJUANA, INC., ET AL., PETITIONERS *v.* DOUGLAS J. HORN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[April 2, 2025]

JUSTICE JACKSON, concurring.

When Congress speaks, courts should listen. Congress has instructed that the Racketeer Influenced and Corrupt Organizations Act (RICO) "shall be liberally construed to effectuate its remedial purposes." §904(a), 84 Stat. 947. That instruction applies with particular force to the remedial provision of RICO at issue in this case, 18 U. S. C. §1964(c), which creates "a private action for those injured by racketeering activity." *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 498 (1985). In rejecting petitioners' attempts to add atextual hurdles to §1964(c), today's decision accords with Congress's liberal-construction directive. In my view, that provides one more reason that the decision is right.

THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 23–365

_____

## MEDICAL MARIJUANA, INC., ET AL., PETITIONERS *v.* DOUGLAS J. HORN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[April 2, 2025]

JUSTICE THOMAS, dissenting.

The Racketeer Influenced and Corrupt Organizations Act (RICO) allows any person "injured in his business or property by reason of" racketeering activity to bring a civil suit for damages. 18 U. S. C. §1964(c). All agree that this "civil RICO" statute forbids suits based on "personal injuries." *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. 325, 348, 350 (2016). We granted certiorari in this case to resolve a Circuit split on "[w]hether economic harms resulting from personal injuries" are "injuries to 'business or property'" under civil RICO or are instead personal-injury damages. Pet. for Cert. i. But, this case has proved ill suited for deciding the question presented. The parties dispute an important threshold issue: whether the plaintiff here suffered a personal injury in the first place. And, they have inadequately briefed their views on the meaning of the key statutory phrase "injured in his business or property." §1964(c). Perhaps due to these difficulties, the Court today issues a narrow opinion that elides the parties' primary disputes. Rather than opine on ancillary issues, I would dismiss the writ of certiorari as improvidently granted. I respectfully dissent.

I

Plaintiff Douglas Horn lost his job as a commercial truck

THOMAS, J., dissenting

driver after a random drug test revealed tetrahydrocanna-
binol (THC) in his system.  Horn asserts that the THC came
from his ingestion of Dixie X, an over-the-counter medicinal
product manufactured and sold by Medical Marijuana,
Inc.*  Medical Marijuana advertised Dixie X as THC-free,
but a third-party laboratory detected THC in the product.

Horn sued Medical Marijuana in Federal District Court,
alleging various state-law claims and a violation of civil
RICO.  To establish a civil RICO violation, a plaintiff must
prove that a defendant engaged in a "pattern of racketeer-
ing activity" that caused the plaintiff to be "injured in his
business or property."  §§1962, 1964(c).  Horn alleged that
Medical Marijuana engaged in mail and wire fraud—forms
of racketeering activity under RICO—and that, as a result,
he suffered a business or property injury in the form of lost
employment.

Medical Marijuana moved for summary judgment on
some of Horn's state-law claims on the ground that Horn
had not suffered a personal injury, an essential element of
those claims.  Specifically, Medical Marijuana asserted that
Horn had "failed to produce any evidence or testimony that
[he] suffered any bodily injury from ingesting Dixie X."
Memorandum of Law in Support of Defendants et al. in
No. 15–cv–701 (WDNY, Aug. 30, 2018), ECF Doc. 62–1,
p. 27.  In Medical Marijuana's view, "[t]he only loss" Horn
even "attempted to establish through discovery" was that
he lost his "jo[b] and . . . source of income."  *Ibid.*

The District Court accepted Medical Marijuana's argu-
ment and rejected some of Horn's state-law claims based on
his failure to establish a personal injury.  383 F. Supp. 3d
114, 134 (WDNY 2019).  The court explained that although
Horn seeks damages for "economic losses," he does "not

—————

*Petitioners include Medical Marijuana, Inc., Red Dice Holdings, LLC,
and Dixie Holdings, LLC, all of which were involved in the production
and sale of Dixie X.  I refer to petitioners as Medical Marijuana through-
out this opinion.

THOMAS, J., dissenting

claim that [he] suffered any personal injury . . . as a result of [Medical Marijuana's] conduct." *Ibid.*

The District Court's summary judgment ruling left two claims for trial: a state-law fraudulent inducement claim and the civil RICO claim.

On the eve of trial, Medical Marijuana argued for the first time that Horn's civil RICO claim failed as a matter of law because it was based on a "personal injury." Memorandum of Law in Reply to Motion *In Limine* in No. 15–cv–701 (WDNY, Aug. 2, 2021), ECF Doc. 200, p. 4. It asserted that the only injury Horn alleged was the unwanted "ingest[ion]" of "trace amounts of THC," and that this kind of injury "is, fundamentally, a type of 'personal injury.'" *Id.,* at 10, 12. Horn's lost wages, according to Medical Marijuana, were merely "damages" that "derive from a personal injury," and thus "are not recoverable under . . . civil RICO." *Id.,* at 5 (capitalization and boldface deleted).

Notwithstanding its earlier determination that Horn had *not* suffered a personal injury for purposes of the state-law claims, the District Court adopted Medical Marijuana's new theory and held that Horn's civil RICO claim was based on an impermissible "personal injury: the bodily invasion that [Horn] suffered when he unwittingly ingested THC." 2021 WL 4173195, *3 (WDNY, Sept. 14, 2021). And, because civil RICO precludes suits based on personal injuries, the District Court determined that Horn's civil RICO claim "fail[ed] as a matter of law." *Id.,* at *5. The District Court granted partial final judgment on the civil RICO claim to allow Horn to appeal.

Before the Second Circuit, Horn did not contest the District Court's holding that civil RICO excludes suits based on economic harms resulting from personal injuries. Rather, he argued that he had not suffered a personal injury in the first place.

The Second Circuit declined to decide whether Horn had suffered a personal injury. Instead, the court resolved what

4            MEDICAL MARIJUANA, INC. *v.* HORN

Thomas, J., dissenting

it described as the "logically antecedent legal question": whether civil RICO "bars a plaintiff from suing for injuries to business or property simply because they flow from, or are derivative of, a personal injury." 80 F. 4th 130, 135, n. 2 (2023). Deepening a Circuit split, the Second Circuit held that civil RICO permits a plaintiff to sue for injuries to business or property that "flow from, or are derivative of, an antecedent personal injury." *Id.*, at 135.

Medical Marijuana petitioned this Court for certiorari, asking us to decide whether economic harms resulting from personal injuries are injuries to "business or property" under civil RICO. Pet. for Cert. i. It assured us that "[t]his case cleanly tees that circuit split up for resolution," and that the case would "tur[n] on a narrow, dispositive, and discrete question of statutory interpretation that requires little analysis of the underlying facts." *Id.*, at 4 (internal quotation marks omitted). We granted certiorari. 601 U. S. ___ (2024).

II

I would dismiss the writ of certiorari as improvidently granted. The question presented has divided the Circuits and merits this Court's attention. But, the parties dispute an important, factbound, threshold issue that the court below did not pass upon. And, the intertwined question of how to define a civil RICO injury is inadequately briefed.

A

We took this case to decide whether economic losses flowing from personal injuries are *injuries* to business or property for purposes of civil RICO, or merely *damages*. That question necessarily assumes the existence of a personal injury as the starting point.

Yet, in this case, the parties vigorously contest whether Horn suffered a personal injury at all. Despite its earlier

THOMAS, J., dissenting

theory that Horn had not suffered a personal injury, see *supra*, at 2–3, Medical Marijuana now argues that "Horn suffered a quintessential personal injury" by "ingesting an unwanted substance." Brief for Petitioners 20. Horn, by contrast, contends that he "did not suffer any harm to his person," and that his injuries were only economic in nature. Tr. of Oral Arg. 67; Brief for Respondent 29.

The Second Circuit expressly sidestepped the question whether Horn suffered a personal injury by ingesting Dixie X. 80 F. 4th, at 135, n. 2. The only court to have passed on the issue—the District Court—expressed different views at different points. See *supra*, at 2–3.

I would not decide whether losses flowing from personal injuries are injuries to business or property in a case where no one knows whether the plaintiff suffered a personal injury in the first place. If Horn did not suffer a personal injury, then our resolution of the question presented will have no bearing on this case. Because federal courts may not "render advisory opinions . . . advising what the law would be upon a hypothetical state of facts," *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975) (internal quotation marks omitted), we ordinarily do not decide matters unless we know that our decision will have some import for the parties before us. Given the lack of clarity on whether Horn suffered a personal injury, we cannot be assured that our resolution of the question presented would affect the parties here.

Even if resolving a question that might not affect these parties is "a permissible course, it does not strike me as the most sensible one." *Warner Chappell Music, Inc.* v. *Nealy*, 601 U. S. 366, 376 (2024) (GORSUCH, J., dissenting). The question presented asks us to analyze the nature of losses that flow from a personal injury. It is difficult to analyze the nature of downstream losses when the nature of the initial event is unknown. Medical Marijuana asserts that the kind of loss at issue here—lost wages—can *sometimes* constitute an "injury," depending on the circumstances and the

THOMAS, J., dissenting

event from which the lost wages flow. Reply Brief 15. That we do not know whether this case involves a personal injury severely "complicates our inquiry," and thus counsels in favor of dismissing the writ of certiorari as improvidently granted. *McDonough* v. *Smith*, 588 U. S. 109, 125 (2019) (THOMAS, J., dissenting); accord, *Arizona* v. *City and County of San Francisco*, 596 U. S. 763, 766 (2022) (ROBERTS, C. J., concurring) (concurring in the dismissal of the writ of certiorari as improvidently granted because other contested issues "could stand in the way of our reaching the question presented . . . or at the very least, complicate our resolution of that question").

Of course, we could decide for ourselves whether Horn suffered a personal injury. But, "we are a court of review, not of first view." *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005). And, whether Horn suffered a personal injury is a case-specific factual finding. Such questions do not ordinarily merit our review. See this Court's Rule 10.

Moreover, it is not clear to me that Medical Marijuana is even entitled to argue that Horn suffered a personal injury. The rule of judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire* v. *Maine*, 532 U. S. 742, 749 (2001). Medical Marijuana initially argued that Horn had *not* alleged a cognizable personal injury. See *supra*, at 2. The District Court agreed and dismissed some of Horn's state-law tort claims on that ground. Then, shortly before trial, Medical Marijuana argued that the remaining civil RICO claim failed because Horn had based the claim on a personal injury. Horn has made a nonfrivolous argument that Medical Marijuana should be judicially estopped from arguing that he suffered a personal injury. Brief in Opposition 19–20. Depending on the outcome before this Court, the estoppel issue could be litigated on remand. This additional complication is yet another reason to dismiss the writ

THOMAS, J., dissenting

of certiorari as improvidently granted.

Resolving the question presented would be far more straightforward in a case where the personal injury is beyond dispute. For example, imagine a case in which racketeering activity inflicts a classic personal injury—such as a broken arm—and as a result, the plaintiff suffers economic loss in the form of medical expenses. Such a case would cleanly tee up the question dividing the Circuits: whether the economic loss flowing from a personal injury qualifies as an injury to business or property under civil RICO.

The question presented is important and merits our attention. But, we should save the question for a case where all agree that the plaintiff suffered a personal injury and where our resolution of the question will unambiguously matter.

### B

The question presented is also bound up with a related question—that is, the definition of the phrase "injured in his business or property" in civil RICO. §1964(c). To understand whether Horn's civil RICO claim is based on an "injur[y] in his business or property," it would be helpful to understand the meaning of that phrase in the civil RICO statute. *Ibid.* But, I would not decide that weighty question here because the court below did not do so, and neither party offers a complete definition of the phrase.

The Second Circuit did not decide the meaning of "injured in his business or property." *Ibid.* In its view, "[b]y using the disjunctive 'or' to separate 'business' from 'property,' Congress made clear that 'business' was not intended to modify 'property,' nor was 'property' intended to modify 'business.'" 80 F. 4th, at 135–136. Thus, the Second Circuit evaluated the meaning of "business" without considering the meaning of "property." *Id.*, at 136.

Similarly, neither party offers a complete definition of

"injured in his business or property." §1964(c). Horn argues that an injury to "business" is any harm to one's employment, and employment, in Horn's view, "embraces everything about which a person can be employed." Brief for Respondent 12 (internal quotation marks omitted). But, Horn says little about what it means to be "injured in his . . . property." §1964(c). Medical Marijuana, for its part, argues that an injury to business or property is the invasion of a legal right that one holds in his business or property. Brief for Petitioners 11. But, nowhere does Medical Marijuana tell us exactly how it would define those legal rights. At times it has suggested that courts should look to state tort law, but, it says little about how courts should assess whether the plaintiff has suffered a qualifying tort. Given the state of the briefing on this matter, we are not well positioned to decide the meaning of "injured in his business or property" in this case. §1964(c).

In my view, the Court should interpret the meaning of "injured in his business or property" in its entirety. The ordinary rule is that "a word is known by the company it keeps." *Dubin* v. *United States*, 599 U. S. 110, 124 (2023) (internal quotation marks omitted). Thus, the meaning of "property"—and the way that courts determine the meaning of that term—is likely to bear on the meaning of "business." It may be important that a number of courts have held that "whether a particular interest amounts to property is quintessentially a question of state law." *Doe* v. *Roe*, 958 F. 2d 763, 768 (CA7 1992) (citing *Logan* v. *Zimmerman Brush Co.*, 455 U. S. 422, 430 (1982)); see also *Price* v. *Pinnacle Brands, Inc.*, 138 F. 3d 602, 607 (CA5 1998) (*per curiam*) (explaining that courts "may look to state law to determine, for RICO purposes, whether a property interest exists"). Until we are prepared to define the entirety of the phrase "injured in his business or property," my preference is to say nothing at all.

### III

The Court's opinion underscores why we should dismiss the writ of certiorari as improvidently granted. Perhaps due to the difficulties described above, the Court declines to resolve the question presented. It also declines to offer definitive guidance on what it means for a plaintiff to be "injured in his business or property." §1964(c). Instead, as JUSTICE KAVANAUGH explains, "the Court charts an unusual middle way." *Post*, at 3 (dissenting opinion). It affirms a component of the Second Circuit's decision that no party seems to dispute. It then defines *one word* within the disputed statutory phrase, leaving the most critical and outcome-determinative issues for another day. If these limited holdings are the most we can offer, then our grant of certiorari was plainly improvident.

### A

The Court affirms the Second Circuit's conclusion that civil RICO "does not preclude recovery for all economic harms that result from personal injuries." *Ante*, at 19. In other words, the Court affirms the Second Circuit's determination that civil RICO does not contain a so-called "antecedent-personal-injury bar." 80 F. 4th, at 137. But, as far as I can tell, no party has ever contested that point.

The "antecedent-personal-injury bar" appears to be a concept invented by the Second Circuit. The bar, if applied to civil RICO, would preclude a plaintiff from recovering for an injury to business or property simply because the injury happens to follow a personal injury in the causal chain. In other words, the theory goes, once the plaintiff suffers a personal injury, he may not recover for any subsequent injuries to his business or property that follow or flow from it.

In my view, the majority misunderstands Medical Marijuana to be advocating for that rule. See *ante*, at 14. The majority describes the "only question" before us as "whether civil RICO bars recovery for all business or property harms

that derive from a personal injury." *Ante*, at 5.  But, that
reformulation of the question presented miscasts Medical
Marijuana's argument.  Medical Marijuana concedes that
some harms to business or property are actionable under
civil RICO, even if they follow or flow from a personal in-
jury.  See Brief for Petitioners 33–34.  Its point is that not
*all* harms to business or property are *injuries* to business or
property under civil RICO.  In its view, some economic
harms—such as medical expenses, or, as relevant here,
some forms of lost wages—are better conceived of as *dam-
ages*.  Thus, the question squarely before us is whether the
economic harms in this case—Horn's lost wages—consti-
tute a cognizable *injury* to business or property under civil
RICO or are instead personal-injury *damages*.

I agree with the Court's conclusion that civil RICO does
not bar recovery for *all* economic harms that result from a
personal injury.  So do the other dissenters.  *Post*, at 20–21
(opinion of KAVANAUGH, J.).  And, as far as I can tell, so do
all the parties and the court below.  See Brief for Petitioners
34; Brief for Respondent 18–21; 80 F. 4th, at 137.  We do
not ordinarily take a case to settle an issue on which there
is no disagreement.

### B

The Court's other holding is that "injured" in civil RICO
means "harmed."  *Ante*, at 5–6.  But, defining one word
within the phrase "injured in his business or property,"
§1964(c), sidesteps the core of the parties' disagreement.

The parties dispute the meaning of the *phrase* "injured in
his business or property."  §1964(c).  Although the parties
would define "injured" in slightly different terms, their big-
gest disagreement concerns *what* is injured or harmed.  Ac-
cording to Horn, a plaintiff can bring a civil RICO suit so
long as his business—broadly defined to mean "everything"
about employment—is harmed.  Brief for Respondent 12

(internal quotation marks omitted). And, according to Medical Marijuana, a plaintiff can bring a civil RICO suit only if his legally protected right in his business or property is invaded (or, in other words, injured or harmed). See Brief for Petitioners 11. The modest conclusion that "injured" means "harmed" leaves the scope of the relevant harm unresolved.

The Court's limited holding is bound to "leave substantial confusion and litigation in its wake." *Post*, at 25 (opinion of KAVANAUGH, J.). Notwithstanding its decision to affirm, the Court is unwilling to say that Horn has alleged a cognizable injury to his business under civil RICO. The Court makes clear that it is not deciding whether the Second Circuit correctly interpreted "business" to encompass "employment." *Ante*, at 5. The Court also makes clear that it is not deciding the definition of "property." *Ibid.* I appreciate the hesitation to define an entire phrase in a case where neither party offers a complete definition. But, rather than define one word in isolation, I would wait for a better case.

\*    \*    \*

The decision below implicates a genuine Circuit split, but the parties dispute a factbound, threshold issue that directly bears on the question presented. And, the related issue of how to define "injured in his business or property," §1964(c), was not decided below and is inadequately briefed. I would therefore dismiss the writ of certiorari as improvidently granted. I respectfully dissent.

KAVANAUGH, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————————

No. 23–365

————————

## MEDICAL MARIJUANA, INC., ET AL., PETITIONERS *v.* DOUGLAS J. HORN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[April 2, 2025]

JUSTICE KAVANAUGH, with whom THE CHIEF JUSTICE
and JUSTICE ALITO join, dissenting.

The Racketeer Influenced and Corrupt Organizations
Act, known as RICO, provides that any "person *injured in
his business or property* by reason of a violation" of the Act
"shall recover threefold the damages he sustains."  18
U. S. C. §1964(c) (emphasis added).  Under the text of
RICO, therefore, a plaintiff may sue for "business or
property" injuries, and he may seek recovery of the
damages he sustains from those injuries.  But a plaintiff
may not sue for "personal injuries."  *RJR Nabisco, Inc.* v.
*European Community*, 579 U. S. 325, 350 (2016).

Importantly, and key to my disagreement with the
Court's opinion in this case, the term "injured" is a tort-law
term of art and therefore "should be given its established
common-law meaning."  *United States* v. *Castleman*, 572
U. S. 157, 163 (2014) (quotation marks omitted).  In tort
law, the term "injured" means to have suffered "the
invasion of any legally protected interest."  Restatement
(Second) of Torts §7(1) (1964).  Personal, property, and
business injuries all have well-defined meanings in tort
law: They mean the invasion of a legal right in one's person,
property, or business, respectively.

The dispute in this case arises because personal injuries
in tort law, and thus also in RICO cases, often result in

losses or damages that are related to the victim's business or property. For example, personal injuries from defective products or car accidents often lead to lost wages (loss of "business" according to plaintiff Horn) and medical expenses (loss of "property" according to Horn).

So the fundamental question here is whether business or property losses from a personal injury transform a traditional personal-injury suit into a business-injury or property-injury suit that can be brought in federal court for treble damages under RICO. Plaintiff Horn and the Second Circuit say that the answer is yes. Defendant Medical Marijuana, as well as the Sixth, Seventh, and Eleventh Circuits, contend that the answer is no—that RICO does not authorize suits for personal injuries regardless of what losses or damages a victim sustains from a personal injury. I agree with defendant Medical Marijuana and the Sixth, Seventh, and Eleventh Circuits.

A plaintiff cannot circumvent RICO's categorical exclusion of personal-injury suits simply by alleging that a personal injury resulted in losses of business or property, thereby converting otherwise excluded personal-injury suits into business- or property-injury suits. If the rule were otherwise, as plaintiff Horn advocates here, RICO would federalize many traditional personal-injury tort suits. When enacting civil RICO in 1970, Congress did not purport to usher in such a massive change to the American tort system. As the Eleventh Circuit rightly said, if "Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which will cause some financial loss*, it could have enacted a statute referring to injury generally, without any restrictive language." *Grogan* v. *Platt*, 835 F. 2d 844, 847 (1988) (quotation marks omitted). Congress did not enact such a statute. On the contrary, it excluded personal-injury suits. And it is not remotely plausible to conclude that

Congress *excluded* personal-injury suits under RICO and then turned around and somehow still *implicitly authorized* most personal-injury suits under RICO.

For its part, the Court today neither fully agrees with plaintiff Horn and the Second Circuit, nor fully agrees with defendant Medical Marijuana and the Sixth, Seventh, and Eleventh Circuits. Instead, the Court charts an unusual middle way. The Court agrees with Horn that the term "injured" in RICO is not a tort-law term of art and therefore should be read according to its ordinary conversational meaning, rather than its longstanding legal meaning. Therefore, the Court agrees with Horn that personal-injury suits are not excluded by RICO so long as the personal injuries lead to "business or property loss." *Ante*, at 6. But the Court then declines to decide whether lost wages and medical expenses (which are among the most common economic damages in personal-injury suits) qualify as business or property losses recoverable in those RICO suits.

By concluding that traditional personal-injury suits are not excluded by RICO and then punting on the critical questions of whether lost wages and medical expenses are recoverable losses of business or property in those RICO suits, the Court's opinion both errs on the law and leaves substantial confusion in its wake. The aftermath of the Court's opinion could be quite a mess, as courts grapple with RICO personal-injury cases where the question is what losses qualify as business or property losses.

Unlike the Court, I would heed the text of the statute, recognize that the term "injured" in RICO is a longstanding tort-law term of art, and keep things relatively simple: RICO excludes suits for personal injuries, regardless of what losses or damages ensue from those personal injuries.

## I

For three reasons, I conclude that RICO does not authorize suits for personal injuries even when those

personal injuries result in losses or damages related to one's business or property: (1) the text of RICO excludes personal-injury suits and incorporates traditional tort-law principles about what injury means; (2) this Court's antitrust precedents, which interpret the same "injured in his business or property" language on which RICO was deliberately modeled, confirm that RICO excludes all losses resulting solely from personal injuries; and (3) the federalism canon counsels against federalizing large swaths of ordinary state-court tort cases absent clear direction from Congress.

## A

First is the statutory text. RICO expressly distinguishes among different kinds of injuries—personal injuries versus business or property injuries.

When it enacted RICO in 1970, Congress did not pluck the word "injured" out of thin air. Rather, Congress adopted language that comes straight from longstanding tort-law principles. And those longstanding tort-law principles matter when courts construe RICO: In interpreting statutory torts, this Court starts "from the premise that when Congress creates a federal tort it adopts the background of general tort law." *Staub* v. *Proctor Hospital*, 562 U. S. 411, 417 (2011). Therefore, to define the scope of civil RICO's cause of action, this Court has repeatedly looked to "general common-law" tort principles regarding "legal injury." *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. 639, 656 (2008); see *Beck* v. *Prupis*, 529 U. S. 494, 500–501 (2000).

Stated otherwise, "injured" is a "common-law term of art" that "should be given its established common-law meaning." *United States* v. *Castleman*, 572 U. S. 157, 163 (2014) (quotation marks omitted). Here, as elsewhere, when "Congress transplants a common-law term, the 'old soil' comes with it." *United States* v. *Hansen*, 599 U. S. 762,

KAVANAUGH, J., dissenting

778 (2023) (quotation marks omitted).

What constitutes injury as a matter of traditional tort law? For tort-law purposes, injury is the infringement of a legal right—"the invasion of any legally protected interest of another." Restatement (Second) of Torts §7(1).

And with injury so defined, Congress's "cabining RICO's private cause of action to particular kinds of injury"— business or property injuries, not personal injuries—makes perfect sense. *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. 325, 350 (2016). That is because tort law has long categorized different kinds of legal injuries along precisely those lines.

Personal injury includes "acts constituting a tort because intended or likely to cause bodily harm or emotional distress." Restatement (Second) of Torts §924, Comment *a* (1977); see *id.*, ch. 2, Introductory Note, at 22; Ballentine's Law Dictionary 941 (3d ed. 1969). Typical personal-injury claims may involve, for example, car accidents or defective products.

Property injury—like trespass or conversion—is an act "materially affecting the capacity of particular property for ordinary use and enjoyment" or "the diminishing" of one's "property" by tortious means. Ballentine's, at 627; see *Chattanooga Foundry & Pipe Works* v. *Atlanta*, 203 U. S. 390, 396, 398–399 (1906).

Those categories are long and widely recognized. In detailing the "several injuries cognizable by the courts of common law," Blackstone separated "wrongs or injuries that affected the rights of persons" from "such injuries as affect the rights of property." 3 W. Blackstone, Commentaries on the Laws of England 115, 144 (1768). As one court phrased it 150 years later, actions "to recover damages caused by bodily injuries, or by injuries to property," were "well known as distinct classes of actions" and "each separately treated in the text books of law"—and "so clearly distinguished" that "there is no difficulty in

recognizing and classifying them." *Gridley* v. *Fellows*, 166 Cal. 765, 769, 138 P. 355, 357 (1914); see *Kelley* v. *Boyne*, 239 Mich. 204, 213, 214 N. W. 316, 319 (1927).

Business injury such as unfair competition and tortious interference with contract eventually developed into its own standalone tort-law category, distinct from personal or property injury. By the late 19th and early 20th centuries, courts and commentators embraced the general principle that "to interfere with a man's trade by a malicious act is actionable" because it violates "a concrete right as distinct as his right to his lands and chattels, one which imposes on his fellows a correlative duty, the breach of which is a tort." E. McClennen, Some of the Rights of Traders and Laborers, 16 Harv. L. Rev. 237, 237–238, 241 (1903); cf. F. Cooke, The Law of Combinations, Monopolies and Labor Unions §7 (2d ed. 1909). And by 1938, the First Restatement included a division titled "Interference with Business Relations" that described trade-related wrongs like unfair competition and tortious interference with contract. See Restatement (First) of Torts, div. 9.

In short, tort law has long distinguished personal-injury suits from business-injury or property-injury suits. And RICO incorporated that traditional distinction into the statutory text. Like some of the States, Congress could have decided to authorize RICO suits for any person who has been "injured," period, which would have covered personal-injury suits as well as business- or property-injury suits. See Ga. Code Ann. §16–14–6(c) (2024); Fla. Stat. §772.104(1) (2023). But Congress instead decided to limit civil RICO suits to plaintiffs who have been "injured in" their "business or property."

More specifically, RICO's private right of action is available to a person who has suffered a business or property injury "by reason of a violation" of RICO. §1964(c). And a RICO violation generally requires the defendant to have engaged in a "pattern of racketeering activity," where

"racketeering activity" includes conduct chargeable as any of a host of state- and federal-law crimes, such as money laundering, extortion, and mail or wire fraud, to take some common examples. §1962; see §§1961(1), (5). The question for a court under civil RICO is simply whether the plaintiff was "injured in his business or property by reason of" whatever the defendant did to violate RICO. §1964(c).

One further important point: Under tort law, injury is distinct from the *losses or damages* that result from an injury. Since before the Founding, courts have distinguished "injury" from "damage." *Uzuegbunam* v. *Preczewski*, 592 U. S. 279, 286 (2021) (citing *Cable* v. *Rogers*, 3 Bulst. 311, 312, 81 Eng. Rep. 259 (K. B. 1625)). Stated simply, injury is "the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury." Ballentine's, at 303; see Black's Law Dictionary 466 (rev. 4th ed. 1968).

For example, negligently driving a car into a pedestrian inflicts a legal injury on the pedestrian—wrongful invasion of the pedestrian's physical safety. The pedestrian's losses or damages resulting from the injury typically will include his lost wages and medical expenses, among other things like pain and suffering. The injury (the hit from the negligently driven car) gives the pedestrian a right to sue; the lost wages, medical expenses, and pain and suffering that follow are damages that a plaintiff may be able to recover for the injury. See Restatement (Second) of Torts §§910, 912, Comment *a*.

All of that means that when a victim suffers only a personal injury (such as from a car accident or defective product), his lost wages and medical expenses are merely the losses or damages that result from that personal injury, not themselves a separate business or property injury— that is, not a distinct infringement of a legal right in one's business or property.

Therefore, a victim who suffers only a personal injury "by

8          MEDICAL MARIJUANA, INC. *v.* HORN

reason of" a RICO violation has not been "injured" in his "business or property," even if that personal injury leads him to lose wages or incur medical expenses.  That victim may not sue under RICO.

### B

This Court's antitrust precedents further confirm that RICO's exclusion of personal-injury suits means what it says and cannot be circumvented by recharacterizing personal-injury losses or damages (such as lost wages or medical expenses) as their own standalone business or property injuries.

By the time Congress enacted RICO in 1970, this Court had already interpreted identical text in the antitrust laws—"injured in his business or property"—to adhere to the traditional tort-law understanding of business or property injuries as distinct from personal injuries.  Those prior antitrust holdings interpreting that same statutory language carry weight both as a matter of precedent and because this Court presumes that in enacting RICO, Congress adopted "the interpretation federal courts had given the words earlier Congresses had used" in the antitrust laws.  *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 268 (1992); see, *e.g.*, *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 151 (1987).

Enacted long before RICO, the Sherman and Clayton Acts provided that any "person who shall be *injured in his business or property* . . . by reason of" an antitrust violation may "sue therefor" and "shall recover three fold the damages by him sustained." Sherman Act, §7, 26 Stat. 210 (1890) (emphasis added); see Clayton Act, §4, 38 Stat. 731 (1914), as amended, 15 U. S. C. §15(a).  And in applying that statutory text, the Court opined that "injured in his business or property" had its traditional tort-law meaning.

The Court expressly said so in an antitrust price-fixing

KAVANAUGH, J., dissenting

case, *Keogh* v. *Chicago & Northwestern R. Co.*, 260 U. S. 156 (1922). There, the Court accepted that the plaintiff "was damaged" directly by the defendants' illegal conduct—he "lost the benefit of rates" that "he would have enjoyed" "but for the conspiracy." *Id.*, at 160, 162. But being "damaged"—suffering a loss—was not what the statutory text demanded. The Sherman Act required legal *injury*. As the Court put it, "Section 7 of the Anti-Trust Act" gave "a right of action" only to "one who has been '*injured* in his business or property.' *Injury* implies *violation of a legal right*." *Id.*, at 163 (emphasis added).

In other words, the *Keogh* Court ruled that "injured" referred to the violation of a legal right, not to the harm or damage resulting from the violation of a legal right. And so the Court went on to determine whether the plaintiff had been legally "injured"—which, in *Keogh*, he had not.[1]

Therefore, for an antitrust plaintiff to be "injured in his business or property," this Court and others have required that the plaintiff be legally wronged in a business or

---

[1] The Court does not offer a persuasive substantive response to what it calls "century-old" precedent (*i.e.*, case law from the time shortly after the antitrust laws were enacted). The Court instead tries minimizing it. *Ante*, at 11, n. 7. But the requirement of legal injury is not a "single sentence" from *Keogh*: It is the *holding* of *Keogh*—a holding that has been followed to the present day. Specifically, the fixed rates in *Keogh* were filed with and approved by the Interstate Commerce Commission. 260 U. S., at 160. The plaintiff suffered no "legal" "[i]njury" from rates elevated by price-fixing because the regulator-approved rate was the "legal rate." *Id.*, at 163. In that circumstance, although the plaintiff suffered a loss, there was no legal injury. *Keogh*'s holding is plainly contrary to the Court's test. And *Keogh* is not a one-off, as all of the other above cases applying a legal-injury rule (especially *Chattanooga Foundry & Pipe Works* v. *Atlanta,* 203 U. S. 390 (1906)) make clear. That is why this Court has continued to reaffirm *Keogh*, going so far as to repeatedly call it "settled law." *Square D Co.* v. *Niagara Frontier Tariff Bureau, Inc.*, 476 U. S. 409, 415–417, 420, 422, 424 (1986); see, *e.g.*, *South Branch LLC* v. *Commonwealth Edison Co.*, 46 F. 4th 646, 650–652 (CA7 2022) (applying *Keogh*'s definition to civil RICO).

property interest as traditionally understood.    See *Chattanooga Foundry*, 203 U. S., at 396, 399; *Gerli* v. *Silk Assn. of Am.*, 36 F. 2d 959, 960 (SDNY 1929).   The question is whether the plaintiff's business or property rights were legally violated—not whether the plaintiff suffered some sort of business or property loss or damage *from* an injury.

In *Reiter* v. *Sonotone Corp.*, the Court applied those basic principles to hold that the antitrust laws "exclude personal injuries."  442 U. S. 330, 339 (1979).  That is true, the Court suggested, even when the personal injuries led to losses or damages related to the plaintiff's business or property.  As its example of excluded personal injuries, the Court cited *Hamman* v. *United States*, 267 F. Supp. 420 (Mont. 1967). In *Hamman*, the plaintiffs had tried to evade the personal-injury exclusion by contending that their property damage from a personal injury itself qualified as a distinct property injury for purposes of the antitrust laws.   *Id.*, at 429, 432. Under the antitrust laws, however, that argument does not suffice, which is presumably why the *Reiter* Court cited *Hamman* as exactly the kind of personal-injury suit that the antitrust laws exclude.  442 U. S., at 339.  The *Reiter* Court's citation to *Hamman* supports the conclusion that damages to one's business or property from personal injuries do not somehow magically transform those personal injuries into distinct business or property injuries that can be alleged in an antitrust suit.

To summarize:  Antitrust law has long required plaintiffs to allege business or property injuries, and has long excluded suits for personal injuries.    And critically, antitrust law has defined "injured" as traditionally understood under tort law—that is, as an invasion of a legal right and distinct from the losses or damages that ensue.[2]

---

[2]The Court points to (1) the rule that paying higher-than-competitive prices is an antitrust injury; and (2) a single conclusory line from one *per*

RICO aims "to compensate the same type of injury" as the antitrust laws; "each requires that a plaintiff show injury 'in his business or property by reason of' a violation." *Agency Holding*, 483 U. S., at 151. Those antitrust precedents therefore strongly buttress the conclusion that RICO excludes personal-injury torts, regardless of what kinds of losses or damages ensue. See, *e.g.*, *Gause* v. *Philip Morris*, 2000 WL 34016343, \*4–\*5 (EDNY, Aug. 8, 2000) (rejecting an attempt to reframe loss of income from emphysema as a property injury under RICO).

In RICO, Congress surely did not copy verbatim antitrust law's well-established business or property requirement in order to silently convert ordinary personal-injury tort cases into federal RICO lawsuits with treble damages available.

## C

Third, even if the above textual and precedential points do not themselves clinch the matter, the federalism canon weighs heavily against reading RICO to encompass traditional personal-injury suits.

The federalism canon directs courts not to significantly alter the federal-state balance absent "exceedingly clear language" from Congress. *Sackett* v. *EPA*, 598 U. S. 651, 679 (2023) (quotation marks omitted); see, *e.g.*, *Gregory* v. *Ashcroft*, 501 U. S. 452, 460 (1991). If RICO covered

---

*curiam* opinion from the 1960s. *Ante*, at 11–12. But the first rule is just the holding of *Reiter*, which specifically relied on a 1906 legal-injury precedent to hold that a payment induced at an illegal price is injury in one's property. 442 U. S., at 340 ("A person whose property is diminished by a payment of money wrongfully induced is injured in his property" (quoting *Chattanooga Foundry*, 203 U. S., at 396 (quotation marks omitted))). And as for the 1960s case, the Court there merely said that "all the law requires" is damage to the plaintiff as compared to "economic harm" to "the public at large." *Radiant Burners, Inc.* v. *Peoples Gas Light & Coke Co.*, 364 U. S. 656, 659–660 (1961) (*per curiam*) (quotation marks omitted).

personal injuries that lead to lost wages and medical expenses, as Horn advocates, then civil RICO would federalize huge swaths of state tort law in a manner that Congress never contemplated or authorized.

That reading would eviscerate the careful balance that Congress struck when enacting RICO.[3]  Again, most personal-injury torts lead to damages involving a loss of employment or income (such as lost wages) or loss of money (such as medical expenses).  Horn characterizes those damages as lost business or lost property.  So if Horn's argument were accepted and RICO's exclusion of personal injuries did not actually exclude most personal-injury tort suits, then RICO would suddenly authorize a vast new category of personal-injury suits seeking treble damages in federal court.  For example, plaintiffs could easily plead everyday product liability claims as federal RICO claims, at least so long as there were two or more instances of fraud that a plaintiff could cast as a "pattern" of racketeering activity.  18 U. S. C. §1961(5); see Brief for Petitioners 25–29; Brief for Chamber of Commerce of the United States of America et al. as *Amici Curiae* 19–21.

Most state tort suits are personal-injury suits.  And the States assume an especially active role regarding the rules of personal-injury cases, exercising their "traditional authority to regulate tort actions." *Wos* v. *E. M. A.*, 568 U. S. 627, 639 (2013).

Interpreting civil RICO to allow plaintiffs to bypass those state-law limits—and to triple their damages in federal court—would supplant vast "areas of traditional state responsibility." *Bond* v. *United States*, 572 U. S. 844, 858

---

[3]RICO authorizes both criminal prosecutions and civil actions by the Government regardless of whether there has been any business or property injury.  See 18 U. S. C. §§1963(a), 1964(a)–(b).  But Congress deliberately made a different choice for private suits, "cabining RICO's private cause of action to particular kinds of injury." *RJR Nabisco, Inc.* v. *European Community*, 579 U. S. 325, 350 (2016).

(2014). In the antitrust context, this Court has emphasized that the "maintenance in our federal system of a proper distribution between state and national governments" is "of far-reaching importance," and an "intention to disturb the balance is not lightly to be imputed to Congress." *Hunt* v. *Crumboch*, 325 U. S. 821, 826 (1945) (quotation marks omitted).

So too with RICO. Indeed, the federalism concerns are even greater with RICO than with antitrust. Few antitrust violations are likely to inflict personal injury on a plaintiff—anticompetitive acts break laws, not legs. But "the breadth of the predicate offenses" in RICO practically covers the waterfront of personal-injury tort law. *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 500 (1985). So if RICO were interpreted as Horn suggests, RICO suits for treble damages in federal court could supplant many everyday tort suits in state court. Avoiding such seismic shifts in the federal-state balance, Congress drew the critical RICO boundary at issue here—"cabining RICO's private cause of action to particular kinds of injury" and "excluding" "personal injuries." *RJR Nabisco*, 579 U. S., at 350.

## II

To sum up so far: When civil RICO employed the language "injured in his business or property," it broke no new ground. It incorporated well-established tort-law principles and antitrust precedents in a straightforward way. If the only injury (that is, invasion of a legal right) that a plaintiff suffers is a personal injury, the plaintiff cannot recover under civil RICO. And RICO does not allow access to its treble-damages remedy by silently green-lighting personal-injury suits that have downstream financial consequences like lost wages or medical expenses. After all, most personal injuries generate those downstream financial consequences. So if RICO were

interpreted in that way, it would federalize significant swaths of state tort law, and substantially alter the federal-state balance.

Despite all of that, the Court today agrees in part (with some important caveats as discussed below) with plaintiff Horn on this basic statutory issue and thereby circumvents RICO's exclusion of personal injuries—letting in through the back door at least some of the personal-injury suits that RICO's text bars at the threshold.

The Court's key mistake, in my view, is to employ an ordinary-meaning definition of the term "injured" rather than its longstanding meaning as a term of art in American tort law. As the Court sees it, the ordinary meaning of "injured" simply is to have suffered harm or losses or damages. Therefore, when a personal injury leads to harm or losses or damages related to one's business or property, those downstream harms to business or property are actually their own distinct business or property *injuries* for purposes of RICO. So under that reasoning, many personal-injury suits seeking treble damages can in fact be brought under RICO in federal court. Voila.

## A

To navigate around RICO's distinction between personal-injury suits and business- or property-injury suits, and the key point that injury is a longstanding tort-law term of art, the Court stresses that RICO uses the term "injured" instead of "injury." That single piece of "context," says the Court, means that we should look to the ordinary meaning of "injured" and that the traditional tort-law understanding of injury does not carry over to RICO. *Ante*, at 7–8. I am mystified by the Court's attempt to hang its analytical hat on such a thin distinction between "injured" and "injury." After all, a person "injured" is a person who has suffered an "[i]njury," a "violation of a legal right"—that is, the victim of a tort or wrong. *Keogh* v. *Chicago & Northwestern R. Co.*,

Cite as: 604 U. S. ____ (2025)           15

KAVANAUGH, J., dissenting

260 U. S. 156, 163 (1922) (quotation marks omitted); see,
*e.g.*, *Chattanooga Foundry & Pipe Works* v. *Atlanta*, 203
U. S. 390, 398–399 (1906); *Ziglar* v. *Abbasi*, 582 U. S. 120,
130 (2017); *Alabama Power Co.* v. *Ickes*, 302 U. S. 464, 479
(1938); *Taylor* v. *Carryl*, 20 How. 583, 599 (1858).

　After reviewing a single dictionary definition of "injured,"
the Court concludes that the term "injured," as distinct
from "injury," has no specialized legal meaning. From
there, the Court says that it "is hard to make a term-of-art
argument without the term of art." *Ante*, at 8. But the
Court's nifty turn of phrase has no substance behind it.
Every one of the Court's dictionaries—its legal dictionaries,
and even its generalist ones—includes the rights-violation
definition of "injure" or "injured," not just of "injury." See
Ballentine's, at 627 ("injured party"); Black's, at 924 (to
"injure"); Webster's New International Dictionary 1111
(1913) ("injured"); American Heritage Dictionary 676 (1969)
(to "injure"); Webster's Third New International Dictionary
1164 (1971) ("injured"). Those sources do not draw the
distinction that the Court creates in order to avoid RICO's
exclusion of personal injuries.[4]

　Simply put, the Court's attempt to find a key difference
between "injured" and "injury" rings hollow. And the
Court's textual gymnastics do not end there. If the Court
were correct that injured simply means having suffered
harm or losses or damages, then the statutory term
"injured" would refer to the same thing as the statutory
term "damages." But the statute distinguishes "injured"
from "damages" and makes clear they are not the same

─────────

　[4]Meanwhile, the Court's cited definition for "injury in his property" is
nearly identical to this Court's test for "*injured* in his property" in
antitrust, the part of speech notwithstanding. Compare Ballentine's, at
627 ("An injury to his property; also the diminishing of his property by a
transfer of property, or a payment of money, induced by fraud"), with
*Chattanooga Foundry*, 203 U. S., at 396, 398–399 (either "injury to
property" or "a payment of money wrongfully induced").

thing. See §1964(c) ("Any person *injured* in his business or property by reason of a violation" of RICO "shall recover threefold the *damages* he sustains" (emphasis added)). The text instead makes clear that damages are the losses that a victim sustains from an injury.

Faced with the problem that its definition of injured refers to the same thing as damages in this statute, the Court simply redefines "damages" not to mean losses, but rather to mean only "monetary redress" to be paid for the losses. *Ante*, at 8–9.

The Court is surely correct that "damages" *can* mean (i) losses suffered or (ii) monetary redress from a lawsuit for those losses. In fact, the term "damages" is often used in both ways. But in this statutory context, only the former definition—losses—makes any sense. As used in the RICO statute, "damages" are something that a victim "sustains." And the term "sustains" means to "experience or suffer (loss or injury)." American Heritage, at 1296. A plaintiff cannot suffer or sustain "monetary redress," as the Court seems to think. But he *can* sustain losses.

So the term "damages" in RICO means losses, but that is exactly what the Court says the term "injured" means. The Court affords the same meaning to those different terms. In this context, that is another clue that the Court's analysis of the term "injured" has gone off track.[5]

_____

[5]To be sure, when a plaintiff *recovers* the damages, he has obtained "monetary redress." But that is because of the statutory word "recover." Nor is it odd, as the Court seems to think, for a statute to say that a plaintiff can "recover" his losses or damages. Allowing a plaintiff to "recover" the "damages" sustained—where "damages" unambiguously means losses suffered—is a formulation used in countless other statutes and cases. For example, "[w]hen an owner of a passenger motor vehicle sustains damages as a result of a motor vehicle accident because the vehicle did not comply with" certain standards, "the owner may bring a civil action against the manufacturer to recover the damages." 49 U. S. C. §32508. If a person "purchase[s] or sell[s] any security at a price

In short, to reach its conclusion that RICO allows personal-injury suits involving losses or damages to business or property, the Court reasons that "injured" means something different from "injury." And it changes the statutory definition of "damages" to avoid that word carrying the same meaning as the Court's reading of "injured." Neither of those efforts is persuasive or permissible as an interpretation of RICO's text, in my view.

The correct reading is instead the textually straightforward one: A person "injured in his business or property" is a person who has suffered injury in a business or property right as traditionally defined—the violation of a legal right in his business or property. *Keogh*, 260 U. S., at 163. Civil RICO allows a person to "recover damages" if the damages result from a business or property injury, but not if the damages result from a personal injury. *Id.*, at 162.[6]

---

which was affected" by certain manipulation, "the person so injured may sue . . . to recover the damages sustained as a result of any such act or transaction." 15 U. S. C. §78i(f). And even specifically in antitrust, a "claimant" means a person bringing a civil action except for a State "with respect to a civil action brought to recover damages sustained by the State." 15 U. S. C. §7a(4). See also, *e.g.*, *Missouri, K. & T. R. Co.* v. *Haber*, 169 U. S. 613, 615 (1898) ("object was to recover the damages sustained by the plaintiff . . . by reason of the defendants having brought . . . certain cattle alleged to have been" infected with "Spanish fever"); *Tindle* v. *Birkett*, 205 U. S. 183, 184 (1907) ("an action brought in 1899 to recover damages claimed to have been sustained in consequence of specified false and fraudulent representations"); *Great Northern R. Co.* v. *Sullivan*, 294 U. S. 458, 462 (1935) ("if injured thereby, plaintiff is entitled to recover the damages sustained in consequence of [the defendant's] failure"); *Construction Workers* v. *Laburnum Constr. Corp.*, 347 U. S. 656, 666 (1954) ("the recovery of damages caused by tortious conduct").

[6]In a footnote, the Court apparently also endorses Horn's fallback argument: According to the Court, even if "injured" refers to the violation of a legal right, that is no problem so long as the legal right is the right "against business or property harms that result from racketeering

KAVANAUGH, J., dissenting

## B

The Court also contends that precedent compels us to read "injured" as meaning "harmed or damaged," not as a tort-law term of art meaning invasion of a legal right. *Ante*, at 6; see *ante*, at 9–11. But the Court does not cite any cases actually holding as much. Instead, the Court offers out-of-context citations of isolated mentions of "harm" in other cases.

In relying on passages pulled out of context from judicial opinions, the Court makes the mistake of parsing "the language of an opinion" "as though we were dealing with language of a statute." *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 341 (1979). The Court seizes in particular on the word "harm," which is not in the RICO statute. The Court says that injury simply means harm as ordinarily understood. So any harm to business or property is its own distinct business or property *injury*, the Court says. But that is wrong as a matter of elementary tort law. As the Restatement plainly says, "harm, which is merely personal loss or detriment, gives rise to a cause of action only when it results from the invasion of a legally protected interest, which is to say an injury." Restatement (Second) of Torts §7, Comment *d*.[7]

––––––––––
activity." *Ante*, at 7, n. 4; see Brief for Respondent 24. But being "injured" is an *element* of the RICO private right of action. If "injured" means violation of a legal right, then the right being violated cannot be the right to not suffer from a RICO violation. (That theory would be just as circular as it sounds.) The rights violations have to be defined somewhere else—and so they are, by "general common-law" tort principles of "legal injury." *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. 639, 656 (2008).

[7]The Court also cites an extraterritoriality case, *Yegiazaryan* v. *Smagin*, 599 U. S. 533 (2023). But its reading of that case is puzzling. *Yegiazaryan* held that we must apply the presumption against extraterritoriality, rather than a specific rule from the First Restatement of Conflict of Laws, to determine whether and to what extent RICO

Moreover, contrary to the Court's telling, multiple civil RICO precedents confirm that to be "injured" in civil RICO means to have suffered "legal injury," not merely to have suffered harm or loss or damage of some kind. *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. 639, 656 (2008). In *Bridge*, for example, the Court explained that whether an element is required in order to state a civil RICO claim turns on whether that element is necessary to show "legally cognizable injury" under "general common-law principle[s]." *Ibid.*[8] In *Beck* v. *Prupis*, the Court likewise held that when civil RICO says that anyone "injured" by reason of a "violation" may sue, it means that a plaintiff may recover only if "injured" by a "violation" under "well-established common law" principles. 529 U. S. 494, 500–501, 506 (2000).[9]

———————

applies abroad. In other words, rather than any particular conflict-of-laws rules, RICO incorporates our usual, across-the-board extraterritoriality test for federal torts—the "presumption against extraterritoriality, with its distinctive concerns for comity and discerning congressional meaning." *Id.*, at 547–548. Nothing about that case suggests we should not *also* apply our *other* usual rule for federal torts—"the premise that when Congress creates a federal tort it adopts the background of general tort law." *Staub* v. *Proctor Hospital*, 562 U. S. 411, 417 (2011).

[8]The Court quotes *Bridge* but omits the first part of the sentence. *Bridge* held that "*predicate acts* under RICO" need not be "actionable under the common law" so long as they are chargeable under RICO's list of state or federal crimes. 553 U. S., at 652 (emphasis added and quotation marks omitted). In other words, the part of *Bridge* that the Court quotes says that *predicate acts* need to be crimes, not torts. But when it came to determining whether a plaintiff suffered "legal *injury*" from those predicate acts, *Bridge* made clear that what matters is the "general common-law principle[s]" of tort liability. *Id.*, at 656 (emphasis added).

[9]And on other RICO-related interpretive issues as well, this Court's cases have read civil RICO "to incorporate common-law principles." *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 266–267 (1992) (relying on *Associated Gen. Contractors of Cal., Inc.* v.

KAVANAUGH, J., dissenting

Those *Bridge* and *Beck* precedents directly contradict the Court's test today that RICO's private right of action "requires nothing more" than that a plaintiff's "business or property has been harmed or damaged." *Ante*, at 6. Under this Court's precedents, more is certainly required. Specifically, the plaintiff must have suffered a business or property injury as those terms are understood under general tort principles—meaning an invasion of a legal right in his business or property.

## C

The Court further says that distinguishing personal injuries from business or property injuries, as the text of RICO requires, would be difficult at times. To be sure, as with almost everything in the law, there may be close calls at the margins—here, about whether a plaintiff plausibly alleges a business or property injury as distinct from a personal injury. But that inquiry is at least a familiar judicial exercise. Cf. *United States* v. *Burke*, 504 U. S. 229, 239 (1992); see also, *e.g.*, *Willard* v. *Moneta Bldg. Supply, Inc.*, 262 Va. 473, 482, 551 S. E. 2d 596, 600 (2001) ("applicable statute of limitations" turns on "the type of injury alleged"). And the commonplace reality of some close calls does not mean that we can or should disregard Congress's textual limitation on the kinds of injury that a plaintiff must allege—and ultimately prove—in order to recover under RICO.

The Court also focuses incessantly on a scenario where, as sometimes happens, a single episode results in injuries *both* to one's person *and* to one's business or property. Some kinds of wrongful acts can cause the invasion of multiple legal rights—for example, a car accident might damage the car (property injury) and physically harm the driver

———————

*Carpenters*, 459 U. S. 519, 531–534 (1983)); see also *Anza* v. *Ideal Steel Supply Corp.*, 547 U. S. 451, 457 (2006); *Hemi Group, LLC* v. *City of New York*, 559 U. S. 1, 9 (2010).

(personal injury).  See generally W. Loyd, Actions Arising
Out of Injury to Both Person and Property, 60 U. Pa. L. Rev.
531 (1912); contra, *ante*, at 14, n. 9 (resisting dividing
negligence actions along these lines).  In those scenarios,
civil RICO allows recovery for the business or property
injury (assuming RICO's other requirements are met), but
not the personal injury.

I therefore *agree* with the Court—and so does defendant
Medical Marijuana—that civil RICO allows for recovery
any time a defendant has "invaded the plaintiff's business
or property rights," "even if the plaintiff also suffered a
personal injury."  Brief for Petitioners 34–35; see Reply
Brief 7.  As defendant Medical Marijuana acknowledges,
and I too agree, if a defendant's act causes both personal
and property injuries to another, then civil RICO "allows
suit for the" "property injury" but not the "personal injury,"
no matter which came first.  Reply Brief 8.

In other words, neither Medical Marijuana nor I actually
adopt the position the Court today labels as the
"antecedent-personal-injury bar."  *Ante*, at 4, 14.  Under
that supposed bar, RICO would "implicitly" exclude any
business or property injuries whenever they follow a
personal injury.  *Ante*, at 4.  But by repeatedly criticizing
that supposed rule, the Court invents and knocks down a
straw man.  So just to be crystal clear, I agree with the
Court (as does defendant Medical Marijuana) that if the
plaintiff at some point also suffered a personal injury in
addition to a business or property injury, the plaintiff can
still recover damages for the business or property injury.

Consider the Court's hypotheticals.  They are supposed to
show that the so-called "antecedent-personal-injury bar"
would bar recovery and lead to untenable results in certain
cases.  But in almost all of them, the rule that defendant
Medical Marijuana proposes (and I agree with) would *allow*
recovery, not bar it.  Indeed, they are not close calls.  Why
does Tony Soprano "injure" a victim in his property by

KAVANAUGH, J., dissenting

extracting a computer password through violence and then using it to drain a bank account? Because he has committed at least two traditional wrongs: battery on the password holder and conversion of the money. Restatement (Second) of Torts §§13, 222. A mobster who assaults a carwash owner in order to force him to do business with the mob "intentionally and improperly interferes" with the owner's right to do business with whom he pleases. *Id.*, §§766A, 766B; cf. *id.*, §§766C, 912, Comment *d* (no business injury from lost profits after a personal injury "unless the harm to the business was intended"); contra, *ante*, at 6. And when a fraudster or a kidnapper uses deceit or extortion to obtain money, the victim parts with it because he "has been defrauded or subjected to duress, or whatever it may be"—in other words, "injured in his property." *Chattanooga Foundry*, 203 U. S., at 399.

The correct rule therefore remains the one that civil RICO expressly provides: In a RICO suit, a plaintiff can recover "damages" from a "business or property" injury, but not damages from a personal injury.

### III

Now, we get to the important juncture where the Court diverges from plaintiff Horn in terms of what RICO plaintiffs may recover in personal-injury suits.

Plaintiff Horn seeks a rule that would blatantly circumvent RICO's exclusion of personal-injury suits. In Horn's world, plaintiffs could routinely bring RICO claims for personal injuries from drug mislabeling, dangerous products, medical malpractice, car accidents, and health consequences from pollution, to name a few. As Horn sees it, "injured" means to have experienced a loss, and losing money via lost wages or medical expenses *always* entails being "injured" in one's business or property. See *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 338 (1979) ("Money, of course, is a form of property"). Therefore, plaintiffs could

KAVANAUGH, J., dissenting

routinely repackage many state personal-injury suits as RICO suits (so long as the defendant committed two or more predicate acts) and obtain treble recovery for medical expenses, lost wages, and other pecuniary losses.  The only kind of damages that Horn would exclude are non-economic damages like pain and suffering.[10]

Plaintiff Horn's approach would dramatically expand civil RICO and allow plaintiffs to seize on RICO to replace ordinary state-law tort suits.  Plaintiffs could convert, for example, everyday product liability claims into RICO mass-tort class actions and multi-district litigation where plaintiffs might now seek recovery of triple their lost wages and triple their medical expenses.

Horn's game-changing rule would likely produce significant cascading effects on the American economy and federal and state court systems.  American businesses facing novel RICO suits with treble damages would incur significantly increased litigation exposure and corresponding settlement pressure.  Their insurance premiums would rise.  And all of those costs would mean higher prices for consumers, and fewer jobs and lower wages for workers.  In short, the effects of Horn's rule would likely be dramatic, as Medical Marijuana and its *amici* explain.  See Brief for DRI Center for Law and Public Policy et al. as *Amici Curiae* 20–22; Brief for Chamber of Commerce of the United States of America et al. as *Amici Curiae* 22–23.

———————

[10] Plaintiff Horn says that his rule is consistent with the Ninth Circuit's.  But in *Diaz* v. *Gates*, the Ninth Circuit specifically rejected conflating "mere loss of something of value (such as wages) with injury to a property interest (such as the right to earn wages)."  420 F. 3d 897, 900, n. 1 (2005) (en banc).  And that court held that the plaintiff's harms could give rise to a RICO claim because they "amount[ed] to intentional interference with contract and interference with prospective business relations."  *Id.*, at 900.  So the Ninth Circuit's rule is distinct from the rules advocated by plaintiff Horn and the Court today, which reject any reliance on tort law or legal injury.

24          MEDICAL MARIJUANA, INC. *v.* HORN

KAVANAUGH, J., dissenting

Where is the Court on all of this? Having accepted plaintiff Horn's basic statutory argument, the Court declines to accept all the implications of that position. Instead, the Court stops short and does not (yet) go as far as Horn would. After agreeing with Horn that RICO does not exclude what are traditional personal-injury suits, the Court does not (for now) adopt Horn's view that lost wages and medical expenses are "necessarily" recoverable. *Ante*, at 18. The Court instead suggests that lost wages (as distinct from lost profits) may not necessarily be a business loss, and pecuniary losses such as medical expenses may not necessarily be a property loss.

It is good that the Court pulls back from the precipice and does not adopt Horn's argument in full. In particular, the Court seems to recognize that it would border on the absurd to adopt Horn's position in full and interpret RICO to federalize (and allow treble damages for) such a large number of otherwise standard personal-injury tort suits.

But instead of simply interpreting RICO not to authorize suits for personal injuries, as the statutory text says and as I would do, the Court still sticks partway with Horn and his overly broad interpretation of the statutory text. The Court then backfills to avoid some of the absurd implications of that position by emphasizing certain statutory limitations on RICO suits and then leaving other questions unanswered for now.

For example, the Court stresses that proximate cause is strictly cabined in the RICO context, requiring a direct relationship, not mere foreseeability. *Ante*, at 17; see *Hemi Group, LLC* v. *City of New York*, 559 U. S. 1, 12 (2010); *Anza* v. *Ideal Steel Supply Corp.*, 547 U. S. 451, 457 (2006); *Holmes* v. *Securities Investor Protection Corporation*, 503 U. S. 258, 266–267 (1992). The Court helpfully suggests, moreover, that Horn's suit will not clear that direct-relationship bar, saying that it may pose an "insurmountable obstacle" to Horn's continuing this suit.

KAVANAUGH, J., dissenting

*Ante*, at 17. And the Court notes that RICO does not allow suits for a single tort, but requires a "pattern of racketeering activity." *Ante,* at 18.

I welcome those limits, and I appreciate that they may mitigate some of the potential consequences of the Court's overbroad statutory interpretation.

But the Court then does not answer a significant real-world question spawned by its expansive statutory interpretation: Can civil RICO plaintiffs claim lost wages and medical expenses as business or property injuries? Lower courts will have to resolve the question that the Court's opinion does not answer. All of the above text, context, and history should counsel against interpreting RICO to cover classic damages like lost wages and medical expenses resulting solely from personal injuries. But at least until the Court squarely holds that lost wages and medical expenses are not recoverable, the Court's opinion will leave a good deal of uncertainty for the lower courts to address. The Court's opinion will generate far more confusion and litigation than simply reading the statute as written—as the Sixth, Seventh, and Eleventh Circuits have done—in light of the basic tort-law principles regarding injury that Congress incorporated into civil RICO.

The Court says: "You can't replace something with nothing." *Ante*, at 13. But the Court does not heed its own admonition. Today, the Court replaces a statutory limit derived from centuries of tort law with a punt that will leave substantial confusion and litigation in its wake.

\*       \*       \*

This case should have been reasonably straightforward. RICO does not authorize personal-injury suits—period. That is true even when a personal injury leads to losses related to one's business or property, as personal injuries often do. The Court's decision to allow personal-injury suits under RICO is mistaken as a matter of statutory text and

K<small>AVANAUGH</small>, J., dissenting

context.  And the Court's failure to decide the lost-wages and medical-expenses questions will undoubtedly produce significant confusion and litigation in the lower courts, all of which is wasteful and unnecessary—and contrary to Congress's decision to categorically exclude personal-injury suits from civil RICO.  I respectfully dissent.